TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California  94105
Telephone:    415.268.7000
Facsimile:     415.268.7522

WHITNEY R. O'BYRNE (CA SBN 325698)
WObyrne@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017
Telephone:    213.892.5200
Facsimile:     213.892.5454

ELISABETH HUTCHINSON (admitted *pro hac vice*)
EHutchinson@mofo.com
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, Colorado  80202
Telephone:    303.592.1500
Facsimile:     303.592.1510

Attorneys for Defendant
EXPRESS SCRIPTS HOLDING COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JONATHAN LYNCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY,<br><br>Defendant. | Case No. 3:23-cv-01170-AMO<br><br>**DEFENDANT EXPRESS SCRIPTS HOLDING COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          August 31, 2023<br>Time:          2:00pm<br>Courtroom:   10<br>Judge:        Hon. Araceli Martínez Olguín<br><br>Date Action Filed:  June 9, 2023<br>Trial Date:  N/A |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 31, 2023 at 2:00 pm, or at a different time and date set by the Court, Defendant Express Scripts Holding Company, Inc. (hereinafter "Express Scripts"), by and through counsel, will and hereby does move the Court to dismiss all claims asserted in the Complaint ("Compl.") against Express Scripts under the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523; California Invasion of Privacy Act, Cal. Penal Code Section 631; the Confidentiality of Medical Information Act, Cal. Civ. Code Section 56.101; and the California Consumer Privacy Act, Cal. Civ. Code Section 1798.150.

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that Plaintiff lacks standing, that Plaintiff fails to plead his allegations with the particularity and specificity demanded by Federal Rule of Civil Procedure 8, and that the Complaint fails to state a claim upon which relief may be granted.

This Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities; Request for Judicial Notice, the Declaration of Tiffany Cheung ("Cheung Decl."), and the Declaration of Matthew Edwards ("Edwards Decl."); the pleadings, files, and records in this action; and any further submissions to the Court before the hearing.

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................................. 2

    A.   Plaintiff's Allegations ............................................................................................ 2

    B.   Plaintiff's Consent to the Alleged Conduct .......................................................... 3

III.  LEGAL STANDARD.......................................................................................................... 5

IV.   LEGAL ARGUMENT ........................................................................................................ 6

    A.   Plaintiff Lacks Sufficient Injury-in-Fact to Confer Article III Standing. ..................... 6

    B.   Plaintiff's Allegations are Impermissibly Vague. ................................................. 7

    C.   Plaintiff's Wiretapping Claims Fail Because He Consented to the Pixel Tracking Technology. ............................................................................................. 8

    D.   Plaintiff's Wiretap Claims Fail on Multiple Other Grounds. ..................................... 10

        1.   Plaintiff's wiretap claims are time-barred. ................................................. 10

        2.   Express Scripts was a party to any communications. ................................. 12

        3.   Express Scripts did not disclose any "contents" within the meaning of the CIPA or the Federal Wiretap Act. ...................................................... 13

        4.   Plaintiff does not allege his communications were "intercepted" while "in transit." ............................................................................................... 15

        5.   Plaintiff's aiding and abetting theory fails. ............................................... 16

        6.   Plaintiff's CIPA claim also fails because Section 631 does not apply to extraterritorial conduct. ....................................................................... 18

    E.   Plaintiff's Claim Under Section 56.101 of the CMIA Should Be Dismissed. .............. 18

        1.   Plaintiff fails to allege his medical information is at issue. ................................ 19

        2.   Plaintiff fails to allege his medical information was actually viewed by a third party. ...................................................................................................... 20

    F.   The CCPA's Private Right of Action Does Not Apply............................................... 21

V.    CONCLUSION.................................................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 6

*In re Blackbaud, Inc. Customer Data Breach Litig.*,
   No. 3:20-mn-02972-JMC, 2021 WL 3568394 (D.S.C. Aug. 12, 2021) ........................... 19, 20

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ...................................................................... 8, 13, 14

*Byars v. Hot Topic, Inc.*,
   No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ................... 17

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) ................................................................................... 5

*Cousineau v. Microsoft Corp.*,
   992 F. Supp. 2d 1116 (W.D. Wash. 2012) .................................................................. 14

*Doe v. Regents of Univ. of Cal.*,
   No. 23-cv-00598-WHO, 2023 WL 3316766 (N.D. Cal. May 8, 2023) .............................. 21

*Eisenhower Med. Ctr. v. Super. Ct.*,
   226 Cal. App. 4th 430 (2014) ................................................................................... 19, 20

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................... 12, 13

*Fodor v. AOL Time Warner, Inc.*,
   217 F. App'x 622 (9th Cir. 2007) ............................................................................. 11

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ............................................................................................ 11

*Garcia v. Enter. Holdings, Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...................................................................... 8, 9

*Gershfeld v. TeamViewer US, Inc.*,
   No. 21-55753, 2023 WL 334015 (9th Cir. Jan. 20, 2023) .............................................. 22

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015) ..................................................................................... 12

*Graham v. Noom*, *Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................................ 16

*Hammerling v. Google LLC*,
    No. 21-cv-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ................................ 18

*Javier v. Assurance IQ, LLC* (*Javier I*),
    No. 4:20-CV-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021)................................. 9

*Javier v. Assurance IQ, LLC* (*Javier II*),
    -- F. Supp. 3d --, No. 20-CV-02860-CRB, 2023 WL 114225 (N.D. Cal. Jan. 5,
    2023) ................................................................................................................................. 11

*Johnson v. Blue Nile, Inc.*,
    No. 20-cv-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021)..................................... 17

*Johnson v. Glock*,
    No. 3:20-cv-08807-WHO, 2021 WL 1966692 (N.D. Cal. May 17, 2021)............................ 11

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)............................................................................................... 6

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002)............................................................................................. 15

*Kurowski v. Rush Sys. for Health*,
    No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ........................................ 12, 13

*Licea v. Old Navy, LLC*,
    No. 5:22-cv-01413-SSS-SPx, 2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) ....................... 12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)........................................................................................................ 5, 6

*Lukovsky v. City & Cty. of S.F.*,
    535 F.3d 1044 (9th Cir. 2008)............................................................................................ 11

*Maag v. U.S. Bank, Nat'l Assoc.*,
    No. 21-cv-31-H-LL, 2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) ....................................... 22

*Martin v. Sephora USA, Inc.*,
    No. 1:22-CV-01355-JLT-SAB, 2023 WL 2717636, (E.D. Cal. Mar. 30, 2023),
    *report and recommendation adopted* No. 1:22-CV-01355-JLT-SAB, 2023 WL
    3061957 (E.D. Cal. Apr. 24, 2023) ........................................................................... 8, 12, 15

*McCoy v. Alphabet, Inc.*,
    No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021)................................... 21

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996)............................................................................................... 7

*Montalti v. Catanzariti*,
  191 Cal. App. 3d 96 (1987).......................................................................................... 10

