TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
Morrison & Foerster LLP
425 Market Street,
San Francisco, California  94105
Telephone:     415.268.7000
Facsimile:     415.268.7522

WHITNEY R. O'BYRNE (CA SBN 325698)
WObyrne@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017
Telephone:     213.892.5200
Facsimile:     213.892.5454

ELISABETH HUTCHINSON (admitted *pro hac vice*)
EHutchinson@mofo.com
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, Colorado  80202
Telephone:     303.592.1500
Facsimile:     303.592.1510

Attorneys for Defendant
EXPRESS SCRIPTS HOLDING COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JONATHAN LYNCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY,<br><br>Defendant. | Case No. 3:23-cv-01170-AMO<br><br>**DEFENDANT EXPRESS SCRIPTS HOLDING COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          January 11, 2024<br>Time:          2:00pm<br>Courtroom:   10<br>Judge:         Hon. Araceli Martínez Olguín<br><br>Date Action Filed:  March 15, 2023<br>Trial Date:  N/A |

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-01170-AMO
sf-5606887

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 11, 2024, at 2:00 pm, or at a different time and date set by the Court, Defendant Express Scripts Holding Company, Inc. will and hereby does move the Court for an order dismissing Plaintiff's First Amended Complaint ("FAC" or "amended complaint") in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that:

(a) Plaintiff lacks standing; and

(b) the amended complaint fails to state a claim upon which relief may be granted.

This Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; the Request for Judicial Notice; the Declaration of Tiffany Cheung ("Cheung Decl."); the Declaration of Matthew Edwards ("Edwards Decl."); the pleadings, files, and records in this action; and such additional evidence and arguments as may be presented at the hearing of this Motion.

Dated: September 13, 2023                MORRISON & FOERSTER LLP


By: */s/ Tiffany Cheung*
Tiffany Cheung
Whitney R. O'Byrne
Elisabeth A. Hutchinson

*Attorneys for Defendant*
EXPRESS SCRIPTS HOLDING
COMPANY

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................. 3

     A.   By Agreeing to Express Scripts's Privacy Policy, Plaintiff Consented to the Use of Pixel Technology on the Express Scripts Website. ....................................... 3

     B.   Plaintiff's Allegations Concern the Use of Pixel Technology. ................... 5

III. LEGAL STANDARD .......................................................................................... 5

IV.  LEGAL ARGUMENT ........................................................................................ 6

     A.   Procedural Violations are Insufficient to Confer Article III Standing. .......... 6

     B.   Plaintiff's Claims Fail Because He Consented to the Use of Pixel Technology by Agreeing to Express Scripts's Privacy Policy. ......................................... 8

     C.   Plaintiff's Wiretap Claims Fail on Multiple Other Grounds. ..................... 10

          1.   Plaintiff's wiretap claims are time-barred. ...................................... 10

          2.   The party-exception rule demands dismissal of Plaintiff's wiretap claims premised on any purported interception by *Express Scripts*. ....... 12

          3.   No "contents" of communications were disclosed within the meaning of ECPA or CIPA. ........................................................................ 13

          4.   Any communications at issue are not alleged to have been intercepted while "in transit" under federal or California law. ........................... 15

     D.   Plaintiff's CIPA claim independently fails. ............................................. 16

          1.   Plaintiff's CIPA claim is impermissibly vague given the conflicting factual allegations. ........................................................................... 17

          2.   Plaintiff's aiding and abetting theory fails. ..................................... 18

          3.   Plaintiff's CIPA claim also fails because section 631 does not apply to extraterritorial conduct. ............................................................... 19

     E.   Plaintiff's Claim Under Section 56.101 of the CMIA Should Be Dismissed. ............. 20

          1.   Plaintiff fails to allege his medical information is at issue. ............... 20

          2.   Plaintiff fails to allege his medical information was *actually viewed* by a third party. .......................................................................................... 22

     F.   The CCPA's Private Right of Action Does Not Apply ............................. 23

V.   CONCLUSION .................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 6, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................ 6

*In re Blackbaud, Inc. Customer Data Breach Litig.*,
No. 3:20-mn-02972-JMC, 2021 WL 3568394 (D.S.C. Aug. 12, 2021) ........................... 21, 22

*Brackett v. Am. Airlines Grp. Inc.*,
No. 21-cv-02681-HSG, 2022 WL 282529 (N.D. Cal. Jan. 31, 2022) .................................... 19

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .............................................................................. 13, 14

*Bunnell v. Motion Picture Ass'n of Am.*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................................................. 15

*Byars v. Hot Topic, Inc.*,
No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ................... 18

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ............................... 7

*Carrese v. Yes Online Inc.*,
No. CV 16-05301 SJO, 2016 WL 6069198 (N.D. Cal. Oct. 13, 2016) .................................. 20

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ............................................................................................... 10

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ................................................................................................. 5

*Cody v. Boscov's, Inc.*,
No. 8:22-cv-014340-SSS-KKx, 2023 WL 2338302 (C.D. Cal. Mar. 2, 2023) ...................... 12

*Cousin v. Sharp Healthcare*,
No. 22-cv-2040-MMA (DDL), 2023 WL 4484441 (S.D. Cal. July 12, 2023) ....... 8, 14, 15, 23

*Cousineau v. Microsoft Corp.*,
992 F. Supp. 2d 1116 (W.D. Wash. 2012) ............................................................................. 14

*Doe v. Regents of Univ. of Cal.*,
No. 23-cv-00598-WHO, 2023 WL 3316766 (N.D. Cal. May 8, 2023) .................................. 22

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ......................... 6

*Eisenhower Med. Ctr. v. Super. Ct.*,
226 Cal. App. 4th 430 (2014) .............................................................................................. 21

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)...................................................................................... 2, 12, 13

*Fodor v. AOL Time Warner, Inc.*,
217 F. App'x 622 (9th Cir. 2007) ......................................................................................... 11

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ......................................................................................................... 11

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .................................................................................... 9

*Gershfeld v. TeamViewer US, Inc.*,
No. 21-55753, 2023 WL 334015 (9th Cir. Jan. 20, 2023) ................................................. 8, 24

*In re Glumetza Antitrust Litig.*,
611 F. Supp. 3d 848 (N.D. Cal. 2020) ................................................................................. 11

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ...................................................................... 13, 14, 16

*Hammerling v. Google LLC*,
No. 21-cv-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ................................ 20

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012).............................................................................................. 11

*Javier v. Assurance IQ, LLC (Javier I)*,
No. 4:20-CV-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021).................................. 9

*Javier v. Assurance IQ, LLC (Javier II)*,
No. 20-CV-02860-CRB, 2023 WL 114225 (N.D. Cal. Jan. 5, 2023).................................... 11

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012)............................................................................................ 18

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)................................................................................................ 6

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)................................................................................................ 15

*Kurowski v. Rush Sys. for Health*,
No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ................................................ 13

*Licea v. Old Navy, LLC*,
No. 5:22-cv-01413-SSS-SPx, 2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) ........................ 12

*Lil' Man In the Boat, Inc. v. City & Cnty. of S.F.*,
No. C17-CV-00904-JST, 2018 WL 4207260 (N.D. Cal. Sept. 4, 2018) ............................... 24

*Lindsay-Stern v. Garamszegi*,
No. SACV-1401970-CJC(DFMx), 2016 WL 11745948 (C.D. Cal. Oct. 13, 2016) ........................................................................................................................... 16

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................................................... 5, 6

*Lukovsky v. City & Cnty. of S.F.*,
535 F.3d 1044 (9th Cir. 2008) ........................................................................................ 10

*Maag v. U.S. Bank, Nat'l Assoc.*,
No. 21-cv-31-H-LL, 2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) ........................................ 25

*Martin v. Sephora USA, Inc.*,
No. 1:22-CV-01355-JLT-SAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023),
*report and recommendation adopted* No. 1:22-CV-01355-JLT-SAB, 2023 WL
3061957 (E.D. Cal. Apr. 24, 2023) ...................................................................... 12, 16, 18

*Massie v. General Motors, LLC*,
No. 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) ..................................................... 7

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)............................................................................. 17

