TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105
Telephone: 415.268.7000
Facsimile: 415.268.7522

WHITNEY R. O'BYRNE (CA SBN 325698)
WObyrne@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone: 213.892.5200
Facsimile: 213.892.5454

ELISABETH HUTCHINSON (admitted *pro hac vice*)
EHutchinson@mofo.com
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, Colorado 80202
Telephone: 303.592.1500
Facsimile: 303.592.1510

Attorneys for Defendant
EXPRESS SCRIPTS HOLDING COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JONATHAN LYNCH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY,<br><br>Defendant. | Case No. 3:23-cv-01170-AMO<br><br>**DEFENDANT EXPRESS SCRIPTS HOLDING COMPANY'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: January 11, 2024<br>Time: 2:00 p.m.<br>Courtroom: 10<br>Judge: Hon. Araceli Martínez Olguín<br><br>Action Filed: March 15, 2023<br>Trial Date: N/A |

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ... 1

II. ARGUMENT ... 2

A. Plaintiff's Bare Procedural Violations Are Insufficient To Confer Article III Standing. ... 2

B. Consent Defeats Plaintiff's Claims. ... 3

1. The Privacy Policy Discloses The Conduct At Issue. ... 3

2. Plaintiff Is Not Entitled To Discovery On His Own Consent. ... 4

3. ECPA Is A One-Party Consent Statute, Demanding Dismissal of Plaintiff's Claim. ... 5

C. Plaintiff's Wiretap Claims Fail. ... 6

1. Plaintiff's Claims Are Untimely. ... 6

2. Express Scripts Cannot Be Held Liable For Intercepting Its *Own* Communications. ... 7

3. Plaintiff Has Not Alleged "Contents" of Communications. ... 8

4. Plaintiff Has Not Alleged Interception "In Transit." ... 10

D. Plaintiff's CIPA Claim Independently Fails. ... 11

1. An Aiding and Abetting Theory Is Inconsistent With Plaintiff's Repeated Allegations. ... 11

2. CIPA Does Not Apply Extraterritorially. ... 12

E. Plaintiff's CMIA Claims Fails. ... 13

1. Plaintiff Has Not Alleged Disclosure Of *Medical* Information. ... 13

2. Plaintiff's Medical Information Was Not Actually Viewed. ... 13

III. CONCLUSION ... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2008) .......... 2, 11

*Baker v. ParkMobile, LLC*,
No. 1:21-cv-2182-SCJ, 2022 WL 3704003 (N.D. Ga. Aug. 19, 2022) .......... 15

*Barbour v. John Muir Health*,
No. C22-01692, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023) .......... 14

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) .......... 6

*Cimoli v. Alacer Corp.*,
587 F. Supp. 3d 978 (N.D. Cal. 2022) .......... 12

*Cousin v. Sharp Healthcare*,
No. 22-cv-2040-MMA (DDL), 2023 WL 4484441 (S.D. Cal. July 12, 2023) .......... 1, 2, 8, 9, 14

*Dfinity USA Rsch. LLC v. Bravick*,
No. 22-cv-03732-EJD, 2023 WL 2717252 (N.D. Cal. Mar. 29, 2023) .......... 12

*Doe v. Google LLC*,
No. 23-cv-02431-VC, 2023 WL 6882766 (N.D. Cal. Oct 18, 2023) .......... 6, 7

*Doe v. Regents of Univ. of Cal.*,
No. 23-cv-00598-WHO, 2023 WL 3316766 (N.D. Cal. May 8, 2023) .......... 13

*Eisenhower Med. Ctr. v. Superior Court*,
226 Cal. App. 4th 430 (2014) .......... 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 9

*In re Facebook, Inc. Sec. Litig.*,
477 F. Supp. 3d 980 (N.D. Cal. 2020) .......... 3

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .......... 4

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*
806 F. 3d 125 (3d Cir. 2015) .......... 5

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 5

*Greenley v. Kochava, Inc.*,
No. 22-cv-01327-BAS-AHG, 2023 WL 4833466 (S.D. Cal. July 27, 2023) .......................... 4

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) .................................................................................... 10

*Hammerling v. Google LLC*,
No. 21-cv-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ............................... 12

*Hayden v. Retail Equation, Inc.*,
No. SA CV 20-01203-DOC-DFM, 2022 WL 2254461 (C.D. Cal. May 4, 2022) ................. 15

*Javier v. Assurance IQ, LLC*,
No. 20-CV-02860-CRB, 2023 WL 114225 (N.D. Cal. Jan. 5, 2023) ...................................... 7

*Jones v. Regents of the Univ. of Cal.*,
No. 21-cv-07844-JSW, 2022 WL 1137089 (N.D. Cal. Apr. 18, 2022) .................................. 1

*Kurowski v. Rush Sys. for Health*,
No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) .................................................. 7

*Licea v. Am. Eagle Outfitters, Inc.*,
No. EDCV 22-1702-MWF (JPR), 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) .................... 8

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ................................................................................ 10

