TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
Morrison & Foerster LLP
425 Market Street,
San Francisco, California  94105
Telephone:     415.268.7000
Facsimile:     415.268.7522

WHITNEY R. O'BYRNE (CA SBN 325698)
WObyrne@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017
Telephone:     213.892.5200
Facsimile:     213.892.5454

ELISABETH HUTCHINSON (admitted *pro hac vice*)
EHutchinson@mofo.com
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, Colorado  80202
Telephone:     303.592.1500
Facsimile:     303.592.1510

Attorneys for Defendant
EXPRESS SCRIPTS HOLDING COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JONATHAN LYNCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY,<br><br>Defendant. | Case No. 3:23-cv-01170-AMO<br><br>**DEFENDANT EXPRESS SCRIPTS HOLDING COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:            January 30, 2025<br>Time:            2:00pm<br>Courtroom:    10<br>Judge:           Hon. Araceli Martínez Olguín<br><br>Date Action Filed:  March 15, 2023<br>Trial Date:  N/A |

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:23-CV-01170-AMO
ny-2775013

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 30, 2025, at 2:00 pm, or at a different time and date set by the Court, Defendant Express Scripts Holding Company, Inc. will and hereby does move the Court for an order dismissing Plaintiff's Second Amended Complaint ("SAC" or "amended complaint") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that the amended complaint fails to state a claim upon which relief may be granted.

This Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; the Request for Judicial Notice; the Declaration of Tiffany Cheung ("Cheung Decl."); the Declaration of Matthew Edwards ("Edwards Decl."); the pleadings, files, and records in this action; and such additional evidence and arguments as may be presented at the hearing of this Motion.

Dated: September 3, 2024                    MORRISON & FOERSTER LLP


                                           By: */s/ Tiffany Cheung*
                                           Tiffany Cheung
                                           Whitney R. O'Byrne
                                           Elisabeth A. Hutchinson

                                           *Attorneys for Defendant*
                                           EXPRESS SCRIPTS HOLDING
                                           COMPANY

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................... 2

    A.  By Registering and Agreeing to Express Scripts' Privacy Policy, Plaintiff Consented to the Use of Pixel Technology on the Express Scripts Website ..... 2

    B.  Plaintiff's Allegations Concerning the Use of Pixel Technology ...................... 4

III. LEGAL STANDARD .............................................................................................. 6

IV.  LEGAL ARGUMENT ............................................................................................. 7

    A.  Plaintiff Fails to Satisfy Federal Pleading Standards ......................................... 7

    B.  Plaintiff Consented to Express Scripts' Use of Pixel Technology ..................... 8

    C.  Plaintiff's Wiretap Claims Fail on Multiple Other Grounds .............................. 10

        1.  Express Scripts' consent alone defeats the ECPA claim ........................ 10

        2.  Express Scripts cannot "wiretap" its own website ................................. 10

        3.  No "contents" of communications were disclosed ................................. 11

        4.  No communications were intercepted "in transit" ................................. 13

    D.  Plaintiff's CIPA Claim Fails for Two Additional, Independent Reasons ........... 14

        1.  Plaintiff does not adequately plead "aiding and abetting" ...................... 14

            a.  Plaintiff does not allege Meta perpetrated a crime ..................... 15

            b.  Plaintiff does not allege Express Scripts intended to assist Meta in committing a crime ................................................................ 17

            c.  Plaintiff does not allege Express Scripts took action to further a purported crime ........................................................................ 17

        2.  Section 631 does not apply to extraterritorial conduct ........................... 18

    E.  Plaintiff Fails to State a Claim Under Section 56.101 of the CMIA .................. 19

        1.  Plaintiff fails to allege his medical information is at issue ...................... 19

        2.  Plaintiff does not allege his medical information was *actually viewed* by a third party ......................................................................................... 21

V.   CONCLUSION ........................................................................................................ 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. v. Selectquote Ins. Servs.*,
No. 3:23-cv-02258-RBM-MSB, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .................... 15

*Apumac, LLC v. Flint Hills Int'l*,
No. CV 14–07447–AB, 2015 WL 13306128 (C.D. Cal. Feb. 6, 2015) .................................... 7

*Ashcroft v. lqbal*,
556 U.S. 662 (2009) ......................................................................................................... 6, 9

*B.K. v. Desert Care Network*,
No. 2:23-cv-05021-SPG-PD, 2024 U.S. Dist. LEXIS 152953 (C.D. Cal. Aug.
22, 2024) ............................................................................................................................ 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................. 6

*In re Blackbaud, Inc. Customer Data Breach Litig.*,
No. 3:20-mn-02972-JMC, 2021 WL 3568394 (D.S.C. Aug. 12, 2021) .......................... 19, 21

*Brackett v. Am. Airlines Grp. Inc.*,
No. 21-cv-02681-HSG, 2022 WL 282529 (N.D. Cal. Jan. 31, 2022) .................................... 18

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................................................. 11

*Bunnell v. Motion Picture Ass'n of Am.*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................................... 13

*Byars v. Hot Topic, Inc.*,
No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) .................. 15

*Carrese v. Yes Online Inc.*,
No. CV 16-05301 SJO, 2016 WL 6069198 (N.D. Cal. Oct. 13, 2016) ................................. 18

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ................................................................................................. 7

*Cousin v. Sharp Healthcare,*
    681 F. Supp. 3d. 1117 (S.D. Cal. 2023) ................................................................... 22

*Cousineau v. Microsoft Corp.,*
    992 F. Supp. 2d 1116 (W.D. Wash. 2012) ............................................................... 12

*Doe v. Google LLC,*
    No. 23-cv-02431-VC, 2024 WL 3490744 (N.D. Cal. July 22, 2024) ............................. *passim*

*Doe v. Regents of Univ. of Cal.,*
    No. 23-cv-00598-WHO, 2023 WL 3316766 (N.D. Cal. May 8, 2023) ................................ 22

*Eisenhower Med. Ctr. v. Super. Ct.,*
    226 Cal. App. 4th 430 (2014) ........................................................................ 19, 20

*In re Facebook, Inc. Internet Tracking Litig.,*
    956 F.3d 589 (9th Cir. 2020) .............................................................................. 10

*Garcia v. Enter. Holdings, Inc.,*
    78 F. Supp. 3d 1125 (N.D. Cal. 2015) ................................................................... 10

*Graham v. Noom, Inc.,*
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ......................................................... 10, 11, 13

*Hammerling v. Google LLC,*
    No. 21-cv-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ............................... 18

*Hunthausen v. Spine Media, LLC,*
    678 F. Supp. 3d 1228 (S.D. Cal. 2023) .................................................................... 6

*Javier v. Assurance IQ, LLC,*
    No. 4:20-CV-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ................................. 9

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) .............................................................................. 7

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) .............................................................................. 6

*Konop v. Hawaiian Airlines, Inc.,*
    302 F.3d 868 (9th Cir. 2002) ............................................................................... 13

