**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jgavenman@bursor.com

**THE BARRY LAW OFFICE, LTD**
Peter F. Barry (MN #0266577)
Admitted *pro hac vice*
333 Washington Ave No, Suite 300-9038
Minneapolis, MN 55401-1353
Telephone: (612) 379-8800
E-mail: pbarry@lawpoint.com

**SWIGART LAW GROUP, APC**
Joshua B. Swigart (State Bar No. 225557)
2221 Camino del Rio S, Suite 308
San Diego, CA 92108
Telephone: (866) 219-3343
Facsimile: (866) 219-8344
E-mail: Josh@SwigartLawGroup.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JONATHAN LYNCH, individually and on behalf of all others similarly situated,

Plaintiff,

v.

EXPRESS SCRIPTS HOLDING COMPANY,

Defendant.

Case No. 3:23-cv-01170-AMO

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Date: January 11, 2024
Time: 2:00 p.m.
Courtroom: 10
Judge: Hon. Araceli Martínez-Olguín

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ..... 1

LEGAL STANDARD ..... 2

ARGUMENT ..... 3

I. PLAINTIFF ADEQUATELY ALLEGES HIS CLAIMS ..... 3

II. PLAINTIFF DID NOT CONSENT TO THE USE OF META'S PIXEL TECHNOLOGY ON THIRD-PARTY WEBSITES ..... 4

III. PLAINTIFF HAS SUFFICIENTLY PLEADED HIS WIRETAPPING CLAIMS ..... 6

A. Defendant Is Liable For Enabling Facebook's Wiretapping ..... 6

B. Plaintiff Has Alleged Interception Of "Content" ..... 8

C. Plaintiff Has Pleaded Interception Of Communications "In Transit" ..... 9

D. Plaintiff's CIPA Claim Is More Than Sufficiently Pleaded ..... 11

1. Plaintiff Alleges That Defendant "Aided, Agreed With, Employed, And Conspired With" Facebook In Violation Of The Fourth Prong Of CIPA § 631(a) ..... 11

2. Defendant Cannot Avoid Liability Under Clause Four By Claiming Its Users Consented To Facebook's Data Collection Practices ..... 14

3. The Territorial Scope Of The Class Should Be Decided At Class Certification ..... 16

IV. DEFENDANT VIOLATED THE CMIA ..... 16

A. Plaintiff Has Alleged His Medical Information Is At Issue ..... 17

B. Plaintiff Plausibly Alleged His Medical Information Was Actually Viewed By A Third Party ..... 20

CONCLUSION ..... 22

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2, 3, 21

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ........ 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 2, 3, 4

*Bonnichsen v. United States*,
367 F.3d 864 (9th Cir. 2004) ........ 7

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 6

*Bunnel v. Motion Picture Ass'n of Am.*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007) ........ 11

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ........ 8

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 14

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
824 F.3d 1156 (9th Cir. 2016) ........ 2, 3

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 10

*Clancy v. The Bromley Tea Co.*,
308 F.R.D. 564 (N.D. Cal. 2013) ........ 14, 16

*Colleen M. v. Fertility & Surgical Assocs. Of Thousand Oaks*,
132 Cal. App. 4th 1466 (2005) ........ 17, 18

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 12, 13

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 6

*Eisenhower Med. Ctr. v. Superior Court*,
226 Cal. App. 4th 430 (2014) ........ 17, 18

*Fitzhenry-Russell v. Coca-Cola Co.*,
2017 WL 4680073 (N.D. Cal. Oct. 18, 2017) .......... 14, 16

*Garcia v. Yeti Coolers, LLC*,
2023 WL 5736006 (C.D. Cal. Sept. 5, 2023) .......... 7

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 11

*Harris v. Harris*,
935 F.3d 670 (9th Cir. 2019) .......... 6

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 9

*In re Cell Tower Litig.*,
2012 WL 1903883 (S.D. Cal. May 24, 2012) .......... 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 7, 8

*In re Glenfed, Inc. Securities Litigation*,
42 F.3d 1541 (9th Cir. 1994) .......... 3

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 15

*In re Lenovo Adware Litig.*,
2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .......... 6

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litigation*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) .......... 21

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 8, 14, 15, 19

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) .......... 6

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) .......... 6

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litigation,*
613 F. Supp. 3d 1284 (S.D. Cal. 2020) .......... 21

*In re Tracht Gut, LLC*,
836 F.3d 1146 (9th Cir. 2016) .......... 14, 20

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 10

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014)........................................................................... 10

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)........................................................................... 3

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)........................................................................... 10

*Lehman Brothers Holdings, Inc. v. Mason McDuffie Mortgage Corp.*,
2013 WL 76285 (N.D. Cal., Jan. 4, 2013)........................................................................... 20, 21

*Lindsay-Stern v. Garamszegi*,
2016 WL 11745948 (C.D. Cal. Oct. 13, 2016)........................................................................... 11

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023)........................................................................... 10

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016)........................................................................... 5

*Moore v. Kayport Package Exp., Inc.*,
885 F.2d 531 (9th Cir. 1989)........................................................................... 3

*People v. Perez*,
35 Cal. 4th 1219 (2005)........................................................................... 13

*People v. Snyder*,
22 Cal. 4th 304 (2000)........................................................................... 7

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022)........................................................................... 7

*Precht v. Kia Motors Am., Inc.*,
2014 WL 10988343 (C.D. Cal. Dec. 29, 2014)........................................................................... 14, 16

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)........................................................................... 7, 9, 12

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)........................................................................... 9

*Rickwalder v. Meta Platforms, Inc.*,
2022 WL 22462351 (Cal.Super. Sep. 15, 2022)........................................................................... 15

*Rodriguez v. Ford Motor Co.*,
2024 WL 1223485 (S.D. Cal. Mar. 21, 2024)........................................................................... 13

*Rodriguez v. Google, LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022)........................................................................... 11

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 7, 8

*Smith v. Facebook*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 18, 19

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 3

*Stasi v. Inmediata Health Grp. Corp*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 21

*Valenzuela v. Nationwide Mutual Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 7

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 3

*Wilson v. Rater8, LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) .......... 18

