TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105
Telephone: 415.268.7000
Facsimile: 415.268.7522

WHITNEY R. O'BYRNE (CA SBN 325698)
WObyrne@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone: 213.892.5200
Facsimile: 213.892.5454

ELISABETH HUTCHINSON (admitted *pro hac vice*)
EHutchinson@mofo.com
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, Colorado 80202
Telephone: 303.592.1500
Facsimile: 303.592.1510

Attorneys for Defendant
EXPRESS SCRIPTS HOLDING COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JONATHAN LYNCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY,<br><br>Defendant. | Case No. 3:23-cv-01170-AMO<br><br>**DEFENDANT EXPRESS SCRIPTS HOLDING COMPANY'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date: January 30, 2025<br>Time: 2:00 p.m.<br>Courtroom: 10<br>Judge: Hon. Araceli Martínez Olguín<br><br>Action Filed: March 15, 2023<br>Trial Date: N/A |

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Plaintiff's Allegations Sound in Fraud, and Rule 9(b) Applies ........ 2

B. Plaintiff's Consent Defeats Plaintiff's Claims ........ 3

1. The Court May Take Judicial Notice of the Requested Materials ........ 3

2. Plaintiff Has No Basis to Seek Discovery Into His Own Consent Before He Has Stated a Claim ........ 4

3. Plaintiff Consented to the Use of the Pixel Technology ........ 4

C. Plaintiff's Wiretap Claims Fail on Other Grounds ........ 7

1. Express Scripts Cannot "Intercept" Its Own Communications ........ 7

2. Plaintiff Has Failed to Allege That "Contents" of Communications Were Disclosed ........ 7

3. Plaintiff Has Not Alleged Interception "In Transit" ........ 9

D. Plaintiff Has Not Plausibly Alleged That Express Scripts Aided and Abetted Meta's Alleged Violation of CIPA ........ 10

1. Prong Four of Section 631(a) is an Aiding and Abetting Provision ........ 10

2. Plaintiff Must First Allege a Predicate Violation to Hold Express Scripts Liable for Aiding and Abetting ........ 11

3. Plaintiff Has Not Sufficiently Pled that Express Scripts Aided and Abetted Any Wrongdoing ........ 11

E. Plaintiff's CMIA Claims Must Be Dismissed ........ 12

1. Plaintiff Fails to Allege Any "Medical Information" Has Been Transmitted to Meta ........ 12

2. Plaintiff Fails to Allege Anyone Viewed Any Medical Information ........ 14

III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.S. v. Selectquote Ins. Servs.*, No. 3:23-cv-02258-RBM-MSB, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ..................... 8

*Adler v. Community.com, Inc.*, No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ............................ 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................ 14

*B.K. v. Desert Care Network*, No. 2:23-CV-05021, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ...................................... 10

*Barbour v. John Muir Health*, C22-01693, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023) ............................................. 14

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ...................................................................... 4

*Cody v. Ring LLC*, No. 3:23-cv-00562-AMO, 2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ............................. 11

*Colleen M. v. Fertility & Surgical Associates Of Thousand Oaks*, 132 Cal. App. 4th 1466 (2005) ............................................................................................ 13

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........................................................................ 10, 15

*D'Angelo v. FCA US, LLC.*, No. 3:23-cv-00982-WQH-MMP, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) ................. 10

*Doe I v. Google LLC*, No. 23-cv-02431-VC, 2024 WL 3490744 (N.D. Cal. July 22, 2024) ............................ 2, 9, 12

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) ................................................................. 4, 5

*Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102-DMS(KSC), 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ......................... 12

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .............................................................................................. 8

*In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980 (N.D. Cal. 2020) ....................................................................... 3

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .......... 3, 5

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. Apr. 8, 2021) .......... 10

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020).......... 9

*People v. Hardy*,
5 Cal. 5th 56 (2018) .......... 11

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-CV-08002-SPG-E, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023).......... 11

*Kearns v. Ford Motor Co*.,
567 F.3d 1120 (9th Cir. 2009).......... 2

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018).......... 3

*Khoros v. Lenovo (U.S.), Inc.*,
No. 3:20-cv-03399-WHO, 2020 WL 12655516 (N.D. Cal. Oct. 5, 2020) .......... 15

*Kirch v. Embarq Mgmt. Co*.,
702 F.3d 1245 (10th Cir. 2012).......... 10

*Libman v. Apple Inc*.,
No. 22-cv-07069-EJD, 2024 WL 4314791 (N.D. Cal. Sept. 26, 2024).......... 7

*Lopez v. Apple, Inc*.,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 9

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig*.,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) .......... 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 .......... 6, 8, 13

*MG v. Therapymatch, Inc.*,
No. 23-cv-04422-AMO, 2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .......... 13

*In re Pharmatrak, Inc*.,
329 F.3d 9 (1st Cir. 2003) .......... 4

*Quinto v. Regents of the Univ. of Cal.*,
No. 22CV012970, 2023 WL 5803653 (Cal. Super. Ct. Sept. 1, 2023).......... 15

