TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
Morrison & Foerster LLP
425 Market Street,
San Francisco, California 94105
Telephone:    415.268.7000
Facsimile:    415.268.7522

WHITNEY R. O'BYRNE (CA SBN 325698)
WObyrne@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone:    213.892.5200
Facsimile:    213.892.5454

ELISABETH HUTCHINSON (admitted *pro hac vice*)
EHutchinson@mofo.com
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, Colorado 80202
Telephone:    303.592.1500
Facsimile:    303.592.1510

Attorneys for Defendant
EXPRESS SCRIPTS HOLDING COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JONATHAN LYNCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY,<br><br>Defendant. | Case No. 3:23-cv-01170-AMO<br><br>**DEFENDANT EXPRESS SCRIPTS HOLDING COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    January 8, 2026<br>Time:    2:00pm<br>Courtroom:    10<br>Judge:    Hon. Araceli Martínez Olguín<br><br>Date Action Filed:  March 15, 2023<br>Trial Date:  N/A |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 8, 2026, at 2:00 pm, or at a different time and date set by the Court, Defendant Express Scripts Holding Company will and hereby does move the Court for an order dismissing Plaintiff's claims under the Electronic Communications and Privacy Act of 1986 and the California Invasion of Privacy Act in the Third Amended Complaint ("TAC" or "amended complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that Plaintiff fails to state a claim upon which relief may be granted.

This Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; the Request for Judicial Notice; the Declaration of Tiffany Cheung ("Cheung Decl."); the pleadings, files, and records in this action; and such additional evidence and arguments as may be presented at the hearing of this Motion.

Dated: September 25, 2025                           MORRISON & FOERSTER LLP

                                   By: */s/ Tiffany Cheung*
                                      Tiffany Cheung
                                      Whitney R. O'Byrne
                                      Elisabeth A. Hutchinson

                                      *Attorneys for Defendant*
                                      EXPRESS SCRIPTS HOLDING
                                      COMPANY

NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT
CASE NO. 3:23-CV-01170-AMO

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................................. 2

    A.    Express Scripts Notified All Users That It Uses Pixel Technology ................... 2

    B.    Plaintiff Affirmatively Agreed to the Privacy Policy ........................................ 4

    C.    Plaintiff Seeks to Hold Express Scripts Liable for Aiding and Abetting............ 6

III.    LEGAL STANDARD .......................................................................................... 6

IV.    LEGAL ARGUMENT ......................................................................................... 6

    A.    Plaintiff's Wiretapping Claims Fail Because He Consented to Express Scripts' Use of Pixel Technology...................................................................................... 6

    B.    ECPA Does Not Impose Civil Liability for Aiding and Abetting ..................... 11

    C.    ECPA's Party Exemption Precludes a Claim for Direct Liability Against Express Scripts................................................................................................................ 13

        1.    The Party Exemption Applies ................................................................. 13

        2.    ECPA's Crime-Tort Exception Does Not Apply ................................... 14

    D.    Plaintiff's CIPA Claim Independently Fails ....................................................... 15

        1.    Plaintiff Does Not Allege Meta Reads or Attempts to Read Communications In Transit................................................................... 15

        2.    Plaintiff Does Not Plead "Aiding and Abetting" Under California Law 17

            a.    Plaintiff has not plausibly alleged a predicate violation by Meta 18

            b.    Plaintiff does not allege that Express Scripts knew of Meta's purported intent to violate the CIPA ......................................... 19

            c.    Plaintiff does not allege that Express Scripts provided Meta with substantial assistance to violate the CIPA.................................. 21

V.    CONCLUSION.................................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. lqbal*, 556 U.S. 662 (2009) ................................................................................ 6

*A.S. v. Selectquote Ins. Servs.*,
    No. 3:23-cv-02258-RBM-MSB, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ............. 17, 18

*B.K. v. Desert Care Network*,
    No. 2:23-cv-05021 SPG, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ....................... 17-18, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................... 6

*Byars v. Hot Topic, Inc.*, No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994
    (C.D. Cal. Feb. 14, 2023) ............................................................................................. 18

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2017) ......................................................................... 13

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*,
    891 F. Supp. 2d 13 (D.D.C. 2012) ........................................................................ 12, 13

*Crano v. Sojern, Inc.*,
    No. 3:25-cv-02600-JSC, 2025 U.S. Dist. LEXIS 185031 (N.D. Cal. Sept. 19,
    2025) ............................................................................................................................ 16

*Doe I v. Google LLC*,
    No. 23-cv-02431-VC, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) .......................... 15

*Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 WL 559241,
    (S.D. Cal. Feb. 12, 2024) ............................................................................................. 19

*Esparza v. UAG Escondido A1 Inc.*,
    No. 23cv0102 DMS(KSC), 2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) ................ 17, 20

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
    No. SACV 15-00137-JLS, 2015 WL 13273308 (C.D. Cal. July 29, 2015) .................... 13

*Garcia v. Build.com, Inc.*,
    No. 22-cv-1985-DMS-KSC, 2024 WL 1349035 (S.D. Cal. Mar. 29, 2024) .................. 19

*In re Google Assistant Privacy Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ......................................................................... 19

*In re Google Inc. Cooke Placement Consumer Privacy Litig.*,
    806 F.3d 125 (3d Cir. 2015) .................................................................................... 13-14

*In re Google Inc. Gmail Litig.*,
   No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ............................. 14

*Heiting v. Taro Pharms. USA, Inc.*,
   709 F. Supp. 3d 1007 (C.D. Cal. 2023)............................................................................ 17, 21

*Herzer v. Redstone*,
   No. 17-CV-7545 PSG, 2018 WL 5094933 (C.D. Cal. July 10, 2018).................................. 13

*Kirch v. Embarq Mgmt. Co.*,
   702 F.3d 1245 (10th Cir. 2012)......................................................................................... 11

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005)............................................................................................. 6

*Lakes v. Ubisoft, Inc*,
   777 F. Supp. 3d 1047 (N.D. Cal. 2025). ............................................................................ 8, 9

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021)................................................................... 17, 18, 19

*M.D. v. Google LLC*,
   No. 24-cv-06369-AMO, 2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) ...................... 7, 8, 9

*Moretti v. Hertz Corp.*,
   No. C 13-02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014)................................... 9

*Okash v. Essentia Health*,
   No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ................................................ 15

