**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         jgavenman@bursor.com
         jglatt@bursor.com

**THE BARRY LAW OFFICE, LTD**
Peter F. Barry (MN #0266577)
Admitted *pro hac vice*
1422 Asbury St. N.
St. Paul, MN 55108-2434
Telephone: (612) 379-8800
E-mail: pbarry@lawpoint.com

**SWIGART LAW GROUP, APC**
Joshua B. Swigart (State Bar No. 225557)
2221 Camino del Rio S, Suite 308
San Diego, CA 92108
Telephone: (866) 219-3343
Facsimile: (866) 219-8344
E-mail: Josh@SwigartLawGroup.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN LYNCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY,<br><br>Defendant. | Case No. 3:23-cv-01170-AMO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Date:  January 8, 2026<br>Time:  2:00 p.m.<br>Courtroom:  10<br>Judge:  Hon. Araceli Martínez-Olguín |

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD ............................................................................................................2

ARGUMENT .........................................................................................................................3

I.  PLAINTIFF DID NOT CONSENT TO DEFENDANT'S MISCONDUCT ........................3

II.  PLAINTIFF ADEQUATELY ALLEGES A VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA") ...................................6

    A.  The Tort-Crime Exception To The Third-Party Exemption Applies ........................6

    B.  Defendant's Arguments About Plaintiff's Aiding And Abetting Allegations Are Irrelevant .........................................................................................8

III.  PLAINTIFF'S CIPA CLAIM SHOULD PROCEED .........................................................10

    A.  Plaintiff Has Pleaded Defendant Reads Or Attempts To Read The Contents Of The Communication "In Transit" ...........................................................10

    B.  Plaintiff Has Alleged A Predicate Violation ...........................................................14

        1.  Plaintiff Did Not Consent To The Interception ............................................15

    C.  CIPA Does Not Require Aiding *And Abetting* The Third Party .............................15

    D.  Plaintiff Need Not Allege Meta's Mental State .......................................................18

    E.  Defendant's Insistence On A Criminal Standard Is Irrelevant ................................22

CONCLUSION .....................................................................................................................22

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................................... 3

*B.K. v. Desert Care Network*,
  2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......................................................................... 9, 21

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) .......................................................................... 5

*Balestrieri v. SportsEdTV, Inc.*,
  2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) .......................................................... 22, 23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................................... 3

*Boseovski v. McCloud Healthcare Clinic, Inc.*,
  2017 WL 2721997 (E.D. Cal. June 23, 2017) .......................................................... 11

*Boseovski v. McCloud Healthcare Clinic, Inc.*,
  2020 WL 68578 (E.D. Cal. Jan. 7, 2020) .......................................................... 11

*Brown v. Google LLC*,
  525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......................................................... 6

*Brown v. Google LLC*,
  685 F. Supp. 3d 909 (N.D. Cal. 2023) .......................................................... 6

*Calhoun v. Google LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021) .......................................................... 6

*Calhoun v. Google, LLC*,
  113 F.4th 1141 (9th Cir. 2024) .......................................................... 5, 16

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
  824 F.3d 1156 (9th Cir. 2016) .......................................................... 2, 3

*Chabolla v. ClassPass Inc.*,
  129 F.4th 1147 (9th Cir. 2025) .......................................................... 16

*Cousin v. Sharp Healthcare*,
  681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......................................................... 17

*Crano v. Sojern, Inc.*,
  2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) .......................................................... 15

*D'Angelo v. Penny OpCo, LLC*,
  2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .................................................................. 14

*Deivaprakash v. Conde Nast Digital*,
  2025 WL 2541952 (N.D. Cal. Sept. 4, 2025) .................................................................. 18

*DIRECTV, Inc. v. Barrett*,
  311 F. Supp. 2d 1143 (D. Kan. 2004) ............................................................................ 11

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......................................................................... 22

*Doe v. Tenet Healthcare Corp.*,
  789 F. Supp. 3d 814 (E.D. Cal. 2025) ................................................................ 17, 18, 21

*Esparaza v. UAG Escondido A1 Inc.*,
  2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ............................................................ 13, 17

*Frasco v. Flo Health, Inc.*,
  2025 WL 2680068 (N.D. Cal. Sept. 17, 2025) ................................................................ 23

*Godun v. JustAnswer LLC*,
  135 F. 4th 699 (9th Cir. 2025) .................................................................................... 5, 16

*In re BetterHelp, Inc. Data Disclosure Cases*,
  2024 WL 3416511 (N.D. Cal. July 15, 2024) .................................................................. 9

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) .............................................................................. 5

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) ............................................................................................ 4

*In re Google Inc.*,
  2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .............................................................. 11

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) .......................................................................... 5, 9

*In re Meta Pixel Tax Filing Cases*,
  724 F. Supp. 3d 987 (N.D. Cal. 2024) ........................................................................ 5, 22

*James v. Walt Disney Co.*,
  701 F. Supp. 3d 942 (N.D. Cal. 2023) ...................................................................... 12, 21

*Kirch v. Embarq Mgmt. Co.*,
  702 F.3d 1245 (10th Cir. 2012) ...................................................................................... 10

*Kishore v. Times Internet (UK) Ltd.*,
  2024 WL 4197619 (N.D. Cal. Sept. 12, 2024) .............................................................. 15

*Lesh v. Cable News Network, Inc.*,
  767 F. Supp. 3d 33 (S.D.N.Y. 2025) ..................................................................................... 23

*Lonegan v. Hasty*,
  436 F. Supp. 2d 419 (E.D.N.Y 2006) ..................................................................................... 11

*Matera v. Google Inc.*,
  2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ....................................................................... 11

*Meta v. Zillow Grp., Inc.*,
  2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ....................................................................... 13

*Mitchell v. Sonesta Int'l. Hotels Corp.*,
  2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) ......................................................................... 18

*Moody v. C2 Educ. Sys. Inc.*,
  742 F. Supp. 3d 1072 (C.D. Cal. 2024) ................................................................................. 23

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989) ................................................................................................... 4

*Peavy v. WFAA-TV, Inc.*,
  221 F.3d 158 (5th Cir. 2000) ........................................................................................... 10, 11

*People v. Snook*,
  16 Cal. 4th 1210 (Cal. 1997) ................................................................................................. 18

*R.C. v. Sussex Publishers, LLC*,
  2025 WL 1735994 (N.D. Cal. June 23, 2025) ....................................................................... 22

*R.C. v. Walgreen Co.*,
  733 F. Supp. 3d 876 (C.D. Cal. 2024) ............................................................................... 9, 21

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .................................................................. 12, 18

*Ringanian v. LiveRamp Holdings, Inc.*,
  2025 WL 2021802 (N.D. Cal. July 18, 2025) ................................................................... 14, 15