*Moretti v. Hertz Corp.*,
  No. C 13-02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014)..................................... 9

*Nguyen v. Barnes & Noble Inc.*,
  763 F. 3d 1171 (9th Cir. 2014)......................................................................................... 9

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016)............................................................................................ 12

*Pena v. GameStop, Inc.*,
  No. 22-CV-1635 JLS (MDD), 2023 WL 3170047 (S.D. Cal. Apr. 27, 2023)...................... 12

*Rahman v. Marriott Int'l, Inc.*,
  No. SA CV 20-00654-DOC-KES, 2021 WL 346421 (C.D. Cal. Jan. 12, 2021)..................... 7

*Rambus Inc. v. Samsung Elecs. Co.*,
  Nos. C-05-02298 RMW, C-05-00334 RMW, 2007 WL 39374 (N.D. Cal. Jan.
  4, 2007) ..................................................................................................................... 11

*Regents of Univ. of Calif. v. Super. Ct.*,
  220 Cal. App. 4th 549 (2013) ......................................................................................... 19

*Rodriguez v. Google LLC*,
  No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)....................................... 15

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021) ............................................................................. 13

*Silver v. Stripe Inc.*,
  No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021)............................. 9

*Smith v. Facebook, Inc.*,
  745 F. App'x 8 (9th Cir. 2018) ........................................................................... 8, 9, 13, 14

*Spokeo, Inc., v. Robins*,
  578 U.S. 330 (2016)......................................................................................................... 6

*Sutter Health v. Super. Ct.*,
  227 Cal. App. 4th 1546 (2014) ....................................................................................... 20

*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2008)........................................................................................... 14

*United States v. Heckenkamp*,
  482 F.3d 1142 (9th Cir. 2007)........................................................................................... 7

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 3:23-CV-01170-AMO

iv

*United States v. Reed*,
  575 F.3d 900 (9th Cir. 2009)......................................................................................... 14

*Vigil v. Muir Med. Grp. IPA, Inc.*,
  84 Cal. App. 5th 197 (2022) ......................................................................................... 20

*In re Waste Mgmt. Data Breach Litig.*,
  No. 21cv6147 (DLC), 2022 WL 561734 (S.D.N.Y. Feb. 24, 2022).................................... 22

*Williams v. What If Holdings, LLC.*,
  No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)............................... 16

*Wilson v. Rater8, LLC*,
  No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)............................. 19

*Yale v. Clicktale, Inc.*,
  No. 20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)................................... 17

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ........................................................... 14

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014).............................................................................. 13, 14

**Statutes**

Cal. Civ. Code § 56.05(i) ............................................................................................ 2, 19

Cal. Civ. Code § 56.06(j) ................................................................................................ 19

Cal. Civ. Code § 56.101 ............................................................................................ 1, 7, 2

Cal. Civ. Code § 1798.150 .................................................................................... 1, 7, 2, 21

Cal. Civ. Proc. Code § 312.............................................................................................. 10

Cal. Civ. Proc. Code § 340(a) ......................................................................................... 10

Cal. Penal Code § 631 ............................................................................................*passim*

Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523.........................*passim*

Fed. R. Civ. P. 8 .............................................................................................................. 1

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 6

Fed. R. Civ. P. 12(b)(1)..................................................................................................... 1

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 1

**STATEMENT OF ISSUES TO BE DECIDED**

1.    **Standing.**  Whether Plaintiff's claims should be dismissed for lack of standing under Rule 12(b)(1) because he has failed to allege sufficient injury-in-fact.

2.    **Inadequate Pleading.**  Whether Plaintiff's claims should be dismissed under Rule 12(b)(6) because he has failed to satisfy the federal pleading standards set forth in Rule 8.

3.    **Electronic Communications Privacy Act of 1986 (the "Federal Wiretap Act"), 18 U.S.C. §§ 2510-2523 (Claim 1)**.  Whether Plaintiff's claim under the Federal Wiretap Act should be dismissed because (i) both parties consented to the purported interception and disclosure; (ii) it is time-barred; (iii) Plaintiff concedes that Express Scripts was the intended recipient of his communications; (iv) Plaintiff does not allege that Express Scripts disclosed any "contents" of communications within the meaning of the Federal Wiretap Act; and (v) Plaintiff has not alleged that his purported communications were intercepted while "in transit."

4.    **California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 (Claim 2)**.  Whether Plaintiff's claim under California Penal Code Section 631 should be dismissed because (i) both parties consented to the purported interception and disclosure; (ii) it is time-barred; (iii) Plaintiff concedes that Express Scripts was the intended recipient of his communications; (iv) Plaintiff does not allege that Express Scripts disclosed any "contents" of communications within the meaning of the CIPA; (v) Plaintiff has not alleged that his purported communications were intercepted while "in transit"; (vi) Plaintiff's aiding and abetting theory fails; and (vii) Section 631 does not apply to alleged conduct that occurs outside California.

5.    **Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.101 (Claim 3)**.  Whether Plaintiff's CMIA claim should be dismissed because he does not plausibly allege that his confidential medical information was released or that any third parties actually viewed such information.

6.    **California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150 (Claim 4)**.  Whether Plaintiff's CCPA should be dismissed because he does not allege Express Scripts experienced a security breach due to its failure to employ reasonable security measures.

<strong>MEMORANDUM OF POINTS AND AUTHORITIES</strong>

**I.      INTRODUCTION**

Plaintiff cannot claim his privacy rights are invaded by conduct he agreed to in a binding contract. This case centers on allegations related to Express Scripts's use of a commonplace website enhancement tool embedded on the publicly available pages of its website. But to become "a customer of Defendant's website," Plaintiff would have been required to agree to the Internet Privacy Policy ("Privacy Policy"), which expressly permits Express Scripts to use third-party website enhancement tools, including pixels, and to share certain data with third parties to improve user experience and for marketing purposes. Nevertheless, Plaintiff now claims that Express Scripts violated his privacy rights by engaging in conduct to which he consented. The Complaint must be dismissed in its entirety.

As a threshold matter, Plaintiff lacks Article III standing because he has not sufficiently pled an injury-in-fact. Plaintiff attempts to create Article III standing by citing vague reports about the number of Express Scripts patients and a general description of Express Scripts's portal sign-in process. That does not meet the demands of Article III. Plaintiff makes no specific, factual allegations as to any substantive information *he* purportedly input on the Express Scripts website. Nor does Plaintiff address how he could have been injured when he consented to the use of the technology at issue. Plaintiff has not suffered any injury-in-fact sufficient to establish Article III standing. Beyond standing, the Complaint fails for several additional reasons.