*McCoy v. Alphabet, Inc.*,
No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021)..................................... 24

*In re MCG Health Data Sec. Issue Litig.*,
No. 2:22-CV-849-RSM-DWC, 2023 WL 3057428 (W.D. Wash. Mar. 27,
2023), *report and recommendation adopted,* No. 2:22-CV-849-RSM-DWC,
2023 WL 4131746 (W.D. Wash. June 22, 2023)................................................................. 24

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996)........................................................................................... 17

*Montalti v. Catanzariti*,
191 Cal. App. 3d 96 (1987)............................................................................................. 10

*Moretti v. Hertz Corp.*,
No. C 13-02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014)..................................... 9

*Mullinix v. US Fertility, LLC*,
No. SACV21-00409-CJC, 2021 WL 4935975 (C.D. Cal. Apr. 21, 2021) ........................... 24

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ......................................................................................... 9

*Pena v. GameStop, Inc.*,
   No. 22-CV-1635 JLS (MDD), 2023 WL 3170047 (S.D. Cal. Apr. 27, 2023)...................... 12

*Razuki v. Caliber Home Loans, Inc.*,
   No. 17cv1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ........................ 25

*Red v. Gen Mills, Inc.*,
   No.2:15-CV-02232-ODW(JPR), 2015 WL 9484398 (C.D. Cal. Dec. 29, 2015) .................... 8

*Regents of Univ. of Calif. v. Super. Ct.*,
   220 Cal. App. 4th 549 (2013) ......................................................................................... 20

*Rodriguez v. Google LLC*,
   No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)........................................ 16

*Silver v. Stripe Inc.*,
   No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021).............................. 8

*Smith v. Facebook, Inc.*,
   262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ....................... 21

*Smith v. Facebook, Inc.*,
   745 F. App'x 8 (9th Cir. 2018) ......................................................................................... 9

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) ................................................................................................... 19

*Sutter Health v. Super. Ct.*,
   227 Cal. App. 4th 1546 (2014) ....................................................................................... 22

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007)............................................................................................. 11

*In re Toys R Us, Inc. Priv. Litig.*,
   No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)........................................... 18

*TransUnion LLC v. Ramirez*,
   141 S.Ct. 2190 (2021) ....................................................................................................... 6

*Valenzuela v. Keurig Green Mountain, Inc.*,
   No. 22-cv-09042-JSC, 2023 WL 3707181 (N.D. Cal. May 24, 2023) .................................. 17

*Vigil v. Muir Med. Grp. IPA, Inc.*,
   84 Cal. App. 5th 197 (2022) ........................................................................................... 22

*In re Vizio, Inc. Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................................................... 16

*In re Waste Mgmt. Data Breach Litig.*,
  No. 21cv6147 (DLC), 2022 WL 561734 (S.D.N.Y. Feb. 24, 2022)........................................24

*Wilson v. Rater8, LLC*,
  No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021).............................21

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..............................................................................7, 10

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ...............................................................................14

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014)....................................................................................... 13, 14

**Statutes**

Cal. Civ. Code § 312 ......................................................................................................... 10

Cal. Civ. Code § 340(a) ..................................................................................................... 10

Cal. Civ. Code § 1798.81.5(d)(1)....................................................................................... 25

California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100-1798.199.100 ................... *passim*

California Invasion of Privacy Act, Cal. Penal Code §§ 630-638.55 ................................... *passim*

Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56-56.37 ........................... *passim*

Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523........................ *passim*

Fed. R. Civ. P. 8 ................................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(1)..................................................................................................... 5, 6

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 6, 17

**STATEMENT OF ISSUES TO BE DECIDED**

1.    **Standing.** Whether Plaintiff's claims should be dismissed for lack of standing under Rule 12(b)(1) because he has failed to allege sufficient injury-in-fact.

2.    **Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510-2523 (Claim 1).** Whether Plaintiff's ECPA claim should be dismissed because (i) both parties consented to the purported interception and disclosure; (ii) it is time-barred; (iii) Plaintiff concedes that Express Scripts was the intended recipient of his communications; (iv) Plaintiff does not allege that Express Scripts disclosed any "contents" of communications within the meaning of ECPA; and (v) Plaintiff has not alleged that his purported communications were intercepted while "in transit."

3.    **California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 (Claim 2).** Whether Plaintiff's CIPA claim should be dismissed because (i) both parties consented to the purported interception and disclosure; (ii) it is time-barred; (iii) Plaintiff concedes that Express Scripts was the intended recipient of his communications; (iv) Plaintiff does not allege that Express Scripts disclosed any "contents" of communications within the meaning of CIPA; (v) Plaintiff has not alleged that his purported communications were intercepted while "in transit"; (vi) Plaintiff has failed to plead his CIPA claim with sufficient detail under Federal Rule of Civil Procedure 8; (vii) Plaintiff's aiding and abetting theory fails; and (viii) Section 631 does not apply extraterritorially to alleged conduct that occurs outside California.

4.    **Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.101 (Claim 3).** Whether Plaintiff's CMIA claim should be dismissed because (i) he consented to the alleged conduct, and he does not plausibly allege that (ii) his confidential medical information was released or (iii) any third parties actually viewed such information.

5.    **California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150 (Claim 4).** Whether Plaintiff's CCPA should be dismissed because (i) Plaintiff failed to provide written notice of the CCPA claim prior to filing this action; (ii) the CCPA exempts covered entities like Express Scripts; (iii) the CCPA's private right of action applies only in the context of a security breach, which has not been alleged; (iv) Plaintiff consented to the use of pixel

technology; (v) Plaintiff does not factually allege Express Scripts failed to implement or maintain reasonable security measures; and (vi) the CCPA's private right of action does not apply to the information at issue in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This case involves the use of ubiquitous website enhancement technology that was disclosed to Plaintiff and to which he consented.  Even after an opportunity to amend his complaint, Plaintiff still fails to state any claim.  In the First Amended Complaint, Plaintiff alleges that he "used the Express Scripts platform on multiple occasions between April 2022 and December 2022 to obtain prescriptions to treat low insulin and testosterone levels," specifically accessing the platform "through the website on his computer."  (ECF No. 31 ("FAC") ¶ 25.)  To be able to obtain any prescriptions on the Express Scripts website during the period he identifies, Plaintiff was required to agree to Express Scripts's Privacy Policy disclosing the exact conduct at issue in this litigation—the use of pixel technology on the Express Scripts website.  Nevertheless, Plaintiff contends the use of the Facebook pixel on the Express Scripts website constitutes illegal wiretapping under the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510-2523, and California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, as well as a violation of California's Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.101, and the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150.  Plaintiff's consent defeats each of his claims.

The amended complaint fails to cure other fundamental deficiencies of Plaintiff's initial complaint.  To begin, Plaintiff still lacks Article III standing.  The amended complaint now alleges Plaintiff input—on an unidentified page of the Express Scripts website—certain medical information to obtain his prescriptions.  But fatal to any allegation of injury-in-fact (and the merits of his claims), Plaintiff does not allege that the pixel at issue was embedded on the pages that this information was allegedly entered.  That Plaintiff alleges he input certain information onto some unidentified pages on the Express Scripts "platform" is not the same as alleging the Facebook pixel was embedded on such pages and that such information was shared with Facebook.  And Plaintiff does not make any *factual* allegations that his specific medical information was otherwise somehow improperly disclosed to Facebook or another third party.  Nor does Plaintiff address how he could have been injured when he consented to the use of the

technology at issue.  Plaintiff has not suffered any injury-in-fact.

Beyond consent and standing issues, either of which is sufficient to dismiss the amended complaint in full, Plaintiff's allegations fail for several additional reasons set forth in detail below.  For instance, Plaintiff now alleges dates of use in 2022, but he also alleges that he used the website "[o]ver the last few years."  (FAC ¶¶ 25, 80, 90.)  On the face of the amended complaint, then, Plaintiff's wiretap claims are time-barred under the one and two-year statute of limitations periods.  Similarly fatal to his wiretap claims, nothing in the amended complaint *factually* alleges that the "contents" of any communications with Express Scripts were disclosed because, again, he does not allege that the pixel was embedded on the pages in which he purportedly entered "contents" and that such "contents" were shared via the Facebook pixel.