*Lukovsky v. City & Cnty. of S.F.*,
535 F.3d 1044 (9th Cir. 2008) ............................................................................................. 6

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) ................................................................................ 14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................................... 6, 9

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010) ........................................................................................................... 12

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ............................................................................................. 3

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................ 8, 10

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ....................................... 10

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .............................................................................. 8, 9

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) .................. 2, 13

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .................................................................................... 4

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) ........................................................... 3, 13, 14

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..................................................................................................... 3

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ............................................................... 3, 14

*Ste. Marie v. Riverside Cnty. Reg'l Park & Open-Space Dist.*,
46 Cal. 4th 282 (2009) ............................................................................................... 10

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ............................................................................................. 12

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999)........................................................................................ 6

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)...................................................................................... 6, 7

*TransUnion, LLC. v. Ramirez*,
141 S. Ct. 2190 (2021) ............................................................................................. 2, 3

*Van Heel v. GCA Educ. Servs., Inc.*,
No. 2:20-CV-01505-AB-JEM, 2020 WL 6541989 (C.D. Cal. Sept. 30, 2020)....................... 5

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)........................................................................ 10

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)........................................................................................ 9

**Statutes**

18 U.S.C. § 2511(2)(d)............................................................................................... 5

Cal. Civ. Code § 1798.81.5(d)(1).................................................................................. 15

Cal. Civ. Code § 1798.150 ...................................................................................... 14, 15

Cal. Civ. Code § 1798.145(c)(1).................................................................................. 14

Cal. Civ. Code § 1798.146(a)(2).................................................................................. 14

Cal. Penal Code § 631(a) .......... 8, 10

## I. INTRODUCTION

Plaintiff's opposition confirms that his claims are not supported by *factual* allegations—the only allegations entitled to any weight at the pleadings stage. Without any legal basis, and resting on only unsupported allegations, Plaintiff is essentially asking the Court to allow claims to proceed against health care providers based on nothing more than use of a commonplace analytic and advertising tool simply because those companies are in the health care business—that is ***not*** the standard by which "wiretap" or other privacy claims can be sustained. As one federal court recently explained dismissing similarly conclusory claims regarding purported disclosures of "sensitive medical information," "Plaintiffs cannot maintain their theory of the case" where they "fail to allege that these activities took place on a page of [a defendant's] website where Meta Pixel was embedded." *Cousin v. Sharp Healthcare*, No. 22-cv-2040-MMA (DDL), 2023 WL 4484441, at *3 (S.D. Cal. July 12, 2023).

The only pages of the Express-Scripts.com domain that could be implicated in Plaintiff's claims are the pages on which the Facebook pixel is allegedly embedded, and only information entered by Plaintiff on one of those pages can support Plaintiff's claims. The purported prescription information Plaintiff relies on throughout the opposition is not factually connected to the pixel in any way. The opposition does not argue otherwise. Plaintiff, instead, argues that he does not need to make such a connection. (*Contra* Opp. at 3.) Such an argument flies in the face of *Twombly* and *Iqbal*, and it is fundamentally at odds with Plaintiff's theory of liability. If Plaintiff's alleged health data is not connected to the pixel by factual allegations, there is no alleged capture or disclosure of that information that would support Plaintiff's claims.

Rather, as Plaintiff concedes by failing to argue otherwise,[1] the only information that has been connected to the pixel by factual allegations is basic record information about Plaintiff's purported movements on the *public* pages of the Express-Script.com domain that are not restricted to Express Scripts customers. Such basic record information is insufficient to sustain injury-in-fact, let alone to support a claim under any of the statutes on which Plaintiff has relied.

---

[1] *See, e.g.*, *Jones v. Regents of the Univ. of Cal.*, No. 21-cv-07844-JSW, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022) (viewing "failure to oppose Defendants' arguments as a concession").

As a California federal court recently explained dismissing similar claims, a plaintiff "cannot maintain their claims based on the theory that Defendant's sharing of their browsing activity, collected on its ***publicly facing website***, is a disclosure of their sensitive medical information." *Sharp Healthcare*, 2023 WL 4484441, at *3; *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017) (same, concluding browsing data from public webpages is not "Protected Health Information" because "nothing about [the] information relates specifically to Plaintiffs' health," but is instead only "general health information that is accessible to the public at large"), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).

Put simply, basic record information about Plaintiff's purported movements on the public pages of Express-Scripts.com is not "contents" under wiretap laws. Nor is it "medical information" or "personal information" under the CMIA or CCPA. Plaintiff has failed to make the necessary fact allegations to maintain this litigation. Plaintiff's claims fail, and the amended complaint should be dismissed in its entirety.