*Kurowski v. Rush Sys. for Health*,

No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) .................................................. 11

*Lindsay-Stern v. Garamszegi*,

No. SACV-14-01970-CJC(DFMx), 2016 WL 11745948 (C.D. Cal. Oct. 13,

2016) ................................................................................................................................... 14

*Martin v. Sephora USA, Inc.*,

No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ...................... 13

*Mastel v. Miniclip SA*,

549 F. Supp. 3d 1129 (E.D. Cal. 2021).................................................................. 14, 15, 17

*McHenry v. Renne*,

84 F.3d 1172 (9th Cir. 1996)................................................................................................ 8

*Moretti v. Hertz Corp.*,

No. C 13-02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014)..................................... 9

*Nguyen v. Barnes & Noble Inc.*,

763 F.3d 1171 (9th Cir. 2014)............................................................................................... 9

*Pena v. GameStop, Inc.*,

No. 22-CV-1635 JLS (MDD), 2023 WL 3170047 (S.D. Cal. Apr. 27, 2023)........................ 11

*People v. Perez*,

35 Cal. 4th 1219 (2005) ............................................................................................... 15, 17

*R.C. v. Walgreens Co.*,

No. EDCV 23-1933 JGB (SPx), 2024 WL 2263395 (C.D. Cal. May 9, 2024) ................ 12, 20

*Regents of Univ. of Calif. v. Super. Ct.*,

220 Cal. App. 4th 549 (2013) ............................................................................................. 19

*Rodriguez v. Google LLC*,

No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021).............................. 7, 10

*Rodriguez v. Google LLC*,

No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)...................................... 14

*Saleh v. Nike, Inc.*,

  562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................................ 11

*Silver v. Stripe Inc.*,

  No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ............................... 9

*Smith v. Facebook, Inc.*,

  262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd* 745 F. App'x 8 (9th Cir. 2018) .................. 20, 21

*Smith v. Facebook, Inc.*,

  745 F. App'x 8 (9th Cir. 2018) ......................................................................................... 9

*Sullivan v. Oracle Corp.*,

  51 Cal. 4th 1191 (2011) ................................................................................................. 18

*Sutter Health v. Super. Ct.*,

  227 Cal. App. 4th 1546 (2014) ....................................................................................... 21

*Vess v. Ciba-Geigy Corp. USA*,

  317 F.3d 1097 (9th Cir. 2003) .......................................................................................... 7

*Vigil v. Muir Med. Grp. IPA, Inc.*,

  84 Cal. App. 5th 197 (2022) ........................................................................................... 21

*In re Vizio, Inc. Consumer Priv. Litig.*,

  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................................................... 13

*Wilson v. Rater8, LLC*,

  No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ........................ 19, 20

*In re Yahoo Mail Litig.*,

  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................................... 10

*Yoon v. Lululemon USA, Inc.*,

  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................................................... 12

*In re Zynga Priv. Litig.*,

  750 F.3d 1098 (9th Cir. 2014) .................................................................................... 11, 12

**Statutes**

California Invasion of Privacy Act ("CIPA") .............................................................................*passim*

Confidentiality of Medical Information Act ("CMIA") ....................................................... 8, 19, 21

Electronic Communications Privacy Act of 1986 ("ECPA") ..................................................... 8, 13

**Other Authorities**

Fed. R. Civ. P. 8 ..................................................................................................................... 8

Fed. R. Civ. P. 9(b) ......................................................................................................... 6, 7, 8

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 6

**STATEMENT OF ISSUES TO BE DECIDED**

1.     **Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510-2523 (Claim 1).**  Whether Plaintiff's ECPA claim should be dismissed because (i) the amended complaint fails to satisfy federal pleading standards; (ii) Plaintiff consented to the use of pixel technology on the Express Scripts website; (iii) Express Scripts consented to the use of pixel technology on its website; (iv) Plaintiff concedes that Express Scripts was the intended recipient of his communications; (v) Plaintiff does not factually allege that Express Scripts disclosed any "contents" of communications within the meaning of ECPA; and (vi) Plaintiff has not alleged that his purported communications were intercepted while "in transit."

2.     **California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 (Claim 2).**  Whether Plaintiff's CIPA claim should be dismissed because (i) the amended complaint fails to satisfy federal pleading standards; (ii) Plaintiff and Express Scripts consented to the use of pixel technology on the Express Scripts website; (iii) Plaintiff concedes that Express Scripts was the intended recipient of his communications; (iv) Plaintiff does not factually allege that Express Scripts disclosed any "contents" of communications within the meaning of CIPA; (v) Plaintiff has not alleged that his purported communications were intercepted while "in transit"; (vi) Plaintiff's aiding and abetting theory fails; and (vii) Section 631 does not apply extraterritorially to alleged conduct outside California.

3.     **Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.101 (Claim 3).**  Whether Plaintiff's CMIA claim should be dismissed because (i) the amended complaint fails to satisfy federal pleading standards; (ii) Plaintiff consented to the use of pixel technology on the Express Scripts website; and Plaintiff does not plausibly allege that (iii) his confidential medical information was released or (iv) any third parties actually viewed such information.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

For the third time, Plaintiff has presented a complaint that fails to meet the basic requirements of federal pleading standards.  The Second Amended Complaint ("SAC" or "amended complaint") is riddled with the same inconsistencies and speculative assertions from Plaintiff's prior complaints.  Despite this Court's explicit guidance, Plaintiff continues to allege that both Express Scripts *and* Meta intercepted his purported communications, a theory that is both contradictory and unsupported by the facts alleged.

Plaintiff has also again failed to establish any connection between the Meta Pixel and the alleged sensitive information Plaintiff claims was intercepted.  That Plaintiff alleges he entered medical information on some unidentified page within Express Scripts' website to place prescription orders is unsurprising; Express Scripts provides online pharmacy services.  But Plaintiff fails to adequately plead that Plaintiff's medical information was then communicated to Meta.  There are different types of webpages on Express Scripts' website: non-authenticated webpages (public pages that anyone with an Internet connection can visit for general information) and authenticated webpages (pages only Express Scripts members can access after registering for and logging into their account).  To have captured any of the medical information Plaintiff alleges he input into the website, he would have had to enter that information on an authenticated page.  But he never alleges that the Meta Pixel was embedded on an authenticated webpage where he could have entered medical information.

Despite three attempts, Plaintiff still does not adequately allege how the Meta Pixel functions or how website operators, including Express Scripts, utilize it.  The SAC alleges that the Pixel was active whenever a user takes any action on either Express Scripts' website or its application.  But that is not how it works.  The Meta Pixel is embedded only in specific pages of the website and can be configured to capture visitor inputs or not.  Fatal to his claims, Plaintiff does not allege that the Pixel was configured to capture the contents of any form, nor that it was embedded on an authenticated webpage on which his purported medical information may have

been entered.  Nor does he specify what elements of his information were allegedly disclosed that could support his claims.  Plaintiff cannot cure this deficiency.