*Yan Mei Zheng-Lawson v. Toyota Motor Corp.*,
2018 WL 2298963 (N.D. Cal. May 21, 2018) .......... 14, 16

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 7, 8

**STATUTES**

18 U.S.C. § 2510 .......... 4

18 U.S.C. § 2511(2)(d) .......... 5

Cal. Civ. Code § 56 .......... 4, 16, 17

Cal. Pen. Code § 631 .......... passim

Cal. Pen. Code § 632(a) .......... passim

**RULES**

Fed. R. Civ. P. 9(b) .......... 3, 4

Fed. R. Civ. P. 12(b)(6) .......... 2, 4

Fed. R. Evid. 201(b)(2) .......... 5

**REGULATIONS**

45 C.F.R. § 160.103 .......... 20

## INTRODUCTION

Thousands of people turn to Express Scripts ("Defendant") each month for medical treatment and prescription discounts. No one would expect that their use of Express Scripts would, in turn, deliver their sensitive health data to the hands of third parties to be used for whatever purpose they see fit. But that is exactly what happened: Express Scripts disclosed, and Meta Platforms, Inc. ("Facebook" or "Meta") intercepted, users' health data from the Express Scripts platform whenever they accessed the website. This occurred by design, not by accident, because Defendant installed the "Facebook Tracking Pixel" (the "Pixel") on its website and programmed it to quietly listen in on patients' communications with Defendant.

The Facebook Tracking Pixel is a piece of code that can be integrated into websites, like Defendant's, by incorporating it in the website's source code. When a person visits a website that contains the Pixel, the Pixel tracks their actions across the website and transmits the information—including the user's private communications (HTTP Requests), personal identifying information, and information about their past, present, or future medical conditions and/or treatment—to Facebook's servers. The information Facebook receives is transmitted alongside the website visitor's "c_userID" (*i.e.*, Facebook ID) which associates and links that information to the visitor's Facebook profile. Facebook then compiles this information into generalized datasets, allowing Defendant to run advertisements that target users who viewed particular content.

Importantly, this would not have happened but for Defendant's decision to install the Pixel. Although the Pixel is automatically configured to collect certain data, website owners, like Defendant, can instruct the Pixel to capture more specific pieces of information. Plaintiff Jonathan Lynch ("Plaintiff") therefore alleges that, by placing this tracking tool throughout the Express Scripts website, Defendant knowingly disclosed his medical information to Facebook and intentionally assisted the social media giant with intercepting his communications.

Plaintiff adequately pleads his claims. Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("MTD") (ECF No. 54) ignores large swaths of the Second Amended Class Action Complaint ("SAC") (ECF No. 51) to reframe its intentional, self-interested privacy violations as merely consensual activities of which Plaintiff was fully aware. Setting aside that the

SAC details how the Pixel intentionally tracks, collects, and uses a customer's information acquired from Defendant's website in real time for its own purposes, Defendant disputes its alleged "intent" as though none of Plaintiff's factual allegations has weight. Defendant's attempt to minimize its alleged misconduct by focusing on the Facebook policy documents attached to its motion is simply not supported by the robust allegations laid out in the SAC. Defendant cannot prevail on its motion by simply ignoring key allegations in the case.

Similarly, Defendant misconstrues case law, manufactures statutory exceptions, and purports to raise legal defenses that have been squarely rejected in this District and by California jurisprudence. Plaintiff alleges that Defendant surreptitiously permitted Facebook to track the data he inputted into the website through the installed Pixel, as well as how he interacted with the website, including mouse movements and clicks, keystrokes, etc.; that the tracking, interception, and collection of Plaintiff's information included private personal and medical information such as his phone number, address, payment information, and medical diagnosis history; and, that Facebook subsequently used this private data through aggregation, association, and profiling of Plaintiff's information to feed its advertising systems. These allegations are sufficient under the law to state the claims asserted in the SAC. Defendant's MTD should therefore be denied.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the 'grounds' of 'his entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Legal conclusions are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 545. The Court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff," *Caltex Plastics, Inc.*, 824 F.3d at 1159, but it need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The more stringent pleading requirements of Federal Rule of Civil Procedure 9(b) apply to allegations of fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) requires particularity as to the circumstances of the fraud – this requires pleading facts that by any definition are 'evidentiary': time, place, persons, statements made, explanation of why or how such statements are false or misleading." *In re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994); *see also Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient.").

## ARGUMENT

### I. PLAINTIFF ADEQUATELY ALLEGES HIS CLAIMS

Defendant argues that Plaintiff's claims fail to satisfy Rule 9(b)'s heightened pleading Standard. MTD at 7-8. That is wrong. "Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v. Ciba-*

*Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)). Plaintiff asserts claims for (1) violation of the Wiretap Act, 18 U.S.C. § 2510 *et seq.* ("ECPA" or "Wiretap Act"); (2) violation of the California Invasion of Privacy Act, Cal. Pen. Code § 631 ("CIPA"); and (3) violation of the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.* ("CMIA"). SAC ¶ 1. None of these sound in fraud, rendering Rule 9(b) inapplicable.

Nonetheless, the pleading meets this heightened standard because it sets forth the: *who*—Defendant (and Facebook), SAC ¶¶ 129, 135, 156; *what*—unlawful tracking, interception, collection, and use of Plaintiff's information and data via the Pixel, SAC ¶¶ 131, 145, 160; *when and where*—in real-time when users access Defendant's website and input information, and Facebook's use of the data by aggregating and associating user information for purposes of advertising, SAC ¶¶ 129, 135, 161, and *how*—via Facebook Pixel spyware. These allegations are sufficient to satisfy the requirements of Rule 9(b).

There is no legitimate question that the SAC satisfies Rule 8's more liberal standard. Under Rule 8(a), the plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Plaintiff makes crystal clear that he brings three causes of action for violations of the Wiretap Act, CIPA, and the CMIA, and details the conduct that violated these statutes—easily meeting Rule 8(a)'s standard. SAC ¶¶ 131, 145, 160.