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir.1990).......... 10

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019).................................. 7, 9

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)................................................................................................ 3

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ............................................................................... 12

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021)............................................................................... 7, 8

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021)............................... 5

*Smith v. Facebook, Inc.*,
745 F. App'x at 8-9 ......................................................................................................... 5, 12

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) ............................................................ 13, 14, 15

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ................................................................................ 15

*Ste. Marie v. Riverside Cnty. Reg'l Park & Open-Space Dist.*,
46 Cal. 4th 282 (2009) .......................................................................................................... 9

*Strehl v. Guitar Ctr., Inc.*,
No. LA CV23-02603 JAK (RAOx), 2024 WL 2790373 (S.D. Cal. May 29, 2024) .............. 10

*Van Heel v. GCA Educ. Servs., Inc.*,
No. 2:20-CV-01505-AB-JEM, 2020 WL 6541989 (C.D. Cal. Sept. 30, 2020)........................ 4

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)................................................................................. 9

*Warden v. Khan*,
99 Cal. App. 3d 805 (1979)................................................................................................. 11

*Wilson v. Rater8, LLC*,
No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)............................. 13

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................................................................................... 5

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)................................................................................................ 8

**Statutes**

Cal. Penal Code § 20 .................... 11

California Invasion of Privacy Act ("CIPA") .................... *passim*

Confidentiality of Medical Information Act ("CMIA") .................... 1, 2

Electronic Communications Privacy Act of 1986 ("ECPA") .................... 1, 5, 8

**Other Authorities**

Fed. R. Civ. P. 8 .................... 2

Fed. R. Civ. P. 9(b) .................... 2

Fed. R. Civ. P. 12(b)(6) .................... 7

## I. INTRODUCTION

Despite filing three complaints and two opposition briefs, Plaintiff fails to make the required connection between the alleged interception of his purportedly sensitive information and the specific webpages within the Express Scripts domain where the Meta Pixel was purportedly embedded. Although Express Scripts raised this issue in three different motions, Plaintiff again fails to address this critical gap in his factual allegations. This dooms his Second Amended Complaint ("SAC").

All of Plaintiff's claims turn on (1) which pages the Meta Pixel was allegedly embedded and (2) the information he allegedly input into those pages. But he never identifies either the specific pages or the information at issue. If the Meta Pixel is not embedded on a page where Plaintiff allegedly placed prescription orders, then that information was not and could not have been "intercepted" or otherwise communicated to Meta. The mere allegation that Express Scripts placed a common analytics tool on some unidentified, *public*-facing page within the Express Scripts domain is not enough to sustain Plaintiff's claims because Plaintiff does not allege that he input any sensitive information on that page. The entire SAC should be dismissed on this basis.

In addition, Plaintiff fails to provide any additional authority to overcome the party exemption under the Electronic Communications Privacy Act of 1986 ("ECPA") or demonstrate that any contents of his communications were intercepted while in transit. The party exemption and Plaintiff's failure to adequately plead required elements of his ECPA claim provide independent grounds for dismissal. Moreover, Plaintiff's claim under Section 631(a) of the California Invasion of Privacy Act ("CIPA") ostensibly relies on an aiding and abetting theory, yet Plaintiff fails to provide any legal or factual basis to support such a theory. Because aiding and abetting liability requires a predicate violation, and Plaintiff has failed to allege any wrongdoing by Meta that Express Scripts could have "aided and abetted," Plaintiff's CIPA claim should be dismissed on this ground as well.

Plaintiff's Confidentiality of Medical Information Act ("CMIA") claim fares no better. The opposition introduces arguments unsupported by factual allegations, including the new contention that "any input" reveals sensitive medical information. Plaintiff has no legal or factual

basis for this argument. Further, Plaintiff's pure speculation that someone at Meta viewed his data is insufficient to sustain his CMIA claim.

Given these fundamental deficiencies, further amendment would be futile. Plaintiff's consent to the use of the Meta Pixel defeats all of his claims, and no amendment can change that fact. Accordingly, the Court should dismiss the SAC with prejudice.

## II. ARGUMENT

### A. Plaintiff's Allegations Sound in Fraud, and Rule 9(b) Applies

As Plaintiff acknowledges, Rule 9(b) applies whenever a plaintiff asserts fraudulent conduct regardless of whether the claim is actually styled as fraud. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); (Opp. at 9-10). In his opposition, Plaintiff ignores his own repeated allegations that Express Scripts "secretly deployed" the Meta Pixel throughout the Express Scripts domain (SAC ¶¶ 20, 23, 140-43) and "knowingly, actively, affirmatively and/or negligently concealed the facts alleged" (*id.* ¶ 124).