*Peavy v. WFAA-TV, Inc.*,
   221 F.3d 158 (5th Cir. 2000)............................................................................................. 11

*Pena v. GameStop, Inc.*,
   670 F. Supp. 3d 1112 (S.D. Cal. 2023) ............................................................................. 14

*People v. Perez*,
   35 Cal. 4th 1219 (2005) .............................................................................................. 18, 21

*Popa v. Harriet Carter Gifts, Inc.*,
   772 F. Supp. 3d 592 (W.D. Pa. 2025)................................................................................. 9

*Reyes v. Educ. Credit Mgmt. Corp.*,
   773 F. App'x 989 (9th Cir. 2019) ....................................................................................6-7

*Rodriguez v. Ford Motor Co.*,
   722 F. Supp. 3d 1104 (S.D. Cal. 2024)...................................................................17, 19, 20

*Rodriguez v. Google LLC*,
   No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021)................................... 14

*Roe v. Amgen Inc.*,
  No. 2:23-cv-07448-MCS (SSC), 2024 WL 2873482 (C.D. Cal. June 5, 2024) .................... 15

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
  No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ......................... 14

*Satchell v. Conic Notify, Inc.*,
  234 F. Supp. 3d 996 (N.D. Cal. 2017) ................................................................. 13

*Snyder v. G6 Hospitality, LLC*,
  No. 5:24-cv-02423-AH-(SHKx), 2025 WL 2426613 (C.D. Cal. Aug. 18, 2025) .................... 9

*Sussman v. ABC, Inc.*,
  186 F.3d 1200 (9th Cir. 1999)........................................................................... 14

*Torres v. Prudential Fin., Inc.*,
  No. 22-cv-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .............................. 16

*In re Toys R Us, Inc., Privacy Litig.*,
  No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)........................................... 13

*Valenzuela v. Keurig Green Mountain, Inc.*,
  674 F. Supp. 3d 751 (N.D. Cal. 2023) ................................................................. 16

*Valenzuela v. Kroger Co.*,
  No. CV 22-6382-DMG, 2024 WL 1336959 (C.D. Cal. Mar. 28, 2024)................................. 17

*Washington v. Flixbus, Inc.*,
  No. 3:25-cv-00212-H-MSB, 2025 WL 1592961 (S.D. Cal. June 5, 2025) ......................... 8, 9

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................. 13

**Statutes**

18 U.S.C.
  § 2510.................................................................................................... 1
  § 2511................................................................................................ 7, 11, 13
  § 2520................................................................................................ 11, 12

Cal. Penal Code § 631 ...................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................. 6

**STATEMENT OF ISSUES TO BE DECIDED**

1. **Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510-2523 (Claim 1).** Whether Plaintiff's ECPA claim should be dismissed because (i) Plaintiff consented to the use of pixel technology on the Express Scripts website; (ii) ECPA does not impose civil liability on Express Scripts for allegedly "aiding and abetting" Meta's purported interception; and (iii) ECPA's party exemption applies because Express Scripts consented and was the intended recipient of Plaintiff's communications.

2. **California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 (Claim 2).** Whether Plaintiff's CIPA claim should be dismissed because (i) Plaintiff and Express Scripts consented to the use of pixel technology on the Express Scripts website; (ii) Plaintiff has not alleged that Meta reads or attempts to read the contents of communications in transit; and (iii) Plaintiff's aiding-and-abetting theory fails to allege the necessary knowledge, intent, or substantial assistance elements.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

After more than two years and three amended complaints, Plaintiff's fourth attempt still fails to allege any violation of wiretapping statutes based on Express Scripts' use of the Meta pixel on its public website.  The Court previously dismissed Plaintiff's wiretapping claims, twice, because he repeatedly failed to identify whether Express Scripts or Meta allegedly did the intercepting.  On his fourth attempt to plead these claims, Plaintiff has now clarified that Meta—not Express Scripts—is the party that allegedly intercepted his communications.  But Plaintiff's theory that Express Scripts "aided and abetted" Meta's purported violation is not viable under the statutes.  The federal Electronic Communications and Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510 *et seq.*, provides for direct liability only, and Plaintiff's aiding-and-abetting allegations do not and cannot support a civil ECPA claim.  As to Plaintiff's claim under California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a), such aiding-and-abetting liability arises only in the fourth clause of section 631(a), which requires adequately pleading that Express Scripts knew of Meta's intent to violate some duty owed to Plaintiff.  Plaintiff has not done so.  Despite having four attempts to plead any wiretapping claim, Plaintiff still cannot state a claim under ECPA or CIPA section 631.[1]  Plaintiff's wiretapping claims should be dismissed—this time, with prejudice.

This is especially so because any registered user—including Plaintiff—affirmatively agreed to Express Scripts' privacy policy stating that Express Scripts' website uses pixel technology to capture certain personal and health information, including to serve customers and improve the customer experience and for advertising purposes.  Indeed, Express Scripts put *all* website visitors on notice of its privacy policy through a persistent link on its website.  Since the last time the parties briefed this issue, multiple courts in this Circuit have found materially similar fact patterns and privacy policies sufficient to establish actual consent for wiretapping claims.

---

[1] Express Scripts also maintains that Plaintiff fails to state a viable claim under the California Confidentiality of Medical Information Act, but does not address those allegations based on the Court's order allowing that claim to survive the pleading stage.  (*See* ECF No. 60.)

The same outcome should follow here. Plaintiff's theory does not square with his claims or judicially noticeable facts.[2] Plaintiff consented, and Plaintiff cannot hold Express Scripts liable based on misguided and conclusory allegations.

The Court gave Plaintiff "one final opportunity" to amend (ECF No. 60 at 10), and he continues to fail to state an ECPA or CIPA claim. Plaintiff's wiretapping claims should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

Express Scripts is an online pharmacy and pharmacy benefits manager that serves over 100 million Americans. (ECF No. 64 ("TAC") ¶ 33.) Plaintiff alleges that he is a Facebook[3] user and California resident who visited the Express Scripts website, www.express-scripts.com, "between April 2022 and December 2022." (TAC ¶¶ 20, 71.) Plaintiff alleges that Express Scripts used a website enhancement tool called the Meta pixel on the public-facing pages of its website in a manner that allowed Meta to "intercept" Plaintiff's communications. (*Id.* ¶¶ 1, 75.) These communications allegedly included "mouse clicks and movements, keystrokes, search items, information inputted, pages and content viewed, scroll movements, and copy and paste actions" on the public-facing website. (*Id.* ¶ 77.) Plaintiff does not allege that Express Scripts uses the technology within the authenticated patient portal, which would require Plaintiff to enter a login and password before gaining access to the portal. Rather, Plaintiff only alleges that the pixel is embedded on the public-facing website. (*See generally* TAC.)