*Rodriguez v. Ford Motor Co.*,
  722 F. Supp. 3d 1104 (S.D. Cal. Mar. 21, 2024) .................................................................. 22

*Shah v. Fandom, Inc.*,
  754 F. Supp. 3d 925 (N.D. Cal. 2024) ......................................................................... 5, 16, 18

*Smith v. Google, LLC*,
  735 F. Supp. 3d 1188 (N.D. Cal. 2024) ................................................................................ 22

*Smith v. Rack Room Shoes, Inc.*,
  2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .................................................................... 20, 21

*Smith v. YETI Coolers, LLC*,
  754 F. Supp. 3d 933 (N.D. Cal. 2024)...................................................................................... 17, 20

*St. Aubin v. Carbon Health Techs., Inc.*,
  2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .................................................................... 14, 18, 19

*Sussman v. Am. Broad. Companies, Inc.*,
  186 F.3d 1200 (9th Cir. 1999) ....................................................................................................... 9

*Tate v. VITAS Healthcare Corp.*,
  762 F. Supp. 3d 949 (E.D. Cal. 2025) .................................................................................... 17, 18

*Tavernetti v. Superior Ct.*,
  22 Cal. 3d 187 (1978) ................................................................................................................. 15

*Torres v. Prudential Fin., Inc.*,
  2025 WL 1135088 (N.D. Cal. Apr. 17, 2025).............................................................................. 15

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) ...................................................................................................... 20

*Zarif v. Hwareh.com, Inc.*,
  789 F. Supp. 3d 880 (S.D. Cal. 2025) ......................................................................................... 20

**STATUTES**

18 U.S.C. § 2511 ................................................................................................................... 8, 9, 11

Cal. Pen. Code § 631 ......................................................................................................... passim

**RULES**

Fed. R. Civ. P. 9(b)................................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 2, 3

**REGULATIONS**

45 C.F.R. § 164.502(a) ............................................................................................................... 7

**INTRODUCTION**

Thousands of people turn to Express Scripts ("Defendant") each month for medical treatment and prescription discounts. No one would expect that their use of Express Scripts would, in turn, deliver their sensitive health data to the hands of third parties to be used for whatever purpose they see fit. But that is exactly what happened: Express Scripts disclosed, and Meta Platforms, Inc. ("Facebook" or "Meta") intercepted, users' health data from the Express Scripts platform whenever they accessed the website. This occurred by design, not by accident, because Defendant installed the "Facebook Tracking Pixel" (the "Pixel") on its website and programmed it to quietly listen in on patients' communications with Defendant.

The Facebook Tracking Pixel is a piece of code that can be integrated into websites, like Defendant's, by incorporating it in the website's source code. When a person visits a website that contains the Pixel, the Pixel tracks their actions across the website and transmits the information—including the user's private communications (HTTP Requests), personal identifying information, and information about their past, present, or future medical conditions and/or treatment—to Facebook's servers. The information Facebook receives is transmitted alongside the website visitor's "c_userID" (*i.e.*, Facebook ID) which associates and links that information to the visitor's Facebook profile. Facebook then compiles this information into generalized datasets, allowing Defendant to run advertisements that target users who viewed particular content.

Importantly, this would not have happened but for Defendant's decision to install the Pixel. And Defendant can instruct the Pixel to capture specific pieces of information. Plaintiff Jonathan Lynch ("Plaintiff") therefore alleges that, by placing this tracking tool throughout the Express Scripts website, Defendant aided, employed, and agreed with Facebook to cause the surreptitious interception of Plaintiff's private medical communications with Express Scripts, which he reasonably understood was merely between himself and Defendant.

Plaintiff adequately pleads his claims. Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("MTD") (ECF No. 67) ignores swaths of the Third Amended Class Action Complaint ("TAC") (ECF No. 64) to reframe its intentional, self-interested privacy violations as merely consensual activities of which Plaintiff was fully aware. Setting aside that the TAC details

how the Pixel intentionally tracks, collects, and uses a customer's information acquired from Defendant's website in real time for its own purposes, Defendant disputes its alleged "intent" as though none of Plaintiff's factual allegations have weight.  Defendant's attempt to minimize its alleged misconduct by focusing on the Facebook policy documents attached to its motion is simply not supported by the robust allegations laid out in the TAC.  Defendant cannot prevail on its motion by simply ignoring key allegations in the case.

Similarly, Defendant misconstrues case law, manufactures statutory exceptions, and purports to raise legal defenses that have been squarely rejected by numerous courts in this district and elsewhere.  He alleges that Defendant surreptitiously aided and employed the Pixel to track the data he inputted—in real time—into the website.  The Pixel intercepted mouse movements and clicks, keystrokes, that the tracking, interception, and collection of Plaintiff's information included private personal and medical information such as his phone number, address, payment information, and medical diagnosis history; and, that Facebook subsequently used this private data through aggregation, association, and profiling of Plaintiff's information to feed its advertising systems.  These allegations are sufficient under the law to state the claims asserted in the TAC.  Defendant's MTD should therefore be denied.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  "A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories."  *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the 'grounds' of 'his entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The Court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex Plastics, Inc.*, 824 F.3d at 1159.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "Rule 9(b) requires particularity as to the circumstances of the fraud – this requires pleading facts that by any definition are 'evidentiary': time, place, persons, statements made, explanation of why or how such statements are false or misleading."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994); *see also Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.  While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient.").

## ARGUMENT

### I.    PLAINTIFF DID NOT CONSENT TO DEFENDANT'S MISCONDUCT

Defendant, relying on "judicially noticeable facts,"[1] argues that "Plaintiff's wiretapping claims fail because he consented to Express Scripts' use of pixel technology."  MTD at 6.  Not so.

The party seeking to invoke a consent defense "bear[s] the burden to establish consent and, on a motion to dismiss, would be required to show that the allegations of the complaint established consent as a matter of law."  *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 925, 931 (N.D. Cal. 2024);

---

[1] Defendant asserts that the Court took "judicial notice of documents attached to Express Scripts' motion to dismiss the Second Amended Complaint," MTD at 2, n. 2, to support its heavy reliance on its Privacy Policy.  But the Court explicitly noted that the documents would not be considered beyond their existence and thus cannot be relied on as proof of Plaintiff's consent.  *See* ECF No. 60 at 6 (The Court "does not, however, consider the documents beyond [their existence].); *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1001 (N.D. Cal. 2024) ("This notice is limited to the existence and contents of this July 26, 2022 version of Meta's terms of service. The Court cannot conclude from Meta's submission that this was the version in effect during the period relevant to plaintiffs' claims, or that plaintiffs ever assented to the terms therein.").

*Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("[C]onsent is an affirmative defense for which defendant bears the burden of proof.") (cleaned up). "Under an inquiry theory of notice, contracts are formed between website users and operators only where (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Godun v. JustAnswer LLC*, 135 F. 4th 699, 709 (9th Cir. 2025) (cleaned up). For the consent to be "actual," the "disclosures must 'explicitly notify' users of the practice at issue." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022). Consent is evaluated under a "reasonable user" standard, *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1046 (N.D. Cal. 2014), and if there is more than one plausible interpretation, "the Court cannot decide the consent issue in [Defendant's] favor." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019).

Here, Defendant's consent defense fails because Express Scripts' Privacy Policy expressly states that "[w]e are firmly committed to protecting the confidentiality and security of your Personal Information … 'Health Information' means any information, in any form, related to the past, present, or future health or medical status, condition, or treatment of a person, including, by way of example, but not limitation, names of doctors, health conditions, medicines, and/or prescription information and history." ECF No. 54-11 at 1. Defendant asserts the same commitment to maintaining confidentiality of users' Health Information throughout its website. *See*, *e.g.*, Defendant's "Notice of Privacy Practices"[2] ("We take our obligation to keep your PHI secure and confidential very seriously… When we use or give out ("disclose") your PHI, we are bound by the terms of this Notice."). And nowhere in its Privacy Policy or Notice of Privacy

---

[2] Curiously, Defendant failed to request judicial notice of its "Notice of Privacy Practices" document, which, as its Privacy Policy details, "describes how we may use and disclose Health Information, and your rights to access and update your Health Information and how to request restrictions on our use and disclosure of your Health Information." ECF No. 54-11 at 1. Further, "[t]o the extent any terms in this Privacy Policy conflict with any terms in the Notice of Privacy Practices, the conflicting terms in the Notice of Privacy Practices will control and override the corresponding terms in this Privacy Policy." *Id.* at 1-2. For the sake of a more complete record, Plaintiff has submitted Defendant's Notice of Privacy Practices as Exhibit 1 to the concurrently filed Request for Judicial Notice.

Practices does Defendant expressly outline or gain consent for the misconduct at issue. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 928 (N.D. Cal. 2023) (finding privacy policy that is "silent as to any data collection specific to" the misconduct at issue does not establish consent); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1066 (N.D. Cal. 2021) (finding no consent to data collection where "statements suggest" the defendant did not engage in the challenged conduct); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 621 (N.D. Cal. 2021) (finding no consent because the privacy notice "makes specific representations that could suggest to a reasonable user that [defendant] would not engage in the alleged data collection").

Defendant asserts that Plaintiff's "consent to the privacy policy covered the use of his personal information for advertising, specifically including 'targeted non-personal communications to an aggregated audience regarding [Express Scripts'] offerings and other potentially relevant information.'" MTD at 7 (citing ECF No. 54-11 at 8). But Defendant fails to include the rest—and perhaps the most relevant portion—of the Privacy Policy's language regarding such advertising: that "[t]hese communications *will not* be based on your Health Information." ECF No. 54-11 at 8 (emphasis added). That Plaintiff was purportedly "on notice that Express Scripts may use third-party pixel technology to track website interactions and communications and that his *personal information* may be used for advertising," MTD at 10 (emphasis added), does nothing to defeat Plaintiff's claims that his *health information* was utilized for this improper purpose—despite Defendant's plain statement that "these communications will not be based on your *Health Information*." ECF No. 54-11 at 8 (emphasis added). Indeed, Plaintiff alleges that health information is among those disclosed. *See* TAC ¶ 20 ("Plaintiff used the Express Scripts Platform … to obtain prescriptions to treat low insulin and testosterone levels. … He was also required to input further information, such as … a diagnosis history related to the testosterone prescription, as it is a controlled substance."); *id.* ¶ 159 ("Express Scripts disclosed medical information without first obtaining authorization when it disclosed to third party Facebook … prescription requests."). And Defendant's Privacy Policy states "[w]e will not use or disclose your Personal Information or your Health Information in a manner inconsistent with applicable law, this Privacy Policy or the Notice of Privacy Practices." ECF No. 54-11 at 7. Thus, even if Plaintiff did consent to

Defendant's proffered Privacy Policy—he did not—his allegations plainly assert that Defendant *did* use and disclose his Personal and Health Information "in a manner inconsistent with applicable law, th[e] Privacy Policy [and] the Notice of Privacy Practices," namely, that his Health Information was used in an unauthorized manner.  *See*, *e.g.*, TAC ¶¶ 28-31, 70, 108, 109, 110, 159, 160-163.  Accordingly, Defendant has failed to show that Plaintiff consented to the disclosure of his health information.

Moreover, as a HIPAA-covered pharmacy benefits manager, Express Scripts' users reasonably expect that their interactions with the Platform—particularly those relating to prescription refills, controlled substances, and medical conditions—would remain confidential and protected under federal law.  This expectation arises not from subjective belief but from Express Scripts' own statutory obligations under 45 C.F.R. § 164.502(a) and its Notice of Privacy Practices promising to safeguard protected health information ("PHI").  The installation of Meta Pixel code that captured and transmitted identifiers tied to prescription activity directly contravenes these representations.  Regardless of whether the pixel was embedded on "public-facing" pages, the communications at issue concerned PHI within the meaning of HIPAA and thus fall within the zone of privacy Congress expressly protected.  Users could not reasonably anticipate that a covered entity would permit a third-party advertising platform to intercept and monetize their PHI.

## II.    PLAINTIFF ADEQUATELY ALLEGES A VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA")

### A.    The Tort-Crime Exception To The Third-Party Exemption Applies

Section 2511 of the ECPA provides for a private right of action against "any person who … intentionally intercepts … wire, oral, or electronic communication … or … intentionally discloses … to any other person the contents of any wire, oral, or electronic communication[.]" 18 U.S.C. § 2511(1)(a)-(c).  The ECPA therefore prohibits the intentional "disclosure" of electronic communications.  18 U.S.C. § 2511(1)(c).  Defendant violated the ECPA by utilizing and embedding the Meta Pixel on its website whereby it tracked, intercepted and unlawfully disclosed Plaintiff's and Class Members' communications to third parties.  TAC ¶¶ 26, 28, 108, 109, 110, 159, 160-163.

Defendant argues that it cannot be held liable for this conduct because it was a party to the communications. MTD at 13-14. But the crime-tort exception applies here because Defendant's wiretapping was conducted with criminal and/or tortious intent. *See* 18 U.S.C. § 2511(2)(d) (party exemption does not apply where "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."); TAC ¶ 83 ("This software integration was neither instrumental nor necessary to Defendant's provision of any goods or services. Rather, the level and detail of information surreptitiously collected by the Facebook Pixel and shared to Facebook indicates that the only purpose was to gain an unlawful understanding of the habits and preferences of users of Defendant's Platform.").