*First*, Plaintiff's wiretapping claims under the Electronic Communications Privacy Act of 1986 (the "Federal Wiretap Act"), 18 U.S.C. §§ 2510-2523, and California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, fail on numerous, independent grounds: (i) Plaintiff consented to the use of pixels on the Express Scripts website; (ii) Plaintiff's claims are time-barred; (iii) Plaintiff concedes that Express Scripts was a party to any purported communications; (iv) Plaintiff does not allege that Express Scripts disclosed any "contents" of communications within the meaning of the CIPA or the Federal Wiretap Act; and (v) Plaintiff has not alleged that his purported communications were "intercepted" while "in transit" as required by the statutes. Further, Plaintiff's CIPA claim independently fails because his allegations do not support an

aiding and abetting theory of recovery, and Section 631 does not apply to extraterritorial conduct.

*Second*, Plaintiff's claim under California's Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.101, fails for two distinct reasons. To begin, Plaintiff has not sufficiently alleged the data purportedly transmitted to Facebook constitutes "medical information" within the meaning of Cal. Civ. Code § 56.05(i). Indeed, the Complaint fails to allege *any* facts regarding substantive medical information Plaintiff allegedly transmitted to Express Scripts when visiting its website. Second, Plaintiff has not plausibly alleged that his medical information was actually viewed by Facebook—a condition precedent to a CMIA claim.

*Third*, the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150, provides a private right of action *only* if a data breach occurred. Here, the Complaint fails to allege any such cybersecurity incident, and instead, merely parrots the elements of the statute. That is not enough. The CCPA's private right of action does not apply here.

For these reasons, Plaintiff's Complaint should be dismissed without leave to amend.

## II.     FACTUAL BACKGROUND

### A.      Plaintiff's Allegations

Express Scripts is an online pharmacy and pharmacy benefits manager that serves over 100 million Americans. (ECF No. 1 ("Compl.") ¶ 38.) Plaintiff alleges he is a Facebook user and California resident who visited the Express Scripts website "[o]ver the last few years." (*Id.* ¶¶ 25, 79.) He alleges that he is "a customer of Defendant's website" (*id.* ¶ 25) but provides no factual allegations showing he input any confidential medical information during any purported visit to the Express Scripts website. And without any specific factual allegations, Plaintiff conclusorily alleges that during at least one of his visits to the Express Scripts website, Express Scripts used a website tool, the Facebook Pixel, to record information about his interactions with the website and shared that information with a third party, Facebook, without his consent. (*E.g., id.* ¶ 5.)

The information that was purportedly recorded and transmitted to Facebook included basic record data about Plaintiff's interactions with the Express Scripts website, including mouse clicks, mouse hovers, mouse movements, keyboard inputs, IP address, page views, button clicks, and other similar data. (Compl. ¶¶ 61, 63, 84, 94, 98.) Plaintiff claims this record data constitutes

sensitive and confidential information in violation of state and federal statutes (*id.* ¶ 98) and brings this putative class action on behalf of himself and "[a]ll persons in the United States whose communications were intercepted by [Express Scripts] or its agents." (*Id.* ¶ 138.) He also seeks to represent a subclass of "[a]ll persons in California whose communications were intercepted by [Express Scripts] or its agents." (*Id.*)

### B.    Plaintiff's Consent to the Alleged Conduct

Plaintiff alleges that he is an Express Scripts "customer." (Compl. ¶ 25.) To register as an Express Scripts "customer," Plaintiff (like all new customers) must have affirmatively stated that he read and accepted Express Scripts's Terms of Use and Privacy Policy. (*See* Cheung Decl., Exs. A (Privacy Policy) and B (Terms of Use).) Indeed, *every* new user must acknowledge that they have read and accept the Terms of Use and Privacy Policy during their registration:



(Edwards Decl., Ex. A (screenshot of user registration flow).)

The Privacy Policy expressly notifies users they "are deemed to have assented to the terms and conditions contained in this Privacy Policy when you use the Site and/or when you have indicated in your online registration that you accept the Terms of Use into which this Privacy Policy is incorporated." (Cheung Decl., Ex. A at 18.) Similarly, the website's Terms of Use also highlight "**PRIVACY POLICY**" in bold, capitalized letters and provide, "You agree to the Internet privacy policy ('Privacy Policy'), which is incorporated by reference in these Terms of Use." (Cheung Decl., Ex. B at 7.)

Through registration as an Express Scripts "customer," Plaintiff consented to the alleged conduct. (Compl. ¶ 79.) Specifically, by agreeing to the Privacy Policy, each customer agrees that:

- Express Scripts "may use certain in-house or third-party functionality to log and analyze your communications with us and interactions with the Site," (Cheung Decl., Ex. A at 9);

- Express Scripts "may collect Non-Personal Information from" users "when [they] visit the Site, and during [their] interactions with the Site," (*id.* at 12);

- "'Non-Personal Information' means a data element or collection of data elements that by itself cannot ordinarily be associated with a specific individual," such as "the Internet browser, or operating system you are using, your navigation of the Site including the pages or displays of the Site that you access, the amount of time spent on various portions of the Site, the length and dates of your visits to the Site, and certain Site data captured through your interactions with the Site and other sites," (*id.*);

- The information collected may be identifiable with a specific user: "Based on certain interactions with the Site, third-party sites, mailings, other communications with us, and/or our system configurations, certain Non-Personal Information may be associated with your Personal Information such that your Non-Personal Information is identifiable with you," (*id.* at 12-13);

- Such information may be used by Express Scripts and "affiliated companies for a variety of analytic and developmental purposes including to improve and enhance the Site and our products and services, to create new products and services, to customize your experience

on the Site and other sites that you visit on the Internet, to identify and/or offer products, services and website functionality that may be of interest to you, and other legitimate business purposes," (*id.* at 13 (emphasis added));

- Express Scripts "may embed ***tracking pixels*** or tags within various pages of the Site to enable use of site analytics and enhance Site functionality," (*id.* at 14 (emphasis added));

- Express Scripts "may share Non-Personal Information with our affiliated companies, third parties who provide services to us, and other parties that you have authorized," (*id.* at 15);

- Express Scripts "***may use third parties to . . . provide Tracking Mechanism(s) that [Express Scripts] embed[s] in or use[s] with the Site***, . . . ***provide advertisements and other information to you about the Site, products, and services through a third-party site based on a prior visit to the Site***, . . . ***analyze communication with us and interactions with the Site***, . . . [and] collect Non-Personal Information from you (e.g., on your interactions and/or experience with the Site and/or [Express Scripts])," (*id.* at 16 (emphasis added) (under heading, "**THIRD-PARTY USAGE**," in bold, capitalized letters)); and

- Express Scripts "may also promote content of interest to you through social media," and a user "may opt out or configure [their] social media account settings to limit promotion of such content," (*id.* at 9).

In addition to these unambiguous disclosures, in bold, capitalized letters, the Privacy Policy also instructs users on "**HOW [THEY] CAN CONTROL WHAT INFORMATION IS COLLECTED FROM [THE EXPRESS SCRIPTS] SITE**." (*Id.* at 15.) The Privacy Policy then provides a bullet list of actions users can take to control the information collected. (*Id.* at 15-16.)