In addition, the amended complaint is riddled with internal inconsistencies about *who* is actually doing the alleged "wiretapping."  Throughout the amended complaint, Plaintiff alleges *Express Scripts* is purportedly intercepting communications with its own website—which would demand dismissal of any wiretap claim under the party-exception rule.  Then in pleading a CIPA claim under an aiding and abetting theory, Plaintiff shifts gears to suggest that *Facebook* is intercepting Plaintiff's website interactions and alleged communications.  But even in the section addressing his CIPA claim, Plaintiff alleges it is *Express Scripts* intercepting the communications, demanding dismissal of any purported theory that Express Scripts "aided and abetted" a third party's "interception."  Plaintiff has failed to put the Court or Express Scripts on notice of his theory of liability under CIPA and has not pled his CIPA claim with the particularity required by Rule 8.  Whatever Plaintiff's theory may be, his wiretap claims fail for a multitude of reasons that cannot be cured by further amendment.

Plaintiff's remaining statutory claims under the CMIA and CCPA are equally deficient.  Plaintiff fails to allege that *substantive* medical information was either disclosed or actually viewed.  Plaintiff's omission of these core requirements demands dismissal of his CMIA claim.  So too must the CCPA claim be dismissed because the statute's private right of action does not apply to Express Scripts as a covered entity or the allegations at issue in this case.

For the reasons discussed herein, Plaintiff's First Amended Complaint should be

dismissed without further leave to amend.

## II.    FACTUAL BACKGROUND

### A.    By Agreeing to Express Scripts's Privacy Policy, Plaintiff Consented to the Use of Pixel Technology on the Express Scripts Website.

Express Scripts is an online pharmacy and pharmacy benefits manager that serves over 100 million Americans.  (FAC ¶ 38.)  Plaintiff alleges he is a Facebook user and California resident who visited the Express Scripts website "between April 2022 and December 2022" to obtain prescriptions for low insulin and testosterone levels.  (*Id.* ¶ 25.)  Plaintiff claims that on at least one of these visits, Express Scripts had embedded on the public-facing pages of the Express Scripts website a website enhancement tool called the Facebook pixel.  (*Id.* ¶ 95.)  Because Plaintiff alleges he placed prescriptions with Express Scripts via the company's "website on his computer," (FAC ¶¶ 25, 79-80), Plaintiff necessarily registered for an account with Express Scripts.  When creating his account, he consented to Express Scripts's Terms of Use and Privacy Policy—policies that explicitly disclosed the conduct at issue in this litigation.

Although Plaintiff's amended complaint omits any details regarding the precise date of his registration, he alleges he placed prescription orders between April 2022 and December 2022. (FAC ¶ 25.)  During this time, as shown in the following screen, all users creating accounts on the Express Scripts website agreed to Express Scripts's Terms of Use and Privacy Policy:



(Declaration of Matt Edwards ("Edwards Decl."), Ex. A.)[1]

The Privacy Policy that Plaintiff agreed to expressly notified users they "are deemed to have assented to the terms and conditions contained in this Privacy Policy when you use the Site and/or when you have indicated in your online registration that you accept the Terms of Use into which this Privacy Policy is incorporated." (*Id.*, Ex. B at 14.)  Similarly, the website's Terms of Use in effect at the time of Plaintiff's alleged use (which are still in effect today) also highlight "**PRIVACY POLICY**" in bold, capitalized letters and provide, "You agree to the Internet privacy policy ('Privacy Policy'), which is incorporated by reference in these Terms of Use." (*Id.*, Ex. C at 7.)  By agreeing to the Privacy Policy, Plaintiff was notified of and consented to the following key provisions:

- Express Scripts "may use certain in-house or third-party functionality to log and analyze your communications with us and interactions with the Site," (*id.*, Ex. B at 7);

- Express Scripts "may embed *tracking pixels* or tags within various pages of the Site to enable use of site analytics and enhance Site functionality," (*id.* at 11 (emphasis added));

- Express Scripts "*may use third parties to . . . provide Tracking Mechanism(s) that [Express Scripts] embed[s] in or use[s] with the Site, . . . provide advertisements and other information to you about the Site, products, and services through a third-party site based on a prior visit to the Site, . . . analyze communication with us and interactions with the Site*, . . . [and] collect Non-Personal Information from you (e.g., on your interactions and/or experience with the Site and/or [Express Scripts])," (*id.* at 13 (emphasis added) (under heading, "**THIRD-PARTY USAGE**," in bold, capitalized letters)); and

- Express Scripts "may also promote content of interest to you through social media," and a user "may opt out or configure [their] social media account settings to limit promotion of such content," (*id.* at 7).

---

[1] Plaintiff alleges access to the Express Scripts website through his computer.  (FAC ¶ 25.)  But if Plaintiff registered via the Express Scripts application during the same period, he still consented to the same Terms and Privacy Policy via a substantially identical registration page used for Express Scripts's applications.  (Edwards Decl., Exs. D-E.)

In addition to these unambiguous disclosures, the Privacy Policy also provides clear instructions on actions users can take to control the information collected. (*Id.* at 12.) Plaintiff never alleges he took any of the identified actions on his social media accounts, including Facebook, to manage his information.

### B. Plaintiff's Allegations Concern the Use of Pixel Technology.

Despite agreeing to its use, Plaintiff now brings a putative class action under the flawed theory that the use of the Facebook pixel on the Express Scripts website constitutes illegal wiretapping. Plaintiff's allegations are wholly unclear as to *who* is actually doing the purported wiretapping under his theory of the case. Plaintiff is also unclear on what specific data was allegedly intercepted by *any party* that could possibly support his claims. Plaintiff factually alleges only basic record information about his interactions with the Express Scripts website were tracked by the Facebook pixel, including mouse clicks, mouse hovers, mouse movements, keyboard inputs, IP address, page views, button clicks, and other similar data. (*E.g.*, FAC ¶¶ 61, 63, 85, 95, 98.) Although Plaintiff generally alleges that he entered medical information on unidentified pages of the Express Scripts website to place prescription orders, (*id.* ¶ 25), he does *not* allege that the Facebook pixel was embedded on whatever those webpages might have been and that such "medical information" was disclosed to Facebook. Nor does Plaintiff factually allege that any unauthorized party at Facebook or otherwise *actually viewed his data*. Nevertheless, Plaintiff asserts four statutory claims against Express Scripts and seeks to bring these claims on behalf of a proposed nationwide class and California subclass. (*Id.* ¶ 139.)

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction if the plaintiff does not satisfy Article III standing requirements. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Plaintiff, as the party seeking to invoke the Court's subject matter jurisdiction, has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Federal Rule of Civil Procedure 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) where, as here, the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts establishing a claim is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[L]abels and conclusions" or "a formulaic recitation of the elements" do not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555).

The Court should not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations; nor should it accept as true allegations contradicted by judicially noticeable facts. *Id.* at 677-79; *Twombly*, 550 U.S. at 555; *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (discussing incorporation-by-reference doctrine). Factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If alleged facts are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and ***plausibility*** of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (emphasis added).

## IV.   LEGAL ARGUMENT

### A.   Procedural Violations are Insufficient to Confer Article III Standing.

The Court should dismiss Plaintiff's amended complaint in its entirety under Rule 12(b)(1), because the amended allegations still do not meet the demands of Article III. To satisfy the "irreducible constitutional minimum of standing," Plaintiff must establish an injury that is "concrete and particularized, and actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560-61 (citations omitted). In the context of statutory claims, there is no Article III standing absent "plaintiff's suffering of concrete harm" as a result of "defendant's violation of" the statute. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2205 (2021). "[U]nder Article III, an injury in law is not an injury in fact." *Id.* Rather, a concrete injury is one that "must actually exist." *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428, at *2-3 (S.D. Cal. Nov. 3, 2016).