## II. ARGUMENT

### A. Plaintiff's Bare Procedural Violations Are Insufficient To Confer Article III Standing.

Under *TransUnion*, Plaintiff must allege that his purported injury "bears a close relationship" to harms traditionally recognized as providing a basis for a lawsuit, such as "reputational harms, disclosure of *private* information, and intrusion on seclusion." *TransUnion, LLC. v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (emphasis added). The nature of the information that has been allegedly disclosed is critical to this inquiry. If there is no allegation connecting the purported health information or other *sensitive* information to the pixel, there is no injury-in-fact. Here, however, Plaintiff has not sufficiently alleged that the webpages where plaintiff purportedly entered any sensitive information contained the Facebook pixel. (*Contra* Opp. at 2.) Rather, he offers precisely the type of speculative pleading that the Supreme Court has long rejected. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and *plausibility* of entitlement to relief'" (emphasis added)).

Moreover, the cases cited by Plaintiff are either inapposite or unsupported by binding Supreme Court precedent. First, Plaintiff relies on data breach cases where *health* information was clearly alleged to have been disclosed *and* viewed. *See Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 924 (S.D. Cal. 2020) (personal health data posted on the internet and accessible by anyone with internet connection); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1299 (S.D. Cal. 2020) (plaintiffs attached letters to their complaint indicating that their health information was exposed in the data breach and specifically alleged an increase in medical-related spam e-mails and phone calls following the breach). Plaintiff makes no such allegations here.

Second, Plaintiff cites *Garcia v. Build.com, Inc.*, for the proposition that a bare CIPA violation is alone sufficient to support standing. No. 22-cv-01985-DMS-KSC, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023). Such a conclusion is contrary to *TransUnion* and *Spokeo*, both of which require plaintiffs to allege concrete harm. *TransUnion*, 141 S. Ct. at 2204-05; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016). It has long been the law that a traditional privacy injury turns on the content of the data at issue. *E.g.*, *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1271 n.17 (9th Cir. 1998) ("Under California law, a legally recognizable privacy interest arises from the sort of information revealed by the tests at issue."). Plaintiff's factual allegations, even after an opportunity to amend, do not meet that standard—the amended complaint should be dismissed for lack of standing.

**B. Consent Defeats Plaintiff's Claims.**

**1. The Privacy Policy Discloses The Conduct At Issue.**

Contrary to Plaintiff's unsupported assertion, the Court may consider the full terms of Express Scripts's and Meta's policies and registration processes in effect when Plaintiff allegedly accessed Express-Scripts.com, because Plaintiff's allegations—particularly his alleged lack of consent—necessarily depend on the policies' contents. (*Contra* Opp. at 4-5.) Plaintiff does not cite a single case holding otherwise, for good reason. "It is common for courts to take judicial notice of a company's historical privacy policies." *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1009 (N.D. Cal. 2020). As argued in the motion and ignored in the opposition, the Ninth

Circuit and the Northern District routinely dismiss similar claims based on privacy policies in place during the relevant timeframe. *See, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015). Plaintiff cannot avoid the policies' contents by simply omitting them from the amended complaint—that is precisely what the doctrine of judicial notice is designed to prevent.

Plaintiff also tries to argue that Express Scripts's policy does not explicitly notify users of the practices at issue. (*Contra* Opp. at 5.) It is unclear how Express Scripts could have been clearer that basic record information (the *only* data factually at issue) could be collected and shared, given that it repeatedly stated that it (1) uses "tracking pixels," (2) partners with third parties to provide said pixels and analyze communications with the website, and (3) uses the information from the pixels for website enhancement and marketing. (*See* Mot. at 4 (quoting key provisions of policy).) Plaintiff ignores this plain language, relying on another inapposite case to argue consent is invalid when applied to collection "through backdoors built into apps." (Opp. at 5 (quoting *Greenley v. Kochava, Inc.*, No. 22-cv-01327-BAS-AHG, 2023 WL 4833466, at *5 (S.D. Cal. July 27, 2023)).) Unlike *Greenley*, there was ***nothing*** surreptitious about Express Scripts's practices—they were expressly, and repeatedly, disclosed.

Plaintiff also attempts to avoid the plain language of the privacy policy by arguing in his opposition that the purported "wiretapping" begins before the policies are accepted. (Opp. at 6.) But for the reasons discussed in detail below, Plaintiff cannot sustain any claims based on the purported collection of basic record information as he moved across the pre-authorization, public pages of the website. Plaintiff has not alleged that any health or other sensitive information was intercepted "as soon as" Plaintiff accessed the Express Scripts website—he only alleges that basic interactions with a public website were shared, which support no claim at all. (*E.g.*, FAC ¶ 63.)

**2. Plaintiff Is Not Entitled To Discovery On His Own Consent.**

Without citing a single case in support, Plaintiff makes a bald request for limited discovery on the issue of consent. (Opp. at 5.) Discovery has not yet started in this case, and discovery on the issue of consent should not be granted before Plaintiff has shown he can even state a claim. This is not a circumstance where Plaintiff's registration process is only within

Express Scripts's knowledge—Plaintiff should know when and how he allegedly accessed the website and placed his orders after he registered for an Express Scripts account. And Plaintiff does not explain what additional information Plaintiff needs beyond the sworn declaration and supporting documents already provided. (*See generally* Edwards Decl.) Plaintiff's unsupported request for limited discovery is improper. Plaintiff "cannot use discovery as a fishing expedition to find facts that may give credence to an unartfully pled complaint." *Van Heel v. GCA Educ. Servs., Inc.*, No. 2:20-CV-01505-AB-JEM, 2020 WL 6541989, at *4 (C.D. Cal. Sept. 30, 2020).