In any event, to be able to place a prescription request via the Express Scripts website or its iPhone or Android applications (what Plaintiff refers to collectively as the "Platform"), as he alleges, Plaintiff was required to create an account on the Platform.  When creating an account on the Platform, Plaintiff was required to consent to the exact conduct at issue in this litigation: Express Scripts' use of pixel technology, including the Meta Pixel.  Express Scripts members cannot register for an account without agreeing to the use of this technology, whether they register via the Express Scripts website or the app.

Thus, without any basis in fact allegations or a clear theory of liability, Plaintiff once again contends that the use of the Meta Pixel on the Express Scripts Platform constitutes illegal wiretapping under ECPA and CIPA, as well as a violation of the CMIA.  Plaintiff's repeated inability to present a viable claim demonstrates that further amendment would be futile.  The SAC should be dismissed with prejudice.  Express Scripts should not be forced to continue to respond to unfounded allegations that fail to state a claim.

II.    **FACTUAL BACKGROUND**

A.    **By Registering and Agreeing to Express Scripts' Privacy Policy, Plaintiff Consented to the Use of Pixel Technology on the Express Scripts Website**

Express Scripts is an online pharmacy and pharmacy benefits manager that serves over 100 million Americans.  (SAC ¶ 33.)  Plaintiff alleges he is a Facebook[1] user and California resident who visited the Express Scripts website "between April 2022 and December 2022" to obtain prescriptions for low insulin and testosterone levels.  (SAC ¶¶ 20, 71.)  Plaintiff alleges that a website enhancement tool called the Meta Pixel was embedded on the public-facing pages of the Express Scripts "Platform."  (*Id.* ¶¶ 74, 80, 96-98.) Plaintiff claims that on at least one of his visits to the Platform, Plaintiff transmitted electronic communications that were purportedly

---

[1] On October 28, 2021, Facebook changed its corporate name to Meta.  *See* Meta Platforms Inc., Amendments to Articles of Incorporation of Bylaws; Change in Fiscal Year (Form 8-K) (Oct. 28, 2021), https://www.sec.gov/Archives/edgar/data/1326801/000132680121000071/fb-20211028.htm.

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:23-CV-01170-AMO

2

"intercepted."  (*Id.* ¶¶ 75, 77.)

Plaintiff alleges he placed prescription requests with Express Scripts via the company's "website on his computer." (SAC ¶ 20.)  To be able to place a prescription request via the website, all users must create an account on the Platform.  (Declaration of Matthew Edwards ("Edwards Decl.") ¶ 2.)  In turn, to create an account, users must agree to Express Scripts' Terms of Use and Privacy Policy—policies that explicitly disclose the conduct at issue in this litigation. (*Id.* ¶ 3.)  Specifically, since at least January 2022, as shown in the following screenshot, all users have been required to agree to Express Scripts' Terms of Use and Privacy Policy to create an account:



(*Id.*, Ex. A.)[2]

As part of the Privacy Policy that Plaintiff agreed to, he was "deemed to have assented to the terms and conditions contained in this Privacy Policy when you use the Site and/or when you

---

[2] Plaintiff alleges access to the Express Scripts website through his computer and the screenshot shows the registration flow for the website.  (SAC ¶ 20.)  If Plaintiff registered via the Express Scripts app, he still consented to the same Terms and Privacy Policy via a substantially identical registration page used for Express Scripts' app.  (Edwards Decl., Exs. D, E.)

have indicated in your online registration that you accept the Terms of Use into which this Privacy Policy is incorporated." (Edwards Decl., Ex. B at 14.) Similarly, the Terms of Use in effect at the time of Plaintiff's registration also highlight "**PRIVACY POLICY**" in bold, capitalized letters and provide, "You agree to the Internet privacy policy ('Privacy Policy'), which is incorporated by reference in these Terms of Use." (*Id.*, Ex. C at 7.)

By agreeing to the Privacy Policy, Plaintiff was notified of and consented to the following key provisions:

- Express Scripts "may use certain in-house or third-party functionality to log and analyze your communications with us and interactions with the Site," (Edwards Decl., Ex. B at 7);

- Express Scripts "may embed *tracking pixels* or tags within various pages of the Site to enable use of site analytics and enhance Site functionality," (*id.* at 11 (emphasis added));

- Express Scripts "may use third parties to . . . provide Tracking Mechanism(s) that [Express Scripts] embed[s] in or use[s] with the Site, . . . provide advertisements and other information to you about the Site, products, and services through a third-party site based on a prior visit to the Site, . . . analyze communication with us and interactions with the Site, . . . [and] collect Non-Personal Information from you (e.g., on your interactions and/or experience with the Site and/or [Express Scripts])," (*id.* at 13 (under heading, "**THIRD-PARTY USAGE**," in bold, capitalized letters)); and

- Express Scripts "may also promote content of interest to you through social media," and a user "may opt out or configure [their] social media account settings to limit promotion of such content," (*id.* at 7).

In addition to these unambiguous disclosures, the Privacy Policy also provides clear instructions on actions users can take to control the information collected. (*Id.* at 12.) Plaintiff never alleges he took any of the identified actions on his social media accounts, including Meta, to manage his information after being informed of those instructions. (*See generally* SAC.)

**B.    Plaintiff's Allegations Concerning the Use of Pixel Technology**

Despite agreeing to the use of pixel technology and without any specificity to his

allegations, Plaintiff continues to maintain this lawsuit based on conclusory allegations that any use of the Meta Pixel on any portion of the Express Scripts website constitutes illegal wiretapping. Plaintiff did not follow the Court's directive to cure the pleading defects of his claims.

The allegations remain unclear as to who is actually doing the purported wiretapping. The SAC now includes allegations that Meta was the entity allegedly intercepting the communications via the Meta Pixel. (SAC ¶ 75.) However, Plaintiff simultaneously continues to allege that Express Scripts did the intercepting. (*Id.* ¶¶ 83, 84, 119.)

The SAC also remains unclear on what specific data elements were allegedly intercepted by any party that could possibly support Plaintiff's claims. Plaintiff alleges that he entered certain medical information into the Express Scripts Platform, presumably consisting of the information required to place a prescription order. (SAC ¶ 20.) And in the revised CMIA claim, Plaintiff now alleges that "Express Scripts disclosed medical information without first obtaining authorization when it disclosed to third party Facebook Plaintiff's and Class Members' data, including PII and prescription requests." (*Id.* ¶ 159.) But he never factually connects the dots required to make such an accusation. Rather, Plaintiff vaguely and inaccurately alleges that the Pixel was present whenever a user took *any* action on *any* page of the website: "As soon as an Express Scripts user takes any action on the Platform—such as clicking a button to register, login, or logout of the customer portal—Facebook's source code commands the customer's computing device to re-direct the content of the customer's communication to Facebook while the exchange of the communication between the customer and Defendant is still occurring." (*Id.* ¶ 52.) But nowhere does Plaintiff specify the webpage on which Plaintiff purportedly entered his "medical information."