## II. PLAINTIFF DID NOT CONSENT TO THE USE OF META'S PIXEL TECHNOLOGY ON THIRD-PARTY WEBSITES

Defendant contends that Plaintiff consented to the use of website enhancement technology by creating an online account and accepting its Privacy Policy: "The express disclosures throughout the Privacy Policy are more than adequate to put a reasonable person viewing those disclosures on notice that Express Scripts uses website enhancement technology, including pixels on certain pages within its domain; that the record data collected from this technology may be

shared with third parties; and that the technology is used to promote site functionality and for marketing." MTD at 9. That is wrong.

As an initial matter, Defendant improperly relies on materials that are outside of the four corners of the SAC. Defendant may not rely upon privacy policies and other documents extrinsic to Plaintiff's pleading at the pre-discovery stage to establish its affirmative defense of consent. While consent is an affirmative defense to Claimant's CIPA and federal Wiretap Act claims (*see* Cal. Pen. Code §§ 631(a), 632(a) (prohibiting wiretapping and eavesdropping "without the consent of all parties to the communication"); 18 U.S.C. § 2511(2)(d) (authorizing wiretapping "where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act")), Defendant, as "the party seeking the benefit of the exception," has the "burden to prove consent." *Matera v. Google Inc*., 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (internal citations and quotation marks omitted).

To establish such consent as a matter of law, Defendant has chosen to rely on disclosure policies and terms of use that, as it does not and cannot dispute, are nowhere referenced in the SAC or any exhibits or other documents incorporated therein, and that therefore cannot properly be considered at the pleading stage. In particular, Defendant has submitted—and asks the Court to consider—numerous materials[1] outside of the SAC, including lengthy declarations and documents purportedly taken from Express Scripts' and other websites. *See* MTD at Notice of Motion and Motion; MTD accompanying documents (ECF Nos. 54-1–54.14). The Court should decline to consider this evidence and thereby convert Defendant's dispositive motion into one for summary judgment, especially given that this case is in its infancy and the parties have engaged in no discovery. Alternatively, Plaintiff respectfully requests limited discovery into the circumstances under which specific policies were disclosed to him and which version of those policies were in place at any given time, should the Court be inclined to grant Defendant's MTD.

[1] Plaintiff objects to the Court judicially noticing these documents as their accuracy can reasonably be questioned. *See* Fed. R. Evid. 201(b)(2).

Plaintiff's consent to Defendant's terms of service on its website also cannot be reasonably interpreted as consent to the sharing of his personal and private information with Facebook via the Pixel. Courts have repeatedly rejected the proposition that merely choosing to use a service automatically conveys actual, broad consent to any and all misconduct stemming from that use. *See*, *e.g.*, *In re Pharmatrak, Inc.*, 329 F.3d 9, 20 (1st Cir. 2003); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1049, 1068 (N.D. Cal. 2021); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) (rejecting argument that health care providers consented to interception of Health Information because it is dependent on what was "disclosed," how it was "described," and what they "understood" about "information [that] ... would be collected"). Thus, Plaintiff's mere consent to Defendant's privacy policy, without more, is insufficient to dispose of his claims. *See In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *5 (N.D. Cal. Mar. 25, 2024) (rejecting similar consent arguments).

## III. PLAINTIFF HAS SUFFICIENTLY PLEADED HIS WIRETAPPING CLAIMS

### A. Defendant Is Liable For Enabling Facebook's Wiretapping

Defendant argues it "consented to the use of the Meta Pixel on its website and app," and thus "Plaintiff's ECPA claim must be dismissed." MTD at 10. Defendant similarly seeks to evade liability under both the ECPA and CIPA because the "allegations that Express Scripts used the Meta Pixel to intercept its own communications are barred by the party-exception rule." *Id.* at 11. These arguments are not credible.

The text of § 631, as well as caselaw, establish that Defendant can be liable for enabling Facebook's wiretapping. Statutory interpretation begins "with the language of the statute itself." *Harris v. Harris*, 935 F.3d 670, 673 (9th Cir. 2019). Section 631 not only prohibits wiretapping, but also imposes liability for "*any person*" who "aids, agrees with, employs, or conspires with" anyone who violates section 631(a). Cal. Penal Code § 631(a) (emphasis added); *see also In re Lenovo Adware Litig.*, 2016 WL 6277245, at *8 (N.D. Cal. Oct. 27, 2016) (denying motion to dismiss CIPA claim based solely on allegation that the defendant "aided, agreed with, or conspired with" another defendant to violate section 631). Section 631(a) includes no exemption for participants to a conversation who permit third parties to eavesdrop on that conversation. *See* Cal.

Penal Code § 631(a). The Ninth Circuit and California Supreme Court have held that the term "'[a]ny person' means exactly that, and may not be interpreted restrictively." *Bonnichsen v. United States*, 367 F.3d 864, 874 (9th Cir. 2004); *see People v. Snyder*, 22 Cal. 4th 304, 314 (2000).

In line with this plain statutory language, courts have near universally held that a website developer (*e.g.*, Defendant) that permits or enables a third-party entity (*e.g.*, Facebook) to wiretap the communications of website visitors is itself liable for wiretapping. *See*, *e.g.*, *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Although Moosejaw cannot be liable for eavesdropping on its own communications with Revitch, the complaint adequately alleges that Moosejaw violated section 631 by enabling NaviStone's wrongdoing."); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 519 (C.D. Cal. 2021) ("[T]he court will not dismiss Count 1 against Nike for allegedly aiding, agreeing, or conspiring with FullStory to provide FullStory with Plaintiff's communications with Nike."); *Valenzuela v. Nationwide Mutual Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. 2023) ("Allowing a third party to listen in makes the third party liable for a violation of Section 631. Section 631 makes clear that aiding a violation is also a violation. Nationwide may be liable for its conduct to aid Akamai's alleged violation.") (internal citations omitted); *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at *2 (C.D. Cal. Sept. 5, 2023) ("In addition to being held liable for its own primary violations of CIPA, a defendant may also be held liable under CIPA for aiding a third party's violation of the statute."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) ("This Court agrees with … Moosejaw: a conversationalist is betrayed equally by a wiretapper and by the willing conversation participant who surreptitiously allows that third party to wiretap."); *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 126 (3d Cir. 2022) ("Popa II") ("NaviStone and Harriet Carter [*i.e.*, the website owner] are liable to Popa only if NaviStone 'intercepted' Popa's communications.") (emphasis added).