A review of the SAC shows that Plaintiff has again failed to plead specifics as to how the Meta Pixel allegedly captured his purported sensitive information, on what pages of Express Scripts' website the alleged capture occurred, and what specific information was supposedly captured. Plaintiff's failure to provide these vital details for the third time demonstrates that Plaintiff cannot satisfy Rule 9(b). Furthermore, because Plaintiff does not even connect the technology at issue to the purported health information captured, the SAC is impermissibly vague and fails to meet even the basic pleading standard under Rule 8. *See Doe I v. Google LLC*, No. 23-cv-02431-VC, 2024 WL 3490744, at *3 (N.D. Cal. July 22, 2024) (a complaint concerning technical claims about a third-party technology deployed on a website fails to satisfy any federal pleading standard where it "leave[s] the reader conspicuously unable to discern whether the source code [i.e., the third-party technology at issue] is placed on the web pages where it doesn't belong").

### B. Plaintiff's Consent Defeats Plaintiff's Claims

#### 1. The Court May Take Judicial Notice of the Requested Materials

Plaintiff asserts that the Court may not consider Express Scripts' Terms of Use and Privacy Policy (collectively, the "Privacy Policies") and registration processes because the documents were not referenced in the SAC or any exhibits or documents incorporated therein. (Opp. at 11.) Under settled case law, Plaintiff's argument should be rejected.

First, the SAC expressly references Express Scripts' Privacy Policies. (SAC ¶¶ 54, 99.) A document is properly incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "'Extensively' . . . should, ordinarily at least, mean more than once." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (quoting *Ritchie*, 342 F.3d at 908). Plaintiff's multiple references to and reliance on the Privacy Policies in the SAC justify granting Express Scripts' request for incorporation by reference and judicial notice of these documents. (*See* ECF No. 55.)

Second, Plaintiff continues to argue that consent should not be considered by the Court (Opp. at 11), but he does not cite a single case to support his argument. Indeed, lack of consent is an element of Plaintiff's claim that is his burden to prove: CIPA imposes liability only for interception "without the consent of all parties." Cal. Penal Code § 631(a); *see also Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (clarifying that "lack of consent is an express element of a [CIPA] claim"). Thus, to assess allegations of lack of consent in similar cases at the motion to dismiss stage, courts within this district consistently take judicial notice of privacy policies. *See, e.g.*, *id.* ("Because Plaintiff's claim necessarily depends on the application of [defendant's] policies—which relate directly to the issue of consent—the Court finds that these documents may appropriately be considered on a motion to dismiss."); *see also In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1009 (N.D. Cal. 2020) ("It is common for courts to take judicial notice of a company's historical privacy policies."). Plaintiff cannot avoid the Privacy Policies' contents by simply failing to attach them to the SAC—that is precisely what

the doctrine of judicial notice is designed to prevent.

**2. Plaintiff Has No Basis to Seek Discovery Into His Own Consent Before He Has Stated a Claim**

Without citing a single case in support, just as he did in his prior opposition to the motion to dismiss the first amended complaint, Plaintiff makes a bald request for discovery on the issue of consent. (Opp. at 11.) Discovery has not yet started in this case, and discovery should not be granted before Plaintiff has shown he can plead a plausible claim. This is not a circumstance where Plaintiff's registration process is only within Express Scripts' knowledge—Plaintiff should know when and how he allegedly accessed the website and placed his orders after he registered for an Express Scripts account. Moreover, Plaintiff does not even allege that the sworn declaration and supporting documents already provided are somehow inaccurate. (*See generally* ECF No. 54-9 (Edwards Decl.).) Plaintiff "cannot use discovery as a fishing expedition to find facts that may give credence to an unartfully pled complaint." *Van Heel v. GCA Educ. Servs., Inc*., No. 2:20-CV-01505-AB-JEM, 2020 WL 6541989, at *4 (C.D. Cal. Sept. 30, 2020).

**3. Plaintiff Consented to the Use of the Pixel Technology**

Plaintiff also incorrectly contends that his consent to the Privacy Policies does not constitute his consent to the sharing of his information with third parties. (Opp. at 12.) The cases that Plaintiff cites are inapposite. Unlike this case, the cases cited by Plaintiff involve defendants failing to explicitly notify users of the practice at issue. *See In re Pharmatrak, Inc*., 329 F.3d 9, 21 (1st Cir. 2003) ("The pharmaceutical companies' websites gave no indication that use meant consent to collection of personal information by a third party."); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063-64 (N.D. Cal. 2021) ("Google cannot demonstrate that Plaintiffs expressly consented because Google did not notify users that it would be engaging in the alleged data collection while Plaintiffs were in private browsing mode."). Here, by contrast, when Plaintiff registered for an Express Scripts account, he expressly agreed to the Express Scripts Privacy Policies, which clearly disclose that his information could be shared with third parties. (*See* ECF No. 54-10 – 54-12 (Edwards Decl., Exs. A-C).) Thus, to the extent that Plaintiff can factually allege that his information was shared with Meta, he consented to the sharing of such information

when he registered for his Express Scripts account.