### A.    Express Scripts Notified All Users That It Uses Pixel Technology

That Express Scripts uses the Meta pixel on its public website is not a secret. Far from secret "spyware" (*id.* ¶ 4), Express Scripts' privacy policy in effect when Plaintiff allegedly visited the website expressly notifies all website visitors that Express Scripts uses third-party

---

[2] *See* ECF No. 60 at 6 (taking judicial notice of documents attached to Express Scripts' motion to dismiss the Second Amended Complaint).

[3] On October 28, 2021, Facebook changed its corporate name to Meta. *See* Meta Platforms Inc., Amendments to Articles of Incorporation of Bylaws; Change in Fiscal Year (Form 8-K) (Oct. 28, 2021), https://www.sec.gov/Archives/edgar/data/1326801/000132680121000071/fb-20211028.htm.

NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT
CASE NO. 3:23-CV-01170-AMO

2

pixel technology to "log and analyze" website communications.  (ECF No. 54-11 at 7.)

Specifically, the privacy policy notifies users that:

- Express Scripts "may use certain in-house or third-party functionality to *log and analyze your communications with us and interactions with the Site*," which "enables [Express Scripts] to communicate with [website visitors] about [its] services, and to monitor the services provided to [users], so that [Express Scripts] can improve [users'] Site experience and address certain Site or benefit related issues," (*id.* (emphasis added));

- The third-party functionality that logs and analyzes website communications may process "Personal Information and Health Information," (*id.* (emphasis add));

- Personal information includes "name, date of birth, mailing address, *social media and other third party platform account identifiers*, home phone number," and other "information which can be used to identify a person," (*id.* at 1 (emphasis added));

- Health information includes "any information in any form, related to the past, present, or future health or medical status, condition, or treatment of a person," (*id.*);

- Personal information collected from the Express Scripts website by third-party functionality analyzing website communications may be used for advertising purposes, including using third-party "service providers to make targeted non-personal communications to an aggregated audience regarding [Express Scripts'] offerings and other potentially relevant benefit information of interest to you," (*id.* at 8);

- Express Scripts' website uses "web server logs, cookies, ad servers, *tracking pixels,* web beacons, and similar Internet tracking devices (collectively, '**Tracking Mechanisms**')" (*id.* at 10 (first emphasis added));

- The information collected by the "Tracking Mechanisms" "may be used by [Express Scripts] and [its] affiliated companies for a variety of analytic and developmental purposes include to *improve and enhance the Site and our products and services*, to create new products and services, to customize your experience on the Site and other sites that you visit on the Internet, *to identify and/or offer products, services and website functionality that may be of interest to you*, and other legitimate business purposes" (*id.*

(emphasis add));

- Express Scripts "*may use third parties to* . . . provide Tracking Mechanism(s) that [Express Scripts] embed[s] in or use[s] with the Site, . . . provide advertisements and other information to you about the Site, products, and services through a third-party site based on a prior visit to the Site, . . . *analyze communication with us and interactions with the Site*, . . . [and] collect Non-Personal Information from you (e.g., on your interactions and/or experience with the Site and/or [Express Scripts])" (*id.* at 13 (emphasis add) (under heading, "**THIRD-PARTY USAGE**," in bold, capitalized letters)); and

- Express Scripts "may also promote content of interest to you through social media," and a user "may opt out or configure [their] social media account settings to limit promotion of such content" (*id.* at 7).

The privacy policy further notifies users that they are "deemed to have assented to the terms and conditions contained in this Privacy Policy when [they] use the Site and/or when [they] have indicated in [their] online registration that [they] accept the Terms of Use into which this Privacy Policy is incorporated." (*Id*. at 14.)  Similarly, the Terms of Use in effect at the same time also highlight "**PRIVACY POLICY**" in bold, capitalized letters and provide, "You agree to the Internet privacy policy ('Privacy Policy'), which is incorporated by reference in these Terms of Use." (ECF No. 54-12 at 7.)[4]

### B.   Plaintiff Affirmatively Agreed to the Privacy Policy

Plaintiff alleges that he placed prescription requests with Express Scripts via the company's "website on his computer." (TAC ¶ 20.)  To be able to place any such orders, Plaintiff must have created an account. (ECF No. 54-9 ¶ 2.)  Since at least January 2022, to create an account, users have been required to agree to Express Scripts' privacy policy quoted above. (*Id*. ¶ 3.)  During the relevant time, the registration screen when accessing the Express

---

[4] In addition to these unambiguous disclosures, the privacy policy also provides clear instructions on actions users can take to control the information collected. (*Id.* at 12.)  Plaintiff never alleges that he took any of the identified actions on his social media accounts, including Meta, to manage his information after being informed of those instructions, or that he ever received any advertisements related to his use of the Express Scripts website. (*See generally* TAC.)

Scripts website appeared as follows:

(ECF No. 54-10.)[5]

Moreover, Plaintiff alleges that he accessed the Express Scripts website multiple times between April 2022 and December 2022.  (TAC ¶¶ 20, 71.)  During each of these visits, a link to the Express Scripts' privacy policy appeared in the persistent footer of the website under the "Privacy" hyperlink.  (Declaration of Tiffany Cheung ("Cheung Decl.") Ex. A.)  A screenshot of the Express Scripts Website captured on April 1, 2022 shows the hyperlinks displayed at the bottom of the page:

(Cheung Decl. Ex. A)  The same was true in December 2022, as reflected in a screenshot of the Express Scripts Website captured on December 31, 2022:

[5] Plaintiff alleges that he accessed the Express Scripts website through his computer.  (TAC ¶ 20.)  But if Plaintiff registered via the Express Scripts mobile application, he still consented to the same terms and privacy policy via a substantially similar registration page used for the app.  (ECF Nos. 54-13, 54-14.)