Plaintiff alleges "[t]he Facebook Pixel—which Defendant installed and employed on its website—allows Facebook to intercept, tap, make unauthorized connections and transmit communications in real time, which allowed Facebook to learn the contents of communications of Plaintiff and Class Members in a manner that was undetectable to them." TAC ¶ 90. "Defendant never sought consent and Plaintiff and Class Members never provided consent for Facebook's unauthorized access to their electronic communications. Plaintiff and Class Members thus did not have a reasonable opportunity to discover Defendant's unlawful and unauthorized enabling of Facebook's activity." *Id.* ¶ 92. Plaintiff further alleges that "Defendant, as a pharmacy benefits manager and online pharmacy, collects information from users that qualifies as individually identifiable health information. The nature of information shared by Express Scripts users is exclusively related to patient status and health information." *Id.* ¶ 107. And, "[p]atient health care information in the United States is protected by federal law under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")." *Id.* ¶ 100. In addition, Defendant's conduct violated the CMIA and CIPA. *Id.* ¶¶ 133-164.

Defendant incorrectly argues that the crime-tort "does not apply" because "[t]hat the interception itself allegedly violates the law is not enough … [but] must be 'done for the purpose of facilitating some further impropriety[.]'" MTD at 14. In *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200 (9th Cir. 1999), the Ninth Circuit explained that "the existence of a lawful purpose

does not mean that the interception is not also for a tortious or unlawful purpose." *Id*. at 1202. Because one of the purposes of Defendant's placement of the Pixel on its website was to intercept and disclose Plaintiff's and Class Members' private health information to third parties, a violation of state and federal law, the crime-tort exception to the party exemption applies. *See In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 3416511, at *4 (N.D. Cal. July 15, 2024) (finding tort/crime exception to third party rule applied because defendant disclosed "its customer's sensitive mental health-related information in violation of HIPAA."); *Meta Pixel*, 647 F. Supp. 3d at 797 (because "plaintiffs' tort claims against Meta appear viable," "plaintiffs may be able to show that the crime-tort exception applies"); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (crime-tort exception applied where disclosures violated state and federal laws); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (complaint pleaded defendant's tortious intent because it stated a claim for invasion of privacy). Even if Express Scripts were a party to the communications within the meaning of § 2511(2)(d), its conduct still falls outside the safe harbor because it caused the same transmissions to be copied and sent to Meta for Meta's own independent use. Because Express Scripts configured its site so that patient-specific interactions were simultaneously transmitted to Meta for marketing analytics, the exemption does not apply.

### B. Defendant's Arguments About Plaintiff's Aiding And Abetting Allegations Are Irrelevant

Defendant seeks to evade ECPA liability by framing its disclosure of Plaintiff's and Class Members' sensitive information as "procurement." MTD at 12. Thus, according to Defendant, Plaintiff's ECPA claim must fail because the "ECPA's private right of action does not impose civil liability for aiding and abetting." *Id.* at 11. That is wrong.

First, Plaintiff plainly alleges that Defendant discloses sensitive information to Meta. *See, e.g.*, TAC ¶ 108 ("Defendant did not procure HIPAA authorizations from the Plaintiff or other members of the class for the disclosure of patient status and health information to Facebook."); *id.* ¶ 155 ("As explained above, the information Express Scripts maintained and disclosed is medical information because it is identifiable information relating to patient's medical histories, conditions,

treatments, and prescriptions."); *id.* ¶ 156 ("Express Scripts disclosed to third parties Plaintiff's and Class Members' medical information without consent[.]"); *id.* ¶ 159 ("Express Scripts disclosed medical information without first obtaining authorization when it disclosed to third party Facebook Plaintiff's and Class Members' data, including PII and prescription requests."); *id.* ¶ 160 ("Express Scripts knowingly and willfully disclosed medical information without consent to Facebook for financial gain."); *see also id.* ¶¶ 4, 26, 28, 162, 163.  These allegations are sufficient to state a claim against Defendant for an ECPA violation even under Defendant's own analysis: Defendant engaged in an ECPA violation via its disclosure of Plaintiff's and Class Members' data to Meta.

Second, Defendant's argument that the ECPA does not provide a private cause of action against an entity that is alleged to have "procured" or aided and abetted another party to intercept a communication, MTD at 11-13, relies entirely on out-of-circuit cases: *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012) and *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000).  Contrary to Defendant's claim, "*Kirch* 'stands only for the narrow proposition that interceptions incidental to the provision of the alleged interceptor's ***internet service*** fall within the 'ordinary course of business' exception.'"  *Matera v. Google Inc.*, 2016 WL 8200619, at *10 (N.D. Cal. Aug. 12, 2016) (emphasis added) (quoting *In re Google Inc.*, 2013 WL 5423918, at *8 (N.D. Cal. Sept. 26, 2013)).  Defendant does not argue that the ordinary course of business exception applies here.

Moreover, the Ninth Circuit has not weighed in on whether the Fifth Circuit's interpretation of the ECPA's procurement language in *Peavy* is correct.[3]  Plaintiff has properly alleged a cause of action for violation of 18 U.S.C. § 2511 in any event because he alleges that Defendant "disclosed" his electronic communications in violation of 18 U.S.C. § 2511.  TAC ¶¶ 4, 26, 28, 108, 155, 156, 159, 160-163.  "The fact that Plaintiff also alleges that Defendant 'procured other persons to intercept' Plaintiff's communications does not invalidate Count [One]."  *DIRECTV, Inc. v. Barrett*, 311 F. Supp. 2d 1143, 1146 (D. Kan. 2004); *see also Boseovski*, 2017 WL 2721997, at *3 ("The

---

[3] The court in *Boseovski v. McCloud Healthcare Clinic, Inc.* recognized the lack of "in-circuit authority" which adopts the Fifth Circuit's holding in *Peavy* and noted that other district courts have questioned it.  2020 WL 68578, at *6 (E.D. Cal. Jan. 7, 2020) (citing *In Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-78 (E.D.N.Y 2006)).

statutes impose civil liability on a person or entity who intentionally intercepts a wire, oral, or electronic communication.  Here, plaintiff has alleged that defendant intentionally directed the use of an electronic device to record conversations between plaintiff and patients.”).

## III.    PLAINTIFF'S CIPA CLAIM SHOULD PROCEED

### A.    Plaintiff Has Pleaded Defendant Reads Or Attempts To Read The Contents Of The Communication "In Transit"

Defendant argues that "Plaintiff has not plausibly alleged that Meta read or attempted to read any of Plaintiff's communications while they were *in transit*."  MTD at 16 (emphasis in original).  Defendant comes to this conclusion by cherry-picking a single sentence from Plaintiff's Complaint.