## III.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction if the plaintiff does not satisfy Article III standing requirements. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Plaintiff, as the party seeking to invoke the court's subject matter jurisdiction, has the burden of establishing that

such jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Federal Rule of Civil Procedure 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) where, as here, the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## IV.    LEGAL ARGUMENT

### A.    Plaintiff Lacks Sufficient Injury-in-Fact to Confer Article III Standing.

The Court should dismiss Plaintiff's Complaint in its entirety under Rule 12(b)(1), because Plaintiff's allegations do not meet the demands of Article III. To satisfy the "irreducible constitutional minimum of standing," Plaintiff must establish an injury that is "concrete and particularized, and actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560-61. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist" and cannot be "abstract." *Spokeo, Inc., v. Robins*, 578 U.S. 330, 340 (2016). Article III is meant to prevent parties from flooding the courts with claims that allege only non-specific hypothetical harms.

Here, Plaintiff alleges only that he visited the Express Scripts website "[o]ver the last few years." (Compl. ¶¶ 38, 41, 79, 82, 85, 87, 94.) Plaintiff makes no allegations as to any substantive information *he* personally exchanged through the website; whether, how, and why the information *he* allegedly communicated was confidential; or how *he* was injured by visiting the public-facing website. These omissions are fatal under Article III's requirements.

In a vain attempt to avoid the obvious shortcomings of his own allegations, Plaintiff relies on general allegations that Express Scripts is an online pharmacy that handles millions of prescriptions each year, that the U.S. Department of Defense awarded Express Scripts a contract to serve active-service members and retirees, and that there are over 200,000 active-duty reserve members in California served by Express Scripts's pharmacy benefits management service. (Compl. ¶¶ 40-45.) General allegations as to Express Scripts's business and its service to active-duty reserve members do nothing for Plaintiff's claims. Plaintiff does not provide any factual allegations that *he* uses the Express Scripts pharmacy services or that *he* entered any of *his* information on the website or the Express Scripts patient portal.

Plaintiff's generic descriptions of an online pharmacy doing business and his otherwise barebones allegations are insufficient to establish injury-in-fact. At most, Plaintiff has alleged he visited a website and unspecified activity on that website were recorded—but that is not enough. *See Rahman v. Marriott Int'l, Inc.*, No. SA CV 20-00654-DOC-KES, 2021 WL 346421, at *2 (C.D. Cal. Jan. 12, 2021) (dismissing case for lack of standing where allegedly impacted "information obtained lack[ed] the degree of sensitivity required by the Ninth Circuit to establish injury in fact"); *cf. United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007) ("A person's reasonable expectation of privacy may be diminished in transmissions over the Internet or e-mail that have already arrived at the recipient." (quotation marks and citation omitted)).

In any event, Plaintiff cannot satisfy Article III's injury-in-fact requirement because Plaintiff consented to the alleged conduct. To be an Express Scripts "customer," as Plaintiff alleges (Compl. ¶ 25), Plaintiff would have been required to consent to Express Scripts's Privacy Policy, including its use of pixel technology. (*See* Cheung Decl., Exs. A (Privacy Policy), B (Terms of Use); Edwards Decl., Ex. A (screenshot of registration flow).) The Complaint should be dismissed because Plaintiff has not established Article III standing.

### B.  Plaintiff's Allegations are Impermissibly Vague.

The Complaint should be dismissed under Rule 12(b)(6) for failure to comply with Rule 8. To satisfy the federal pleading standards, Plaintiff must fully identify "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 3:23-CV-01170-AMO

7

F.3d 1172, 1178 (9th Cir. 1996). Rather than being given an opportunity to challenge specifics as required by Rule 8, Express Scripts is left to speculate about what is at issue in this litigation. Plaintiff does not specify *any* data *he* allegedly input into the website that could trigger his various statutory claims. In fact, Plaintiff does not even identify the date he registered with Express Scripts or *any* substantive medical information he purportedly input into the website. Plaintiff's lack of factual allegations as to his own conduct on the website and relationship with Express Scripts does not meet the demands of Rule 8. Instead of providing the necessary detail for Express Scripts to be able to investigate his claims, Plaintiff offers only vague references to visiting the website "[o]ver the last few years" (Compl. ¶ 79) and to being an Express Scripts customer (*id.* ¶ 25). These generalized assertions "render[] the complaint and alleged causes of action impermissibly vague." *Martin v. Sephora USA, Inc.*, No. 1:22-CV-01355-JLT-SAB, 2023 WL 2717636, at *6 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted* No. 1:22-CV-01355-JLT-SAB, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (dismissing wiretapping claims based on website enhancement technology, in relevant part, for "Plaintiff's failure to identify the date of the at-issue incident, beyond the vague assertion that the purported violation occurred sometime 'within the past year'"). The Complaint should be dismissed because Plaintiff has failed to provide fair notice to Express Scripts of the challenged conduct at issue.

> **C.      Plaintiff's Wiretapping Claims Fail Because He Consented to the Pixel Tracking Technology.**

Based on the allegations Plaintiff does plead, Plaintiff's federal and state wiretap claims fail because Plaintiff explicitly consented to use of the pixel technology at issue. His consent thereto defeats his wiretap claims. *See* Cal. Penal Code § 631(a); 18 U.S.C. § 2511(d).[1] As a general matter, "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (quoting *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018)). Indeed, courts within this district

---

[1] *See, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) (affirming "dismissal of [plaintiffs'] complaint alleging that Facebook violated numerous federal and state laws by collecting and using their browsing data from various healthcare-related websites" based on plaintiffs' acceptance of terms and conditions disclosing such tracking); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) ("Defendants may properly challenge [p]laintiff's allegations regarding lack of consent through the instant motion to dismiss.").

"consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims" at the motion to dismiss stage. *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (collecting cases). Such is the case here.

A contract entered on the internet is enforceable if it puts a website user on actual or inquiry notice of the site's terms. *Nguyen v. Barnes & Noble Inc.*, 763 F. 3d 1171, 1177 (9th Cir. 2014). It is enough that "a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink"; if that exists, the plaintiff has agreed to "[a] binding contract." *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) (cleaned up). This standard is more than satisfied here. To become an Express Scripts customer, users must register for an Express Scripts account and agree to Express Scripts's Privacy Policy disclosing the very conduct at issue in this case. (Compl. ¶ 25; Cheung Decl., Exs. A (Privacy Policy), B (Terms of Use); Edwards Decl., Ex. A (screenshot of registration flow).) In doing so, Plaintiff entered into a clear, unambiguous agreement affirmatively representing that he had read and accepted the terms set forth in the Privacy Policy. *See, e.g.*, *Javier v. Assurance IQ, LLC* (*Javier I*), No. 4:20-CV-02860-JSW, 2021 WL 940319, at *3-4 (N.D. Cal. Mar. 9, 2021) (dismissing CIPA claims based on similar clickwrap agreement, "which courts routinely uphold as valid").