No such concrete injury exists here. Plaintiff fails to allege *any* harm—physical,

economic, or otherwise—resulting from his use of the Express Scripts website. Instead, Plaintiff offers only the conclusory allegation that "[Express Scripts's] conduct constituted invasions of privacy because it disregarded Plaintiff's statutorily protected rights to privacy, in violation of [ECPA] and CIPA." (FAC ¶ 114.) Such bald allegations of statutory violations are insufficient to confer standing. *See, e.g.*, *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (granting motion to dismiss for lack of standing because "the position that any violation of CIPA necessarily constitutes an injury in fact without the need for an additional showing of harm" is "at odds with" *TransUnion*).

Plaintiff's factual allegations simply do not bear a "close relationship" to traditional privacy harms at common law. Plaintiff alleges Express Scripts intercepted and recorded his mouse clicks and movements, keystrokes, search terms, information inputted, scroll movements, copy and paste actions, button clicks, microdata, and other observable website interactions. (FAC ¶¶ 85-86, 95.) Plaintiff fails to factually allege that Express Scripts shared any sensitive information via the Facebook pixel because Plaintiff does not allege that pixel was embedded on any of the webpages where Plaintiff allegedly entered sensitive information. (*Id.* ¶ 25.)

That Plaintiff alleges he entered medical information on some identified page or pages of the Express Scripts website to place prescriptions is *not* equivalent to factually alleging that the information was "intercepted" by the Facebook pixel. (*Id.* ¶¶ 58, 60.) And it is well established that record information does ***not*** constitute sensitive or confidential information. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (explaining that, in the context of information privacy, only the "dissemination or misuse of sensitive and confidential information" is protected). Accordingly, Plaintiff fails to "identify any specific personal information" that could possibly "implicate[] . . . any harm to [plaintiff's] privacy" by the alleged conduct. *Sterling Jewelers*, 2023 WL 2996686, at *3. For that reason alone, the amended complaint should be dismissed. *See Massie v. General Motors, LLC*, No. 21-787-RGA, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (granting motion to dismiss for lack of standing where plaintiffs failed to explain how defendant's possession of anonymized, non-personal data regarding plaintiffs' browsing activities harmed privacy interests).

In addition, Plaintiff cannot satisfy Article III's injury-in-fact requirement because Plaintiff consented to the alleged conduct. To obtain a prescription from the Express Scripts website, (FAC ¶ 25), Plaintiff consented to Express Scripts's Privacy Policy, including the use of pixel technology. (Edwards Decl., Exs. A-C.) Regardless of whether Plaintiff actually read the disclosures, he suffered no injury under the statute or Article III, when he consented to the challenged conduct by agreeing to the Terms and Privacy Policy. *Cf. Red v. Gen Mills, Inc.*, No.2:15-CV-02232-ODW(JPR), 2015 WL 9484398, at *5 (C.D. Cal. Dec. 29, 2015) (holding plaintiff's "self-inflicted injury . . . does not confer standing" when alleged harm stemmed from food ingredient she knew to be unhealthy, because she "knew that she could (or should be able to) look at the ingredients" label and it was not "unreasonable to expect her to read the label before purchasing the food"). Plaintiff has not established Article III standing, and the amended complaint should be dismissed accordingly.

### B. Plaintiff's Claims Fail Because He Consented to the Use of Pixel Technology by Agreeing to Express Scripts's Privacy Policy.

The exact conduct of which Plaintiff complains was explicitly disclosed to him in Express Scripts's Privacy Policy, which he agreed to when registering for an Express Scripts account. (Edwards Decl., Exs. A-C.) His consent defeats all of his claims. *See, e.g.*, 18 U.S.C. § 2511(d) (ECPA imposes no liability if either party consents); Cal. Penal Code § 631(a) (CIPA does not impose liability if both parties consent); Cal. Civ. Code § 56.10(a) (CMIA limits liability to unauthorized disclosures); Cal. Civ. Code § 1798.150 (CCPA does the same).[2] The question of consent thus boils down to whether Plaintiff was put on notice of the alleged conduct. That answer is yes. Indeed, courts within this district "consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims" at the motion to dismiss stage. *Silver v. Stripe Inc.*, No.

---

[2] *See also Gershfeld v. TeamViewer US, Inc.*, No. 21-55753, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023) (affirming dismissal of CCPA claim where plaintiff was on notice of conduct via the defendant's disclosures and "consented to the terms"); *Cousin v. Sharp Healthcare*, No. 22-cv-2040-MMA (DDL), 2023 WL 4484441, at *8 (S.D. Cal. July 12, 2023) (CMIA Section 56.101 concerns disclosure of information in an "*unauthorized* manner" (citing *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 923 (S.D. Cal. 2020)) (emphasis added)).

4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (collecting cases).[3]

Plaintiff's consent to the Privacy Policy during his registration on the Express Scripts website constitutes a binding contract between Express Scripts and Plaintiff wherein Plaintiff agreed to the use of website enhancement technology, including pixels.  A contract entered on the internet is enforceable if it puts a website user on actual or inquiry notice of the site's terms. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).  It is enough that "a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink"; if that exists, the plaintiff has agreed to "[a] binding contract." *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) (cleaned up); *Javier v. Assurance IQ, LLC* (*Javier I*), No. 4:20-CV-02860-JSW, 2021 WL 940319, at *3-4 (N.D. Cal. Mar. 9, 2021) (dismissing CIPA claims based on similar clickwrap agreement, "which courts routinely uphold as valid").

The express disclosures throughout the Privacy Policy are more than adequate to put a reasonable person viewing those disclosures on notice that Express Scripts uses website enhancement technology, including pixels; that the record data collected from this technology may be shared with third parties; and that the technology is used to promote site functionality and for marketing.  This demands dismissal of Plaintiff's claims.  *See, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (dismissing wiretap claims associated with website enhancement technology where "[a] reasonable person viewing those disclosures would understand that Facebook maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes"); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (taking judicial notice of "documents proffered by Defendants establish[ing] that in order to sign up for and use [the application], a user must agree to the [terms] and Privacy Policy" and dismissing wiretap claims despite plaintiff's conclusory allegation of lack of consent).  Even if Plaintiff did not consent, which he plainly did, his ECPA

---

[3] Plaintiff's threadbare allegation of lack of consent (FAC ¶ 25) is not entitled to any weight, particularly given Plaintiff's consent to the Terms of Use and Privacy Policy to create an account during the time period allegedly at issue. *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

claim must still be dismissed because ECPA is a one-party consent statute and Express Scripts allegedly embedding the Facebook pixel on its own website constitutes its consent. *See* 18 U.S.C. § 2511(d); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1026 ("[T]he consent of one party is a complete defense to a[n ECPA] claim.").

### C.      Plaintiff's Wiretap Claims Fail on Multiple Other Grounds.

Plaintiff's ECPA and CIPA wiretap claims also fail on several additional, independent grounds: (1) the claims are untimely, (2) Express Scripts was a party to the alleged communications, (3) no "contents" of communications were allegedly intercepted, and (4) no "interception" while "in transit" has been alleged.

### 1.      Plaintiff's wiretap claims are time-barred.

CIPA section 631 imposes a one-year limitations period, which runs from when the plaintiff discovers or should have known of the defendant's alleged unlawful acts. Cal. Civ. Code §§ 312, 340(a); *Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 97-98, 98 n.1 (1987). Similarly, a complaint alleging ECPA violations must be filed within two years after the date upon which the plaintiff had a reasonable opportunity to discover the violation. 18 U.S.C. § 2520(e). Plaintiff identifies using the Express Scripts platform between April and December 2022 (FAC ¶ 25), but he also alleges that he visited the Express Scripts website and that the same pixel technology has been embedded on the public-facing pages of the site "[o]ver the last few years." (FAC ¶¶ 80, 90.) On the face of the amended complaint, Plaintiff's claims are time-barred. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011).

Tacitly conceding that his wiretap claims are untimely, Plaintiff suggests that Express Scripts is equitably estopped from relying on the applicable statutes of limitations. (FAC ¶¶ 152-56.) Plaintiff's boilerplate assertions as to equitable estoppel and the "delayed discovery" rule do not overcome the applicable limitations periods because Plaintiff has failed to plead *facts* to support these exceptions.