### 3. ECPA Is A One-Party Consent Statute, Demanding Dismissal of Plaintiff's Claim.

Plaintiff does not contest that ECPA is a one-party consent statute or that Express Scripts allegedly embedding the pixel on its website constitutes its consent. Instead, Plaintiff attempts to argue that Express Scripts's consent does not matter because ECPA's crime-tort exception applies. (Opp. at 7.) Plaintiff is incorrect. The crime-tort exception applies only where a "communication is intercepted for the *purpose* of committing any criminal or tortious act[.]" 18 U.S.C. § 2511(2)(d) (emphasis added). To apply the crime-tort exception, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Inc. Cookie Placement Consumer Priv. Litig.* ("*In re Google Cookie*"), 806 F. 3d 125, 145 (3d Cir. 2015) (emphasis added). Thus, Plaintiff must allege that either the "primary motivation or a determining factor" in Express Scripts's actions was to injure Plaintiff tortiously. *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (holding exception did not apply because "interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money'"). Where a plaintiff "plead[s] no tortious or criminal use" of the allegedly intercepted information, the exception does not apply. *In re Google Cookie*, 806 F. 3d at 145 (emphasis omitted). Here, Plaintiff fails to allege any tortious or criminal act by Express Scripts independent of the act of recording.

Yet, Plaintiff argues that the exception should apply because "the use of patient data for advertising in the absence of express written consent is criminal and tortious." (Opp at. 17

(quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 766-98 (N.D. Cal. 2022)).) Nowhere in Judge Orrick's opinion did he so hold. Plaintiff selectively quotes portions of the opinion discussing *plaintiffs'* argument in seeking a preliminary injunction. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797. The court ultimately held that plaintiffs did ***not*** meet their burden to show that the exception likely applied. *Id.* Judge Chhabria reached the same conclusion just last week. *Doe v. Google LLC*, No. 23-cv-02431-VC, 2023 WL 6882766, at *2 (N.D. Cal. Oct 18, 2023) (rejecting plaintiffs' contention that crime-tort exception applies, even in case purportedly involving health data, because "[i]t is not enough for the interception itself to have violated the law, the interception must be 'done for the purpose of facilitating some further impropriety' for the criminal or tortious exception to apply" (quoting *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999))). The ECPA claim fails.

### C. Plaintiff's Wiretap Claims Fail.

#### 1. Plaintiff's Claims Are Untimely.

Plaintiff argues in opposition that his CIPA claim is timely because Express Scripts has not shown a statute of limitations defect on the face of the complaint. (Opp. at 7.) Not so. Although he fails to address this allegation in his opposition, Plaintiff explicitly alleges that he visited the Express Scripts website and that the pixel has been embedded on the public-facing pages of the site "[o]ver the last *few years*." (FAC ¶¶ 80, 90 (emphasis added).) On the face of the amended complaint, then, Plaintiff's claims are time-barred. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011).

Moreover, Plaintiff has not alleged sufficient *facts* to show that Express Scripts is equitably estopped from relying on the statute of limitations. To establish that equitable estoppel applies, "the plaintiff must point to some ***fraudulent concealment***, some active conduct by the defendant 'above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1051-52 (9th Cir. 2008) (emphasis added). Plaintiff claims Express Scripts "demands too much detail." (Opp. at 8.) But Express Scripts asks for only what is mandated by Rule 9(b), as required in the Ninth Circuit. *See, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (fraudulent

concealment must be pled with particularity under Rule 9(b)).

Plaintiff also makes a weak attempt at a delayed discovery challenge, arguing the Facebook Pixel is "an abstruse piece of programming code." (Opp. at 8.) This theory has already been rejected by courts dismissing similar claims as untimely, particularly where a privacy policy disclosed the use of pixel technology—like the Express Scripts's policy. *See, e.g.*, *Javier v. Assurance IQ, LLC,* No. 20-CV-02860-CRB, 2023 WL 114225, at *7-8 (N.D. Cal. Jan. 5, 2023). Plaintiff claims the privacy policy is insufficient because it does not cover disclosure of health data. (Opp. at 8.) But Plaintiff concedes by failing to argue otherwise that the policy put him on notice of the use of pixel technology and, again, Plaintiff's purported health data is *not* at issue because it is not factually connected to the Facebook pixel. Thus, contrary to Plaintiff's assertions, Express Scripts's privacy policies informed Plaintiff of the specific practices at issue here, and the limitations period has expired.