Plaintiff's allegations are insufficient to plausibly allege that the Meta Pixel captured any of Plaintiff's "medical information." The Meta Pixel must be embedded on a *specific* webpage within a website operator's domain in order to capture any data. *See Doe v. Google LLC*, No. 23-cv-02431-VC, 2024 WL 3490744, at *2 (N.D. Cal. July 22, 2024) (explaining that the source

code of an online tracking tool "can exist on one page of a website but not another").  Further, the Pixel can be configured in various ways, allowing website operators to control the type and scope of data that is collected. *See Hunthausen v. Spine Media, LLC*, 678 F. Supp. 3d 1228, 1230 (S.D. Cal. 2023) ("Advertisers control what actions the tracking pixel will collect, including website's metadata[.]").

Plaintiff still offers no specifics on how Express Scripts' alleged use of the Meta Pixel on public websites could possibly have captured his medical information or prescription requests.  Thus, at most, Plaintiff only factually alleges that basic record information about his visits to the Express Scripts Platform were tracked by the Meta Pixel, such as mouse clicks, mouse hovers, mouse movements, keyboard inputs, IP address, page views, button clicks, and other similar data. (*E.g.*, SAC ¶¶ 53, 55, 76, 84, 87.)  Plaintiff offers nothing to adequately allege that any unauthorized party at Meta actually viewed (or even could have viewed) his substantive medical information.

Nevertheless, Plaintiff continues to assert three statutory claims against Express Scripts under ECPA, CIPA, and CMIA and seeks to bring these claims on behalf of a nationwide class and California subclass.  (SAC ¶ 111.)  For the reasons described below, each claim fails.

## III.    LEGAL STANDARD

In assessing a motion under Rule 12(b)(6), the Court should not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations; nor should it accept as true allegations contradicted by judicially noticeable facts.  *Ashcroft v. lqbal*, 556 U.S. 662, 677-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (discussing incorporation-by-reference doctrine).  Rather, factual allegations must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  If alleged facts are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and *plausibility* of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (emphasis added).

Rule 9(b) demands more.  It requires details about the who, what, when, and where of plaintiff's claims.  *See* Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud or mistake"); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  Rule 9(b) applies where, as here, a plaintiff asserts fraudulent conduct, whether or not plaintiff's claim is styled as fraud.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *Apumac, LLC v. Flint Hills Int'l*, No. CV 14–07447–AB (VBKx), 2015 WL 13306128, at *4 (C.D. Cal. Feb. 6, 2015) (noting that "Rule 9(b) applies to allegations of fraud, not just claims of fraud"); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

## IV.    LEGAL ARGUMENT

### A.    Plaintiff Fails to Satisfy Federal Pleading Standards

The heightened standard of Rule 9(b) applies to Plaintiff's claims, and Plaintiff fails to plead with any requisite specificity.  Rule 9(b) applies wherever a plaintiff asserts fraudulent conduct, whether or not plaintiff's claim is styled as fraud.  *See id.*  Here, Plaintiff repeatedly alleges that Express Scripts "secretly deployed" the Meta Pixel throughout the Express Scripts Platform (SAC ¶¶ 20, 23, 140-143) and "knowingly, actively, affirmatively and/or negligently concealed the facts alleged" (*id.* ¶ 124).  Because these allegations sound in fraud, Plaintiffs' claims are subject to Rule 9(b).  *See, e.g.*, *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726 at *6 (N.D. Cal. May 21, 2021) (holding "plaintiffs' 'secret scripts' story is woefully underdeveloped" and "wilts under Rule 9(b) scrutiny").[3]

Rule 9(b) requires plaintiffs to plead the circumstances constituting fraud with particularity.  *See* Fed. R. Civ. P. 9(b); *Cooper*, 137 F.3d at 627.  Plaintiff's allegations fall short of meeting this heightened pleading standard: Plaintiff offers no specifics as to how the Meta Pixel could have possibly captured his medical information on *public* pages of Express Scripts' website; he never factually alleges that the Meta Pixel intercepted his medical information; and

---

[3] *See also  Doe v. Google*, 2024 WL 3490744, at *3 ("[B]y insisting that Google's admonitions to health care providers are part of a plot to steal private health information from its clients, the plaintiffs may well be subjecting their intent-related allegations to the heightened pleading standard of Federal Rule of Civil Procedure 9(b)", but ultimately not reaching the issue because plaintiffs failed to satisfy Rule 8).

even if his vague allegations could be construed as factually alleging that certain information was captured, he consented to as much by agreeing to the Express Scripts Privacy Policy.

Plaintiff's claims do not even satisfy the basic Rule 8 standard. To satisfy Rule 8, Plaintiff must fully identify "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996). As Judge Chhabria recently explained in dismissing another pixel case based on the interception of purported health information, whether a pixel claim is analyzed under Rule 9 or Rule 8, plaintiffs *must* connect the technology at issue to the purported health information captured, otherwise the complaint is impermissibly vague. *Doe v. Google*, 2024 WL 3490744, at *2. Alleging that counsel performed an "investigation" does not provide any "details about their investigation," nor does it "explain how they have determined that their private health information has been intercepted." *Id.* These same flaws plague the amended complaint here.

Rather than offering Express Scripts an opportunity to challenge specifics, Plaintiff's theory is impossible to decipher. The SAC (despite being Plaintiff's third attempt to plead a proper complaint) provides zero information that could possibly leave Express Scripts or the Court able to discern what pages Plaintiff has put at issue in the litigation. A complaint concerning technical claims about a third-party technology deployed on an entire website, as opposed to specific webpages, fundamentally fails to satisfy any federal pleading standards where, as here, it "leave[s] the reader conspicuously unable to discern whether the source code [i.e., the third-party technology at issue] [was] placed on web pages where it doesn't belong." *Doe v. Google*, 2024 WL 3490744, at *3. In this case, it is not even clear which entity is allegedly doing the alleged intercepting. The SAC fails.

**B.      Plaintiff Consented to Express Scripts' Use of Pixel Technology**

To be able to place a prescription order on the Express Scripts website in April 2022 as he alleges, Plaintiff was required to register for an account and consent to the exact conduct of which Plaintiff complains: the use of pixel technology on the Express Scripts website. (Edwards Decl., Exs. A, D, & E.) Plaintiff's consent to the use of pixel technology defeats all of his claims. *See,*

*e.g.*, 18 U.S.C. § 2511(d) (ECPA imposes no liability if either party consents); Cal. Penal Code § 631(a) (CIPA does not impose liability if both parties consent); Cal. Civ. Code § 56.10(a) (CMIA limits liability to unauthorized disclosures).