Further, the Ninth Circuit rejected the same argument Defendant advances here in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020). There, the Ninth Circuit explained the intent of wiretap laws is to "prevent the acquisition of the contents of a message by an unauthorized third-party or an unseen auditor"—like Facebook here. *In re Facebook*, 956 F.3d at 608 (emphasis added); see also *id.* at 598 (explaining similar legislative purposes behind CIPA

and the federal Wiretap Act). "Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *Id.*

Plaintiff alleges as much here: that Defendant "incorporated [the Pixel] on its Platform and thus allowed Facebook to intercept Plaintiff's and the Class Members' electronic … communications." SAC ¶ 7. This is common sense as well, as Facebook could not place its Pixel software on Defendant's website without Defendant's permission.

Despite this plain statutory language and wealth of precedent, Defendant raises a creative, but ultimately futile, argument that it cannot be liable for permitting or enabling Facebook to wiretap visitors to its website.

**B. Plaintiff Has Alleged Interception Of "Content"**

Defendant's assertion that Plaintiff does not allege the data shared or intercepted was "content" under § 631 directly contradicts the Ninth Circuit's decision in *Facebook Tracking*, which expressly held that "content" includes users "search[es]" and inputs" because they "could divulge a user's . . . queries[] and habits on third-party websites." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020); *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517–18 (C.D. Cal. 2021) (holding recording of users' "clicks, typing, scrolling, swiping, tapping, keystrokes, geographic location, IP addresses, and data entry" constitutes content). As Defendant intercepted users' "searches" and "inputs" on the Express Scripts website, by use of the Facebook Pixel, that reveal health information (*e.g.*, prescriptions, treatment, etc.), this constitutes "contents" under CIPA and ECPA. *See Facebook Tracking*, 956 F.3d at 605; *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (finding URLs containing users' search for a health condition is content because it "concern[s] the substance of a communication").[2]

At the outset, the actionable "content" at issue falls into two distinct categories. The first

[2] There is no "content" requirement under the first provision of CIPA § 631. *See Yoon*, 549 F. Supp. 3d at 1082 (explaining the "content" requirement only applies to CIPA provisions that use this language); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (same).

category involves the information inputted by Plaintiff on Defendant's website. Plaintiff alleges that, "[t]o obtain his prescriptions, Plaintiff was required to enter his name, email address, phone number, address, and payment information. He was also required to input further information, such as his date of birth, gender, insurance information, and a diagnosis history related to the testosterone prescription, as it is a controlled substance." SAC ¶ 20. The second category of content covers *how* Plaintiff interacted with the website, including mouse movements and clicks, keystrokes, search items, and the like. Collectively, "Facebook was able to read and understand everything Plaintiff and Class Members did on those pages, *e.g.*, what Plaintiff and Class Members searched for, looked at, the information inputted, and items clicked on." SAC ¶ 7.

Under the aforementioned authority, both categories are "content" within the meaning of the Wiretap Act. Therefore, Defendant's motion to dismiss on this basis should be denied.

### C. Plaintiff Has Pleaded Interception Of Communications "In Transit"

Defendant also argues that Plaintiff "has not alleged that his purported communications were intercepted while in transit." MTD at 12. Again, Defendant misconstrues the law.

*First*, Defendant "ignores the plain language of [the wiretapping statutes]."[3] *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). CIPA § 631(a) is written in the disjunctive, imposing liability for eavesdropping on a communication "while [it] is in transit or passing over any wire, line, *or* cable, or is being sent from, *or* received at any place within this state." Cal. Penal Code § 631(a) (emphasis added). Thus, the wiretapping statutes at issue penalize third parties who intercept communications "while the communication[s] [are] either 'in transit' or [are] 'being sent from' and 'received at' a place within this state." *Ribas*, 38 Cal. 3d at 360 (emphasis added); *Revitch*, 2019 WL 5485330, at *2 ("the particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis" because "[s]ection 631's protections extend explicitly to the beginnings and ends of communications"). Accordingly, even if Plaintiff's communications were not

---

[3] The analysis of Plaintiff's ECPA claim with regard to contemporaneous transmission is the same as that under CIPA § 631. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1076-82 (N.D. Cal. 2015) (analyzing interception contemporaneous with transmission under the Wiretap Act and denying the defendants' motion to dismiss on those grounds).

intercepted "in transit"—and they were—his communications were "sent from or received at a place in California." SAC ¶ 145.

*Second*, Plaintiff alleges that the Express Scripts platform incorporates Facebook's Pixel technology that "is a 'piece of code'" that "re-direct[s] the content of the of the customer's communication to Facebook while the exchange of the communication between the customer and Defendant is still occurring." *Id.* ¶¶ 46, 52. Accordingly, these communications are intercepted while "in transit" prior to reaching their final destination.[4] *Id.* ¶¶ 56-57. No additional allegations are required. *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (accepting allegations that communications occur "in transit" and explaining consideration of evidence to the contrary would be "premature" absent a "more developed factual record."); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (refusing to "assum[e]" communications are not intercepted in transit as they would "contradict[] Plaintiffs' allegations").

Unsurprisingly, Defendant relies exclusively on cases involving substantially different technology where it was clear the data was not "in transit" as it was stored somewhere else first prior to being forwarded or accessed by the defendant. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 872-73 (9th Cir. 2002) (finding data was not intercepted under the Wiretap Act where it was stored on a secure website bulletin board and accessed by an unauthorized user months later); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("in transit" element missing where complaint showed data was transmitted to defendant "significantly after" it arrived at Smart TV); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023) (finding "in transit" requirement lacking because defendant must first "record" and "create[]" a "transcript" of the communication with the chatbot, then "permit[]" the third party to

[4] To circumvent Plaintiff's multiple allegations that the interception was contemporaneous (*See*, *e.g.*, SAC ¶¶ 9, 22, 51, 52, 53, 55, 56, 57, 75, 79, 84, 91, 98, 145), Defendant relies on a singular allegation: "Defendant never advised Plaintiff or the other Class Members that any part of their communications or use of Defendant's Platform would be tapped and thereafter delivered to the third-party, Facebook." MTD at 13; SAC ¶ 137. Defendant specifically takes issue with the use of the word "thereafter," and asserts that it completely "undermine[s]" his contemporaneous allegations. MTD at 13. Should the Court agree that Plaintiff's use of the word "thereafter" in one allegation completely negates fourteen (14) other allegations, Plaintiff respectfully requests the opportunity to amend this allegation.

access the transcript "created by [defendant]"); *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *4 (C.D. Cal. Oct. 13, 2016) (similar); *Bunnel v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007) (setting up an email filter to "copy and forward" already received emails was not an interception); *Rodriguez v. Google, LLC*, 2022 WL 214552, *1-2 (N.D. Cal. Jan. 25, 2022) (finding data is not "in transit" where it is first logged and then a second copy is transmitted); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (no interception where third-party was merely a software vendor without access to communications).