Plaintiff's citation to *Doe v. Meta Platforms, Inc*. (Opp. at 12) is likewise inapplicable. In *Doe v. Meta*, the defendant argued that the *healthcare providers* – as opposed to the plaintiffs – consented to the disclosure of protected health information. 690 F. Supp. 3d 1064, 1077-78 (N.D. Cal. 2023). However, the defendant in that case failed to provide the court *any* support for its contention that the healthcare providers "did not just presumably but *actually* consent[ed] to the sending of sensitive healthcare information of its customers." *Id*. (emphasis in original). Here, in contrast, based on the date Plaintiff alleges he accessed the platform, Plaintiff himself necessarily consented to the conduct at issue. (*See* ECF No. 54-10 – 54-12 (Edwards Decl., Exs. A-C).)

The Ninth Circuit and the Northern District have dismissed similar claims based on privacy policies with such explicit disclosures. *See, e.g.*, *Silver v. Stripe Inc*., No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing wiretap claims where plaintiffs agreed to a privacy policy that "explicitly state[d] that a consumers' information may be provided to [the defendant's] 'partners'"); *Garcia*, 78 F. Supp. 3d at 1136 (dismissing CIPA claim where plaintiff consented to sharing personal data when plaintiff agreed to defendant's privacy policy); *In re Yahoo Mail Litig*., 7 F. Supp. 3d 1016, 1030 (N.D. Cal. 2014) (dismissing ECPA claims where terms informed email users that defendant would "scan and analyze emails" to provide personal product features, serve targeted advertising, create user profiles, and share content with third parties). In *Smith v. Facebook, Inc.*, for example, the Ninth Circuit affirmed dismissal of wiretap claims because the defendant disclosed the precise conduct at issue, and found that a reasonable person would understand the defendant's practices by viewing the disclosures in the terms and policies presented to the plaintiff. 745 F. App'x 8, 8-9 (9th Cir. 2018). The relevant Privacy Policies here contain the same level of specificity as the policies in *Smith*. A reasonable person viewing the Privacy Policies would be put on sufficient notice that Express Scripts both (1) uses website enhancement technology, including pixels, to promote site functionality and for marketing, and (2) shares certain record data collected from this technology with third parties.

Specifically, Express Scripts' Privacy Policies state that Express Scripts: (1) "may use

certain in-house or third-party functionality to log and analyze your communications with us and interactions with the Site," (ECF No. 54-11 (Edwards Decl., Ex. B at 8)); (2) "may embed *tracking pixels* or tags within various pages of the Site to enable use of site analytics and enhance Site functionality," (*id.* at 12 (emphasis added)); (3) "may use third parties to . . . provide Tracking Mechanism(s) that [Express Scripts] embed[s] in or use[s] with the Site, . . . provide advertisements and other information to you about the Site, products, and services through a third-party site based on a prior visit to the Site, . . . [and] analyze communication with us and interactions with the Site," (*id.* at 14 (under heading, "**THIRD PARTY USAGE**," in bold, capitalized letters)); and (4) "may also promote content of interest to you through social media," (*id.* at 8). The Privacy Policies also allow a user to "opt out or configure [their] social media account settings to limit promotion of such content." (*Id.*)

Contrary to Plaintiff's argument, Meta's terms do not change the consent analysis. In a last-ditch effort, Plaintiff asks the Court to consider that Express Scripts "agreed to Facebook's Business Tools Terms," which restrict certain practices. (Opp. at 21.) From this, Plaintiff argues that Meta's terms are "susceptible to multiple meanings," (*id.*) and the Court must conclude that Plaintiff could not have consented to the data collection technology at issue, citing *In re Meta Pixel Healthcare Litigation*, 647 F. Supp. 3d 778 (N.D. Cal. 2022). (Opp. at 21.) In *In re Meta*, the Court noted that the use of "require" in Meta's business terms could either mean that (1) companies that use the Meta Pixel could not disclose health care information or (2) they had to obtain HIPAA-compliant consent before doing so. *Id.* at 794. Any perceived ambiguity in Meta's terms is not inconsistent with Plaintiff's assent to Express Scripts' Privacy Policies. To the extent that Plaintiff can factually plead that Express Scripts shared his information with Meta, his agreement to the terms in the Express Scripts' Privacy Policies bars his claims.

The SAC fails because Express Scripts' Privacy Policies are more than sufficient to inform any reasonable person that the company uses website enhancement technology that collects and shares basic record information—the only information Plaintiff has factually put at issue—with third parties to improve site functionality. Thus, contrary to Plaintiff's assertions, Express Scripts informed Plaintiff of the specific practices here, he affirmatively consented to

such practices, and Plaintiff's consent warrants dismissal with prejudice of all the claims. *See, e.g.*, *Libman v. Apple Inc.*, No. 22-cv-07069-EJD, 2024 WL 4314791, at *10 (N.D. Cal. Sept. 26, 2024) (dismissing plaintiff's claims where defendant sufficiently disclosed the challenged data collection technology at issue).