(Cheung Decl. Ex. B)

### C.    Plaintiff Seeks to Hold Express Scripts Liable for Aiding and Abetting

Now on his fourth version of the complaint, Plaintiff finally clarifies that his theory of liability is that Meta—not Express Scripts—is the entity that allegedly "intercepts" communications through the Meta pixel.  (TAC ¶¶ 75, 83-84, 90, 119, 129, 135.)  Plaintiff alleges that Meta read, learned, and/or attempted to learn communications from users of the Express Scripts website.  (*Id.* ¶¶ 91, 135, 145.)  He claims that Express Scripts is liable under the theory that Express Scripts aided Meta's alleged misconduct by embedding the Meta pixel on the public-facing Express Scripts website, which allegedly allowed Meta to intercept communications between consumers and Express Scripts.  (*Id.* ¶¶ 75, 84, 129, 135.)

### III.    LEGAL STANDARD

In assessing a motion under Rule 12(b)(6), the Court should not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations; nor should it accept as true allegations contradicted by judicially noticeable facts.  *Ashcroft v. lqbal*, 556 U.S. 662, 677-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (discussing incorporation-by-reference doctrine).  Rather, factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  If alleged facts are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and *plausibility* of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (emphasis added).

### IV.    LEGAL ARGUMENT

### A.    Plaintiff's Wiretapping Claims Fail Because He Consented to Express Scripts' Use of Pixel Technology

"[U]nder California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record." *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989,

990 n.1 (9th Cir. 2019); Cal. Penal Code § 631(a) (prohibiting conduct that is "unauthorized," done "without the consent of all parties to the communication, or in any unauthorized manner"). The same is true of an ECPA claim.  18 U.S.C. § 2511(2)(d) ("It shall not be unlawful . . . to intercept . . . where one of the parties to the communication has given prior consent[.]").  Plaintiff cannot state an ECPA or CIPA claim because he continues to fail to plead facts supporting his conclusory allegation that he "did not consent" to the use of pixel technology.  (TAC ¶ 20.) Rather, as detailed above, Plaintiff consented to the exact conduct of which Plaintiff complains: the use of pixel technology on Express Scripts' website to allegedly monitor his interactions and communications with the site.  (ECF Nos. 54-10, 54-11, 54-13, 54-14.)

Indeed, the privacy policy expressly disclosed not only that pixel and analytic technology would be used to track communications and interactions with the website, but also that third-party companies may capture and process website visitors' personal and health information.  (ECF No. 54-11 at 7.)  What's more, although Plaintiff does not allege that he received any advertisements stemming from his use of Express Scripts' services, his consent to the privacy policy covered the use of his personal information for advertising, specifically including "targeted non-personal communications to an aggregated audience regarding [Express Scripts'] offerings and other potentially relevant benefit information." (*Id*. at 8.)   Thus, Plaintiff's consent covered the very disclosures and uses he challenges here.

Following the parties' September 2024 briefing on Defendant's Motion to Dismiss the Second Amended Complaint, numerous additional courts have held that Plaintiff's consent under these circumstances precludes his ECPA and CIPA claims.  Most recently, in *M.D. v. Google LLC*, this Court found, under substantially similar facts, that plaintiffs had consented to BlueChew's use of Google and Meta technologies on its website based on plaintiffs' agreement to the relevant terms of service and privacy policies while registering for a BlueChew user account. No. 24-cv-06369-AMO, 2025 WL 2710095, at *4-5 (N.D. Cal. Sept. 23, 2025) (Martínez-Olguín, J.).  Specifically, the Court held that plaintiffs were on notice of the use of online technologies, that the technologies would capture personal and health-related information, and that the information could be used for advertising purposes. *Id.* at *5.  Like the updated version of

BlueChew's privacy policy, Express Scripts' privacy policy clearly describes both (1) the types of data collected by website analytic tools, including personal and health-related data, and (2) that personal information, including social media identifiers, may be used for advertising purposes. *Compare id.* at *5 with ECF No. 54-11 at 1, 7-10. One important distinction, however, is that in *M.D.*, the technologies were allegedly deployed within BlueChew's authenticated environment, and so were able to capture information indicating visitors added medications to their carts, and purchased the medication. *M.D.*, 2025 WL 2710095, at *1. Plaintiff here makes no such allegations and only alleges that the technologies were deployed on Express Scripts' public-facing website.

Other cases are in accord on the issue of consent. For instance, in *Lakes v. Ubisoft, Inc.*, plaintiffs alleged that defendant enabled the Meta pixel to intercept their video viewing activity and transmitted that data to Meta. 777 F. Supp. 3d 1047, 1056 (N.D. Cal. 2025). Plaintiffs, in turn, argued that "a granular disclosure stating that Meta will collect Plaintiffs' 'video game titles combined with unique Facebook identifiers' is required to obtain actual consent." *Id.* The court rejected the proposition that such a granular disclosure was required. *Id.* at 1060. Because defendant's disclosures gave users notice of the use of the online tracking technologies and the data that would be captured, even if not on a granular level, the court held that consent barred plaintiffs' ECPA and CIPA claims and dismissed the complaint with prejudice. *Id.*

Similarly, in *Washington v. Flixbus, Inc.*, the court dismissed with prejudice plaintiff's CIPA claims because plaintiff consented to the challenged data practices when purchasing a bus ticket through defendant's website. No. 3:25-cv-00212-H-MSB, 2025 WL 1592961, at *6 (S.D. Cal. June 5, 2025). There, like here, defendant required every user to agree to the privacy policy during check-out, and the policy disclosed defendant's use of pixel technologies to collect and share information with business partners. *Id.* at *4. The court also noted that the policy was hyperlinked at the bottom of the website, making it readily available to website visitors who did not actually click on the link during the check-out process. *See id.* The footer on the Flixbus website is structured very similarly to the footer on Express Scripts' website:

Reseller login   Legal   (Privacy Policy)
Photo Credits   ☑☒ Your Privacy Choices

© 2024 FlixBus Inc

*Washington v. Flixbus, Inc.*, No. 3:25-cv-00212-H-MSB (S.D. Cal. Apr. 4, 2025), ECF No. 6-2, Ex. A, at 35.