As an initial matter, Defendant ignores the plain language of the statute.  Cal. Pen. Code § 631(a) prohibits eavesdropping on a communication of a message "while [it] is in transit or passing over any wire, line, or cable, *or is being sent from, or received at any place within this state*." (Emphasis added).  Thus, "Section 631's protections extend explicitly to the beginnings and ends of communications." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (sustaining claim where "[e]ven if the browser caused a parallel signal to be sent to NaviStone, that intervention happened while the signal was already in transit from Revitch's device").  And Plaintiff here alleges that he was in California during his visits to Defendant's platform, TAC ¶ 72, and that his "activity information was intercepted and disclosed to Facebook each time Plaintiff accessed the Platform[.]" *Id.* ¶ 26.

That aside, Plaintiff also alleges contemporaneous interception.  Defendant quotes *only* paragraph 137 of Plaintiff's TAC to represent that "he alleges that the Express Scripts website '*tapped and **thereafter** delivered* to the third-party, Facebook.'  In other words, Plaintiff alleges that his communications were *recorded* and *then delivered* to Meta, where they were later aggregated and analyzed for alleged advertising purposes."  MTD at 16 (emphasis in original).  Defendant misunderstands the order of events.

As alleged, "[b]y Defendant's design, Facebook receives the content of a customer's portal sign-in communication immediately after the customer clicks the log-in button and even before

Defendant receives it."  TAC ¶ 56.  Once in their account, "[t]he content of the user's communications with Defendant are re-directed to Facebook while the communications are still occurring."  *Id.* ¶ 57.  Plaintiff's allegation that "Defendant never advised Plaintiff or the other Class Members that any part of their communications or use of Defendant's Platform would be tapped and thereafter delivered to the third-party, Facebook," *id.* ¶ 137, does not mean, as suggested, that the pixel taps, stores, *and then* deliver the content.  Rather, this allegation merely notes that the pixel is loaded—as it necessarily has to be—to then intercept real-time communications in real time as Plaintiff is interacting with Defendant's Platform.  *See also id.* ¶ 23 ("when Plaintiff accessed Defendant's Platform, the Facebook Pixel secretly deployed on the Platform sent the fact that he had clicked to sign-in to that website to Facebook."); *id* ¶ 84 ("As a direct result of Defendant's implementation, Facebook captured in real time Plaintiff's mouse clicks, keystrokes, search terms, content viewed, and other interactions with the Platform including confidential and personally identifiable information, such as prescription-related activity, personal inputs, and interaction metadata.").  *See, e.g., James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 962 (N.D. Cal. 2023) ("The problem for Disney is that the process above simply seems to lay out how BlueKai code gets to a website user's device.  Disney ignores the paragraphs surrounding ¶ 24 which indicate that, once BlueKai is on the device, it *then* begins to intercept communications *when the user makes communications to the website*.") (emphasis in original); *Meta v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) ("Although Plaintiff did not use words like 'real time' and 'simultaneously', the Court finds the meaning of his allegation the same.  The term 'whenever' is sufficient for the Court to infer that Plaintiff's communications were intercepted 'in real time through the use of computer code', which supports the 'in transit' requirement.  Plaintiff has thus alleged a direct violation of § 631(a) by Meta.") (relying on *Esparaza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024)).

Plaintiff's allegation at paragraph 137 is perfectly consistent with Plaintiff's other allegations that "Facebook provides simple instructions for developers like Defendant to set up the Facebook Pixel, creates the Facebook code for each developer who installs it, and recommends that the Facebook Pixel code be placed early in the source code for any given webpage or website to

ensure that the user will be tracked.  By executing the code immediately, Facebook has designed the Facebook Pixel such that Facebook receives the information about customer actions on Defendant's website properties contemporaneous with their making."  TAC ¶¶ 50-51.  Accordingly, "[a]s soon as an Express Scripts user takes any action on the Platform—such as clicking a button to register, login, or logout of the customer portal—Facebook's source code commands the customer's computing device to re-direct the content of the customer's communication to Facebook while the exchange of the communication between the customer and Defendant is still occurring."  *Id.* ¶ 52.  Thus, "[t]he Facebook Pixel code selected by Defendant and deployed on its Platform begins transmitting customer interactions, actions, inputs, selection, mouse clicks, mouse hovers, mouse movements, and/or keyboard inputs instantly in the first milliseconds that a customer accesses Defendant's Platform."  *Id.* ¶ 53.  In other words, "[t]he content of the user's communications with Defendant are re-directed to Facebook while the communications are still occurring."  *Id.* ¶ 57.  Indeed, "Facebook captured ***in real time*** Plaintiff's mouse clicks, keystrokes, search terms, content viewed, and other interactions with the Platform including confidential and personally identifiable information, such as prescription-related activity, personal inputs, and interaction metadata."  *Id.* ¶ 84 (emphasis added).  And so, "[b]y Defendant's design, Facebook receives the content of a customer's portal sign-in communication immediately after the customer clicks the log-in button and even before Defendant receives it."  *Id.* ¶ 56.

Critically, "[a]t the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured."  *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024).  "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder."  *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *9 (S.D. Cal. Oct. 24, 2023).  These allegations are sufficient to pass the plausibility standard.

Plaintiff's allegations are just like those in *Riganian v. LiveRamp Holdings, Inc.* where Judge Tigar found allegations that "that LiveRamp's '[e]vent listeners intercept communications while in transit, once user inputs are made but before the communications are received by the

webpage[,]'" sufficient to allege "a specific factual theory as to how LiveRamp incorporates—and thus reads—the intercepted content 'in real time[.]'"  2025 WL 2021802, at *10 (N.D. Cal. July 18, 2025).  And since "Facebook describes the Facebook Pixel as 'a snippet of Javascript code' that 'relies on Facebook cookies, which enable [Facebook] to match … website visitors to their respective Facebook User accounts,'" TAC ¶ 49, "for its aggregation, use, and sale to drive advertising," *id.* ¶ 87, Plaintiff has alleged that Meta reads—or attempts to read—the contents in transit.  *See Riganian*, 2025 WL 2021802, at *10 (alleging "that LiveRamp's identity graph 'connects all these identifying points of data into a single, non-anonymous "identity profile" . . . in real time'"); *St. Aubin*, 2024 WL 4369675, at *6 (finding allegations that "Facebook's embedded code, written in JavaScript, sends secret instructions back to the individual's browser, without alerting the individual that this is happening.  Facebook causes the browser to secretly duplicate the communication with Carbon Health, transmitting it to Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity" sufficient for the "in transit" requirement.).