The express disclosures throughout the Privacy Policy are more than adequate to put a reasonable person viewing those disclosures on notice that Express Scripts uses website enhancement technology, including pixels; that the record data collected from this technology may be shared with third parties; and that the technology is used to promote site functionality and for marketing. *See Smith*, 745 F. App'x at *8-9 (dismissing claims associated with website enhancement technology where "[a] reasonable person viewing those disclosures would understand that Facebook maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes"). The Privacy Policy's disclosures and Plaintiff's consent thereto compel dismissal of Plaintiff's wiretapping claims. *See, e.g.*, *Garcia*, 78 F. Supp. 3d at 1136 (taking judicial notice of "documents proffered by Defendants

establish[ing] that in order to sign up and use [the application], a user must agree to the [terms] and Privacy Policy" and dismissing wiretapping claims despite plaintiff's allegation of lack of consent); *see also, e.g.*, *Silver*, 2021 WL 3191752, at \*4-5 (relying on *Smith* to dismiss claims associated with website enhancement technology based on privacy notices and associated disclosures).

### D.     Plaintiff's Wiretap Claims Fail on Multiple Other Grounds.

Plaintiff's wiretap claims also fail on several additional, independent grounds: (i) the claims are untimely, (ii) Express Scripts was a party to the alleged communications, (iii) no "contents" of communications were allegedly intercepted, and (iv) no "interception" while "in transit" has been alleged. All of these reasons present independent grounds for dismissal of Plaintiff's wiretapping claims. Further, Plaintiff's CIPA claim also fails because the facts alleged do not support any aiding and abetting theory, and Plaintiff does not allege that the purported interceptions occurred in California.

### 1.     Plaintiff's wiretap claims are time-barred.

Under California Civil Procedure Code Sections 312 and 340(a), a complaint alleging violations of California Penal Code Section 631 must be filed within one year after the plaintiff discovers or should have known of the defendant's unlawful acts. *See Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 97-98, 98 n.1 (1987). Similarly, a complaint alleging violations of the Federal Wiretap Act must be filed within two years after the date upon which the plaintiff had a reasonable opportunity to discover the violation. *See* 18 U.S.C. § 2520(e). Here, Plaintiff's own allegations show his claims are time-barred. Plaintiff alleges the conduct occurred during "one or more" of his visits to the Express Scripts website "[o]ver the *last few years*." (Compl. ¶¶ 79, 94 (emphasis added).) The Privacy Policy linked to every page of the Express Scripts website put Plaintiff on notice of the use of website enhancement technology, including pixels, and he had multiple opportunities to revisit that Policy over the extended period he allegedly visited the site. (*See* Cheung Decl., Exs. A, B.)

Tacitly conceding that his wiretap claims are untimely, Plaintiff suggests that Express Scripts is equitably estopped from relying on the applicable statutes of limitations. (Compl.

¶¶ 151-55.) Not so. To establish that equitable estoppel applies, "the plaintiff must point to some fraudulent concealment, some active conduct by the defendant '*above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Lukovsky v. City & Cty. of S.F.*, 535 F.3d 1044, 1051-52 (9th Cir. 2008) (equitable estoppel "focuses primarily on actions taken by the *defendant* to prevent a plaintiff from filing suit"). Indeed, a claim that fraudulent concealment tolls the applicable statute of limitations must be pled with particularity under Rule 9(b). *Johnson v. Glock*, No. 3:20-cv-08807-WHO, 2021 WL 1966692, at *3 (N.D. Cal. May 17, 2021); *Rambus Inc. v. Samsung Elecs. Co.*, Nos. C-05-02298 RMW, C-05-00334 RMW, 2007 WL 39374, at *6 (N.D. Cal. Jan. 4, 2007) ("[B]ecause fraud is the underlying theory of the doctrine of fraudulent concealment, the heightened pleading requirements of [Rule] 9(b) applies."). Here, Plaintiff's conclusory allegations that Express Scripts concealed the facts alleged in the Complaint fall far short of meeting this heightened pleading standard, particularly where Plaintiff was made aware of and agreed to the challenged practices.

Similarly, there is no basis for Plaintiff to invoke the "delayed discovery rule," because he does not explain when and how he learned of the alleged wrongdoing or why he could not have discovered it earlier. To invoke the delayed discovery rule, he must "plead facts to show (1) the time and manner of the discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (citation omitted); *see also, e.g.*, *Fodor v. AOL Time Warner, Inc.*, 217 F. App'x 622, 623 (9th Cir. 2007) (plaintiff could not rely on the delayed discovery rule to save a time-barred wiretapping claim, because the allegations in his complaint did "not explain why he could not have discovered this alleged wrongdoing earlier"). Further, "[p]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Fox*, 35 Cal. 4th at 808.

Here, Plaintiff cannot credibly claim he was unable to know about Express Scripts's use of cookies, pixels, and third-party website analytics when he consented to Express Scripts's publicly-posted Privacy Policy disclosing that very conduct. Plaintiff's wiretap claims are thus

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 3:23-CV-01170-AMO

11

time-barred. *See Javier v. Assurance IQ, LLC* (*Javier II*), -- F. Supp. 3d --, No. 20-CV-02860-CRB, 2023 WL 114225, at \*7 (N.D. Cal. Jan. 5, 2023) (rejecting plaintiff's argument that "he did not know that [third-party's] spyware was installed on the website when he visited the site" and privacy policy put plaintiff "on inquiry notice of a possible third party who would have been another 'potential cause of his injury'" related to website enhancement technology, and dismissing CIPA claim as time-barred (alterations omitted)).

### 2.   Express Scripts was a party to any communications.

Second, both the Federal Wiretap Act and the CIPA contain an "exemption from liability for a person who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). In particular, "[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and ***not to recording by a participant to a conversation***." *Id.* (emphasis added) (citation omitted); *see Pena v. GameStop, Inc.*, No. 22-CV-1635 JLS (MDD), 2023 WL 3170047, at \*3 (S.D. Cal. Apr. 27, 2023) (granting defendant's motion to dismiss plaintiff's CIPA and Federal Wiretap Act claims because defendant was the known and intended recipient of the communications sent by plaintiff to defendant's website "such that each statute's 'party exception' bars [d]efendant's liability"); *Licea v. Old Navy, LLC*, No. 5:22-cv-01413-SSS-SPx, 2023 WL 3012527, at \*3 (C.D. Cal. Apr. 19, 2023) (dismissing CIPA claim because the defendant was the intended recipient of communications on defendant's website); *Martin*, 2023 WL 2717636, at \*7 (same).[2] As the Complaint makes clear, Express Scripts was the intended recipient of any information allegedly input by Plaintiff onto Express Scripts's website. (*See, e.g.*, Compl. ¶ 83 (describing Plaintiff's website activity as "communications between Plaintiff and Defendant"); *id.* ¶ 98 (describing "Defendant" as intercepting "Plaintiff's and Class Members' communications with the website").)