To establish that equitable estoppel applies, "the plaintiff must point to some fraudulent concealment, some active conduct by the defendant '*above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Lukovsky v. City*

*& Cnty. of S.F.*, 535 F.3d 1044, 1051-52 (9th Cir. 2008). Fraudulent concealment must be pled with particularity under Rule 9(b), which demands specific factual allegations concerning "the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). Plaintiff must have alleged that (1) he was affirmatively misled by Express Scripts, (2) he did not have "actual or constructive knowledge of the facts giving rise to" his claim, and (3) he exercised due diligence in attempting to discovery the facts. *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). He fails on all elements. Plaintiff's conclusory allegations fall far short of the heightened pleading standard, particularly where Plaintiff was on notice of and agreed to the challenged practices. (Edwards Decl., Exs. A-C.); *see In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848, 862 (N.D. Cal. 2020) (Conclusory statements are not enough—fraudulent concealment must be pled "with particularity." (citation omitted)).

Similarly, for the delayed discovery rule to apply, Plaintiff must have factually alleged both "(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *see Fodor v. AOL Time Warner, Inc.*, 217 F. App'x 622, 623 (9th Cir. 2007) (plaintiff could not rely on the delayed discovery rule to save a time-barred wiretap claim, because plaintiff did "not explain why he could not have discovered this alleged wrongdoing earlier"). Plaintiff has pled neither. Nor could he. Plaintiff cannot credibly claim he was unable to know about Express Scripts's use of pixel technology when the Privacy Policy linked to every page of the Express Scripts website and to which Plaintiff agreed put Plaintiff on notice of the challenged conduct. (Edwards Decl., Ex. B; FAC ¶¶ 80-90, 95.) The wiretap claims are thus untimely and should be dismissed. *See, e.g.*, *Javier v. Assurance IQ, LLC* (*Javier II*), No. 20-CV-02860-CRB, 2023 WL 114225, at *7-8 (N.D. Cal. Jan. 5, 2023) (rejecting plaintiff's argument that "he did not know that [third-party's] spyware was installed on the website" as the privacy policy put plaintiff "on inquiry notice of a possible third party who would have been another 'potential cause of his injury,'" and dismissing CIPA claim as time-barred (alterations omitted)).

**2.      The party-exception rule demands dismissal of Plaintiff's wiretap claims premised on any purported interception by *Express Scripts*.**

Both ECPA and CIPA contain an "exemption from liability for a person who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). The party-exception rule thus precludes liability under a wiretapping theory premised on *Express Scripts* as the entity allegedly intercepting the communications at issue. For this reason, federal courts routinely dismiss wiretap claims under the party-exception rule when faced with substantially similar allegations concerning website operators' use of various forms of website enhancement technology provided by third parties. *See, e.g.*, *Licea v. Old Navy, LLC*, No. 5:22-cv-01413-SSS-SPx, 2023 WL 3012527, at *3 (C.D. Cal. Apr. 19, 2023) (dismissing wiretap claim against website operator under party exception); *Martin v. Sephora USA, Inc.*, No. 1:22-CV-01355-JLT-SAB, 2023 WL 2717636, at *7 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted* No. 1:22-CV-01355-JLT-SAB, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (same); *Cody v. Boscov's, Inc.*, No. 8:22-cv-014340-SSS-KKx, 2023 WL 2338302, at *2 (C.D. Cal. Mar. 2, 2023) (same).[4] Plaintiff's allegations make clear the party-exception applies, and Plaintiff's wiretap claims should be dismissed.

Here, Plaintiff concedes that *Express Scripts* was the intended recipient of any information allegedly input by Plaintiff onto the Express Scripts website. (*E.g.*, FAC ¶ 84 (describing Plaintiff's website activity as "communications between Plaintiff and Defendant").) And Plaintiff repeatedly argues that *Express Scripts* "intercepted" the alleged communications using the Facebook pixel, not a third party. (*Id.* ¶¶ 88-89, 93-96, 98-101.) Plaintiff's allegations that *Express Scripts* recorded its own communications with Plaintiff are barred by the party-exception rule, requiring dismissal of Plaintiff's wiretap claims. *See, e.g.*, *Pena v. GameStop, Inc.*, No. 22-CV-1635 JLS (MDD), 2023 WL 3170047, at *3 (S.D. Cal. Apr. 27, 2023) (granting defendant's

---

[4] As discussed below, Plaintiff's theory of liability under CIPA is muddled and fails to satisfy Rule 8. Plaintiff purports to limit his section 631 claim to aiding and abetting, a theory of liability that does not exist under ECPA. But he simultaneously alleges throughout the amended complaint, and even within his CIPA allegations, that it is *Express Scripts* that is the party purportedly intercepting the communications. To the extent Plaintiff alleges Express Scripts violated CIPA under any theory other than aiding and abetting, the party exemption applies and defeats any such claim.

motion to dismiss plaintiff's ECPA and CIPA claims because defendant was the known and intended recipient of the communications sent by plaintiff to defendant's website "such that each statute's 'party exception' bars [d]efendant's liability"); *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 2349606, at *4 (N.D. Ill. Mar. 3, 2023) (dismissing ECPA claim based on use of Facebook pixel by healthcare provider because provider "was the intended recipient of the allegedly intercepted communication," and provider was "therefore a party to those communications and [could not] be liable under [ECPA] for its alleged interception of them, if such an interception even occurred").

Plaintiff's attempt to skirt this obvious shortcoming of his allegations with citation to and reliance on *In re Facebook, Inc. Internet Tracking Litigation* is unavailing. The plaintiffs in that case alleged the defendant—there, **Facebook**—used plug-ins to track users' browsing histories when they visited third-party websites after its users had *logged out* of the defendant's website. *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 596. In other words, the plaintiffs alleged that Facebook was the party "intercepting" the communications—not the company that operated the website. Here, however, Plaintiff has filed suit against the website operator— *Express Scripts*—for purportedly recording communications that Plaintiff allegedly input and directed *to Express Scripts* on the *Express Scripts* website. (*E.g.*, FAC ¶¶ 84, 88-89.) The party-exception rule applies here because "a party to a communication can record" the conversation under wiretap statutes "and is not eavesdropping when it does." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) (citations omitted).

### 3. No "contents" of communications were disclosed within the meaning of ECPA or CIPA.

Plaintiffs' wiretap claims also fail because he does not allege that "contents" of communications were disclosed. "[T]he term 'contents' refers to the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) (addressing "contents" under ECPA); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (explaining "contents" has same meaning under both ECPA and CIPA). The "content" of a communication does ***not*** include "record information regarding the characteristics of the message

that is generated in the course of the communication," such as:  the origination, length, and time of a telephone call; email, URL, and IP addresses; the geographic location of a mobile device; passwords and user IDs; and other basic identification and address information.  *In re Zynga Priv. Litig.*, 750 F.3d at 1106; *see Graham*, 533 F. Supp. 3d at 833 ("[P]laintiffs predicate their [CIPA] claim in part on information — such as IP addresses, locations, browser types, and operating systems — that is not content."); *Brodsky*, 445 F. Supp. 3d at 127 ("[U]ser names, passwords, and geographic location information are not contents."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (clicks, pages visited, keystrokes, and shipping and billing information are not "contents").

Here, Plaintiff factually alleges only the collection of non-content record information. Repeatedly, Plaintiff bases his claims on routine record information allegedly collected about his ***interactions*** with the public-facing pages of the Express Scripts website.  He alleges that the "communications" at issue included mouse clicks, mouse hovers, mouse movements, keyboard inputs, keystrokes, search items, IP address, page views, button clicks, microdata personally identifiable to Plaintiff, and other ***actions taken*** while visiting the public-facing Express Scripts website.  (FAC ¶¶ 8, 61, 63, 85-86.)  These are not "contents" under the wiretap statutes.  This information is nonactionable "record information"—"information regarding the characteristics of the message," rather than the "intended message conveyed by the communication."  *See In re Zynga Priv. Litig.*, 750 F.3d at 1106-09 (user's Facebook ID and the address of the webpage from which the user's request to view another webpage originated "does not constitute the contents of a communication"); *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1127 (W.D. Wash. 2012) ("[T]he term 'contents' does not include location information.").