**2. Express Scripts Cannot Be Held Liable For Intercepting Its *Own* Communications.**

When addressing the party-exception rule in the opposition, Plaintiff never discusses ECPA. (*See* Opp. at 9-10.) Plaintiff thereby concedes that the party-exception rule demands dismissal of Plaintiff's ECPA claim. The closest Plaintiff comes to challenging this argument is in a separate consent section. There, however, Plaintiff argues only that the crime-tort exception applies. For the reasons discussed *supra*, the exception does not apply and Plaintiff's ECPA claim must be dismissed. *See, e.g.*, *Doe v. Google*, 2023 WL 6882766, at *2 ("ECPA makes explicit that it is not unlawful to intercept a communication if one of the parties to the communication has given prior consent. . . . [T]he health care providers consented to the use of Google source code on their web properties."); *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 2349606, at *4 (N.D. Ill. Mar. 3, 2023) (dismissing ECPA claim against healthcare provider based on use of Facebook pixel under party-exception rule).

As to CIPA, Plaintiff misunderstands Express Scripts's argument. As explained in Express Scripts's motion and ignored in Plaintiff's opposition, Plaintiff repeatedly alleges that *Express Scripts* was the party that intercepted Plaintiff's communications. (*See, e.g.*, FAC

¶¶ 88-89, 93-96, 98-101.) The point—which Plaintiff does not contest because he does not address it—is that any allegation that *Express Scripts* recorded Plaintiff's communications with its own website fails. Even the cases Plaintiff cites hold that website owners cannot be liable under CIPA based on allegations that they recorded consumers' communications with their own websites. *See, e.g.*, *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 519 (C.D. Cal. 2021) ("[T]o the extent Plaintiff alleges Nike recorded its own communications with Plaintiff, the court finds the § 631 exemption applies."); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Moosejaw cannot be liable for eavesdropping on its own communications with Revitch[.]"). Plaintiff's claim that *Express Scripts* recorded its own communications are barred by the party-exception rule and require dismissal of the CIPA claim.

**3. Plaintiff Has Not Alleged "Contents" of Communications.**

Plaintiff's wiretap claims also fail because Plaintiff has not plausibly alleged interception of any "contents" as required by ECPA and CIPA. In arguing "content," Plaintiff relies only on his single, background allegation that he entered certain medical information on some unidentified page(s) of the Express Scripts platform, and that this allegation "far surpass[es] those made in *Sharp Healthcare*." (Opp. at 11 (citing FAC ¶ 25).)[2] Plaintiff once again misses the point—his general background allegations about his use of the platform as a whole is not relevant to this litigation unless the specific pages on which this information was entered contained the Facebook pixel. Plaintiff offers no *factual* allegation connecting his purported health data and the pixel. This case is therefore exactly like *Sharp Healthcare* and should be dismissed.

The plaintiffs in *Sharp Healthcare* baldly alleged the covered entity disclosed personal, confidential, and sensitive medical information; communications and messages with doctors; medical test results; payment information; and password reset information—allegations more detailed than those alleged here. 2023 WL 4484441, at *3. But fatal to their claims, plaintiffs

[2] Plaintiff also argues that there is no "content" requirement under the first provision of CIPA § 631. (Opp. at 11 n.2.) But because internet communications do not involve telegraph or telephone wires, the first clause does not apply to this litigation at all. *See, e.g.*, *Licea v. Am. Eagle Outfitters, Inc.*, No. EDCV 22-1702-MWF (JPR), 2023 WL 2469630, at *5 (C.D. Cal. Mar. 7, 2023) ("[T]he first clause of Section 631(a) does not apply to communications over the internet."). Plaintiff does not argue otherwise.

failed to connect *their* sensitive or health data to the Facebook pixel and relied solely on the public-facing pages of the globally available website; that, the Court properly concluded, does not allege disclosure of sensitive health information. *Id.* The same is true here. Plaintiff *only* factually alleges collection of non-content record information about interactions with public-facing pages of the website, including mouse clicks, mouse hovers, mouse movements, keyboard inputs, keystrokes, search items, IP address, page views, button clicks, microdata personally identifiable to Plaintiff, and other actions taken while visiting the public-facing Express Scripts website. (FAC ¶¶ 8, 61, 63, 85-86.) Because Plaintiff has not properly alleged the interception of "contents" of communications, the wiretap claims must be dismissed.

Moreover, Plaintiff misquotes the Ninth Circuit to argue that his interactions with the public-facing webpages could be "contents." (Opp. at 10-11.) The Ninth Circuit was not addressing contents—or even a wiretap claim—in the context of the misquote. Rather, the court was discussing an invasion of privacy claim, and upholding it because it concerned tracking movements outside Facebook's platform. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020). Nor did the court hold mere clicks could constitute content in *Saleh v. Nike*, noting "not all of this information may constitute the 'contents' of a communication under [ECPA]." 562 F. Supp. 3d 503 at 518. As for *In re Meta Pixel Healthcare Litig.*, plaintiffs submitted an expert declaration stating that the specific URLs at issue would not merely reveal the name of a Facebook user or group but "the transmitted URLs include[d] both the 'path' and the 'query string.'" 647 F. Supp. 3d 778 at 796.