A contract entered on the internet is enforceable if it puts a website user on actual or inquiry notice of the site's terms. *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1177 (9th Cir. 2014). Courts within this district "consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims" at the motion to dismiss stage. *Silver v. Stripe Inc*., No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (collecting cases). It is enough that "a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink"; if that exists, the plaintiff has agreed to "[a] binding contract." *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) (cleaned up); *Javier v. Assurance IQ, LLC*, No. 4:20-CV-02860-JSW, 2021 WL 940319, at *3-4 (N.D. Cal. Mar. 9, 2021) (dismissing CIPA claims based on similar clickwrap agreement, "which courts routinely uphold as valid"). The question of consent thus boils down to whether Plaintiff was put on notice of the alleged conduct. That answer is yes.[4]

Plaintiff's consent to the Privacy Policy during his registration on the Express Scripts website, which was required for him to be able to place prescriptions orders via the website as he alleges (*see* Edwards Decl., Exs. A, D, & E), constitutes a binding contract between Express Scripts and Plaintiff wherein Plaintiff agreed to the use of website enhancement technology, including pixels. The express disclosures throughout the Privacy Policy are more than adequate to put a reasonable person viewing those disclosures on notice that Express Scripts uses website enhancement technology, including pixels on certain pages within its domain; that the record data collected from this technology may be shared with third parties; and that the technology is used to promote site functionality and for marketing.

[4] Plaintiff's threadbare allegation of lack of consent (*e.g.*, SAC ¶ 20) is not entitled to any weight, particularly given Plaintiff's consent to the Terms of Use and Privacy Policy to create an account during the time period allegedly at issue. *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Plaintiff's consent demands dismissal of Plaintiff's claims. *See, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (dismissing wiretap claims associated with website enhancement technology where "[a] reasonable person viewing those disclosures would understand that Facebook maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes"); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (taking judicial notice of "documents proffered by Defendants establish[ing] that in order to sign up for and use [the application], a user must agree to the [terms] and Privacy Policy" and dismissing wiretap claims despite plaintiff's conclusory allegation of lack of consent).

### C.    Plaintiff's Wiretap Claims Fail on Multiple Other Grounds.

#### 1.    Express Scripts' consent alone defeats the ECPA claim

Under ECPA, the consent to the purported interception by one party to the communication is a complete defense. *See, e.g.*, *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014). Plaintiff concedes that Express Scripts was the intended recipient of any information allegedly input by Plaintiff onto the Express Scripts Platform. (*E.g.*, SAC ¶ 75 (describing Plaintiff's activity on the Platform as "communications between Plaintiff and Defendant").) It thus follows that Express Scripts was a party to the communication. Plaintiff also alleges that Express Scripts "intentionally employed" the Meta Pixel (*id.* ¶ 131) and enabled the "interception" the alleged communications using the Meta Pixel (*id.* ¶¶ 78-79, 83-84, 88). Plaintiff therefore continues to allege that Express Scripts consented to the use of the technology on its website. For this reason alone, Plaintiff's ECPA claim must be dismissed: ECPA is a one-party consent statute, and Express Scripts consented to the use of the Meta Pixel on its website and app. *See, e.g.*, *Rodriguez v. Google*, 2021 WL 2026726, at *6 (dismissing ECPA claim because Google's alleged interceptions occurred with the consent of app developers).

#### 2.    Express Scripts cannot "wiretap" its own website

Both ECPA and CIPA contain an "exemption from liability for a person who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir.

2020).  It is well settled that "a party to a communication can record" the conversation under wiretap statutes "and is not eavesdropping when it does." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) (citations omitted).  As relevant here, when an internet user knowingly communicates with a website owner, the website owner is a party to the communication. *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 519 (C.D. Cal. 2021).  Because Express Scripts was a party to the communication, it could not have intercepted its own data under the one-party consent framework, refuting any allegation in the SAC that Express Scripts was the entity allegedly doing the intercepting.  (SAC ¶¶ 83, 84, 119.)  These allegations that Express Scripts used the Meta Pixel to intercept its own communications are barred by the party-exception rule, requiring dismissal of Plaintiff's ECPA and CIPA wiretap claims.  *See, e.g.*, *Pena v. GameStop, Inc.*, No. 22-CV-1635 JLS (MDD), 2023 WL 3170047, at *3 (S.D. Cal. Apr. 27, 2023) (granting defendant's motion to dismiss plaintiff's ECPA and CIPA claims because defendant was the known and intended recipient of the communications sent by plaintiff to defendant's website "such that each statute's 'party exception' bars [d]efendant's liability"); *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 2349606, at *4 (N.D. Ill. Mar. 3, 2023) (dismissing ECPA claim because defendant "was the intended recipient of the allegedly intercepted communications," and was "therefore a party to those communications and [could not] be liable under [ECPA] for its alleged interception of them, if such an interception even occurred").

### 3.  No "contents" of communications were disclosed

Plaintiffs' wiretap claims also fail because he does not allege that "contents" of communications were disclosed.  "[T]he term 'contents' refers to the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) (addressing "contents" under ECPA); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (explaining "contents" has same meaning under both ECPA and CIPA).  The "content" of a communication does ***not*** include "record information regarding the characteristics of the message that is generated in the course of the communication," such as:  the origination, length, and time of a telephone call; email, URL, and IP addresses; the geographic location of a mobile device;

and other basic identification and address information. *In re Zynga Priv. Litig.*, 750 F.3d at 1106; *see Graham*, 533 F. Supp. 3d at 833 ("[P]laintiffs predicate their [CIPA] claim in part on information — such as IP addresses, locations, browser types, and operating systems — that is not content."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (clicks, pages visited, keystrokes, and shipping and billing information are not "contents")*; see also R.C. v. Walgreens Co.*, No. EDCV 23-1933 JGB (SPx), 2024 WL 2263395, at *16 (C.D. Cal. May 9, 2024) (acknowledging that not every click or activity will amount to "content").

Here, at most, Plaintiff factually alleges only the collection of non-content record information. Repeatedly, Plaintiff bases his claims on routine record information allegedly collected about his *interactions* with the public-facing pages of the Express Scripts website. He alleges that the "communications" at issue included mouse clicks, mouse hovers, mouse movements, keyboard inputs, keystrokes, search items, IP address, page views, button clicks, and other *actions taken* while visiting the public-facing Express Scripts website. (SAC ¶¶ 7, 53, 55, 76-77, 84.) Such information does not reveal a substantive message about the Plaintiff's health concerns, and they are not "contents" under the wiretap statutes. Instead, this information is nonactionable "record information," meaning "information regarding the characteristics of the message," not the "intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106-09 (user's Facebook ID and the address of the webpage from which the user's request to view another webpage originated "does not constitute the contents of a communication"); *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1127 (W.D. Wash. 2012) ("[T]he term 'contents' does not include location information[.]").