### D. Plaintiff's CIPA Claim Is More Than Sufficiently Pleaded

Express Scripts next contends that Plaintiff's CIPA claim must fail because he (1) "does not adequately plead 'aiding and abetting'; and (2) "Section 631 does not apply to extraterritorial conduct." MTD at 14, 18. Defendant again misses the mark.

#### 1. Plaintiff Alleges That Defendant "Aided, Agreed With, Employed, And Conspired With" Facebook In Violation Of The Fourth Prong Of CIPA § 631(a)

Defendant argues that because Plaintiff has failed to allege any violation of Clause One, Two, or Three of CIPA § 631(a), he cannot allege a violation of Clause Four, as he "fails to satisfy the attendant pleading requirements as to the intent and conduct of both Express Scripts and Meta to sustain an aiding and abetting claim, even at the pleading stage." MTD at 14. Here, although Plaintiff does not allege that Defendant violated the first three prongs of CIPA § 631(a), he alleges that Defendant violated prong four of CIPA § 631(a) by enabling Facebook's wrongdoing. *See, e.g.*, SAC ¶¶ 1, 4, 7, 8, 11, 84, 92, 99, 129-31, 135, 136, 142, 144-50.

Still, Defendant argues that Plaintiff's CIPA claim must fail because "Plaintiff must allege that Meta violated one of the first three clauses of Section 631(a)," and he "does not allege Meta perpetrated a crime," "does not allege Express Scripts intended to assist Meta in committing a crime," and "does not allege Express Scripts took action to further a purported crime." MTD at 15-17. That is wrong. Prong four of CIPA § 631(a) provides for liability when a person, "by means of any machine, instrument, contrivance, or in any other manner, … **aids, agrees with, employs, or conspires with** any person or persons to unlawfully do, or permit, or cause to be done any of the acts

or things mentioned above in this section." CIPA § 631(a) (emphasis added). Clearly, prong four does not require "aiding and *abetting*" because the word "abet" appears *nowhere* in CIPA § 631(a). Had the legislature intended for "aids" to mean "aids and abets," it would have written the latter term instead of the former. *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1129-30 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause. Defendant provides no case law requiring the Court to analyze 'aids, agrees with, employs, or conspires with' as solely 'aiding and abetting.'"); *In re Cell Tower Litig.*, 2012 WL 1903883, at *2 (S.D. Cal. May 24, 2012) ("The first step in analyzing a statute is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.") (cleaned up).

Rather, the legislature's use of the terms "aids," "agrees with," and "employs" indicates that CIPA § 631(a) was meant to apply to a much broader swath of non-criminal conduct, regardless of "specific intent." *See Cousin*, 681 F. Supp. 3d at 1129-30. To that end, "aid" should be interpreted as "to give assistance,"[5] "agrees with" as "to concur in opinion or purpose,"[6] and "employs" as "to make use of" or "to hire."[7] In short, a defendant violates prong four where it simply enables another's wrongdoing. *See Revitch*, 2019 WL 5485330, at *2 ("[T]he complaint adequately alleges that Moosejaw violated section 631 by *enabling* NaviStone's wrongdoing.") (emphasis added).

Here, the SAC is replete with allegations that Defendant intentionally enabled Facebook's wrongdoing. *See*, *e.g.*, SAC ¶ 4 ("Defendant incorporated Facebook Pixel spyware technology … on the Express Scripts Platform, that in turn allowed [Facebook] … to read, learn the contents of, make reports on Plaintiff's and Class Members' interactions with Defendant's Platform, and use the information for its own benefit."); ¶ 7 ("Defendant intentionally allowed Facebook to tap and make unauthorized interceptions of Plaintiff's and Class Members' electronic communications on its Platform."); ¶ 8 ("Defendant enabled these unauthorized interceptions and subsequent usage of information collected without knowledge or prior consent[.]"); ¶ 84 ("Defendant utilized the

[5] *Aid*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/aid.
[6] *Agree*, Black's Law Dictionary (11th ed. 2019).
[7] *Employ*, Black's Law Dictionary (11th ed. 2019).

Facebook Pixel to intercept the substance of … electronic communications intentionally and contemporaneously share the information with Facebook[.]"); ¶ 160 ("Defendant knowingly and willfully disclosed medical information without consent to Facebook for financial gain."). *See also id.* ¶¶ 1, 11, 92, 99, 129-31, 135, 136, 142, 144-50. These allegations are sufficient to plead Defendant's violation of prong four of CIPA § 631(a). *See Cousin*, 681 F. Supp. 3d at 1129-30.

Significantly, Defendant provides no authority holding that civil remedies under the CIPA require proof of criminal "aiding and abetting." Instead, it relies on a criminal case, *People v. Perez*, 35 Cal. 4th 1219, 1225 (2005), to establish the intent requirement. MTD at 17. But even if Plaintiff were required to allege "specific intent"—which he is not—he has done so. *Cf. Rodriguez v. Ford Motor Co.*, 2024 WL 1223485, at *15 (S.D. Cal. Mar. 21, 2024) (dismissing with leave to amend where, unlike here, the plaintiff failed to allege that the defendant knew how the third party used the intercepted data).