### C. Plaintiff's Wiretap Claims Fail on Other Grounds

#### 1. Express Scripts Cannot "Intercept" Its Own Communications

Plaintiff fails to address ECPA's party exception rule and thereby concedes that his ECPA claim should be dismissed. (*See* Opp. at 12-14.) With respect to CIPA, Plaintiff misunderstands Express Scripts' argument — just as he did on the last round of Rule 12(b)(6) briefing. As explained in Express Scripts' motion and ignored in Plaintiff's opposition, the SAC concedes that Express Scripts was the intended recipient of Plaintiff's alleged communications (*e.g.*, SAC ¶ 75), and that Express Scripts consented to the use of the technology on its website by enabling the Meta Pixel (*id.* ¶¶ 78-79, 83-84, 88, 131). In doing so, Plaintiff concedes that Express Scripts was a party to the alleged communication from Plaintiff. The SAC's allegations that *Express Scripts* itself somehow "intercepted" communications directed to its own website fail because the party exemption equally applies to CIPA. The cases Plaintiff cites hold as much. *See, e.g.*, *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 519 (C.D. Cal. 2021) ("[T]o the extent Plaintiff alleges Nike recorded its own communications with Plaintiff, the court finds the § 631 exemption applies."); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Moosejaw cannot be liable for eavesdropping on its own communications with Revitch[.]"). Plaintiff continues to allege that both Express Scripts *and* Meta allegedly intercepted his communications, but his claims based on Express Scripts' "eavesdropping" on its own communications continue to be barred.

#### 2. Plaintiff Has Failed to Allege That "Contents" of Communications Were Disclosed

Plaintiff's wiretap claims also fail because Plaintiff has not plausibly alleged interception of any "contents" of communications as required by ECPA and CIPA. In arguing "content,"

Plaintiff regurgitates his prior briefing and once again misquotes the Ninth Circuit to argue that his interactions with the public-facing webpages could be "contents." (Opp. at 14.) In *In re Facebook, Inc. Internet Tracking Litigation*, the Ninth Circuit was not addressing "contents"—or even a wiretap claim. 956 F.3d 589, 605 (9th Cir. 2020). Rather, the court was discussing an invasion of privacy claim, and upholding it because it concerned tracking movements outside Facebook's platform. *See id.* Nor did the court hold that mere clicks could constitute content in *Saleh v. Nike*, noting "not all of this information may constitute the 'contents' of a communication under [ECPA]." 562 F. Supp. 3d at 518. Moreover, the plaintiffs in *In re Meta Pixel Healthcare Litigation* submitted an expert declaration stating that the specific URLs at issue would not merely reveal the name of a Facebook user or group but "the transmitted URLs include[d] both the 'path' and the 'query string.'" 647 F. Supp. 3d at 795. Plaintiff has not identified any URLs at issue, let alone submitted a declaration to support his claims.[1]

Plaintiff again asserts in his opposition that mouse movements, clicks, and keystrokes constitute "contents" for the purposes of CIPA. (Opp. at 14.) As numerous cases have made clear, "contents" do not include such "record information." *See, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Thus, after setting aside the non-content information identified by Plaintiff, Plaintiff is left with his single generic background allegation that he entered certain personal information on some unidentified page(s) of the Express Scripts platform. (*See* SAC ¶ 20.) Even if the Court were to assume that this single allegation sufficiently identified "content" under CIPA, Plaintiff never alleges that he entered any of this information on any page where the Meta Pixel was embedded. Further, for Plaintiff to be able to place prescriptions orders via the website as he alleges, Plaintiff was required to consent to the Privacy Policies during registration. (*See* ECF No. 54-10, 13-14 (Edwards Decl., Exs. A, D-E).)

Instead of making concrete factual allegations, Plaintiff resorts to speculation that the

[1] Plaintiff also mistakenly cites to the first provision of CIPA § 631 in support of his argument, stating there is no "content" requirement under that law. (Opp. at 14 n.2.) It is well settled that the first provision of CIPA does not apply to internet communications and is irrelevant to this case. *See, e.g.*, *A.S. v. Selectquote Ins. Servs*., No. 3:23-cv-02258-RBM-MSB, 2024 WL 3881850, at *10 (S.D. Cal. Aug. 19, 2024) (collecting cases). And Plaintiff does not even assert a claim under the first provision of Section 631 in the SAC. (*See* SAC ¶¶ 133-50.)

Meta Pixel embedded on one page was somehow able to collect everything Plaintiff did on all pages of the domain. (*See* SAC ¶¶ 7, 52.) But pixel settings vary from webpage-to-webpage, and Plaintiff does not allege otherwise. *See Doe I v. Google LLC*, 2024 WL 3490744, at *2 (explaining how pixel technology works and its specific settings on specific pages). Allegedly inputting information on some unidentified pages of the domain, not connected to the Meta Pixel in any way by *factual*, *non-conclusory* allegations, is not enough to sustain a wiretap claim.

**3. Plaintiff Has Not Alleged Interception "In Transit"**

Plaintiff misreads the third clause of Section 631(a) of CIPA to argue that his wiretap claims do not have an "in transit" requirement. (Opp. at 15.) Section 631(a) applies only to a communication "***in transit*** or passing over any wire, line, or cable, or ***is being*** sent from, or received at any place within this state." Cal. Penal Code § 631(a) (emphasis added). The term "being" in "being sent . . . or received" must be given its "usual and ordinary meaning." *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 605 (2020). Plainly, "being" means in the process of being sent or received—not ***after*** it has been sent or arrived. *See, e.g.*, *Adler v. Community.com, Inc.*, No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435, at *3-4 (C.D. Cal. Aug. 2, 2021) (discussing in transit requirement for wiretap claims); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (construing CIPA's "in transit" requirement as coextensive with ECPA's); *Revitch*, 2019 WL 5485330, at *2 (applying "in transit" requirement).