Here, Plaintiff baldly alleges that "no human being could possibly[] find, observe, and select—let alone read—the website's terms of use or privacy policy." (TAC ¶ 54.) Plaintiff's hyperbole does not change the legal authority holding that Plaintiff's affirmative agreement to the Express Scripts' privacy policy, and the clear notice of the policy provided to all website visitors, bars Plaintiff's claims. Just as in *M.D.*, *Lakes*, and *Washington*, Plaintiff affirmatively agreed to Express Scripts' privacy policy. To register for an account, Plaintiff was required to acknowledge the following statement: "I have read and accept the Terms of Use and Privacy Policy." (ECF No. 54-10.)[6] By clicking "Next" on the account registration screen, Plaintiff affirmatively agreed to the hyperlinked privacy policy, regardless of whether or not he chose to read the policy's terms. *See Snyder v. G6 Hospitality, LLC*, No. 5:24-cv-02423-AH-(SHKx), 2025 WL 2426613, at *3 (C.D. Cal. Aug. 18, 2025) ("An online contract may be enforceable [where] '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'") (quoting *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024)); *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) ("A binding contract is created if a '[p]laintiff [i]s provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the I accept' button and [ ] admittedly clicked 'Accept.'") (citation omitted).

Further, just as in *Washington*, Express Scripts' privacy policy was conspicuously hyperlinked at the bottom of Express Scripts' website throughout the relevant time period, per

_____

[6] If registering via the Express Scripts app, members must represent, "I agree with the Privacy Policy and Terms of Use." (ECF Nos. 54-13, 54-14.)

NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT
CASE NO. 3:23-CV-01170-AMO

9

industry standard.  (Cheung Decl. Exs. A, B.)  This clear notice further supports dismissing Plaintiff's claims based on his consent to the alleged conduct.  *See Popa v. Harriet Carter Gifts, Inc.*, 772 F. Supp. 3d 592, 607 (W.D. Pa. 2025) (granting defendant summary judgment in wiretapping case, finding plaintiff consented to the tracking technology at issue because defendant's privacy policy was clearly and conspicuously disclosed via a hyperlink placed in the persistent footer of every page on the website, "in line with common usage").

Both during registration and in the footer of the website, Express Scripts' privacy policy in place when Plaintiff alleges that he used the website explicitly notified users, including Plaintiff, about Express Scripts' use of pixel technology and the information it would capture. There is no ambiguity in the disclosures at issue:

- Express Scripts uses "third-party functionality to log and analyze your communications with us and interactions with the Site,"
- This functionality may capture personal information, including social media identifiers, and health-related information; and
- Personal information may be used for advertising purposes.

(ECF No. 54-11 at 7-8.)  Moreover, the policy further discloses that:

- Express Scripts uses tracking pixels, which it defines as one of its website's "Tracking Mechanisms"; and
- Express Scripts "may use third parties to . . . provide Tracking Mechanism(s) that [Express Scripts] embed[s] in or use[s] with the Site, . . . to analyze communication with [Express Scripts] and interactions with the Site."

(*Id*. at 13.)

Plaintiff was thus on notice that Express Scripts may use third-party pixel technology to track website interactions and communications and that his personal information may be used for advertising.  He further agreed to the same when he registered for an account and repeatedly chose to navigate the website after being put on notice of such practices.  Plaintiff cannot plead around his consent.  His claims should be dismissed with prejudice.

### B.   ECPA Does Not Impose Civil Liability for Aiding and Abetting

Plaintiff now clearly asserts an "aiding and abetting" theory of liability under his ECPA claim.  But such a claim fails as a matter of law because ECPA's private right of action does not impose civil liability for aiding and abetting.  *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1249 (10th Cir. 2012).

ECPA's private right of action is found in 18 U.S.C. § 2520.  Section 2520 creates a scope of civil liability that is narrower than the criminal liability provision codified in section 2511.  When Congress enacted ECPA in 1986, it specifically excluded civil liability for procurement (or aiding and abetting), which previously existed under the 1968 predecessor to ECPA.  *See Kirch*, 702 F.3d at 1246-47 (addressing the statutory distinctions between civil and criminal liability under ECPA).  Rather, section 2520(a)'s plain, unambiguous language creates a private civil cause of action only against the person or entity who commits an unlawful interception, disclosure, or intentional use of wire, oral, or electronic communications—not against any other person for procuring, enabling, or aiding and abetting another's "interception."  *See, e.g., id.* (holding that there is no civil ECPA claim for "procur[ing]" or "aiding and abetting" an interception); *see also Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (same).

After pleading inconsistent theories for years, Plaintiff has finally clarified that he is asserting a theory that Express Scripts purportedly *aided* Facebook (i.e., Meta) in intercepting communications:

- "Defendant intentionally **configured its Platform to *facilitate Facebook's* real-time interception** of Plaintiff's and Class Members' electronic communications. Defendant's implementation of the Facebook Pixel caused Facebook to contemporaneously capture and redirect those intercepted communications from users to Facebook . . . ."  (TAC ¶ 129 (emphasis added).)

- "**Defendant was *enabling Facebook*** to intercept and transmit their electronic communications in real time through the Facebook Pixel and tracking their communications and interactions with Defendant's Platform."  (*Id.* ¶ 130 (emphasis added).)

- **"Defendant intentionally employed technology—the Facebook Pixel—that *enabled Facebook*** to intercept, transmit in real time, and acquire the contents of Plaintiff's and Class Members' electronic communications . . . ." (*Id.* ¶ 131 (emphasis added).)
- "Plaintiff and Class Members are persons whose **electronic communications were intercepted by Facebook, as a consequence of *Defendant's enabling*.**" (*Id.* ¶ 132 (emphasis added).)

Similar allegations are found throughout the Third Amended Complaint. (*See, e.g.*, TAC ¶ 25 ("By **aiding** and employing the Facebook Pixel on its Platform, Defendant **aided** Facebook's interception of Plaintiff's information, surreptitiously and without consent, including the fact that Plaintiff was communicating with Defendant via its Platform.") (emphasis added); *id.* ¶ 74 ("Unbeknownst to Plaintiff, Defendant deployed—**and so aided**—the Facebook Pixel software on its Platform to collect and transmit in real time to a third party, Facebook, the contents of communications while the same are in transit.") (emphasis added); *see also id.* ¶¶ 20, 22, 135.)

For over a decade, courts have made clear that the plain language of ECPA's civil liability clause does not extend to Plaintiff's theory that Express Scripts purportedly "enabled" or "aided" a third party's interception. The civil liability provision states, in relevant part:

> [A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a). As the text of section 2520(a) shows, Congress limited civil liability to the specific conduct identified in the statute.