The analysis in *Crano v. Sojern, Inc.* is inapplicable.  MTD at 16.  There, the plaintiff's "in transit" allegations failed because the plaintiff alleged "'a website developer … can use its source code to commandeer the user's computing device, causing the device to contemporaneously in real time and invisibly *re-direct* the users' personally identifiable guest records and communications[.]'"  2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025) (emphasis in original).  Accordingly, the court found those allegations did "not plausibly support an inference her communications were read while in transit."  *Id.*  But here, Plaintiff alleges that "[u]nlike harmless collection of an internet protocol address, the data intercepted and collected by the Facebook Pixel concerned specific content information inputted and content viewed, and transmitted the same to Facebook in real time for its aggregation, use, and sale to drive advertising."  TAC ¶ 87.

Nonetheless, "while [Defendant] may ultimately be able to show that [Meta] does not actually 'read' any intercepted communications 'in real time,' that factual dispute is better left of summary judgment."  *Riganian*, 2025 WL 2021802, at *11.  *See also Kishore v. Times Internet (UK) Ltd.*, 2024 WL 4197619, at *2 (N.D. Cal. Sept. 12, 2024) ("Plaintiffs do not yet have access

to specific information about how . . . Defendant used the Pixel. The Court declines the invitation to decide a factual dispute at the heart of Plaintiffs' case[.]"); *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *4 (N.D. Cal. June 9, 2023) (finding plausible allegations that "TrustedForm recorded their actions on Prudential's website before their information was stored by Prudential" but noting that if the "information was intercepted … before it was stored … is a question for summary judgement"); *c.f., Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (granting motion for summary judgment where the "record is devoid of evidence that ActiveProspect used technology to independently interpret the substantive meaning of communications while they were in transit").

### B.    Plaintiff Has Alleged A Predicate Violation

Defendant argues that "Plaintiff has not adequately alleged any predicate violation under either clause one or clause two … [so] clause three cannot be invoked." MTD at 19. This is wrong. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978)." Plaintiff alleges that the Third Party (Meta) violated the second and third clauses of CIPA § 631(a) by "reading" or "learning the contents" of Plaintiff's communications "in transit" (the second clause), TAC ¶¶ 9, 10, 91, 135, 145, and using that information for their own purposes (the third clause). *Id.* ¶ 20, 29-30, 44-45, 87. And Plaintiff alleges Defendant violated the fourth clause of CIPA § 631(a) by "aiding and employing of the Facebook Pixel on its Platform[.]" *Id.* ¶ 22.

In sum, Plaintiff's allegations satisfy the predicate-violation requirement under Section 631(a). The complaint alleges that Express Scripts' website, through the embedded Meta Pixel, enabled the reading of the contents of users' communications while those communications were still in transit, satisfying clause two. It further alleges that Express Scripts used and caused Meta to use that intercepted content to build advertising and analytics profiles, satisfying clause three. These factual allegations establish that a violation of one or more of the first three clauses occurred, thereby supporting the aiding, employing, or procuring liability under clause four.

### 1.    Plaintiff Did Not Consent To The Interception

Defendant argues that "Plaintiff has not alleged that Meta illegally attempted to learn the contents of his communications—nor could he, given his consent to the specific conduct at issue under Express Scripts' privacy policy."  MTD at 18.  Defendant has not made this showing.

Defendant "bear[s] the burden to establish consent and, on a motion to dismiss, would be required to show that the allegations of the complaint established consent as a matter of law." *Shah*, 754 F. Supp. 3d at 931; *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("[C]onsent is an affirmative defense for which defendant bears the burden of proof.") (cleaned up).  "Under an inquiry theory of notice, contracts are formed between website users and operators only where (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."  *Godun*, 135 F. 4th at 709 (cleaned up).  As explained above, *see* Argument § I, Defendant has failed to show an unambiguous manifestation of assent.  *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1160 (9th Cir. 2025).  Indeed, its own Privacy Policy states that it would not aid and employ the pixel to intercept health information.

### C.    CIPA Does Not Require Aiding *And Abetting* The Third Party

Defendant argues Plaintiff must also show Defendant aided *and abetted* Meta because "[t]his fourth clause is an aiding-and-abetting claim under California's Penal Code."  MTD at 17. "The statute does not necessarily incorporate the common law requirement for aiding and abetting simply because it contemplates liability where an individual or entity provides 'aid.'"  *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024).  As courts rejecting this argument have noted, nothing in the plain text requires Defendant "abet" under CIPA.

Cal. Pen. Code § 631 does not include the word "abet."  Rather, "[t]he plain text of section 631(a) is unambiguous on this issue: the statute requires that a party 'aids, agrees with, employs, or conspires' with another party.  It does not require a party aid *and* abet."  *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025) (emphasis in original).  "Instead, to establish a violation a plaintiff need only prove that a party [] aided, agreed with, employed, *or* conspired with

a third party [] as it violated section 631(a)." *Id.* (emphasis added).

*Vitas* is instructive. Just like here, the defendant argued that "it lacks the requisite intent under an 'aiding and abetting' standard because it did not know that [the third party] was allegedly violating section 631(a)." *Id.*; *compare* MTD at 20 ("However, this allegation is inadequate to allege … that Express Scripts knew of such intent" by Meta) (emphasis removed). But Defendant's "proposed 'aiding and abetting' standard goes beyond what the statute requires, and there is no basis to read in a common law standard of aiding and abetting when the statute itself is clear." *Id.*; *see also Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 839 (E.D. Cal. 2025) ("The statute does not require that a party aid and abet … Because [t]he statute as worded does not include an intent standard, the court considers whether [p]laintiffs have alleged that defendants aided, agreed with, employed, or conspired with [Meta].") (cleaned up); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause.").

Relying on *Esparza*, 2024 WL 559241, at *6, MTD at 17, Defendant argues that "the omission of the word 'abet' in clause four of section 631 does not eliminate the statute's knowledge or intent requirement." MTD at 17. While true "[s]ome courts have adopted the common law civil tort definition of aiding and abetting in construing section 631 claims[,] the approach employed by *Cousins*, *Doe*, and *Tate* is 'more persuasive because it more closely follows the language of the statute.'" *St. Aubin*, 2024 WL 4369675, at *8; *see also Mitchell v. Sonesta Int'l. Hotels Corp.*, 2024 WL 4471772, at *9 (C.D. Cal. Oct. 4, 2024) ("In light of the uncertainty in the case law whether Section 631(a)'s reference only to 'aids' actually means 'aids and abets' – bringing along with it all the requirements that a plaintiff must meet to properly allege that level of involvement – the Court is not prepared to rule at this stage that any alleged failure by Plaintiff to sufficiently allege 'aiding and abetting' precludes Plaintiff from stating a Section 631(a) claim. The Court therefore rejects this argument as a basis to dismiss Plaintiff's first claim as well."). And critically, "[i]f there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." *People v. Snook*, 16 Cal. 4th 1210, 1215 (Cal.