Indeed, as a recent decision from another district court held on nearly identical facts and

---

[2] *See also, e.g.*, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015) ("Because the defendants were the intended recipients of the transmissions at issue—i.e. GET requests that the plaintiffs' browsers sent directly to the defendants' servers—we agree that § 2511(2)(d) means the defendants have done nothing unlawful under the [Federal Wiretap Act]."); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275-76 (3d Cir. 2016) (citing *In re Google Cookie* for the same proposition).

related to the same technology at issue here, visitors of a healthcare provider's website cannot establish a claim under the Federal Wiretap Act against the healthcare provider. *See Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 2349606, at *4 (N.D. Ill. Mar. 3, 2023). In *Kurowski*, the court held that because the healthcare provider "was the intended recipient of the allegedly intercepted communication," the healthcare provider was "therefore a party to those communications and [could not] be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred." *Id.* Here, Plaintiff concedes that Express Scripts was the intended recipient of all his purported communications—in fact, he explicitly alleges the pixel was tracking "communications between Plaintiff and *Defendant*." (Compl. ¶ 83 (emphasis added).) Plaintiff's wiretapping claims thus fail under the exemption for the parties to the communication.

Although Plaintiff may attempt to argue that the party-exception rule is inapplicable in light of the opinion in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F. 3d 589 (9th Cir. 2020)*,* that case is clearly distinguishable. There, plaintiffs alleged the defendant in that case—*Facebook*—used plug-ins to track users' browsing histories when they visited third-party websites after its users had *logged out* of Facebook. *Id.* at 596. There, plaintiffs alleged that Facebook was the party "intercepting" the communications—not the company that operated the website. Here, however, Plaintiff has filed suit against the website operator—*Express Scripts*—for purportedly recording communications that Plaintiff allegedly input and directed *to Express Scripts* on its website. (*E.g.*, Compl. ¶¶ 87, 147.)  Plaintiff's allegations that Express Scripts recorded its own communications with Plaintiff are barred by the party-exception rule, requiring dismissal of Plaintiff's wiretap claims. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 519 (C.D. Cal. 2021) (dismissing plaintiff's CIPA claim against Nike under the party-exception rule where plaintiff alleged Nike and third-party service provider recorded plaintiff's communications).

      **3.**      **Express Scripts did not disclose any "contents" within the meaning of the CIPA or the Federal Wiretap Act.**

Third, Plaintiffs' wiretap claims fail because he does not allege that "contents" of communications were disclosed. "[T]he term 'contents' refers to the intended message conveyed

by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) (addressing "contents" under the Federal Wiretap Act); *Brodsky*, 445 F. Supp. 3d at 127 (explaining "contents" has same meaning under both the Federal Wiretap Act and CIPA). The "content" of a communication does not include "record information regarding the characteristics of the message that is generated in the course of the communication," such as the origination, length, and time of a telephone call; email, URL, and IP addresses; the geographic location of a mobile device; passwords and user IDs; and other basic identification and address information. *In re Zynga Priv. Litig.*, 750 F.3d at 1106; *see United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008); *Brodsky*, 445 F. Supp. 3d at 127. "This body of caselaw suggests that CIPA § 631(a)[ii] protects only the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021).

Here, Plaintiff bases his allegations on the purported interception of his customer ***interactions*** with the Express Scripts website. He alleges that the "communications" at issue included mouse clicks, mouse hovers, mouse movements, keyboard inputs, keystrokes, search items, IP address, page views, button clicks, microdata personally identifiable to Plaintiff, and other ***actions taken*** while visiting Express Scripts's public-facing webpage. (Compl. ¶¶ 8, 61, 63, 85.) This information is nonactionable "record information"—"information regarding the characteristics of the message," rather than the "intended message conveyed by the communication." *See In re Zynga Priv. Litig.*, 750 F.3d at 1106-09 (user's Facebook ID and the address of the webpage from which the user's request to view another webpage originated "does not constitute the contents of a communication"); *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1127 (W.D. Wash. 2012) ("[T]he term 'contents' does not include location information.").

Indeed, Plaintiff does not provide any factual allegations that *he* input *any* information into the website at all, let alone information that could be considered "content" under the wiretap acts. As the Ninth Circuit has cautioned, wiretapping statutes should not be read so broadly as to reach "[i]nformation available on publicly accessible websites," as it "stands in stark contrast to the personally identifiable patient records and medical histories protected by [federal privacy]

statutes." *Smith*, 745 F. App'x at 9. Because Plaintiff fails to allege that he input and Express Scripts intercepted the "contents" of any website communications, his wiretap claims fail.

### 4.      Plaintiff does not allege his communications were "intercepted" while "in transit."

Fourth, the Court should dismiss Plaintiff's wiretap claims because Plaintiff has not alleged that his purported communications were intercepted while in transit. Both the Federal Wiretap Act and CIPA make it unlawful to intentionally intercept, "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication" only "while the same is *in transit*." Cal. Penal Code § 631(a) (emphasis added); *see* 18 U.S.C. § 2511. For a communication "to be 'intercepted' . . . it must be acquired during transmission, not while it is in electronic storage," meaning the communication must be "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (quoting *Webster's Ninth New Collegiate Dictionary* 630 (1985)).

Plaintiff alleges just the opposite. He claims that after a user inputs information into the Express Scripts website, "Defendant then *stored the communications* and transmitted them in real time to Facebook for its business purposes." (Compl. ¶ 101 (emphasis added)).)[3] In other words, he alleges Express Scripts first *stored* Plaintiff's communications with Express Scripts and *then* transmitted them to Facebook. Indeed, Plaintiff does not allege that Express Scripts "intercepted" any communication between Plaintiff and Facebook at all, much less any "interception" while such a communication was "in transit." Because Plaintiff does not allege that Express Scripts improperly acquired during transmission any communication between Plaintiff and Facebook, the wiretap statutes do not apply and the claims should be dismissed. *See, e.g.*, *Martin*, 2023 WL 2717636, at *10 (dismissing wiretap claims associated with website enhancement technology for lack of factual allegations that transmissions intercepted while in transit); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *1–2 (N.D. Cal. Jan. 25, 2022) (dismissing CIPA claim where allegations showed plaintiffs' theory was "recording and then transmission,

---

[3] Plaintiff's barebones allegation that this occurs "in real time" does not change the analysis. *See, e.g.*, *Martin*, 2023 WL 2717636, at *10 (rejecting same argument based on equally cursory allegations and collecting cases).

not interception," noting that baldly "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit").

### 5.    Plaintiff's aiding and abetting theory fails.

Fifth, Plaintiff's CIPA claim independently fails because his own allegations defeat any aiding and abetting theory. Throughout the Complaint, as discussed *supra*, Plaintiff concedes that Express Scripts was a party to his communications and repeatedly alleges that Express Scripts was the party that intercepted his communications. (*See, e.g.*, Compl. ¶¶ 5, 8-9, 30-31.) Such allegations are inconsistent with Plaintiff's theory that Express Scripts "aided and abetted a third-party, Facebook" to intercept Plaintiff's communications.[4] (*Id.* ¶ 177.)