Put simply, Plaintiff factually alleges only record information is at issue on webpages allegedly embedded with the Facebook pixel.  (*E.g.*, FAC ¶¶ 60-61, 63-64, 85, 95.)  But wiretap claims cannot be "based upon the theory that Defendant's sharing of their browsing activity, collected on its publicly facing website, is a disclosure of their sensitive medical information." *Sharp Healthcare*, 2023 WL 4484441, at *3.  As the court explained in *Sharp Healthcare*:

Plaintiffs allege that they used www.sharp.com, a public website, to research doctors, look for providers, and search for medical specialist and that through the sharing of this data, Defendant allowed Meta to collect their sensitive medical information. However, other courts have held that this type of data collection is not considered Protected Health Information because *nothing about the information relates specifically to Plaintiffs' health and the information is general health information that is accessible to the public at large*.

*Id.* (emphasis added) (cleaned up) (quoting *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)).

Plaintiff has failed to factually allege anything that could distinguish the analysis in this case and that of *Sharp Healthcare*. Plaintiff's purported record information is all that is at issue, and that information does not constitute "contents" under federal or state wiretap laws. The claims must be dismissed.

**4.    Any communications at issue are not alleged to have been intercepted while "in transit" under federal or California law.**

The Court should dismiss Plaintiff's wiretap claims because Plaintiff has not alleged that his purported communications were intercepted while in transit. Both ECPA and CIPA make it unlawful to intentionally intercept, "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication" only "while the same is *in transit*." Cal. Penal Code § 631(a) (emphasis added); *see* 18 U.S.C. § 2511. For a communication "to be 'intercepted' . . . it must be acquired during transmission, not while it is in electronic storage," meaning the communication must be "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (quoting *Webster's Ninth New Collegiate Dictionary* 630 (1985)). California courts therefore recognize that "[e]ven if the storage phase is transitory and lasts only a few seconds, it is still considered 'electronic storage[.]'" *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007).

Here, Plaintiff alleges just the opposite. Plaintiff alleges his "use of Defendant's website [was] *tapped and **thereafter** delivered* to the third-party, Facebook" (FAC ¶ 168 (emphasis added)), and that "Defendant then *stored the communications* and transmitted them in real time to

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-01170-AMO
sf-5606887

15

Facebook for its business purposes." (*Id.* ¶ 102 (emphasis added).) In other words, Plaintiff alleges that Plaintiff's communications were *recorded* and *then delivered* to Facebook. (*Id.* ¶¶ 88-89, 143-44, 148, 168.) This is not interception in transit because "sharing a record is not eavesdropping." *Graham*, 533 F. Supp. 3d at 833.

Plaintiff's vague allegations of "real time" and "contemporaneous" interception (FAC ¶¶ 10, 27, 95, 84, 102) are undermined by his specific allegations about the communications being transmitted to Facebook after they reach Express Scripts. *See, e.g.*, *Martin*, 2023 WL 2717636, at *10 (rejecting same argument based on equally cursory allegations, collecting cases, and dismissing wiretap claims associated with website enhancement technology for lack of factual allegations that transmissions intercepted while in transit). The "when" of the purported interception is critical, and allegations of "real time" interception do not provide "sufficient clarity." *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017). Under Plaintiff's theory, Facebook could only have accessed the communications *after* the communication was complete because once an electronic communication "has been *received by the destination server*, a communication becomes 'stored' and *contemporaneous interception is no longer possible*.'" *Lindsay-Stern v. Garamszegi*, No. SACV-1401970-CJC(DFMx), 2016 WL 11745948, at *4 (C.D. Cal. Oct. 13, 2016) (emphasis added) (quoting *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1077 (N.D. Cal. 2015)).

Because Plaintiff does not allege that Express Scripts improperly intercepted any communications during transmission, the wiretap statutes do not apply and the claims should be dismissed. *See, e.g.*, *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *1-2 (N.D. Cal. Jan. 25, 2022) (dismissing CIPA claim where allegations showed plaintiffs' theory was "recording and then transmission, not interception," noting that baldly "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit").

### D. Plaintiff's CIPA claim independently fails.

Plaintiff's CIPA claim fails for three additional, independent reasons. *First*, the claim is not pled with sufficient clarity under Rule 8. *Second*, Plaintiff's aiding and abetting theory fails

under the facts alleged.  And *third*, CIPA does not apply extraterritorially, and Plaintiff does not allege the conduct at issue took place within California.

### 1. Plaintiff's CIPA claim is impermissibly vague given the conflicting factual allegations.

Plaintiff's CIPA claim should be dismissed under Rule 12(b)(6) for failure to comply with Rule 8.  To satisfy the federal pleading standards, Plaintiff must fully identify "who is being sued, for what relief, and on what theory, with enough detail to guide discovery."  *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  Rather than being given an opportunity to challenge specifics as required by Rule 8, Plaintiff's theory under CIPA is impossible to decipher.

Section 631(a) identifies three distinct patterns of conduct that may implicate direct liability: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities."  *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (citing *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *15 (N.D. Cal. Sept. 26, 2013)).  Plaintiff's section 631 claim against Express Scripts, however, seemingly purports to arise under an indirect theory of liability addressed to anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other three bases for liability.  *Id.* (citing Cal. Penal Code § 631(a)); (*see, e.g.*, FAC ¶¶ 165).  Indeed, he alleges to support his CIPA claim that "Defendant aided and abetted the interception of components of Plaintiff's . . . private electronic communications and transmission by a third-party, Facebook[.]"  (FAC ¶ 165.)[5]

Yet, throughout the amended complaint, Plaintiff describes *Express Scripts* as the party intercepting the communications.  (FAC ¶¶ 88-89, 93-96, 98-101.)  Plaintiff fails to clarify in any meaningful way Plaintiff's theory as to which entity is allegedly doing the intercepting.  Plaintiff

---

[5] Such an allegation can only implicate section 631(a)'s second and third bases for liability. Section 631(a)'s first clause for intentional wiretapping cannot apply under settled law limiting the first clause to reach only communications over telegraph or telephone technologies, and not through the internet.  *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, No. 22-cv-09042-JSC, 2023 WL 3707181, at *2-3 (N.D. Cal. May 24, 2023) (collecting cases).

has thus failed to put Express Scripts on proper notice of the specific conduct at issue so it can defend itself in this litigation—the CIPA claim should be dismissed for this reason alone. *See, e.g.*, *Martin*, 2023 WL 2717636, at *5 (dismissing wiretap claims where plaintiff failed to "identify separate counts for each theory under which she claims Defendant violated CIPA").

### 2. Plaintiff's aiding and abetting theory fails.

Plaintiff's CIPA claim independently fails because his own allegations defeat any aiding and abetting theory. Throughout the amended complaint, Plaintiff alleges that Express Scripts was a party to his communications and repeatedly alleges that *Express Scripts* was the party that intercepted his communications. (*See, e.g.*, FAC ¶¶ 88-89, 93-96, 98-101.) Such allegations are inconsistent with Plaintiff's theory that Express Scripts "aided and abetted a third-party, Facebook" to intercept Plaintiff's communications. (*Id.* ¶ 178.)[6]

Further, under black letter law, an aiding and abetting theory is viable only if Facebook "violated Section 631(a) in some way." *Byars v. Hot Topic, Inc.*, No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994, at *9 (C.D. Cal. Feb. 14, 2023). Plaintiff has not alleged that Facebook illegally "intercepted" his communications—nor could he, given his consent to the specific conduct at issue under Express Scripts's Privacy Policy. (Edwards Decl., Ex. B at 7, 11, 13-14.) In addition, because Plaintiff alleges he is a Facebook user (FAC ¶ 25), he also must have consented to Facebook's privacy policies to maintain an active account. (Cheung Decl., Exs. A-C.)[7]

By agreeing to Facebook's terms, Plaintiff consented to the use of the Facebook pixel and how it functions, including that Facebook collects and receives information from partners about user information and activities on and off Facebook's products and services. (*E.g.*, *id.*, Exs. A-C.) Said differently, Plaintiff consented to Facebook collecting data about Plaintiff's browsing activities across different websites through cookies and tools like the Facebook pixel, including

---

[6] Aiding and abetting is only asserted as a theory of recovery for Plaintiff's CIPA claim. (*See id.* ¶ 165.) Such a theory does not apply to ECPA. *See, e.g.*, *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012) (holding that there is no civil ECPA claim for "procuring" or "aiding and abetting" an interception); *In re Toys R Us, Inc. Priv. Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001) (same).