Here, if Plaintiff entered specific searches on pages on which the pixel was embedded and that data was allegedly captured, he does not allege this in the amended complaint. Even if *some* "referrer URLs" may qualify as "content," *see In re Zynga Priv. Litig.*, 750 F.3d 1098, 1101 (9th Cir. 2014), Plaintiff has failed to allege the particular referrer URLs that could support his CIPA claim, instead stating in a conclusory fashion that the pixel *can* collect referrer URLs at large. That is not enough to sustain a wiretap claim. The only information that could be "contents" was allegedly input on some unidentified pages of the domain, not connected to the pixel in any way by *factual*, *non-conclusory* allegations. (*See* FAC ¶ 25.) Plaintiff's CIPA claim thus fails.

**4. Plaintiff Has Not Alleged Interception "In Transit."**

By failing to argue otherwise, Plaintiff concedes that ECPA unambiguously requires interception in transit. (Opp. at 11-12.) As to CIPA, Plaintiff's misreads the third clause of section 631(a) to argue it does not have an "in transit" requirement. (*Contra id.* at 12.)

Section 631(a) applies only to a communication "*in transit* or passing over any wire, line, or cable, or ***is being*** sent from, or received at any place within this state." Cal. Penal Code § 631(a) (emphasis added). The term "being" in "being sent . . . or received" must be given its "usual and ordinary meaning." *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 605 (2020). Plainly, "being" means in the process of being sent or received—not ***after*** it has been sent or arrived. *See, e.g.*, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228, n.9 (C.D. Cal. 2017) (construing CIPA's "in transit" requirement as coextensive with ECPA's); *Revitch*, 2019 WL 5485330, at *2 (applying "in transit" requirement). This is reinforced when section 631(a) is read "as a whole so that all parts are harmonized and given effect." *Ste. Marie v. Riverside Cnty. Reg'l Park & Open-Space Dist.*, 46 Cal. 4th 282, 289 (2009). Viewed as a whole, the statute repeats the "in transit" requirement through alternative means in each provision: (i) "while [it] is in transit," (ii) "passing over any wire," or (iii) "being sent . . . or received." Cal. Pen. Code § 631(a). Courts therefore interpret section 631(a) to "distinguish messages that have already arrived or are immediately being sent, as opposed to those 'in transit.'" *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021).

Here, Plaintiff expressly alleges that communications were recorded "*and **thereafter*** delivered to . . . Facebook." (FAC ¶ 168 (emphasis added).). Moreover, he expressly alleges that the communications about his "actions taken" on the website are delivered "to Defendant's servers," emphasizing that his theory is one of capture then delivery. (*See id.* ¶ 86.) Plaintiff's conclusory allegations of "real time" interception (*id.* ¶¶ 10, 27, 95, 84, 102) are contradicted by his specific allegations that the communications were transmitted to Facebook ***after*** they reach Express Scripts. Such conclusory allegations are not entitled to any weight. *See, e.g.*, *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *1-2 (N.D. Cal. Jan. 25, 2022) (Baldly "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific

facts that make it plausible Google is intercepting their data in transit.”).

### D. Plaintiff's CIPA Claim Independently Fails.

#### 1. An Aiding and Abetting Theory Is Inconsistent With Plaintiff's Repeated Allegations.

Plaintiff does not dispute that there is no civil liability for “procuring” or “aiding and abetting” an interception under ECPA. Thus, to the extent Plaintiff seeks to hold Express Scripts liable for aiding and abetting, Plaintiff's ECPA claim fails.

Turning to CIPA, Plaintiff once again misunderstands the argument. Express Scripts does not contest that CIPA includes an aiding and abetting prong. The flaw of Plaintiff's claim, however, is that like the amended complaint, Plaintiff's opposition fails to explain what entity is doing the alleged intercepting. Plaintiff claims that paragraphs 165 through 167 of the amended complaint “plainly and unmistakably inform Defendant of Plaintiff's theory of liability under CIPA.” (Opp. at 13.) However, Plaintiff fails to address how these conclusory, CIPA-specific allegations hold any water when they are the exact opposite of his background factual allegations identifying *Express Scripts* as the entity doing the intercepting. (*See, e.g.*, FAC ¶¶ 88-89, 93-96, 98-101.) Plaintiff fails to identify the specific conduct at issue in the amended complaint and makes no effort to clarify in opposition. Plaintiff repeatedly alleges that *Express Scripts* was the party that intercepted Plaintiff's communications, but such allegations are inconsistent with Plaintiff's theory that Express Scripts “aided and abetted a third-party, Facebook” to intercept Plaintiff's communications. (*Id.* ¶ 178.) The claim thus fails.