The only potentially substantive information Plaintiff identifies is not connected to the Meta Pixel—he does not allege *facts* that connect the dots between his medical information and pages on which the Meta Pixel was embedded (the only pages of the website that matter for purposes of this litigation). Thus, Plaintiff's purported record information is all that is at issue, and that information does not support a claim under federal or state wiretap laws. The claims must be dismissed.

**4.      No communications were intercepted "in transit"**

Plaintiff's wiretap claims also fail because Plaintiff has not alleged that his purported communications were intercepted while in transit.  Both ECPA and CIPA make it unlawful to intentionally intercept, "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication" only "while the same is *in transit*."  Cal. Penal Code § 631(a) (emphasis added); *see* 18 U.S.C. § 2511.  For a communication "to be 'intercepted' . . . it must be acquired during transmission, not while it is in electronic storage," meaning the communication must be "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival."  *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (citation omitted).  California courts recognize that "[e]ven if the storage phase is transitory and lasts only a few seconds, it is still considered 'electronic storage[.]'"  *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007).

Here, Plaintiff alleges his "use of Defendant's Platform [was] *tapped and **thereafter delivered*** to the third-party, Facebook." (SAC ¶ 137 (emphasis added).) In other words, Plaintiff alleges that Plaintiff's communications were *recorded* and *then delivered* to Meta.  This is not interception in transit because "sharing a record is not eavesdropping."  *Graham*, 533 F. Supp. 3d at 833.

The "when" of the purported interception is critical, and allegations of "real time" interception do not provide "sufficient clarity."  *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1227-28 (C.D. Cal. 2017).  Plaintiff's continued vague allegations of "real time" and "contemporaneous" interception (SAC ¶¶ 9, 22, 84, 91) or that Meta receives information "immediately after the customer clicks the log-in button and even before Defendant receives it" (*id.* ¶ 56) are undermined by his specific allegation about the communications being transmitted to Meta *after* they reach Express Scripts.  *See, e.g.*, *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023) (rejecting same argument based on equally cursory allegations, collecting cases, and dismissing wiretap claims associated with website enhancement technology for lack of factual allegations that transmissions intercepted while in transit).  Under Plaintiff's theory, Meta could only have accessed the

communications *after* the communication was complete because once an electronic communication "has been *received by the destination server*, a communication becomes 'stored' and *contemporaneous interception is no longer possible*.'" *Lindsay-Stern v. Garamszegi*, No. SACV-14-01970-CJC(DFMx), 2016 WL 11745948, at *4 (C.D. Cal. Oct. 13, 2016) (emphasis added) (citation omitted).

Because Plaintiff does not allege that Express Scripts improperly intercepted any communications during transmission, the wiretap statutes do not apply and the claims should be dismissed. *See, e.g.*, *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *1-2 (N.D. Cal. Jan. 25, 2022) (dismissing CIPA claim where allegations showed plaintiffs' theory was "recording and then transmission, not interception," noting that baldly "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit").

### D.    Plaintiff's CIPA Claim Fails for Two Additional, Independent Reasons

#### 1.    Plaintiff does not adequately plead "aiding and abetting"

Although Plaintiff has dropped the "aiding and abetting" language in the SAC, his CIPA claim is still that of aiding and abetting. And he fails to satisfy the attendant pleading requirements as to the intent and conduct of both Express Scripts and Meta to sustain an aiding and abetting claim, even at the pleading stage.

Section 631(a) identifies three distinct patterns of conduct that may implicate direct liability: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (citing *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978); *see also In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *15 (N.D. Cal. Sept. 26, 2013)). Plaintiff's Section 631 claim against Express Scripts arises under an *indirect* theory of liability under the fourth clause, addressed to anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or

permit, or cause to be done any of the" other three bases for liability. *Mastel*, 549 F. Supp. 3d at 1134 (citing Cal. Penal Code § 631(a)); (*see, e.g.*, SAC ¶ 138.)  This fourth clause is an "aiding and abetting" claim under California's Penal Code.  *A.S. v. Selectquote Ins. Servs.*, No. 3:23-cv-02258-RBM-MSB, 2024 WL 3881850, at *10 (S.D. Cal. Aug. 19, 2024)

Plaintiff's amended complaint now includes the words "enabled," "employed," "used," or "utilized" instead of "aided" or "abetted" to describe the relationship between Express Scripts and Meta in the purported interception of Plaintiff's communications.  (*E.g.*, SAC ¶¶ 78, 84, 129-31.)  But the change in semantics does not change the pleading requirements.  To allege that Express Scripts "aided and abetted" Meta, Plaintiff must have pled allegations

> in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator [i.e., Meta], (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends [i.e., Express Scripts], and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime [i.e., Express Scripts].

*People v. Perez*, 35 Cal. 4th 1219, 1225 (2005).  Plaintiff fails to offer any such allegations.

### a.   Plaintiff does not allege Meta perpetrated a crime

To state a claim under the "aiding and abetting" clause of Section 631(a), the Plaintiff must allege that Meta violated one of the first three clauses of Section 631(a).  *See Selectquote Ins. Servs.*, 2024 WL 3881850, at *10; *Byars v. Hot Topic, Inc.*, No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994, at *9 (C.D. Cal. Feb. 14, 2023) (explaining that for aiding and abetting theory under Section 631(a), defendant's liability must be based on whether the third party "violated Section 631(a) in some way").  He fails to do so.

***Clause One.***  The first clause of Section 631(a), "intentional wiretapping," does not apply to internet communications like the ones alleged here. *See, e.g.*, *Selectquote Ins. Servs.*, 2024 WL 3881850, at *10 (collecting cases).

***Clause Two.***  Plaintiff has not alleged that Meta illegally attempted to learn the contents of his communications—nor could he, given his consent to the specific conduct at issue under Express Scripts' Privacy Policy.  *See Mastel*, 549 F. Supp. 3d at 1134-35 (explaining that the

second clause of Section 631(a) prohibits persons from reading or attempting to read communications "without consent or authorization"); (Edwards Decl., Ex. B.)

In addition, Plaintiff alleges he is a Facebook user (SAC ¶ 20), so he also consented to Meta's privacy policies to maintain an active Facebook account.  (Declaration of Tiffany Cheung ("Cheung Decl."), Ex. A.)  By agreeing to Meta's terms, Plaintiff consented to the use of the Meta Pixel and how it functions, including that Meta collects and receives information from partners about user information and activities on and off Meta's products and services.  (*E.g.*, *id.*, Exs. A, D, & E.)  Plaintiff consented to Meta collecting data about Plaintiff's browsing activities across different websites through cookies and tools like the Meta Pixel, including information about websites he visits and content he interacts with.  (*Id.*)

Known as "off-Facebook activity," Meta disclosed to Plaintiff that it tracks information obtained through browsing activities "to help personali[z]e and improve content and services, provide a safer experience and to show you useful and relevant ads on and off Meta Products." (Cheung Decl., Exs. D & E.)  Plaintiff thus consented to sharing his off-Facebook web activities, such as those captured on third-party websites, with Meta.  Meta also gives its account holders like Plaintiff the ability to stop Meta from tracking their off-Facebook activity.  (*See id.*, Exs. F.) Nowhere does Plaintiff allege that he ever disabled Meta's ability to track his off-Facebook activity.  Instead, he chose both to leave that feature enabled on his Facebook account and to consent to the use of pixel technology on the Express Scripts website.