A person may be held liable as an aider and abettor where it: (1)(a) knows the other's conduct constitutes a breach of duty and (b) gives substantial assistance to the other to so act; or (2)(a) the person's own conduct, when considered separately, constitutes a breach of the duty to the third person and (b) the person gives substantial assistance to the other in accomplishing a tortious result. *Id.* Here, at a minimum, Plaintiff's allegations show this. Defendant substantially assisted Facebook in unlawfully intercepting Plaintiff's and class members' sensitive, confidential and protected health information. SAC ¶¶ 1, 4, 7, 8, 11, 84, 92, 99, 129-31, 135, 136, 142, 144-50. Defendant breached its duty to Plaintiff and class members to safeguard their protected health information and keep it confidential. *Id.* ¶¶ 156, 160-62. Defendant knew Facebook's conduct constituted a breach of duty because it knew or should have known the ways Facebook used the intercepted information for Facebook's own purposes, beyond merely storing it. *Id.* ¶¶ 22, 24, 27, 29-31, 50-55, 56, 70. Indeed, the very purpose for embedding the tracking technology into the Website was to assist with Facebook advertising efforts. *Id.* ¶¶ 70, 87.

Improperly ignoring Plaintiff's allegations and the reasonable inferences therefrom, and improperly relying on information outside the SAC, Defendant contends that Plaintiff fails to allege that Defendant "intended to assist Meta in illegally intercepting these communications,

shared the same mental state as Meta, or knew of criminal objectives harbored by Meta." MTD at 17. Defendant's contention is belied by Plaintiff's actual allegations and the reasonable inferences therefrom, as discussed above. Moreover, even if Defendant could rely on information outside the Complaint for the truth of the matter asserted, such as third-party privacy policies and terms of service, Defendant's contention requires the Court to improperly make inferences in Defendant's favor—namely, that Defendant actually read and was aware of those documents and the knew the information set forth therein to be true. *See id.* Defendant is not entitled to those inferences at this stage of the proceeding. *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

### 2. <u>Defendant Cannot Avoid Liability Under Clause Four By Claiming Its Users Consented To Facebook's Data Collection Practices</u>

Defendant's argument regarding the scope of the class under CIPA is premature. Courts routinely recognize that extraterritoriality, like choice of law, is an issue that is properly considered "in the context of a class certification motion and not a motion to dismiss." *Yan Mei Zheng-Lawson v. Toyota Motor Corp.*, 2018 WL 2298963, at *4 (N.D. Cal. May 21, 2018) ("[T]he Court concludes that it would be premature to address those issues at this early stage of the proceedings."); *Fitzhenry-Russell v. Coca-Cola Co.*, 2017 WL 4680073, at *4 (N.D. Cal. Oct. 18, 2017) (deferring ruling on class-related issues "[e]arly in the pleadings stage" is prudent because "neither the court nor the litigants are sure yet which facts and legal issues are in dispute"); *Precht v. Kia Motors Am., Inc.*, 2014 WL 10988343, at *14 (C.D. Cal. Dec. 29, 2014); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013).

Again, improperly relying on information outside the Complaint, Defendant contends Plaintiff and class members somehow vicariously consented to Defendant's disclosure of their confidential and sensitive protected health information through their purported consent to "Meta's privacy policies to maintain an active Facebook account." MTD at 16. The contention lacks merit. Any notice meant to obtain consent must explicitly give users notice of the practice at issue. *Meta Pixel*, 647 F. Supp. 3d at 793 (citing *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021)). "The test is whether a reasonable user who viewed [the] disclosures would have

understood that [the party providing the disclosure] was collecting the information at issue." *Meta Pixel*, 647 F. Supp. 3d at 793. Further, it is Defendant's burden, not Plaintiff's, to establish consent. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020).

First and foremost, should the court consider information outside the Complaint, it should also consider that Defendant has agreed to Facebook's Business Tools Terms, which required Defendant warrant "not [to] share Business Tool Data with [Facebook] that [it] know[s] or reasonably should know . . . includes health [] information . . . (including any information defined as sensitive under applicable laws . . . .)." *Meta Business Tools Terms*, FACEBOOK, https://www.facebook.com/legal/businesstech?paipv=0&eav=AfaAkv3wzUQZyYccbyVUzaqJ2WThJtEX_2ngB2ZWb4uD8-loWGxjvt9yB16v9qob_ns&_rdr. Because Defendant has agreed to Facebook's requirements, and because the exact requirements that Defendant must follow pursuant to its agreement are "susceptible to multiple meanings" Defendant cannot meet its burden to show that Plaintiff has consented to the disclosure or interception of his information. *Meta Pixel*, 647 F. Supp. 3d at 794; *see also Rickwalder v. Meta Platforms, Inc.*, 2022 WL 22462351 (Cal. Super. Sep. 15, 2022) (refusing to find consent via plaintiff's purported consent to Facebook's terms).

Analyzing a similar argument, the court in *Meta Pixel* held that users did ***not*** consent to Facebook's acquisition of health data because the generalized notice in Facebook's policies were not sufficient for users to consent to the collection and tracking of their ***health data***. *Id.* at 793-94. Specifically, the defendant, Facebook, noted that its policies "notify Facebook users that Facebook collects and uses their personal data, including data about their browsing behavior on some third-party websites, at least in part for targeted advertising." *Id.* at 793 (citing Facebook's Terms of Service at 4; Facebook's Data Policy at 4-5; Facebook's Cookies Policy at 4). The court rejected Facebook's argument that users consented to the collection of their medical information when accepting Facebook's policies because it noted that Facebook's policies were about general internet browsing while the data at issue in the case—Facebook's acquisition of health data—was about "a different matter entirely." *Id.* at 793-94.

Because Plaintiff and Website users did not consent to Facebook's interception of their data and did not consent to Defendant's disclosure of health data for marketing purposes, Defendant cannot avoid liability under Clause Four.

#### 3. The Territorial Scope Of The Class Should Be Decided At Class Certification

Defendant's argument regarding the scope of the class under CIPA is premature. Courts routinely recognize that extraterritoriality, like choice of law, is an issue that is properly considered "in the context of a class certification motion and not a motion to dismiss." *Yan Mei Zheng-Lawson*, 2018 WL 2298963, at *4 ("[T]he Court concludes that it would be premature to address those issues at this early stage of the proceedings."); *Fitzhenry-Russell*, 2017 WL 4680073, at *4 (deferring ruling on class-related issues "[e]arly in the pleadings stage" is prudent because "neither the court nor the litigants are sure yet which facts and legal issues are in dispute"); *Precht*, 2014 WL 10988343, at *14; *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013).