This is reinforced when Section 631(a) is read "as a whole so that all parts are harmonized and given effect." *Ste. Marie v. Riverside Cnty. Reg'l Park & Open-Space Dist.*, 46 Cal. 4th 282, 289 (2009). Viewed as a whole, the statute repeats the "in transit" requirement through each provision: (i) "while [it] is in transit," (ii) "passing over any wire," or (iii) "being sent . . . or received." Cal. Pen. Code § 631(a). Courts interpret Section 631(a) to "distinguish messages that have already arrived or are immediately being sent, as opposed to those 'in transit.'" *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021). Here, Plaintiff expressly alleges that communications were recorded "*and **thereafter*** delivered to . . . Facebook." (SAC ¶ 137

(emphasis added).)[2] Plaintiff's conclusory allegations of "real time" interception (SAC ¶¶ 9, 22, 51, 84, 91) are contradicted by his specific allegations of transmission to Facebook ***after*** communications reached Express Scripts. Thus, Plaintiff's conclusory allegations are not entitled any weight, and his specific allegations preclude finding interception "in transit."

### D. Plaintiff Has Not Plausibly Alleged That Express Scripts Aided and Abetted Meta's Alleged Violation of CIPA

#### 1. Prong Four of Section 631(a) is an Aiding and Abetting Provision

Plaintiff's reliance on dictionary definitions (Opp. at 18) to argue that clause four of Section 631(a) excludes "aiding and abetting" amounts to nothing more than wishful rulemaking. Federal courts throughout California, all of which Plaintiff ignores, refer to the fourth clause of Section 631(a) as an "aiding and abetting" provision. *See, e.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. Apr. 8, 2021) (describing standard as aiding and abetting); *D'Angelo v. FCA US, LLC*., No. 3:23-cv-00982-WQH-MMP, 2024 WL 1625771, at *13 (S.D. Cal. Mar. 28, 2024) (same); *Strehl v. Guitar Ctr., Inc*., No. LA CV23-02603 JAK (RAOx), 2024 WL 2790373, at *3 (S.D. Cal. May 29, 2024) (same); *B.K. v. Desert Care Network,* No. 2:23-CV-05021, 2024 WL 1343305, at *6-7 (C.D. Cal. Feb. 1, 2024) (same).

Plaintiff's attempt to argue that the fourth clause is not an aiding and abetting provision relies almost entirely on language from a single, non-binding federal court case. However, this language was not central to the court's ruling. In *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023), the court *granted* defendant's motion to dismiss on other grounds, making the language that Plaintiff cites irrelevant to the ultimate decision. *See generally id.* The overwhelming majority of courts view the fourth clause as an aiding and abetting provision, and Plaintiff has failed to plead an aiding and abetting claim. *See, e.g.*, *Graham*, 533 F. Supp. 3d at 833; *see also Kirch v. Embarq Mgmt. Co*., 702 F.3d 1245, 1246-47 (10th Cir. 2012) (describing

---

[2] Plaintiff requests the opportunity to amend his allegation if his use of the word "thereafter" negates his other allegations. (Opp. at 16.) We respectfully ask the Court to decline his request. This is the Plaintiff's third attempt at pleading a plausible claim, and Plaintiff has had ample chances to amend his deficient complaint. Plaintiff cannot retract a fatal admission simply by amending to omit the omission. *See Reddy v. Litton Indus., Inc.,* 912 F.2d 291, 296-97 (9th Cir.1990) (amendments must allege "facts consistent with the challenged pleading").

"procuring" as "aiding and abetting"). If the Court finds any ambiguity in Section 631(a), as a penal statute, it should be construed in Express Scripts' favor. *See Warden v. Khan*, 99 Cal. App. 3d 805, 811 n.3 (1979) ("Since we are dealing with a penal statute [in Section 631], language so ambiguous should be interpreted in favor of the alleged violator.").

**2. Plaintiff Must First Allege a Predicate Violation to Hold Express Scripts Liable for Aiding and Abetting**

Plaintiff's assertion that Express Scripts can be liable under prong four of Section 631(a) without alleging a predicate third-party offense (Opp. at 17-18) is incorrect and unsupported by the law. *See, e.g.*, *Cody v. Ring LLC*, No. 3:23-cv-00562-AMO, 2024 WL 735667, at *7 (N.D. Cal. Feb. 22, 2024) (dismissing aiding and abetting claim under Section 631(a) where plaintiff failed to "establish an underlying third-party violation"). Here, Plaintiff does not claim that Meta violated CIPA. Instead, Plaintiff asserts that he is not required to make this showing because clause four provides an independent basis for liability. (Opp. at 18-19.) But as this Court has held, aiding and abetting liability under Section 631(a) requires the plaintiff to "establish an underlying third-party violation." *Cody*, 2024 WL 735667, at *7. Because "Plaintiff does not allege that [Express Scripts] violated the first three prongs of CIPA § 631(a)," *id.*, and has failed to allege facts to establish Meta's alleged wrongdoing as required under the fourth prong, Plaintiff has not stated a claim under any subsection of Section 631 against Express Scripts.