The first clause defines the universe of individuals with standing to bring suit—"any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of th[e] chapter." *See Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz,* 891 F. Supp. 2d 13, 23 (D.D.C. 2012). The remainder of the provision defines the scope of defendants subject to suit—any person "which engaged in that violation." *Id.* Viewed together, the phrase "that violation" refers back to the description set forth in the first clause, meaning it "refers only to illegal interception, disclosure, or use, and not to procuring interception

by another." *Id*. at 24 (citation omitted).  By deleting the procurement language in the 1986 amendments, Congress confirmed that section 2520(a) does not reach allegations of "procurement" or "aiding and abetting," as Plaintiff alleges here.  *Id*.

Because Congress deliberately removed the procurement language when it amended section 2520(a), and because the statute limits liability to those who themselves "engaged in that violation," Plaintiff's aiding-and-abetting ECPA claim should be dismissed.  *See In re Toys R Us, Inc., Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252, at \*6 (N.D. Cal. Oct. 9, 2001) ("[T]he Wiretap Act was amended in 1986 to narrow the class of persons who could be held liable civilly under § 2520(a)," and the "plain language of § 2520(a) now limits its applicability to those who 'intercept,' 'disclose' or 'use' the communications at issue.");  *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089-90 (N.D. Cal. 2017) ("[T]here is simply no secondary liability (such as aiding and abetting) under the ECPA."); *Satchell v. Conic Notify, Inc*., 234 F. Supp. 3d 996, 1007 (N.D. Cal. 2017) ("[I]n order to state a claim, Plaintiff must be able to allege that each Defendant engaged in conduct that directly violates the Wiretap Act"); *Herzer v. Redstone*, No. 17-CV-7545 PSG (KSx), 2018 WL 5094933, at \*6 (C.D. Cal. July 10, 2018) (dismissing ECPA claim, explaining that the statute does not recognize secondary liability); *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, No. SACV 15-00137-JLS (RNBx), 2015 WL 13273308, at \*6-7 (C.D. Cal. July 29, 2015) (same).

Plaintiff's ECPA claim against Express Scripts for purportedly enabling Meta to intercept his communications should be dismissed.

### C.      ECPA's Party Exemption Precludes a Claim for Direct Liability Against Express Scripts

Plaintiff's ECPA claim also fails because Express Scripts is a party to any communication on its website, and consent to the purported interception by *either* party to the communication is a complete defense.  *See, e.g.*, *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014).

### 1.      The Party Exemption Applies

ECPA exempts from liability a "party to the communication."  18 U.S.C. § 2511(2)(d). And "the intended recipient of a communication is necessarily one of its parties." *In re Google*

*Inc. Cooke Placement Consumer Privacy Litig.*, 806 F.3d 125,143 (3d Cir. 2015) ("*Google I*"). As Plaintiff concedes, Express Scripts is a party to any communication with its website and a party to the communication. (*E.g.*, TAC ¶ 4 (describing website interactions as "sensitive electronic communications with [Express Scripts]").) Plaintiff also alleges that Express Scripts deployed the Meta pixel and consented to the use of the pixel on its website. (*Id.* ¶¶ 74, 84, 131.)

For this reason alone, Plaintiff's ECPA claim should be dismissed. *See, e.g.*, *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) (dismissing ECPA claim where defendant was a party to purported communications on defendant's website); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023) (granting defendant's motion to dismiss plaintiff's ECPA and CIPA claims because defendant was the known and intended recipient of the communications sent by plaintiff to defendant's website "such that each statute's 'party exception' bars [d]efendant's liability"); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (dismissing ECPA claim because Google's alleged interceptions occurred with the consent of app developers).

### 2.    ECPA's Crime-Tort Exception Does Not Apply

Plaintiff cannot evade dismissal by invoking the crime-fraud exception because that exception does not apply.

The crime-tort exception applies only when the "*purpose* for the interception – its intended use – was criminal or tortious" at the time of the interception. *Sussman v. ABC, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (citation omitted). That the interception itself allegedly violates the law is not enough. The interception must be "done for the ***purpose*** of facilitating ***some further impropriety***" for the crime-tort exception to apply. *Id.* (emphasis added). Thus, Plaintiff must allege that either the "primary motivation or a determining factor" in Express Scripts' choice to use the Meta pixel was to injure Plaintiff tortiously. *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (holding exception did not apply because "interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money'") (citation omitted).

Plaintiff concedes that Express Scripts used the Meta pixel "to sell more products, advertise, obtain analytics, and improve the Express Scripts Platform." (TAC ¶ 162.) Express Scripts' privacy policy confirms this non-tortious purpose as it notifying users that pixel technology may be used to improve website functionality and for advertising purposes. (*See* ECF No. 54-11.) Such non-tortious purposes cannot support application of the crime-fraud exception. *See Roe v. Amgen Inc.*, No. 2:23-cv-07448-MCS (SSC), 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (finding the crime-tort exception inapplicable where plaintiff alleged that defendant's motivations were to improve its marketing and advertising efforts).

Further, while Plaintiff generally alleges that certain health information is protected by federal law under HIPAA (TAC ¶¶ 100-10), Plaintiff never alleges that Express Scripts configured the Meta pixel on its public-facing website (which does not capture protected health information) with the intent to violate HIPAA or any other law. Plaintiff cannot state an ECPA claim merely by alleging that Express Scripts is a covered entity subject to HIPAA. Because "neither the alleged HIPAA nor privacy violations were independent of the interception, the crime-tort exception does not apply." *Okash v. Essentia Health*, No. 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (dismissing similar ECPA claim asserted against covered entity under party exception); *see also, e.g.*, *Doe I v. Google LLC*, No. 23-cv-02431-VC, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) (rejecting plaintiffs' contention that crime-tort exception applies when there is no independent act, even in a case purportedly involving health data). ECPA's party exemption based on Express Scripts' consent to the alleged conduct bars Plaintiff's ECPA claim, and Plaintiff has not shown that any exception applies.

### D.      Plaintiff's CIPA Claim Independently Fails

#### 1.      Plaintiff Does Not Allege Meta Reads or Attempts to Read Communications In Transit

For a communication to be "intercepted" under CIPA, the purported interceptor must "read[], or attempt[] to read, or to learn the contents or meaning of any . . . communications while the same is in transit." Cal. Penal Code § 631(a). CIPA's use of "read" and "attempt to read" both "require[] some effort at understanding the substantive meaning of the message, report, or

communication." *Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (citation omitted) (granting summary judgment to defendant on CIPA § 631 claim). CIPA's "in transit" requirement thus means that the act of reading or attempting to read must have occurred while the communication was in transmission and before it reached electronic storage. *Id.*; *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) ("'While' is the key word here.").