1997).  Accordingly, per the plain language of the statute, "to establish a violation a plaintiff need only prove that a party [] aided, agreed with, employed, *or* conspired with a third party [] as it violated section 631(a)."  *Tate*, 762 F. Supp. 3d at 959 (emphasis added).  *See also Doe*, 789 F. Supp. 3d at 839 ("As an initial matter, the plain text of CIPA imposes liability on any person 'who aids, agrees with, employs, or conspires' with another party. [] The statute 'does not require that a party aid *and* abet.'") (quoting *Tate*, 762 F. Supp. 3d at 959).  In short, a defendant violates the fourth clause of CIPA § 631(a) where they simply "enable" another's wrongdoing.  *See*, *e.g.*, *Revitch,* 2019 WL 5485330, at *2 ("[T]he complaint adequately alleges that Moosejaw violated section 631 by *enabling* NaviStone's wrongdoing.") (emphasis added).  This interpretation better comports with the California Supreme Court's instruction that "'courts … interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'"  *Deivaprakash v. Conde Nast Digital*, 2025 WL 2541952, at *5 (N.D. Cal. Sept. 4, 2025) (quoting *Shah*, 754 F. Supp. 3d at 930).  Plaintiff does this.

Applying the correct standard here, Plaintiff alleges that "Defendant aided and employed the Facebook Pixel throughout its Platform."  TAC ¶ 20.  Specifically, "when Plaintiff accessed Defendant's Platform, the Facebook Pixel secretly deployed on the Platform sent the fact that he had clicked to sign-in to that website to Facebook."  *Id.* ¶ 23.  "To deploy the Facebook Pixel software, website developers like Defendant simply copy-and-paste the Facebook Pixel code that Facebook creates to their web page."  *Id.* ¶ 69.  In other words, "Defendant installed and configured the Facebook Pixel on its Platform in a manner that permitted Facebook to contemporaneously intercept and transmit Plaintiff's private communication in real time."  *Id.* ¶ 75.  As such, "[b]y Defendant's design, Facebook receives the content of a customer's portal sign-in communication immediately after the customer clicks the log-in button and even before Defendant receives it."  *Id.* ¶ 56.  Thus, "Defendant aided or employed the interception of components of Plaintiff's and Class Members' private electronic communications … when Plaintiff and other Class Members accessed Defendant's Platform … Defendant knowingly configured and deployed the Facebook Pixel in a manner that affirmatively enabled Facebook to act as the direct interceptor of those communications in real time."  *Id.* ¶ 135.  This information was collected "for Defendant's

and Facebook's own marketing and advertising benefits," *id.* ¶ 83, because it "concerned specific content information inputted and content viewed, and transmitted the same to Facebook in real time for its aggregation, use, and sale to drive advertising." *Id.* ¶ 87.  Indeed, "[t]he targeted advertising Facebook offers for sale includes the ability to target persons based on specific actions that a person has taken on websites like Defendant's, using information gathered by the Facebook Pixel.  This allows Facebook to create a 'dossier' on users to effective targeting advertising." *Id.* ¶ 30.  Nothing more is required under the statute.  *See also St. Aubin*, 2024 WL 4369675, at *8 (sustaining CIPA § 631 claim where defendant "chose to include Facebook Pixel" on its website, which "enable[d] Facebook to help Carbon Health with advertising" and "Carbon Health assisted Facebook with intercepting the identities and online activity of patients").

### D.    Plaintiff Need Not Allege Meta's Mental State

Defendant argues that "Plaintiff's aiding-and-abetting claim fails on the additional ground that Plaintiff has not alleged that Express Scripts intended to aid Meta in violating section 631(a)" because Plaintiff's "allegation is inadequate to allege that **Meta intended** to violate CIPA or that **Express Scripts knew** of such intent."  MTD at 19-20 (emphasis in original).  This is a red herring.  CIPA's fourth "clause prohibits a defendant from aiding, agreeing with, or employing a third party '*to* unlawfully do, or permit, or cause' the third party to act in violation of the wiretapping statute." *Smith*, 754 F. Supp. 3d at 942 (emphasis in original).  In other words, all that is required is that *Defendant* "'must be acting with the third party *in order to* have the third party perform acts that violate the statute." *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) (emphasis in original).  Thus, Plaintiff need only allege that *Defendant* had "both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith*, 754 F. Supp. 3d at 942.

*Smith* is instructive.  There, the court found that the plaintiff had plausibly pleaded a violation where it was alleged that the defendant "affirmatively embedded Meta Pixel and Attentive Tag into its website[,]" and "that the purpose of Meta … code is to 'track[ ] the people and type of actions they take' and provide 'a treasure trove of insights about [ ] customers' shopping habits, like their browsing and purchasing history.'" *Smith*, 2025 WL 1085169, at *4

(brackets in original).  With these allegations, the court found "it … plausible to infer from [the defendant's] alleged affirmative act of integrating the third-party code into its website that it knew Meta … would intercept personally identifiable information and that [the defendant] had the purpose of employing Meta … to do so."  *Id.*; *see also Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 894 (S.D. Cal. 2025) (noting that the federal wiretap act "statute only requires 'an intentional act, defined as "an act that is being done on purpose[,]"'" and applying the Ninth Circuit's reasoning to CIPA where "Section 631 is analogous to the Wiretap Act claim[.]") (quoting *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015)).

So too here, Plaintiff alleges that "Defendant affirmatively enabled Facebook to intercept and record Plaintiff's and Class Members' electronic communications in real time by integrating and configuring the Facebook Pixel into its Platform.  Through this implementation, Facebook— not Defendant—carried out the actual interception by capturing and transmitting users' communications as they occurred, all without Plaintiff's knowledge or consent."  TAC ¶ 119.  With this, "Facebook monetizes the information it receives through the Facebook Pixel deployed on Defendant's Platform by using it to generate highly profitable targeted advertising on- and-off Facebook.  The targeted advertising Facebook offers for sale includes the ability to target persons based on specific actions that a person has taken on websites like Defendant's, using information gathered by the Facebook Pixel.  This allows Facebook to create a 'dossier' on users to effective targeting advertising."  *Id.* ¶¶ 29-30.  This is sufficient.  *See*, *e.g.*, *Smith*, 2025 WL 1085169, at *4 ("At minimum, Rack Room must have knowledge that Meta or Attentive intercepts Plaintiffs' personally identifiable communications—with the capability of using the collected data for its own purposes—and Rack Room must have the purpose of aiding, agreeing with, or employing Meta or Attentive to commit those acts."); *Doe*, 789 F. Supp. 3d at 839 (finding allegations of intent sufficient where the plaintiffs alleged that "Defendants chose to install the Meta Pixel on their Web Properties and by installing Meta Pixel, Defendants assisted Meta with intercepting the [information] of Defendants' patients without their authorization."); *R.C.*,733 F. Supp. 3d at 902 (finding sufficient allegations of intent where the plaintiffs alleged that "Defendant intentionally utilized tracking technologies to collect, use, and distribute Plaintiffs' sensitive information to third

parties like Facebook" and "intentionally configured the Pixels to capture" the plaintiffs' information); *James*, 701 F. Supp. 3d at 954, *motion to certify appeal denied*, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (finding intent satisfied under CIPA where "it can reasonably be inferred that Disney entered into a contractual arrangement with Oracle under which Oracle would collect information from EPSN.com website users *so that Disney could market to and attract new customers.*") (emphasis in original).