As is disclosed in the Privacy Policy and alleged in the Complaint, the Facebook Pixel is a third-party tool that Express Scripts used "to determine the usage frequency of various areas of the Site and identify areas of the Site for enhancement," as well as for marketing purposes. (Cheung Decl., Ex. A at 14.) Indeed, Plaintiff alleges the Facebook Pixel allows Express Scripts to collect certain website browsing and device information, including "customer interactions, actions, inputs, selection, mouse clicks, mouse hovers, mouse movements, and/or keyboard inputs instantly in the first milliseconds that a customer accesses the Defendant's website" (Compl. ¶ 61), and "IP addresses, page views, button clicks, and other microdata personally identifiable to the customer" (*id.* ¶ 63) for Express Scripts's later use and review. (*Id.* ¶ 173.) Thus, Plaintiff's allegations and Express Scripts's Privacy Policy make clear that the Facebook Pixel is "merely a tool that [Express Scripts] used to record its own communications with plaintiff." *Williams v. What If Holdings, LLC.*, No. C 22-03780 WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022).

When presented with nearly identical allegations, courts routinely dismiss CIPA claims involving similar website enhancement technology used as a tool by the website owner. *See, e.g.*, *Williams*, 2022 WL 17869275, at *3-4 ("[T]he fact that [the defendant] used software rather than

---

[4] Aiding and abetting is only asserted as a theory of recovery for Plaintiff's CIPA claim. (*See id.* ¶ 164.) It does not apply to the Federal Wiretap Act claim.

a physical recording device for the same function does not mean that it aided and abetted wiretapping."); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (concluding website owner could not be liable for aiding and abetting in case involving website enhancement technology because vendor "provides a tool . . . that allows [the defendant] to record and analyze its own data in aid of [its] business"); *see also Johnson v. Blue Nile, Inc.*, No. 20-cv-08183-LB, 2021 WL 1312771, at *1 (N.D. Cal. Apr. 8, 2021) (holding third-party vendor that used "session replay" software to record website activities of defendant's website visitors was an extension of the defendant, not a third-party eavesdropper under the CIPA); *Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400, at *1-3 (N.D. Cal. Apr. 15, 2021) (same, regarding "Event-Triggered Recorder" software). The same result is warranted here.

Further, under black letter law, an aiding and abetting theory is viable only if Facebook "violated Section 631(a) in some way." *Byars v. Hot Topic, Inc.*, No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994, at *9 (C.D. Cal. Feb. 14, 2023) (quoting *Williams*, 2022 WL 17869275, at *2). Plaintiff has not alleged that Facebook illegally "intercepted" his communications—nor could he, given his consent to the specific conduct at issue here under Express Scripts's Privacy Policy. (*See* Cheung Decl., Ex. A.) In addition, because Plaintiff alleges he is also a Facebook user (Compl. ¶ 25), he also must have consented to Facebook's privacy policies to maintain an active account. (*See* Cheung Decl., Exs. C (Meta Privacy Policy), D (Meta Terms of Service).)[5]

By agreeing to Facebook's terms, Plaintiff consented to the use of the Facebook Pixel and how it functions, including that Facebook collects and receives information from partners about user information and activities on and off Facebook's products and services. (*E.g.*, Cheung Decl., Ex. C at 6, 8, 15.) In other words, Plaintiff consented to Facebook collecting data about Plaintiff's browsing activities across different websites through cookies and tools like the Facebook Pixel, including information about websites he visits and content he interacts with. (*Id.*) Known as "off-Facebook activity," Facebook disclosed to Plaintiff that it tracks information obtained through browsing activities "to help personali[z]e and improve content and services, provide a safer

---

[5] "The Facebook company is now Meta" and Facebook thus updated its terms and policies "to reflect the new name on January 4, 2022." (Cheung Decl., Ex. D at 2.)

experience and to show you useful and relevant ads on and off Meta Products." (Cheung Decl., Ex. E at 13 (Meta's Cookies Policy).) Plaintiff thus consented to sharing his off-Facebook web activities, such as those captured on third-party websites, with Facebook.

Facebook's privacy policies also make clear that Plaintiff—like any other Facebook user—had the ability to opt out of such practices if he wished to do so. Facebook gives its account holders the ability to stop Facebook from tracking their off-Facebook activity. (*See* Cheung Decl., Exs. E, F (Facebook Help Center: How do I manage my future off-Facebook activity?), G (Facebook Help Center: Review your Off-Facebook activity).) As a Facebook user and Express Scripts customer, then, Plaintiff not only agreed to the use of pixel technology via his binding contract with Express Scripts, but also with Facebook. Plaintiff nowhere alleges that he disabled tracking of his off-Facebook activity. Plaintiff's aiding and abetting theory therefore fails and should be dismissed.

### 6. Plaintiff's CIPA claim also fails because Section 631 does not apply to extraterritorial conduct.

Sixth, Plaintiff's CIPA claim must also be dismissed because Plaintiff fails to allege any data was intercepted *in California*, as is required under California Penal Code Section 631. *Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) (dismissing plaintiff's Section 631 claim because plaintiff failed to allege that the data in question was intercepted in California). Plaintiff alleges he transmitted electronic communications to the Express Scripts's computer servers utilized to operate the website during his visits to the website. (Compl. ¶ 85.) However, he concedes that Express Scripts maintains its principal place of business in Missouri (*id.* ¶ 19). Because Plaintiff fails to allege that Express Scripts's challenged conduct occurred in California, Plaintiff's CIPA claim should be dismissed.

### E. Plaintiff's Claim Under Section 56.101 of the CMIA Should Be Dismissed.

Plaintiff fails to plausibly plead a CMIA Section 56.101 claim for two reasons. First, he does not allege that his substantive medical information was improperly released. Second, he does not allege that his substantive medical information, if any was provided to Express Scripts, was actually viewed by an unauthorized third party.

### 1.   Plaintiff fails to allege his medical information is at issue.

To state a claim under Section 56.101, a plaintiff must "plead[], and ultimately prov[e], that the confidential nature of the *plaintiff's medical information* was breached as a result of the health care provider's negligence." *Regents of Univ. of Calif. v. Super. Ct.*, 220 Cal. App. 4th 549, 570 (2013) (emphasis added) (dismissing Section 56.101 claim because she did not plausibly allege her medical information was viewed). Plaintiff has failed to do so here.