[7] "The Facebook company is now Meta" and Facebook thus updated its terms and policies "to reflect the new name on January 4, 2022." (*Id.*, Ex. B at 1.)

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-01170-AMO
sf-5606887

18

information about websites he visits and content he interacts with. (*Id.*)  Known as "off-Facebook activity," Facebook disclosed to Plaintiff that it tracks information obtained through browsing activities "to help personali[z]e and improve content and services, provide a safer experience and to show you useful and relevant ads on and off Meta Products." (*E.g.*, *id.*, Ex. C at 11.)  Plaintiff thus consented to sharing his off-Facebook web activities, such as those captured on third-party websites, with Facebook.

Facebook also provided a clear path for Plaintiff to stop Facebook from tracking off-Facebook activity.  Facebook gives its account holders like Plaintiff the ability to stop Facebook from tracking their off-Facebook activity. (*See id.*, Exs. D-E.)  Nowhere does Plaintiff allege that he ever disabled Facebook's ability to track his off-Facebook activity.  The Facebook pixel thus worked just as Plaintiff consented, both with Express Scripts and with Facebook.  Plaintiff's aiding and abetting theory therefore fails and should be dismissed.

### 3.    Plaintiff's CIPA claim also fails because section 631 does not apply to extraterritorial conduct.

Nothing in CIPA displaces the "strong presumption against the extra-territorial application of California law." *Brackett v. Am. Airlines Grp. Inc.*, No. 21-cv-02681-HSG, 2022 WL 282529, at *2 (N.D. Cal. Jan. 31, 2022) (citing *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011)).  Indeed, CIPA's intent is "to protect the right of privacy of *the people of this state*."  Cal. Penal Code § 630 (emphasis added).  Had the Legislature intended to provide for CIPA's extraterritorial application, it would have done so expressly.  But it did not, and Section 630's plain language must be given effect.  It is axiomatic that courts applying California law must "presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, . . . unless such intention is ***clearly expressed*** or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan*, 51 Cal. 4th at 1207 (internal quotation marks omitted) (emphasis added).

Here, Plaintiff does not limit his CIPA claim to California residents or his proposed California subclass. (FAC ¶ 139.)  Instead, he improperly seeks to bring a California-specific claim on behalf of the entire nationwide class.  Because CIPA does not apply extraterritorially,

any CIPA claim asserted by Plaintiffs on behalf of non-California residents must be dismissed. *See Carrese v. Yes Online Inc.*, No. CV 16-05301 SJO (AFMx), 2016 WL 6069198, at *4, *7 (N.D. Cal. Oct. 13, 2016) (CIPA claim brought by out-of-state resident only survived "to the extent the alleged recordings were made in California").

Moreover, even as to any California subclass, Plaintiff fails to state a CIPA claim because Plaintiff does not factually allege that any wiretapping or eavesdropping took place in California. Plaintiff's CIPA claim must be dismissed because Plaintiff fails to allege any data was intercepted *in California*, as is required under section 631. *Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) (dismissing plaintiff's Section 631 claim because plaintiffs "fail to allege that the data in question was intercepted in California, as is required under the CIPA"). Plaintiff alleges he transmitted electronic communications to the Express Scripts's computer servers utilized to operate the website during his visits to the website. (FAC ¶ 85.) However, he concedes that Express Scripts maintains its principal place of business in Missouri. (*Id.* ¶ 19.) Because Plaintiff fails to allege that Express Scripts's challenged conduct occurred in California, Plaintiff's CIPA claim should be dismissed.

**E.  Plaintiff's Claim Under Section 56.101 of the CMIA Should Be Dismissed.**

Plaintiff fails to plausibly plead a CMIA Section 56.101 claim for two reasons. *First*, he does not allege that his substantive medical information was improperly released. *Second*, he does not allege that his substantive medical information, if any was provided to Express Scripts, was actually viewed by an unauthorized third party.

**1.  Plaintiff fails to allege his medical information is at issue.**

To state a claim under Section 56.101, a plaintiff must "plead[], and ultimately prov[e], that the confidential nature of the *plaintiff's medical information* was breached as a result of the health care provider's negligence." *Regents of Univ. of Calif. v. Super. Ct.*, 220 Cal. App. 4th 549, 570 (2013) (emphasis added) (dismissing Section 56.101 claim because she did not plausibly allege her medical information was viewed). Plaintiff has not sufficiently alleged the data purportedly transmitted to Facebook constitutes "medical information" within the meaning of

Cal. Civ. Code § 56.05(i).[8]

Not all patient-related information held by a health care provider is considered "medical information" under the CMIA. Rather, the statute defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, . . . mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i). Put simply, the information must be "substantive" in nature to trigger the CMIA in the first instance. *See, e.g.*, *Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS-LL, 2021 WL 4865930, at *4 (S.D. Cal. Oct. 18, 2021) (holding that a single text referring to the plaintiff's diagnostic examination did not pertain to "treatment" and therefore was not "medical information" under the CMIA). As California courts have emphasized, "[i]t is clear from the plain meaning of the statute that medical information cannot mean just any patient-related information held by a health care provider, but must . . . include 'a *patient's medical history, mental or physical condition, or treatment*.'" *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 435-36 (2014) (emphasis added); *In re Blackbaud, Inc. Customer Data Breach Litig.*, No. 3:20-mn-02972-JMC, 2021 WL 3568394, at *6 (D.S.C. Aug. 12, 2021) ("[A] prohibited release by a health care provider must include more than individually identifiable information . . . to constitute 'medical information.'" (citation omitted)).

Here, Plaintiff fails to allege *any* facts regarding substantive medical information within the meaning of the CMIA that Plaintiff allegedly transmitted to Express Scripts when visiting a webpage allegedly impacted by the purported use of the Facebook pixel. At most, Plaintiff alleges basic record information was impacted. That is not enough. Plaintiff's browsing information is not considered "Protected Health Information" because "nothing about that information relates specifically to Plaintiffs' health" and the information is "general health information that is accessible to the public at large." *Smith*, 262 F. Supp. 3d at 954-55. In fact, "the mere fact that a person may have been a patient at the hospital at some time is *not sufficient*" to allege medical information under the CMIA. *Eisenhower*, 226 Cal. App. 4th at 435-36 (emphasis added). Even the alleged disclosure of "name, cellular telephone number, treating

---

[8] Plaintiff miscites the relevant statutory provision as Cal. Civ. Code § 56.05(j). (FAC ¶ 189.)

physician names, medical treatment appointment information, and medical treatment discharge dates and times" "is insufficient to allege disclosure of medical information under the CMIA." *Wilson*, 2021 WL 4865930, at \*1, \*5 (dismissing CMIA claim) (internal quotation marks omitted).

Plaintiff makes no factual allegations that his substantive medical information was (or could have been) improperly disclosed on the Express Scripts website.  Plaintiff's CMIA fails for this reason alone.  *See, e.g.*, *In re Blackbaud*, 2021 WL 3568394, at \*6-7 (dismissing CMIA claims of plaintiffs who failed to allege "information relating to their medical history, mental or physical condition or treatment was disclosed" (alterations and citation omitted)).

> ## 2. Plaintiff fails to allege his medical information was *actually viewed* by a third party.

Even assuming Plaintiff's medical information was disclosed, which Plaintiff does not factually allege and Express Scripts denies, Plaintiff's CMIA claim fails because he fails to allege that his sensitive medical information was *actually viewed by* an unauthorized third party.  This omission is independent cause to dismiss his CMIA claim.