Further, even if the outlier aiding and abetting allegations in paragraphs 165 to 167 could pass muster under *Twombly* and *Iqbal*, Plaintiff consented to the alleged conduct with both Express Scripts *and* Facebook. Express Scripts's privacy policy clearly discloses the use of pixel technology. (*See supra* at Section II.B.1.) As does Meta's. Plaintiff claims that the Meta privacy policy makes no reference to the use of the Facebook pixel. (Opp. at 16.) This is not correct. The Meta privacy policy expressly provides that Meta “collect[s] and receive[s] information from partners, measurement vendors, marketing vendors and other third parties about a variety of your information and activities on and off our products. Here are some examples of information we

receive about you[:] . . . *Websites you visit and cookie data, like through Social Plugins or* ***the Meta Pixel***." (ECF No. 34-2 at 7 (emphasis added).) And Plaintiff never argues that he disabled Facebook's ability to collect his off-Facebook activity. Rather, the pixel is alleged to have performed as he was informed and as he allowed—it allegedly collected basic record information about his interactions with the ***public*** pages of the Express Scripts website. There is no impermissible aiding and abetting of illegal conduct, and the CIPA claim fails.

**2. CIPA Does Not Apply Extraterritorially.**

Plaintiff does not contest Express Scripts's argument that CIPA does not apply extraterritorially; he argues only that the issue should be saved for class certification, and if he needs to be more specific, he seeks leave to amend. (Opp. at 16-17.) But as cited in the motion and ignored in the opposition, courts in this District routinely resolve extraterritoriality issues on a motion to dismiss—including in dismissing wiretap claims like this one. *See Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) (dismissing CIPA claim at pleading stage); *see also, e.g.*, *Dfinity USA Rsch. LLC v. Bravick*, No. 22-cv-03732-EJD, 2023 WL 2717252, at *5 (N.D. Cal. Mar. 29, 2023) (resolving extraterritoriality issue at pleading stage); *Cimoli v. Alacer Corp*., 587 F. Supp. 3d 978, 986-87 (N.D. Cal. 2022) (resolving choice-of-law analysis at pleading stage).

Indeed, California law imposes a presumption against extraterritoriality, which means a state statute is considered inapplicable to "occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (quotation omitted); *see also Morrison v. Nat'l Austl. Bank Ltd*., 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none."). There is no such clear intent with CIPA, as Plaintiff concedes. (FAC ¶ 4 ("The California State Legislature passed CIPA to protect the right of privacy of ***the people of California***." (emphasis added)).) The statute does not apply extraterritorially, and because Plaintiff does not allege Express Scripts's conduct occurred in California, the claim must be dismissed.

### E. Plaintiff's CMIA Claims Fails.

#### 1. Plaintiff Has Not Alleged Disclosure Of *Medical* Information.

To begin, Plaintiff argues Express Scripts is a health care provider under the CMIA, because it is "a pharmacy benefits manager" and an "online pharmacy." (Opp. at 18.) Express Scripts has never argued otherwise. Plaintiff's CMIA claim fails for different reason: he has not alleged unauthorized disclosure of substantive *medical* information because he never connects such data to a page on which the Facebook pixel was allegedly embedded. Plaintiff once again defaults to his background allegation that he entered "specific health information," such as "a diagnosis history related to [a] testosterone prescription[.]" (*Id*. at 21 (citing FAC ¶ 25).) But as explained above and in the motion, this allegation is irrelevant because it is not connected to any webpage where the pixel was embedded. The only factual allegations concern basic browsing information about the public-facing pages of Express-Scripts.com. That is *not* medical information. *See, e.g.*, *Smith*, 262 F. Supp. 3d at 954-55; *Sharp Healthcare*, 2023 WL 4484441, at *3, 8. Browsing a public webpage does not even disclose Plaintiff's status as a patient, and even if it could, patient status—without more—is not enough to sustain a CMIA claim. *See, e.g.*, *Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 435-36 (2014).

#### 2. Plaintiff's Medical Information Was Not Actually Viewed.

Nor does Plaintiff factually allege that his medical information was actually viewed, providing an independent basis to dismiss the claim. Plaintiff offers zero *factual* allegations to push the needle from possibility to plausibility. This District requires something more to find medical information was actually viewed, such as factual allegations of specific, targeted health advertisements. *See, e.g.*, *Doe v. Regents of Univ. of Cal.*, No. 23-cv-00598-WHO, 2023 WL 3316766, at *4 (N.D. Cal. May 8, 2023) (upholding CMIA claim based on pixel use ***only*** because plaintiff alleged that "after she entered her information into UCSF's patient portal, she began receiving advertisements on Facebook for high blood pressure medication as well as targeted email advertisements relating to the same"). Indeed, plaintiffs in each of the data breach cases Plaintiff cites made exactly these types of allegations, which are absent here, to substantiate their CMIA claims. *See In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F.

Supp. 3d 1284 (S.D. Cal. 2020) (alleged increase in medical-related spam emails and phone calls following breach); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,* 603 F. Supp. 3d 1183, 1218 (S.D. Fla. 2022) (same); *Stasi*, 501 F. Supp. 3d at 912, 924 (same). Plaintiff offers nothing of the sort, demanding dismissal of his CMIA claim. *See, e.g.*, *Sharp Healthcare*, 2023 WL 4484441, at *8 (dismissing CMIA claim based on pixel use where plaintiff failed to allege increase in medical-related advertisements).[3]

### F. Plaintiff's CCPA Claim Is Procedurally Deficient And Does Not Apply to Express Scripts Or The Facts Alleged.

To argue the CCPA applies, Plaintiff relies on cases (and statutes) that have nothing to do with the CCPA or its narrow private right of action. The CCPA claim fails for six reasons.