What is more, Meta's privacy policy requires that its partners, like Express Scripts, have the right to collect, use and share off-Facebook activity before giving it to Meta.  (*See id.*, Ex. A.) Where, as here, a complaint "does not allege that Meta knew or should have known that the data it received . . . was collected without users' consent," the complaint fails "to allege that Meta itself violated CIPA."  *B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD, 2024 U.S. Dist. LEXIS 152953, at *6-8 (C.D. Cal. Aug. 22, 2024) (dismissing CIPA claim against health care providers based on plaintiffs' failure to plead Meta's intent to collect data without consent).

***Clause Three.*** Because Plaintiff has failed to state a claim under the second clause, any

claim under the third clause fails as a matter of law.  *See Mastel*, 549 F. Supp. 3d at 1137.

Without the required allegations of any violation of Section 631(a) by Meta, Plaintiff's indirect aiding and abetting theory against Express Scripts fails and should be dismissed.

### b.    Plaintiff does not allege Express Scripts intended to assist Meta in committing a crime

Plaintiff's aiding and abetting claim fails on the additional ground that Plaintiff has not alleged that Express Scripts intended to aid Meta in violating Section 631(a).  To meet aiding and abetting requirements, the Plaintiff must allege Express Scripts' knowledge of Meta's intent to engage in unlawful conduct and Express Scripts' intent to assist in achieving the unlawful conduct.  *See Perez*, 35 Cal. 4th at 1225.  Plaintiff has alleged neither.  Nowhere in the SAC does Plaintiff allege that Meta intended to violate Section 631(a), let alone that Express Scripts knew of such intent.  Meta's own privacy policies that Plaintiff cites explicitly disavow any such intent. (SAC ¶ 24 ("We prohibit businesses and organizations from sharing information with us, including health and financial data.").)  Nor has Plaintiff presented any factual allegations that Express Scripts was aware of any purported intent by Meta to illegally attempt to learn the contents of his alleged communications.  Thus, fatally missing from the SAC are allegations that Express Scripts intended to assist Meta in illegally intercepting these communications, shared the same mental state as Meta, or knew of criminal objectives harbored by Meta.

### c.    Plaintiff does not allege Express Scripts took action to further a purported crime

Plaintiff also has not alleged that Express Scripts engaged in any conduct that contributed to Meta's purported commission of a crime.  Plaintiff must have pled *conduct* by Express Scripts that assists the achievement of Meta's crime.  *See Perez*, 35 Cal. 4th at 1225.  While Plaintiff characterizes Express Scripts' alleged wrongdoing as "utiliz[ing] the Facebook Pixel to intercept the substance of Plaintiff's and Class Members' electronic communications" (SAC ¶ 84), this is not the same as factually alleging Express Scripts aided and encouraged Meta with the purpose of facilitating any alleged criminal activity.  Plaintiff has failed, once again, to satisfy the heightened standard for pleading a claim of aiding and abetting under the Penal Code.

**2.      Section 631 does not apply to extraterritorial conduct**

Nothing in CIPA displaces the "strong presumption against the extra-territorial application of California law." *Brackett v. Am. Airlines Grp. Inc.*, No. 21-cv-02681-HSG, 2022 WL 282529, at *2 (N.D. Cal. Jan. 31, 2022) (citing *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011)).  CIPA "protect[s] the right of privacy of *the people of this state*."  Cal. Penal Code § 630 (emphasis added).  Had the Legislature intended to provide for CIPA's extraterritorial application, it would have done so expressly.  But it did not, and Section 630's plain language must be given effect.

It is axiomatic that courts applying California law must "presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, . . . unless such intention is ***clearly expressed*** or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan*, 51 Cal. 4th at 1207 (internal quotation marks omitted) (emphasis added).  Because CIPA does not state or suggest it applies extraterritorially, any CIPA claim asserted by Plaintiffs on behalf of non-California residents must be dismissed. *See Carrese v. Yes Online Inc.*, No. CV 16-05301 SJO (AFMx), 2016 WL 6069198, at *4, *7 (N.D. Cal. Oct. 13, 2016) (CIPA claim brought by out-of-state resident only survived "to the extent the alleged recordings were made in California"). Here, Plaintiff does not limit his CIPA claim to California residents or his proposed California subclass.  (SAC ¶ 111.)  Instead, he improperly seeks to bring a California-specific claim on behalf of the entire nationwide class.

Moreover, Plaintiff's CIPA claim must be dismissed because Plaintiff fails to allege any data was intercepted *in California*, as is required under Section 631.  *Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) (dismissing plaintiff's Section 631 claim because plaintiffs "fail to allege that the data in question was intercepted in California, as is required under the CIPA").  Even as to any California subclass, Plaintiff fails to state a CIPA claim because Plaintiff does not factually allege that any wiretapping or eavesdropping took place in California.  Plaintiff alleges he transmitted electronic communications to the Express Scripts' computer servers utilized to operate the website during his visits to the website.  (SAC ¶ 76.)  However, he concedes that Express Scripts maintains its principal place of business in Missouri.  (*Id.* ¶ 14.)  Because Plaintiff fails to allege that Express

Scripts' challenged conduct occurred in California, Plaintiff's CIPA claim should be dismissed.

### E.      Plaintiff Fails to State a Claim Under Section 56.101 of the CMIA

Plaintiff fails to plausibly plead a CMIA Section 56.101 claim for two reasons. *First*, he does not allege that his substantive medical information was improperly released. *Second*, he does not allege that his substantive medical information allegedly provided to Express Scripts was actually viewed by an unauthorized third party.

#### 1.      Plaintiff fails to allege his medical information is at issue

Plaintiff has not sufficiently alleged the data purportedly transmitted to Meta constitutes "medical information" within the meaning of Cal. Civ. Code § 56.05(i). To state a claim under Section 56.101, a plaintiff must "plead[], and ultimately prov[e], that the confidential nature of the *plaintiff's medical information* was breached as a result of the health care provider's negligence." *Regents of Univ. of Calif. v. Super. Ct.*, 220 Cal. App. 4th 549, 570 (2013) (emphasis added) (dismissing Section 56.101 claim).

The CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, . . . mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i). Information must therefore be "substantive" in nature to trigger the CMIA in the first instance. *See, e.g.*, *Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS-LL, 2021 WL 4865930, at *4 (S.D. Cal. Oct. 18, 2021) (holding that a single text referring to the plaintiff's diagnostic examination did not pertain to "treatment" and therefore was not "medical information" under the CMIA). As California courts have emphasized, "[i]t is clear from the plain meaning of the statute that medical information cannot mean just any patient-related information held by a health care provider, but must . . . include 'a *patient's medical history, mental or physical condition, or treatment*.'" *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 435-36 (2014) (emphasis added); *In re Blackbaud, Inc. Customer Data Breach Litig.*, No. 3:20-mn-02972-JMC, 2021 WL 3568394, at *6 (D.S.C. Aug. 12, 2021) ("[A] prohibited release by a health care provider must include more than individually identifiable information . . . to constitute 'medical

information.'" (citation omitted)).

Here, Plaintiff fails to allege any *facts* connecting the Meta Pixel to his substantive medical information within the meaning of the CMIA. While Plaintiff claims that "prescription requests" were disclosed to Meta (SAC ¶ 159), these allegations are conclusory and devoid of any factual support—Plaintiff does not allege that the Meta Pixel was embedded on the pages where he could have placed any such prescription orders. Given the disconnect between Plaintiff's allegations about his medical information and the Meta Pixel, Plaintiff only puts (at most) basic record information at issue. Per the allegations, this includes basic mouse clicks, mouse hovers, mouse movements, keyboard inputs, IP address, page views, button clicks, and other similar data. (*E.g.*, *id.* ¶¶ 53, 55, 76, 84, 87.) That is not enough to support a CMIA claim.

Plaintiff's browsing information is not substantive medical information because "nothing about that information relates specifically to [Plaintiff's] health" and the information is "general health information that is accessible to the public at large." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-955 (N.D. Cal. 2017), *aff'd* 745 F. App'x 8 (9th Cir. 2018). In fact, "the mere fact that a person may have been a patient at the hospital at some time is *not sufficient*" to allege medical information under the CMIA. *Eisenhower*, 226 Cal. App. 4th at 435-36 (emphasis added). For this reason, even the alleged disclosure of "name, cellular telephone number, treating physician names, medical treatment appointment information, and medical treatment discharge dates and times" "is insufficient to allege disclosure of medical information under the CMIA." *Wilson*, 2021 WL 4865930, at *1, *5 (dismissing CMIA claim) (internal quotation marks omitted).

Plaintiff fails to connect the Pixel to any of the webpages where Plaintiff allegedly entered sensitive information (or any authenticated webpages at all), dooming his CMIA claim. *See Doe v. Google*, 2024 WL 3490744, at *2 (dismissing similar privacy claims, explaining that "what matters is where on the web property the source code exists"); *cf. Walgreens*, 2024 WL 2263395 at *7-8 (surviving motion to dismiss for invasion of privacy claim where plaintiffs alleged the pixels were embedded on the shopping cart page of a publicly available website, when they

purchased medical products).  Rather than connecting his health information to the Meta Pixel, Plaintiff indiscriminately claims that every time a user takes any action on any webpage within Express Script's public website, the Meta Pixel accesses the user's communication to Meta. (SAC ¶ 52.)  Courts have routinely explained that is not how pixel technology works.  *E.g.*, *Doe v. Google*, 2024 WL 3490744, at *2 (explaining that the source code of an online tracking tool "can exist on one page of a website but not another").

The transmission of information from unauthenticated, public webpages are not actionable under the CMIA where, as here, nothing but basic browsing activity is alleged to have been transmitted—such information does not constitute substantive medical information.  *Smith*, 262 F. Supp. 3d at 955; *see also Doe v. Google*, 2024 WL 3490744, at *2 ("The presence of source code on a homepage for a provider's website will result in different information being transmitted than the presence of source code on an appointment scheduling page within a patient portal."). Because Plaintiff does not specify that the Pixel was embedded on an authenticated webpage with which the Plaintiff interacted, Plaintiff's argument fails to allege that his substantive medical information was shared with Meta, and his CMIA claim must be dismissed.  *See, e.g.*, *In re Blackbaud*, 2021 WL 3568394, at *6-7 (dismissing CMIA claims of plaintiffs who failed to allege "information relating to their medical history, mental or physical condition or treatment was disclosed" (cleaned up) (citation omitted)).

### 2. Plaintiff does not allege his medical information was *actually viewed* by a third party

Plaintiff's CMIA claim independently fails because he still fails to allege that his sensitive medical information was *actually viewed* by an unauthorized third party.  The text of Section 56.101 makes clear that "preserving the confidentiality of the medical information, not necessarily preventing others from gaining possession of the paper-based or electronic information itself, is the focus of the legislation."  *Sutter Health v. Super. Ct.*, 227 Cal. App. 4th 1546, 1556 (2014) (italics omitted).  Under Section 56.101, there is no breach of confidentiality, and therefore no "negligent" "release" until an unauthorized person *actually views* the purported medical information.  *Id.* at 1557; *see Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197,

218 (2022) (holding breach of confidentiality under Section 56.101 requires a showing that an unauthorized party viewed the confidential information).

In the amended complaint, Plaintiff continues to merely allege that Meta is generally in the business of harvesting data, which is insufficient to plead a valid CMIA claim. (SAC ¶ 162.) There are *zero* allegations in the amended complaint from which it could be plausibly inferred that substantive medical information was actually viewed, or that Plaintiff received any targeted advertisements following his use of the Express Scripts website. *Compare* SAC ¶¶ 185-92 *with Doe v. Regents of Univ. of Cal.*, No. 23-cv-00598-WHO, 2023 WL 3316766, at *4 (N.D. Cal. May 8, 2023) (upholding CMIA claims in case involving pixel technology only because plaintiff clearly alleged "that she entered medical information," that such information was disclosed, and that "after she entered her information into UCSF's patient portal, she began receiving advertisements on Facebook for high blood pressure medication as well as targeted email advertisements relating to the same").

As other federal courts have held when facing similar allegations, Plaintiff's allegations are insufficient, and the CMIA claim should be dismissed. *See, e.g., Cousin v. Sharp Healthcare*, 681 F. Supp. 3d. 1117, 1129 (S.D. Cal. 2023) (dismissing CMIA claim where plaintiff failed to allege she received or was subject to an increase in targeted advertisements following use of defendant's website in which the Meta Pixel was embedded).

## V.      CONCLUSION

This is Plaintiff's third attempt to plead a plausible claim. He has once again failed to do so. He should not continue to be given additional bites at the proverbial apple—he has not and cannot state a claim here. The alleged "interception" of basic record information on *public* websites are neither contents of communications nor substantive medical information. Even if Plaintiff could allege any "interception" of "contents" by Meta, Plaintiff expressly consented to the use of pixel technology on Express Scripts' website. Plaintiff's federal and state statutory claims fail under his own allegations, and these defects cannot be cured in a *fourth* round of pleading. Enough is enough. The SAC should be dismissed with prejudice.

Dated: September 3, 2024

MORRISON & FOERSTER LLP

By: */s/ Tiffany Cheung*
    Tiffany Cheung

*Attorneys for Defendant*
EXPRESS SCRIPTS HOLDING
COMPANY