Nevertheless, Plaintiff sufficiently alleges that the challenged conduct took place in California. *See*, *e.g.*, SAC ¶¶ 72, 135, 145. Even so, Defendant argues that "Plaintiff fails to allege any data was intercepted in California" largely because Express Scripts "maintains its principal place of business in Missouri." MTD at 18. But Defendant's servers are not the only ones at issue. The alleged eavesdropping occurred when the communications were intercepted by Meta, and Meta's principal place of business is located in Menlo Park, California.[8] As such, Plaintiff sufficiently alleges that the conduct at issue occurred in California.

## IV. DEFENDANT VIOLATED THE CMIA

To state a claim for violation under the CMIA, a plaintiff must show that a "provider of health care . . . disclose[d] medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care plan without first obtaining an authorization. . . ," (Cal. Civ. Code §§ 56.10(a)), and/or did not "maintain[], preserve[], or store[]" medical information in a manner that "preserves the confidentiality of the information contained therein." *Id.* § 56.101.

[8] GlobalData, *Meta Platforms Inc: Overview*, GLOBALDATA, https://www.globaldata.com/company-profile/facebook-inc/ (last accessed Oct. 15, 2024).

Defendant violated the CMIA by "deploy[ing] Facebook Pixel software on its website" which "surreptitiously intercepted and transmitted in real time to Facebook" the "substance of Plaintiff's and Class Members' electronic communications . . . made during visits to Defendant's website." SAC ¶¶ 74-75, 84. Those communications "identified specific information inputted and content viewed . . . [and thus] revealed personalized and sensitive information." *Id.* ¶ 87.

**A. Plaintiff Has Alleged His Medical Information Is At Issue**

Defendant argues "Plaintiff has not sufficiently alleged the data purportedly transmitted to Facebook constitutes 'medical information' within the meaning of Cal. Civ. Code § 56.05(i)," and that "[a]t most, Plaintiff alleges basic record information was impacted." MTD at 19-20. Not so.

Medical information under the CMIA means "***any individual identifiable information***, in electronic or physical form, ***in the possession of or derived from a provider of health care*** . . . ***regarding a patient's medical history***, mental health application information, mental or ***physical condition or treatment***." Cal. Civ. Code § 56.05(i) (emphasis added). "'Individually identifiable' means that the medical information includes or contains ***any element*** of personal identifying information ***sufficient to allow identification of the individual***, such as the patient's name, address, electronic mail address, telephone number, or social security number or other information that, alone or in combination with other publicly available information, reveals the identity of the individual." *Id.* (emphasis added).

California courts have interpreted the CMIA to require disclosure of individually identifiable information that has a substantive medical treatment nexus. *See*, *e.g.*, *Colleen M. v. Fertility & Surgical Assocs. Of Thousand Oaks*, 132 Cal. App. 4th 1466, 1472 (2005) (distinguishing between disclosing that a person is a patient of a particular healthcare facility and disclosing the nature of the patient's treatment); *cf. Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 434-36 (2014) (explaining that the compromised information amounted only to "individually identifiable information" because it did not show specific medical concerns or treatments). Thus, while the fact that a person was a patient or user of a particular health care provider may not communicate substantive information regarding a medical condition, treatment,

or history, revealing the ***nature*** of the treatment, as is the case here, does. *Colleen M.*, 132 Cal. App. 4th at 1472.

Defendant's reliance on *Wilson v. Rater8, LLC*, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (MTD at 19) is misplaced. In *Wilson* the plaintiff alleged that the defendant disclosed his "medical treatment appointment information, and medical treatment discharge dates and times." *Id.* However, the plaintiff did not plead the specific treatment sought and received, instead merely describing his examination as treatment. *Id.* On those allegations, the court found that: (1) the plaintiff did not "allege facts that would allow the court to infer that he received medical treatment during the examination"; and (2) the information allegedly disclosed by the defendant was "insufficient to allege disclosure of medical information." *Id.*

Unlike *Wilson*, Plaintiff has pled facts revealing the specific ***nature*** of the treatment he sought and received, as opposed to conclusory statements that he merely booked an appointment with to obtain treatment. *See* SAC ¶ 20. Further, Plaintiff details that Defendant disclosed to Facebook the "identifiable information relating to a patient's medical histories, conditions, treatments, and prescriptions." *Id.* ¶ 153; *see also id.* ¶¶ 155, 156, 159. Given that Plaintiff clearly alleged that Defendant disclosed "substantive information" related to Plaintiff's treatment, Plaintiff has pled sufficient facts to plausibly establish a violation of the CMIA. *See Eisenhower*, 226 Cal. App. 4th at 434-36.

Defendant also argues that Plaintiff did not sufficiently plead that the medical information Defendant disclosed constituted medical information given that "Plaintiff fails to connect the Pixel to any of the webpages where Plaintiff allegedly entered sensitive information." MTD at 20. Defendant further argues that the "transmission of information from unauthenticated, public webpages are not actionable under the CMIA where, as here, nothing but basic browsing activity is alleged to have been transmitted," because "such information does not constitute medical information" under *Smith v. Facebook*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), and therefore cannot establish Defendant disclosed medical information per the CMIA. MTD at 21. Both of these arguments lack merit.

In the *Meta Pixel* case, the court denied a motion to dismiss where the plaintiff alleged that when a website user clicked on the log-in button on the website, the Facebook Pixel obtained a URL showing the user logged into the patient portal. 647 F. Supp. 3d at 791. In reaching its holding, the court distinguished *Smith*, where the plaintiff made allegations of general health information, and found that because the URL at issue in *Meta Pixel* established that a user "is about to log in to a healthcare provider's website . . . [the information] falls within the ambit of information protected." *Id.* at 793. By contrast, in *Smith*, the information disclosed involved URLs for pages users viewed on the website "containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information." 262 F. Supp. 3d at 954-55.