**3. Plaintiff Has Not Sufficiently Pled that Express Scripts Aided and Abetted Any Wrongdoing**

Plaintiff argues that the criminal standard does not apply to CIPA (Opp. at 19), a statute in California's criminal penal code. As a criminal statute, CIPA *must* include a scienter element. *See* Cal. Penal Code § 20 ("In every crime or public offense there must exist a union, or joint operation of act and intent"); *People v. Hardy*, 5 Cal. 5th 56, 96 (2018) ("Aiding and abetting liability requires 'the intent or purpose of committing, encouraging, or facilitating the commission of the offense.'" (citation omitted)). Plaintiff ignores authority applying this aiding and abetting scienter element to CIPA claims under clause four. *E.g.*, *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-CV-08002-SPG-E, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023) ("[T]he Complaint

alleges that Defendant paid Genesys to intercept messages, it does not allege facts demonstrating Defendant acted with the requisite knowledge or intent to *aid and abet* Genesys's purported CIPA violation." (emphasis added)). Plaintiff fails to meet the required standard for criminal statutes.

Even under the civil standard, Plaintiff's allegations fail. Under the common law civil tort standard, a person may be held liable for aiding and abetting if they "(a) know[] the other's conduct constitute[s] a breach of duty and give[] substantial assistance or encouragement to the other to so act; or (b) give[] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102-DMS(KSC), 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (applying common law civil tort definition of aiding and abetting in construing Section 631 and dismissing plaintiff's claims); *see also Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024) (same). Here, Plaintiff has not alleged sufficient facts to show that Express Scripts knew of any purported violation by Meta. Moreover, because Express Scripts disclosed the challenged conduct at issue through its Privacy Policies, it did not breach any unspecified duty purportedly owed to its users.

### E. Plaintiff's CMIA Claims Must Be Dismissed

#### 1. Plaintiff Fails to Allege Any "Medical Information" Has Been Transmitted to Meta

Once again, Plaintiff fails to establish any connection between the Meta Pixel and the specific webpages where he allegedly entered sensitive information. In his opposition, Plaintiff now argues that "[b]ecause ***any input*** made is specific to obtaining treatment or managing a medical condition via prescriptions, it reveals the ***substantive medical treatment*** or ***nature*** for which the patient is seeking to book an appointment." (Opp. at 25 (first italics added).) Plaintiff's suggestion that "any input" relates to a prescription and necessarily reveals "substantive medical treatment" has been rejected by federal courts. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017) (concluding that browsing data from public webpages is not "Protected Health Information" because "nothing about [the] information relates specifically to Plaintiffs' health," but is instead only "general health information that is accessible

to the public at large"), *aff'd,* 745 F. App'x 8 (9th Cir. 2018); *see also Doe I v. Google LLC.*, 2024 WL 3490744, at *2 (explaining that it matters which page the pixel is embedded on).

To try to save his claim, Plaintiff attempts to distance himself from *Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021), asserting he "has pled facts revealing the specific nature of the treatment he sought and received," and relying solely on paragraph 20 of the SAC for support. (Opp. at 24.) However, paragraph 20 fails to link the sensitive information to specific pages where the Pixel was allegedly embedded. (*See* SAC ¶ 20.) Instead, Plaintiff only vaguely states that he used the "Express Scripts Platform" to obtain prescriptions for low insulin and testosterone levels and was "required to input . . . a diagnosis history" on an unspecified page — without any allegation that the Meta Pixel was embedded on that unidentified page and, if it was, whether it was configured to capture user inputs. (*Id.*) These are the same kinds of "sparse [and] generalized allegations" that are insufficient to determine what specific "substantive information" Plaintiff might have plausibly shared on a webpage actually embedded with a Meta Pixel. *MG v. Therapymatch*, *Inc*., No. 23-cv-04422-AMO, 2024 WL 4219992, at *2-3 (N.D. Cal. Sept. 16, 2024) (dismissing CMIA claim where it was not clear what "medical information" was purportedly disclosed when plaintiff offered only "sparse, generalized allegations" that "[w]hen prompted by the site to enter his mental health concerns and search parameters, [he] specified that he was looking for therapy related to two specific mental health conditions").