The recent opinion in *Crano v. Sojern, Inc.* illustrates this point. No. 3:25-cv-02600-JSC, 2025 U.S. Dist. LEXIS 185031 (N.D. Cal. Sept. 19, 2025). There, the court found that plaintiff failed to state a claim under section 631(a) where she alleged that a website "can use its source code to commandeer the user's computing device, causing the device to contemporaneously in real time and invisibly re-direct the users' personally identifiable . . . records and communications to third parties like Sojern." *Id.* at *17 (citation omitted). Plaintiff argued that Sojern's tracking technology intercepted her information when she visited two websites to book hotel stays. However, the court noted that plaintiff's own description of Sojern's data collection practices, such as "collect[ing] as much information relating to a hotel guest as possible all from different sources . . . stor[ing] that information in a centralized location . . . where it matches data points and creates detailed profiles[,]" was inconsistent with CIPA's statutory requirement, because it described the subsequent use and aggregation of data, not its interception while in transit. *See id.* at *17-18.

The same is true here. Accepting Plaintiff's allegations as true, Plaintiff has not plausibly alleged that Meta read or attempted to read any of Plaintiff's communications while they were *in transit*. Rather, he alleges that the Express Scripts website was "*tapped and **thereafter** delivered* to the third-party, Facebook.*" (TAC ¶ 137 (emphasis added).) In other words, Plaintiff alleges that his communications were *recorded* and *then delivered* to Meta, where they were later aggregated and analyzed for alleged advertising purposes. Plaintiff further describes a multi-step process during which the substance of the communication is not being analyzed until after it is in storage. Plaintiff alleges that "[e]very time the Facebook Pixel logs an action on a third-party website (like Defendant's), it sends the data back to its parent: Meta. With that information, ***Meta***

*then* attempts to match the action to one of its users with Facebook accounts." (*Id.* ¶ 27 (emphasis added).)  Plaintiff, therefore, has not alleged that Meta read or attempted to read his communications while "in transit" and fails to state a CIPA claim.

### 2. Plaintiff Does Not Plead "Aiding and Abetting" Under California Law

Plaintiff's CIPA § 631 claim against Express Scripts arises under an indirect theory of liability under the fourth clause, which is directed at an entity "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other three bases for liability. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting Cal. Penal Code § 631(a)); (*see, e.g.*, TAC ¶ 138).

This fourth clause is an aiding-and-abetting claim under California's Penal Code. *A.S. v. Selectquote Ins. Servs.*, No. 3:23-cv-02258-RBM-MSB, 2024 WL 3881850, at *10 (S.D. Cal. Aug. 19, 2024).  As the court explained in *Esparza v. UAG Escondido A1 Inc.*, the omission of the word "abet" in clause four of section 631 does not eliminate the statute's knowledge or intent requirement.  No. 23cv0102 DMS(KSC), 2024 WL 3761293, at *2 (S.D. Cal. Aug. 5, 2024) ("*Esparza III*").  The court reasoned that section 631 is a criminal statute, and the first two clauses expressly require intentional or willful conduct.  *Id.*  Consistent with aiding-and-abetting principles under criminal law, liability under clause four therefore requires that the defendant knew that the direct violator (1) intended to commit the offense and (2) intended to facilitate that violation.  *Id.*  An interpretation to the contrary would ignore the criminal nature of section 631 and the aiding-and-abetting principles that govern its application.  *Id.*

Moreover, where—as here—the statute lacks an explicit scienter requirement, California courts apply the common-law definition of aiding-and-abetting in civil actions.  *See Valenzuela v. Kroger Co.,* No. CV 22-6382-DMG (AGRx), 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) (applying the common law definition of aiding-and-abetting under clause four of section 631(a) and dismissing plaintiff's claim).  Many courts in this Circuit are in accord.  *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007 (C.D. Cal. 2023) (same); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104 (S.D. Cal. 2024) (same); *B.K. v. Desert Care Network*, No. 2:23-cv-

05021 SPG (PDx), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) (same).

Accordingly, to allege that Express Scripts "aided and abetted" Meta, Plaintiff must have pled allegations

> in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator [i.e., Meta], (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends [i.e., Express Scripts], and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime [i.e., Express Scripts].

*People v. Perez*, 35 Cal. 4th 1219, 1225 (2005).  None is alleged here.

### a.   Plaintiff has not plausibly alleged a predicate violation by Meta

To state a claim under the aiding-and-abetting clause of section 631(a), Plaintiff must allege that Meta violated one of the first three clauses of section 631(a).  *See Selectquote Ins. Servs.*, 2024 WL 3881850, at *10; *Byars v. Hot Topic, Inc.*, No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994, at *9 (C.D. Cal. Feb. 14, 2023) (explaining that for aiding-and-abetting theory under section 631(a), defendant's liability must be based on whether the third party "violated Section 631(a) in some way").  He fails to do so.

*Clause One.*  The first clause of section 631(a), "intentional wiretapping," does not apply to internet communications like the ones alleged here.  *See, e.g.*, *Selectquote Ins. Servs.*, 2024 WL 3881850, at *10 (collecting cases).

*Clause Two.*  Plaintiff has not alleged that Meta illegally attempted to learn the contents of his communications—nor could he, given his consent to the specific conduct at issue under Express Scripts' privacy policy.  *See Mastel*, 549 F. Supp. 3d at 1134-35 (explaining that the second clause of section 631(a) prohibits persons from reading or attempting to read communications "without consent or authorization"); (*see* ECF No. 54-11).  Nor has he alleged interception in transit as required by clause two.  (*See supra* Section IV.D.1.)

*Clause Three.*  Because Plaintiff has failed to state a claim under the first or second clauses, any claim under the third clause fails as a matter of law because a violation of the third

clause is predicated upon a violation of clause one or two. *See Mastel*, 549 F. Supp. 3d at 1137. Specifically, clause three is directed at those who "use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." Cal. Penal Code § 631(a). The key limitation is that the "information" must have been "so obtained"—that is, obtained through an antecedent violation of clause one (prohibiting wiretapping) or clause two (prohibiting unauthorized reading of communications in transit). Here, Plaintiff has not adequately alleged any predicate violation under either clause one or clause two for the reasons stated above. Absent such a predicate violation, clause three cannot be invoked. Accordingly, any claim that Meta unlawfully "used" communications under clause three necessarily fails. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses [of § 631(a)]. Because Plaintiffs have not done so, they have also failed to plead a violation of the third clause . . . ."))