Defendant's authorities do not help. *First*, Defendant's citation to *Desert Care Network* misses the mark. 2024 WL 1343305. Never mind that the court simply applied the wrong standard, ("[f]inally, in addition to these three clauses, Section 631 also contains an aiding *and abetting* provision") (emphasis added), the quote in Defendant's motion, MTD at 20:27-28, does not concern clause four of CIPA. It concerned "whether Plaintiffs have adequately alleged an underlying predicate violation by Meta, which is not a party to this action." *Desert Care Network*, 2024 WL 1343305, at *7. Critically, the court found no allegations of willfulness or intent by the third party—Meta, as required by clauses two and three—where "Plaintiffs' FAC repeatedly mentions Meta's express desire not to receive health data from its business partners." *Id.* That is not the case here. Although Defendant attempts to shoehorn this complaint into the *Desert Care Network* facts, it misquotes the complaint. Defendant quotes Meta as saying: "'We prohibit businesses and organizations from sharing information with us, including health and financial data.'" MTD at 20 (citing TAC ¶ 24). What the Complaint, quoting Meta, *actually* says is: "We prohibit businesses or organizations from sharing **sensitive** information with us, such as health and financial information, your date of birth and passwords." TAC ¶ 24 (emphasis added). Meta's inclusion—and Defendant's omission—of the word "sensitive," raises questions about what information Meta *actually* prohibits and accepts. For that reason, how the technology functions is a fact question. *See, e.g.*, *R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994, at *3 (N.D. Cal. June 23, 2025) ("Defendant dedicates most of its moving papers to a factual dispute about how Google Analytics works, but this approach misunderstands what the Court must do under Rule 12(b)(6)."); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) ("While Google argues that judicially noticeable policy documents suggest that Google did not actually want to receive

personally identifiable information and expressly prohibited developers from transmitting such data, this presents a question of fact that the Court cannot resolve at this stage."); *In re Meta Pixel Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. 2024) ("Whatever agreements may have been in place, those agreements do not establish as a matter of law that Meta did not intend to receive the information plaintiffs claim was transmitted."); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) ("What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools and technology feasibly of implementing other measures to prevent transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record.").

Likewise, "Defendant's reliance on *Rodriguez* is misplaced. … There, the plaintiff failed to allege that the eavesdropper … actually engaged in behavior that constitutes wiretapping because 'Plaintiff does not allege ***that Defendant knew*** that [the eavesdropper] was using the chat data beyond storing it for Defendant or that [the eavesdropper] was distributing the chat to Meta.'" *Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *12 (N.D. Cal. Sept. 16, 2025) (emphasis added) (quoting *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. Mar. 21, 2024)). But here, Plaintiff alleges that "Facebook monetizes the information it receives through the Facebook Pixel deployed on Defendant's Platform by using it to generate highly profitable targeted advertising on- and-off Facebook." TAC ¶ 29. At the same time, the Facebook Pixel helps Defendant further market its services by "'[c]reat[ing] custom audience[s] from website visitors' and … 'dynamic ads [to] help … automatically show website visitors the products they viewed on your website – or related ones.'" *Id.* ¶ 48. In other words, Defendant is keenly aware of the marketing benefits it sought to gain by installing and configuring "the Facebook Pixel on its Platform in a manner that permitted Facebook to contemporaneously intercept and transmit Plaintiff's private communications in real time." *Id.* ¶ 75. This is just like in *Balestrieri* where the plaintiff "alleg[ed] that Facebook uses the information transmitted by the Facebook pixel to deliver targeted ads to the user, thereby generating revenue for Facebook.'" *Balestrieri*, 2025 WL 2776356, at *12 (explaining that "[a]llegations that a ***defendant*** intended to collect and disclose the information are sufficient to plead intent.") (emphasis added).

### E.    Defendant's Insistence On A Criminal Standard Is Irrelevant

Defendant dedicates pages to blurring the lines between a criminal prosecution and a civil action.  *See*, *e.g.*, MTD at 21 ("Plaintiff has not alleged that Express Scripts engaged in any conduct that contributed to Meta's purposed commission of a crime.  Plaintiff must have pled *conduct* by Express Scripts that assist the achievement of Meta's crime.") (emphasis in original); *id.* at 17 ("The court reasoned that section 631 is a criminal statute[.] … Consistent with aiding-and-abetting principles under criminal law … [a]n interpretation of the contrary would ignore the criminal nature of section 631 and the aiding-and-abetting principles that govern its application."). But this is not a criminal prosecution.  This is a civil action brought under a statute with a private right of action.  *See*, *e.g.*, *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077–78 (C.D. Cal. 2024) ("While Defendant is correct that criminal statutes *generally* do not create private rights of action, … § 637.2 expressly states that all CIPA violations … a private right of action.") (emphasis in original); *see generally*, *Frasco v. Flo Health, Inc.*, 2025 WL 2680068 (N.D. Cal. Sept. 17, 2025).  Indeed, courts have noted that the Fourth Amendment has no bearing on a CIPA claim either.  *See*, *e.g.*, *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 38 (S.D.N.Y. 2025) ("However, cases regarding the limits of the Fourth Amendment have no bearing on whether an individual has standing to sue under CIPA, as CIPA provides protection beyond the floor set by the Fourth Amendment.").  Defendant's application of criminal law principles has no bearing on this action.

### CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in its entirety.

Dated:  October 27, 2025

**BURSOR & FISHER, P.A**.

By:     /s/ L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        jgavenman@bursor.com
        jglatt@bursor.com

**SWIGART LAW GROUP, APC**
Joshua B. Swigart (State Bar No. 225557)
2221 Camino del Rio S, Suite 308
San Diego, CA 92108
Telephone: (866) 219-3343
Facsimile: (866) 219-8344
E-mail: Josh@SwigartLawGroup.com

**THE BARRY LAW OFFICE, LTD**
Peter F. Barry (MN #0266577)
Admitted *pro hac vice*
1422 Asbury St. N.
St. Paul, MN 55108-2434
Telephone: (612) 379-8800
E-mail: pbarry@lawpoint.com

*Attorneys for Plaintiff*