Not all patient-related information held by a health care provider is considered "medical information" under the statute. Rather, the CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, . . . mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i).[6] Put simply, the information must be "substantive" in nature to trigger the CMIA in the first instance. *See, e.g.*, *Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS-LL, 2021 WL 4865930, at *4 (S.D. Cal. Oct. 18, 2021) (holding that a single text referring to the plaintiff's diagnostic examination did not pertain to "treatment" and therefore was not "medical information" under the CMIA). As California courts have emphasized, "[i]t is clear from the plain meaning of the statute that medical information cannot mean just any patient-related information held by a health care provider, but must . . . include 'a *patient's medical history, mental or physical condition, or treatment*.'" *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 435-36 (2014) (emphasis added); *see also In re Blackbaud, Inc. Customer Data Breach Litig.*, No. 3:20-mn-02972-JMC, 2021 WL 3568394 (D.S.C. Aug. 12, 2021) ("[A] prohibited release by a health care provider must include more than individually identifiable information . . . to constitute 'medical information.'" (citation omitted)).

Here, Plaintiff fails to allege any medical information was released, let alone his "substantive" medical information. He does not make any factual allegations regarding his use of the Express Scripts website to input information about his medical history, treatment, or mental or physical condition. Indeed, the Complaint *never* alleges that the record information that was

---

[6] Plaintiff incorrectly cites 56.05(j) as defining "medical information," but that subsection concerns "mental health application information." *See* Cal. Civ. Code § 56.06(j).

purportedly transmitted about him revealed the details of when and where he received treatment, which doctors treated him, what type of treatment he received, and his medical history. To the extent Plaintiff asserts that any information entered to register via the portal is sufficient to trigger the CMIA, his argument is not supported by the law. (Compl. ¶¶ 115-36.) As California courts have long noted, "the definition of 'individually identifiable health information' under federal laws differs markedly from that in the CMIA." *Eisenhower*, 226 Cal. App. 4th at 436-37. "[T]he mere fact that a person may have been a patient at the hospital at some time is *not sufficient*" to allege medical information under the CMIA. *Id.* at 435-36 (emphasis added).

Plaintiff makes no allegations that his substantive medical information was (or could have been) improperly disclosed and does not even allege that he entered any information covered by the CMIA on the Express Scripts website. Plaintiff's CMIA fails for this reason alone and should be dismissed. *See, e.g.*, *In re Blackbaud*, 2021 WL 3568394, at *6-7 (dismissing CMIA claims of plaintiffs who failed to allege "information relating to their medical history, mental or physical condition or treatment was disclosed" (alterations and citation omitted)).

**2.    Plaintiff fails to allege his medical information was actually viewed by a third party.**

Plaintiff also fails to allege that his sensitive medical information was *actually viewed by* an unauthorized third party. The text of Section 56.101 makes clear that "*preserving the confidentiality* of the medical information, ***not necessarily preventing others from gaining possession*** of the paper-based or electronic information itself, is the focus of the legislation." *Sutter Health v. Super. Ct.*, 227 Cal. App. 4th 1546, 1556 (2014) (second emphasis added). Thus, under Section 56.101, there is no breach of confidentiality, and therefore no "negligent" "release" until an unauthorized person ***actually views*** the purported medical information. *Id*. at 1557; *see also Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 218 (2022) (holding breach of confidentiality under Section 56.101 requires a showing that an unauthorized party viewed the confidential information). Here, Plaintiff offers no more than a single allegation in passing that merely parrots the language of the CMIA: "Plaintiff's and the California Subclass's medical information was viewed by unauthorized third parties, namely, Facebook." (Compl. ¶ 190.) That

is not enough. Plaintiff does not—and cannot—allege substantive medical information was actually viewed.

There are simply *zero* allegations in the Complaint from which it could be inferred that substantive medical information was actually viewed. *Compare* Compl. ¶¶ 184-91 *with Doe v. Regents of Univ. of Cal.*, No. 23-cv-00598-WHO, 2023 WL 3316766, at *4 (N.D. Cal. May 8, 2023) (upholding CMIA claims in pixel case only because plaintiff made clear her allegations "that she entered medical information," that such information was disclosed, and that "after she entered her information into UCSF's patient portal, she began receiving advertisements on Facebook for high blood pressure medication as well as targeted email advertisements relating to the same"). To the contrary, Plaintiff here includes *no* factual allegations suggesting that Facebook actually viewed any of Plaintiff's substantive medical information (if any was provided by Plaintiff at all). Plaintiff's allegations are insufficient to state a CMIA claim.

### F.     The CCPA's Private Right of Action Does Not Apply.

Finally, Plaintiff's CCPA claim fails because the statute's private right of action simply does not apply to the facts alleged. The CCPA only provides a private right of action to a consumer whose personal information was "subject to an unauthorized access and exfiltration, theft, or disclosure *as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices*[.]" Cal. Civ. Code § 1798.150(a) (emphasis added).[7] Based on the plain language of the statute, courts have dismissed CCPA claims in other cases concerning website enhancement technology. *See, e.g.*, *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2, 2021) ("Civil Code § 1798.150 confers a private right of action for violations of section (a), which is related to *personal information security breaches*" and "Plaintiff conceded that this claim should be dismissed because there are no allegations of a security breach in this case." (emphasis added)).

Even if the CCPA could somehow apply to the facts at issue here, Plaintiff's barebones recital of the statute's elements are insufficient. To begin, the purported disclosure of information

---

[7] The statute expressly precludes a cause of action "based on violations of any other section" of the CCPA. *Id*. § 1798.150(c). It also prohibits a plaintiff from using the CCPA "to serve as the basis for a private right of action under any other law." *Id*.

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 3:23-CV-01170-AMO

21

must have been unauthorized. As discussed at length *supra*, Plaintiff consented to the use of pixel technology at issue here. That alone is cause to dismiss the CCPA claim. *See, e.g.*, *Gershfeld v. TeamViewer US, Inc.*, No. 21-55753, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023) (affirming dismissal of CCPA claim where plaintiff was on notice of conduct via the defendant's disclosures and "consented to the terms"). Further, Plaintiff does not offer any factual allegations from which it could be inferred that Express Scripts failed to employ reasonable security measures, a required element of a CCPA claim. *See, e.g.*, *In re Waste Mgmt. Data Breach Litig.*, No. 21cv6147 (DLC), 2022 WL 561734, at *6 (S.D.N.Y. Feb. 24, 2022) (holding plaintiff "fails to state a claim for violation of the CCPA, because it does not plausibly allege that [the defendant] breached its 'duty to implement and maintain reasonable security procedures and practices'" (quoting Cal. Civ. Code § 1798.150(a))); *Maag v. U.S. Bank, Nat'l Assoc.*, No. 21-cv-31-H-LL, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claim where "Plaintiff fails to allege any facts to support the notion that Defendant's security was deficient"). The claim thus fails on its face.

## V.    CONCLUSION

Plaintiff is attempting to bring a federal class action challenging conduct that was repeatedly disclosed to him and to which he repeatedly consented. Plaintiffs' federal and state statutory claims fail under the Plaintiff's own allegations, and these defects cannot be cured in an amended complaint. For the reasons discussed herein, the Complaint should be dismissed in its entirety without leave to amend.

Dated: June 9, 2023                                      MORRISON & FOERSTER LLP


By: */s/ Tiffany Cheung*
TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: 415.268.7000
Facsimile: 415.268.7522