The text of Section 56.101 makes clear that "*preserving the confidentiality* of the medical information, ***not necessarily preventing others from gaining possession*** of the paper-based or electronic information itself, is the focus of the legislation."  *Sutter Health v. Super. Ct.*, 227 Cal. App. 4th 1546, 1556 (2014) (second emphasis added).  Under Section 56.101, there is no breach of confidentiality, and therefore no "negligent" "release" until an unauthorized person ***actually views*** the purported medical information.  *Id.* at 1557; *see Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 218 (2022) (holding breach of confidentiality under Section 56.101 requires a showing that an unauthorized party viewed the confidential information).

In the amended complaint, Plaintiff offers only a single conclusory allegation merely parroting the CMIA that "Plaintiff's and the California Subclass's medical information was viewed by unauthorized third parties, namely, Facebook."  (FAC ¶ 191.)  That is insufficient to plead a valid CMIA claim.  There are *zero* allegations in the amended complaint from which it could be inferred that substantive medical information was actually viewed.  *Compare*

(FAC ¶¶ 185-92) *with Doe v. Regents of Univ. of Cal.*, No. 23-cv-00598-WHO, 2023 WL 3316766, at *4 (N.D. Cal. May 8, 2023) (upholding CMIA claims in similar case involving pixel technology only because plaintiff made clear allegations "that she entered medical information," that such information was disclosed, and that "after she entered her information into UCSF's patient portal, she began receiving advertisements on Facebook for high blood pressure medication as well as targeted email advertisements relating to the same").

Here, by contrast, Plaintiff includes *no* factual allegations suggesting that Facebook actually viewed any of Plaintiff's substantive medical information (if any was provided by Plaintiff on pages in which the pixel was embedded), or that Plaintiff received any targeted advertisements following his use of the Express Scripts website. Plaintiff's allegations are therefore insufficient to state a CMIA claim. As other federal courts have held when facing similar allegations, the CMIA claim should be dismissed. *See, e.g.*, *Sharp Healthcare*, 2023 WL 4484441, at *8 (dismissing CMIA claim where plaintiff failed to allege she received or was subject to an increase in targeted advertisements following use of defendant's website in which the Facebook pixel was embedded).

### F.      The CCPA's Private Right of Action Does Not Apply.

Plaintiff's claim under the CCPA suffers from numerous pleading defects. Plaintiff failed to provide the required written notice to Express Scripts prior to filing this action, and the CCPA exempts Express Scripts as a covered entity. Additionally, the CCPA does not apply to the alleged conduct, which does not involve a security breach. And even if the allegations were actionable, Plaintiff still fails to state a CCPA claim.

As an initial matter, Plaintiff failed to comply with the requirement to provide Express Scripts with written notice of the alleged CCPA violations prior to filing this action. Section 1798.150(b) states that "*prior to initiating any action*" under the CCPA, the customer must provide "written notice identifying the specific provisions [that] have been or are being violated." Cal. Civ. Code § 1798.150(b) (emphasis added). Express Scripts did not receive notice, and Plaintiff does not allege otherwise. However, even if the required notice had been provided, the CCPA expressly exempts from its reach covered entities, like Express Scripts. *See* Cal. Civ.

Code §§ 1798.145(c)(1), 1798.146(a)(2) (exempting "provider of health care . . . or a covered entity").[9] Plaintiff's CCPA claim should be dismissed for either of these reasons alone.

Further, the CCPA only provides a private right of action to a consumer whose personal information was "subject to an unauthorized access and exfiltration, theft, or disclosure *as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices*[.]" Cal. Civ. Code § 1798.150(a) (emphasis added).[10] Section 1798.150 thus provides a private right of action *only* if a data breach occurred. Here, Plaintiff fails to allege any such cybersecurity incident, and instead, merely parrots the elements of the statute. It is well-settled that "a statute creates a private right of action only if the statutory language or legislative history affirmatively indicates such an intent." *Lil' Man In the Boat, Inc. v. City & Cnty. of S.F.*, No. C17-CV-00904-JST, 2018 WL 4207260, at *3 (N.D. Cal. Sept. 4, 2018) (cleaned up). Thus, as courts have held in similar cases, the CCPA's private right of action does not apply under the plain language of the statute. *See, e.g.*, *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2, 2021) ("Civil Code § 1798.150 confers a private right of action for violations of section (a), which is related to *personal information security breaches*" and "Plaintiff conceded that this claim should be dismissed because there are no allegations of a security breach in this case." (emphasis added)).

But even if the CCPA could somehow apply, the claim still fails for three additional, independent reasons. *First*, Plaintiff consented to the use of pixel technology on the Express Scripts website, as discussed above, which demands dismissal of his CCPA claim. *Gershfeld*, 2023 WL 334015, at *1 (affirming dismissal of CCPA claim based on notice and consent).

*Second*, Plaintiff does not offer any factual allegations from which it could be inferred that Express Scripts failed to employ reasonable security measures, a required element of a CCPA

---

[9] *Cf. In re MCG Health Data Sec. Issue Litig.*, No. 2:22-CV-849-RSM-DWC, 2023 WL 3057428, at *11 (W.D. Wash. Mar. 27, 2023), *report and recommendation adopted,* No. 2:22-CV-849-RSM-DWC, 2023 WL 4131746 (W.D. Wash. June 22, 2023) (dismissing CCPA claim under statute's similar exemption for a business associate of a covered entity); *Mullinix v. US Fertility, LLC*, No. SACV21-00409-CJC (KESx), 2021 WL 4935975, at *4-5 (C.D. Cal. Apr. 21, 2021) (same)

[10] The statute expressly precludes a cause of action "based on violations of any other section" of the CCPA. *Id.* § 1798.150(c).

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:23-CV-01170-AMO
sf-5606887

24

claim. *See, e.g.*, *In re Waste Mgmt. Data Breach Litig.*, No. 21cv6147 (DLC), 2022 WL 561734, at *6 (S.D.N.Y. Feb. 24, 2022) (holding plaintiff "fails to state a claim for violation of the CCPA, because it does not plausibly allege that [the defendant] breached its 'duty to implement and maintain reasonable security procedures and practices'" (quoting Cal. Civ. Code § 1798.150(a))); *Maag v. U.S. Bank, Nat'l Assoc.*, No. 21-cv-31-H-LL, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claim where "Plaintiff fails to allege any facts to support the notion that Defendant's security was deficient"). The amended complaint is devoid of any factual allegations of Express Scripts's purported failure to maintain "reasonable security procedures and practices" other than a conclusory statement parroting the elements of a CCPA claim. (FAC ¶ 201.) Such a conclusory allegation cannot past muster under *Twombly* or *Iqbal*, and "plausibility pleading standards are especially important in cases like this, where the Defendant faces the 'potentially enormous expense of discovery' if the Court denies [a] motion to dismiss." *Razuki v. Caliber Home Loans, Inc.*, No. 17cv1718-LAB (WVG), 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018) (dismissing data breach claims).

*Third*, the data Plaintiff identifies as at issue to support his CCPA claim falls outside scope of CCPA. CCPA's private right of action is limited to the disclosure of specific "personal information" listed under Cal. Civ. Code § 1798.81.5(d)(1). But in support of his CCPA claim, Plaintiff alleges the impacted information "included the individual's first name or first initial and last name, in combination with dates of birth, addressing, and other unique identification numbers." (FAC ¶ 199.) None of this data constitutes "personal information" under the CCPA. Dates of birth and addresses are not listed, and the vague allegation as to "other unique identification numbers" is wholly unsupported by the allegations at issue.

## V. CONCLUSION

Plaintiff is attempting to bring a federal class action challenging conduct that was repeatedly disclosed to him and to which he consented. Plaintiff's federal and state statutory claims fail under his own allegations, and these defects cannot be cured in a second amended complaint. Plaintiff's amended complaint should be dismissed with prejudice.

Dated:  September 13, 2023                     MORRISON & FOERSTER LLP


                                       By:  */s/ Tiffany Cheung*
                                            Tiffany Cheung

                                            *Attorneys for Defendant*
                                            EXPRESS SCRIPTS HOLDING
                                            COMPANY