*First*, Plaintiff argues he did not *need* to follow the unambiguous instructions of Cal. Civ. Code § 1798.150(b) that *any* consumer filing a CCPA claim must provide "written notice" "prior to initiating any action." (*Contra* Opp. at 23.) To so argue, Plaintiff cites a case that has *nothing* to do with the CCPA and an inapplicable, general maxim of the law on idle acts. The notice requirement of § 1798.150(b) contains no exceptions. Plaintiff does not dispute that he did not comply with this requirement, and the claim must be dismissed accordingly.

*Second*, Plaintiff contradicts his own allegations to argue the CCPA's exception for covered entities and associates does not apply. (*Contra* Opp. at 23.) Plaintiff plainly alleges that Express Scripts is a "pharmacy benefits manager" and an "online pharmacy." (FAC ¶¶ 38, 41.) Plaintiff even so argues in his opposition. (Opp. at 18.) Plaintiff cannot have it both ways.[4] (*Compare* Opp. at 18 *with id.* at 23.) Plaintiff's as-pled allegations invoke the CCPA's exception.

*Third*, Plaintiff twists the CCPA's limited private right of action to reach claims that the statute was clearly *not* designed to reach. (*Contra* Opp. at 23-24.) The CCPA's private right of action is unambiguously limited to "unauthorized access and exfiltration, theft, or disclosure ***as a***

[3] As a California court explained earlier this year dismissing a CMIA claim based on the same technology, "the information may be collected, analyzed, and used by a third party . . . all through the use of computers, without any human actually laying eyes on it." *Barbour v. John Muir Health*, No. C22-01692, 2023 WL 2618967, *6-7 (Cal. Super. Ct. Jan. 5, 2023).

[4] In any event, Plaintiff also ignores that business associates of covered entities are likewise exempt from the CCPA, Cal. Civ. Code §§ 1798.145(c)(1), 1798.146(a)(2), and he pleads that he is bringing the claims against Express Scripts's "present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, [and] related entities[.]" (FAC ¶ 2.)

***result of** the business's violation of the duty to implement and maintain **reasonable security procedures and practices***[.]" Cal. Civ. Code § 1798.150(a) (emphasis added). Plaintiff does not (and cannot) allege a lapse in security measures. Rather, he alleges a purported disclosure that "was not a result of a failure to implement and maintain reasonable security measures, but was a business decision" to observe consumers' interactions with a global, publicly available website for website enhancement and marketing. *Hayden v. Retail Equation, Inc.*, No. SA CV 20-01203-DOC-DFM, 2022 WL 2254461, at *5 (C.D. Cal. May 4, 2022).

*Fourth*, Plaintiff does not argue his consent does not preclude the CCPA claim. Plaintiff has only put his record information at issue in this case by failing to factually connect his medical information to the Facebook pixel, and he consented to such disclosure when he accepted both Facebook's and Express Scripts's terms and policies. (*Contra* Opp. at 24.)

*Fifth*, even in data breach cases, courts do not accept mere parroting of the statute to state a viable cause of action. Instead, Plaintiff must allege *facts* showing Defendant failed to employ reasonable security measures. (*See* Mot. at 24-25 (collecting cases).) Plaintiff cannot rely solely on his circular argument that the alleged use of the Facebook pixel is enough. (*Contra* Opp. at 24-25.)

And *sixth*, the information Plaintiff identified to support his CCPA claim (FAC ¶ 199) is not covered by the statute. As Plaintiff concedes by failing to argue otherwise, his as-pled list of data elements at issue does *not* constitute "personal information" under Cal. Civ. Code § 1798.81.5(d)(1). Plaintiff cannot now rely on a throwaway allegation that his CCPA claim included "all preceding allegations in the FAC"—courts routinely strike down this type of "shotgun pleading" as insufficient under federal pleading standards. *Baker v. ParkMobile, LLC*, No. 1:21-cv-2182-SCJ, 2022 WL 3704003, at *11 (N.D. Ga. Aug. 19, 2022) (dismissing statutory consumer claims supported by similar "shotgun pleading," and collecting cases). Further, Plaintiff's medical data allegedly input on some unidentified page(s) is not connected to any purported disclosure of information via the Facebook pixel and cannot support his CCPA claim.

## III. CONCLUSION

For these reasons and those in the motion, all claims should be dismissed with prejudice.

Dated: October 25, 2023

MORRISON & FOERSTER LLP

By: *s/ Tiffany Cheung*
Tiffany Cheung

*Attorneys for Defendant*
EXPRESS SCRIPTS HOLDING COMPANY