Here, the Defendant's platform described in the SAC is specifically an online pharmacy benefits manager "designed to maintain medical information for the purposes of allowing its users to manage their information or make the information available to a health care provider, or for the diagnosis, treatment, or management of a medical condition," not to obtain general health information via articles or blog posts. SAC ¶ 153. Because any input made is specific to obtaining treatment or managing a medical condition via prescriptions, it reveals the ***substantive medical treatment*** or ***nature*** for which the patient is seeking to book an appointment. *Cf. Smith*, 262 F. Supp. 3d at 954-55 (where the searches conducted led to webpages with general information about a condition or information about a doctor).

Further, the information disclosed by Defendant goes beyond merely revealing the symptoms or services for which a patient searches. It includes the reason why the patient, for example, sought treatment or obtained a prescription. SAC ¶¶ 20, 153, 155. If a patient has moved beyond the search stage and has obtained a prescription, this situation is analogous to the *Meta Pixel* scenario given that having a prescription shows patient status and a patient's medical treatments and care, whether or not the pixel was on the public-facing website or the patient portal. *See Meta Pixel*, 647 F. Supp. 3d at 793.

Significantly, as alleged in the SAC, the HHS "requires appropriate safeguards to protect the privacy of protected health information and sets limits and conditions on the uses and disclosures that may be made of such information." SAC ¶ 101. "Under 45 C.F.R. § 160.103, the Privacy Rule defines 'protected health information' or PHI as 'individually identifiable health information' that is 'transmitted by electronic media … [and is] 'a subset of health information, including demographic information collected from an individual' that is (1) 'created or received by a health care provider;' (2) '[r]elates to the past present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual;' and (3) either (a) identifies the individual; or (b) with respect to which there is a reasonable basis to believe the information can be used to identify the individual." *Id.* ¶¶ 103-04. The definitions and statements by HHS underscore that the information disclosed by Defendant constitutes medical information. *See id.*

In sum, Plaintiff provided sufficient information to plausibly allege that Defendant disclosed protected health information, including the ***nature*** of his activity to obtain treatment and prescriptions on the Express Scripts platform.

### B. Plaintiff Plausibly Alleged His Medical Information Was Actually Viewed By A Third Party

Defendant contends "Plaintiff's CMIA claim independently fails because he still fails to allege that his sensitive medical information was *actually viewed by* an unauthorized third party" because "there are *zero* allegations in the amended complaint from which it could be plausibly inferred that substantive medical information was actually viewed." MTD at 21-22. Those contentions are incorrect and premature.

At the pleading stage, "trial courts must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d at 1150. "[A] plaintiff must not merely alleged conduct that is conceivable but must instead allege enough facts to state a claim to relief that is plausible on its face." *Lehman Brothers Holdings, Inc. v. Mason McDuffie Mortgage Corp.,* 2013 WL 76285 at *3 (N.D. Cal., Jan. 4, 2013) (internal citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Here, Plaintiff alleged that "Facebook monetizes the information it receives through the Facebook Pixel deployed on Defendant's Express-Scripts.com website by using it to generate highly-profitable targeted advertising on-and off-Facebook" by engaging in "remarketing based on positive targeting—that is, serving specific ad campaigns to patients based on the specific actions those patients took on Defendant's website." SAC ¶¶ 29, 31. Facebook generates revenue "almost entirely from selling targeted advertising space on Facebook.com, and to all Internet users on non-Facebook sites that integrate Facebook marketing source code on their websites." *Id.* ¶ 44. "The electronic communications intentionally intercepted and transmitted to Facebook were content generated through Plaintiff's use, interaction, and communication with Defendant's Platform relating to the substance, purport, and/or meaning of Plaintiff's and Class Members' communications with the Platform." *Id.* ¶ 88. As such, "[t]he data collected by the Facebook Pixel identified specific information inputted and content viewed, and transmitted the same to Facebook for its aggregation, use, and sale to drive advertising. Information shared revealed personalized and sensitive information about Plaintiff's and Class Member's internet activity and habits." *Id.* ¶ 87.

Courts have found allegations similar to Plaintiff's are enough to create an inference that a third party unlawfully and actually viewed Plaintiff's and Class Members' medical information. For example, in *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,* 613 F. Supp. 3d 1284, 1299 (S.D. Cal. 2020), allegations that the plaintiff received an increase in spam emails and phone calls were sufficient to infer that their medical information was viewed as a result of a data breach. *Id.* The same reasoning applied in *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1218 (S.D. Fla. 2022) (sustaining CMIA claim). In another case, the Court determined that since the plaintiff alleged that medical information was "posted . . . on the internet . . . it can be reasonably inferred that someone viewed it." *Stasi v. Inmediata Health Grp. Corp*, 501 F. Supp. 3d 898, 923 (S.D. Cal. 2020). Like in *Stasi*, this case "stems from the unauthorized interception and disclosure of Plaintiff's and Class Members' sensitive electronic

communications with Defendant … that in turn allowed [Facebook] … to read, learn the contents of, make reports on Plaintiff's and Class Members' interactions with Defendant's Platform, and use the information for its own benefit." SAC ¶ 4. "Through the Facebook Pixel embedded in Defendant's website, Facebook was able to and did access sensitive personal and health information provided by Plaintiff and Class Members to Express Scripts, and incorporated that accessed information into its profiles of Plaintiff and Class Members." *Id.* ¶ 70. At this stage, the alleged facts and the reasonable inferences therefrom must be viewed as true and in the light most favorable to Plaintiff. Properly viewed, Plaintiff's inference is reasonable and demonstrates that a third party, Facebook, viewed his disclosed information.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in its entirety.

Dated: October 17, 2024

**BURSOR & FISHER, P.A.**

By: *<u>/s/ L. Timothy Fisher</u>*

L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jgavenman@bursor.com

**SWIGART LAW GROUP, APC**
Joshua B. Swigart (State Bar No. 225557)
2221 Camino del Rio S, Suite 308
San Diego, CA 92108
Telephone: (866) 219-3343
Facsimile: (866) 219-8344
E-mail: Josh@SwigartLawGroup.com

**THE BARRY LAW OFFICE, LTD**
Peter F. Barry (MN #0266577)
Admitted *pro hac vice*
333 Washington Ave No, Suite 300-9038
Minneapolis, MN 55401-1353

Telephone: (612) 379-8800
E-mail: pbarry@lawpoint.com

*Attorneys for Plaintiff*