Plaintiff has failed to carry his burden, and his cited cases are distinguishable or inapplicable. In *Colleen M. v. Fertility & Surgical Associates Of Thousand Oaks*, the Court of Appeals affirmed the trial court's grant of summary judgment in favor of defendant. 132 Cal. App. 4th 1466, 1481 (2005). There, the court held that a health clinic's disclosure of details of a patient's treatment to her ex-fiancé was authorized under the CMIA exception permitting disclosure to the person responsible for the patient's health care costs. *Id.* at 1478. And, as previously discussed, in *In re Meta Pixel Healthcare Litigation*, plaintiffs submitted an expert declaration stating that the specific URLs at issue "include[d] both the 'path' and the 'query string.'" 647 F. Supp. 3d at 795. While that court held that the information disclosed through

descriptive URLs and buttons could be considered "contents," Plaintiff has identified no specific descriptive URLs or buttons here. Finally, in *In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*, plaintiffs attached letters to their complaint indicating that their health information was exposed in the data breach and specifically alleged an increase in medical-related spam e-mails and phone calls following the breach. 613 F. Supp. 3d 1284, 1299 (S.D. Cal. 2020). No such allegations exist here.

### 2. Plaintiff Fails to Allege Anyone Viewed Any Medical Information

Plaintiff's sole argument that Meta viewed his substantive medical information is the unremarkable allegation that Meta, a for-profit company, generally monetizes information it receives through the Meta Pixel for advertising. (Opp. at 27.) From this, Plaintiff asks the Court to make a logical leap to conclude that someone at Meta has viewed his sensitive medical information. But Plaintiff never connects his medical information to the Meta Pixel in the first instance. Plaintiff continues to fail to connect the necessary dots to substantiate his claims. This speculative chain of inference fails to meet the pleading standards, and as such, Plaintiff's CMIA claim should be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Moreover, Plaintiff disregards directly applicable case law establishing that he must allege more than the mere possibility that someone at Meta viewed his purported medical information. For example, in *Barbour v. John Muir Health*, the Court explained that:

> [T]he information may be collected, analyzed, and used by a third party for its own benefit, all through the use of computers, without any human actually laying eyes on it. Plaintiffs have not alleged that the information was "actually read" within the meaning of *Sutter Health*. Plaintiffs conclude that someone must have viewed the data at Facebook in order to compile the datasets for advertisers, the complaint does not specifically allege this. It does allege that the information was used by a third party and used for its own benefit, i.e., for marketing purposes. However, in the absence of allegations that the information was "actually read," Plaintiffs have failed to allege facts sufficient to state a violation of the CMIA.

No. C22-01693, 2023 WL 2618967, at *7-8 (Cal. Super. Ct. Jan. 5, 2023).

Similarly, here, there is no allegation that any *person* at Meta (or anywhere else) has ever

viewed Plaintiff's data. Rather, Plaintiff asserts only generic allegations that Meta "monetizes the information it receives," (SAC ¶ 29) by "serving specific ad campaigns to users based on the specific actions those patients took on Defendant's Platform." (*Id.* ¶ 31.) Such general allegations, without facts demonstrating how Meta captured or used *Plaintiff's* data, cannot save Plaintiff's CMIA claim. *See Quinto v. Regents of the Univ. of Cal.*, No. 22CV012970, 2023 WL 5803653, at *2 (Cal. Super. Ct. Sept. 1, 2023) (sustaining defendant's demurrer where plaintiff failed to allege Meta analyzed her information or that she received targeted advertisements); *see also Cousin*, 681 F. Supp. 3d at 1129 (concluding that arguments "that Meta's business model supports the inference that their data must have been viewed in connection with targeted marketing," without specific allegations that Meta had actually viewed plaintiff's data, were not enough to plead a CMIA claim).

The authority Plaintiff cites does not support a different result. For example, *Stasi v. Inmediata Health Group Corp*. involved a data breach where personal health information was posted on the internet and accessible to anyone with internet connection. 501 F. Supp. 3d 898, 924 (S.D. Cal. 2020). Similarly, in *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig*., plaintiff specifically alleged an increase in medical-related spam emails and phone calls following the data breach at issue. 613 F. Supp. 3d 1284, 1300 (S.D. Cal. 2020). Further, in *In re Mednax Services, Inc., Customer Data Security. Breach Litigation*, plaintiff specifically alleged that he experienced "an uptick in phishing emails since the [Data Breaches] at issue." 603 F. Supp. 3d 1183, 1218 (S.D. Fla. 2022). Such allegations do not exist here. Because Plaintiff alleges no more than a "sheer possibility" of purported misconduct, Plaintiff's CMIA claim should be dismissed. *See Khoros v. Lenovo (U.S.), Inc.*, No. 3:20-cv-03399-WHO, 2020 WL 12655516, at *3 (N.D. Cal. Oct. 5, 2020) (granting defendant's motion to dismiss, explaining that "[w]hile courts do not require 'heightened fact pleading of specifics,' a plaintiff must allege facts sufficient to 'raise a right to relief above the speculative level'").

## III. CONCLUSION

For these reasons and those discussed in Express Scripts' motion to dismiss, the SAC should be dismissed with prejudice.

Dated: November 7, 2024

MORRISON & FOERSTER LLP

By: */s/ Tiffany Cheung*
Tiffany Cheung

*Attorneys for Defendant*
EXPRESS SCRIPTS HOLDING COMPANY