Without the required allegations that Meta violated section 631(a), Plaintiff's indirect aiding-and-abetting theory against Express Scripts fails and should be dismissed. *See, e.g.*, *Garcia v. Build.com, Inc.*, No. 22-cv-1985-DMS-KSC, 2024 WL 1349035 (S.D. Cal. Mar. 29, 2024) (dismissing aiding-and-abetting CIPA claim where plaintiff failed to plausibly allege a predicate violation of clauses one through three); *Rodriguez*, 722 F. Supp. 3d at 1124 (same).

> **b.** **Plaintiff does not allege that Express Scripts knew of Meta's purported intent to violate the CIPA**

Plaintiff's aiding-and-abetting claim fails on the additional ground that Plaintiff has not alleged that Express Scripts intended to aid Meta in violating section 631(a). To meet aiding-and-abetting requirements, the Plaintiff must allege that Express Scripts knew Meta's intent to engage in unlawful conduct and that Express Scripts intended to assist in achieving the unlawful conduct. *See Perez*, 35 Cal. 4th at 1225; *Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) ("*Esparza II*") (dismissing plaintiff's section 631(a) claim under clause four where plaintiff failed to allege the requisite knowledge by defendant).

Applying this standard once again in *Esparza III*, the court found plaintiff's allegations insufficient to establish defendant's knowledge of the third party's intent to violate CIPA. *Esparza III*, 2024 WL 3761293, at *3. At most, plaintiff alleged that defendant deployed a third party's messaging feature on its website and that the third party made certain representations about the benefits of its services. *Id.* But these allegations did not plausibly suggest that defendant *knew* the third party's conduct would breach a duty owed to plaintiff. *Id.* Because plaintiff failed to plead the necessary knowledge element, the court dismissed the section 631(a) claim under clause four with prejudice. *Id.*

Similarly, in *Rodriguez*, the court rejected plaintiff's aiding-and-abetting claim under section 631(a) because plaintiff failed to allege defendant's knowledge of any unlawful purpose by the third party. 722 F. Supp. 3d at 1124. While plaintiff alleged that defendant knew its vendor's technology captured chat communications on the website, there were no facts suggesting that defendant knew the vendor was using that data beyond storing it for defendant or that the vendor was distributing the data to outside parties. *Id.* The court therefore held that plaintiff had not alleged knowledge of the third party's unlawful purpose, which the court explained was required for aiding-and-abetting liability. *Id.* Because plaintiff failed to plead this knowledge element, the court dismissed the section 631(a) claim. *Id.* at 1126.

The same result is warranted here. Nowhere in the Third Amended Complaint does Plaintiff allege that Meta intended to violate section 631(a), let alone that Express Scripts knew of such intent. Tacitly conceding that the common law definition of aiding-and-abetting liability applies, Plaintiff includes one conclusory allegation that Express Scripts' conduct "constituted knowing facilitation and substantial assistance in th[e] unlawful interception." (TAC ¶ 135.) However, this allegation is inadequate to allege that ***Meta intended*** to violate CIPA or that ***Express Scripts knew*** of such intent. Indeed, Meta's own privacy policies that Plaintiff cites explicitly disavow any such intent. (*Id*. ¶ 24 ("We prohibit businesses and organizations from sharing information with us, including health and financial data.").) This alone dooms Plaintiff's claim. *See Desert Care Network*, 2024 WL 1343305, at *7 ("Plaintiffs' allegations indicate that Meta either had no intention of receiving the data at issue or had some alternative *mens rea* not

rising to the level of intentionality.").

Nor has Plaintiff presented any factual allegations that Express Scripts was *aware* of any purported intent by Meta to illegally attempt to learn the contents of communications. At most, Plaintiff alleges that Express Scripts installed the Meta pixel in a manner that allowed Meta to intercept communications (TAC ¶¶ 75, 84, 135) and that Meta monetizes some of the information it purportedly receives (*id.* ¶¶ 29-30). But such allegations are insufficient to state aiding-and-abetting liability under CIPA. *See Heiting*, 709 F. Supp. 3d at 1019 ("While the Complaint alleges that Defendant paid Genesys to intercept messages, it does not allege facts demonstrating Defendant acted with the requisite *knowledge or intent* to aid and abet Genesys's purported CIPA violation") (emphasis added). Thus, fatally missing from the TAC are allegations that Express Scripts intended to assist Meta in illegally intercepting these communications, shared the same mental state as Meta, or knew of criminal objectives harbored by Meta.

          **c.**        **Plaintiff does not allege that Express Scripts provided Meta with substantial assistance to violate the CIPA**

Plaintiff also has not alleged that Express Scripts engaged in any conduct that contributed to Meta's purported commission of a crime. Plaintiff must have pled *conduct* by Express Scripts that assists the achievement of Meta's crime. *See Perez*, 35 Cal. 4th at 1225. While Plaintiff characterizes Express Scripts' alleged wrongdoing as deploying and configuring the Meta pixel to intercept Plaintiff's communications (TAC ¶¶ 75, 84, 119, 135), this is not the same as factually alleging that Express Scripts aided and encouraged Meta with the purpose of facilitating any alleged criminal activity. Plaintiff has failed, for the fourth time, to satisfy the heightened standard for pleading a claim of aiding-and-abetting under the Penal Code.

### V.   CONCLUSION

This is Plaintiff's *fourth* attempt to plead a plausible wiretapping claim, and once again he has failed. Recent case law confirms that Plaintiff provided "actual consent" to the exact conduct he now challenges, and his allegations are otherwise wholly inadequate to show a purported wiretapping violation under federal or California law. Enough is enough. Plaintiff's ECPA and CIPA claims should be dismissed with prejudice.

Dated:  September 25, 2025

MORRISON & FOERSTER LLP


By:  */s/ Tiffany Cheung*
Tiffany Cheung

*Attorneys for Defendant*
EXPRESS SCRIPTS HOLDING
COMPANY

MF-360558863