TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105
Telephone: 415.268.7000
Facsimile: 415.268.7522

WHITNEY R. O'BYRNE (CA SBN 325698)
WObyrne@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone: 213.892.5200
Facsimile: 213.892.5454

ELISABETH HUTCHINSON (admitted *pro hac vice*)
EHutchinson@mofo.com
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, Colorado 80202
Telephone: 303.592.1500
Facsimile: 303.592.1510

Attorneys for Defendant
EXPRESS SCRIPTS HOLDING COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

JONATHAN LYNCH, individually and on behalf of all others similarly situated,

Plaintiff,

v.

EXPRESS SCRIPTS HOLDING COMPANY,

Defendant.

Case No. 3:23-cv-01170-AMO

**DEFENDANT EXPRESS SCRIPTS HOLDING COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

Date: January 8, 2026
Time: 2:00pm
Courtroom: 10
Judge: Hon. Araceli Martínez Olguín

Date Action Filed: March 15, 2023
Trial Date: N/A

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. LEGAL ARGUMENT ........ 2

A. Plaintiff's Consent Defeats All Wiretapping Claims ........ 2

B. Plaintiff's ECPA Claim Fails ........ 4

1. There Is No Aiding and Abetting Liability Under ECPA. ........ 4

2. The Crime-Tort Exception Does Not Apply ........ 5

C. Plaintiff's CIPA Claim Fails Without A Predicate Violation or Express Scripts' Knowledge or Substantial Assistance ........ 7

1. Plaintiff Does Not Adequately Allege that Meta Violated CIPA ........ 8

a. Plaintiff concedes that the first clause does not apply ........ 8

b. Plaintiff has not alleged that Meta read or attempted to learn the contents of any purported communications while "in-transit" as required under the second clause ........ 8

c. Clause three does not apply without clause one or two ........ 11

2. Plaintiff Has Not Adequately Pled "Aiding and Abetting" Liability ........ 11

a. Plaintiff must plead knowledge, intent, and substantial assistance in a predicate violation ........ 11

b. Plaintiff does not allege Express Scripts knew of any intent on Meta's part to violate CIPA ........ 13

c. Plaintiff concedes no substantial assistance ........ 15

III. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
No.: 3:23-cv-02258-RBM-MSB, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ..... 8

*B.K. v. Desert Care Network*,
No. 2:23-cv-05021 SPG (PDx), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ..... 6, 7, 15

*Balestrieri v. SportsEdTV, Inc.*,
No. 25-cv-04046-SK, 2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ..... 14

*In re BetterHelp, Inc. Data Disclosure Cases*,
No. 23-cv-01033-RS, 2024 WL 3416511 (N.D. Cal. July 15, 2024) ..... 6

*Boseovski v. McCloud Healthcare Clinic, Inc.*,
No. 2:16-CV-2491-DMC, 2020 WL 68578 (E.D. Cal. Jan. 7, 2020) ..... 5

*Boulton v. Community.com, Inc.*,
No. 23-3145, 2025 WL 314813 (9th Cir. Jan. 28, 2025) ..... 11

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..... 3

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ..... 3

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ..... 3

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..... 4

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994) ..... 4

*Cody v. Boscov's, Inc.*,
No. 8:22-cv-01434-SSS-kkx, 2024 WL 228973 (C.D. Cal. May 6, 2024) ..... 11, 15

*Cody v. Lacoste USA, Inc.*,
No. 8:23-cv-00235-SSS-DTBx, 2024 WL 2228971 (C.D. Cal. May 2, 2024) ..... 7

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*,
891 F. Supp. 2d 13 (D.D.C. 2012) ..... 5

*Cousin v. Sharpe Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ..... 13

*Crano v. Sojern, Inc.*,
No. 3:25-cv-02600-JSC, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) .......................... 9, 10

*Deivaprakash v. Condé Nast Digital*,
No. 25-cv-04021-RFL, 2025 WL 2541952 (N.D. Cal. Sept. 4, 2025) ................................. 13

*DIRECTV, Inc. v. Barrett*,
311 F. Supp. 2d 1143 (D. Kan. 2004) ......................................................................... 5

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................................................................... 3

*Doe I v. Google LLC*,
No. 23-cv-02431-VC, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023)...................................... 6

*Doe v. Eating Recovery Ctr.*,
No. 23-cv-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)............................. *passim*

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..................................................................... 15

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025)......................................................................... 13

*Esparza v. UAG Escondido A1 Inc.*,
No. 23cv0102 DMS(KSC), 2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) ............................ 13

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ..................................................................................... 3

*Harrott v. Cnty. of Kings*,
25 Cal. 4th 1138 (2001) ............................................................................................ 12

*Jones v. Regents of Univ. of Cal.*,
No. 21-cv-07844-JSW, 2022 WL 1137089 (N.D. Cal. Apr. 18, 2022) .................................. 2

*Kirch v. Embarq Management Co.*,
702 F.3d 1245 (10th Cir. 2012)................................................................................... 4

*Libman v. Apple, Inc.*,
No. 22-cv-07069-EJD, 2024 WL 4314791 (N.D. Cal. Sept. 26, 2024).................................. 4

*Lonegan v. Hasty*,
436 F. Supp. 2d 419 (E.D.N.Y 2006) ......................................................................... 5

*In re Meta Pixel Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ....................................................................... 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................................................................... 6

*Mitchell v. Sonesta Int'l. Hotels Corp.*,
No. CV 24-2603-GW-SSCx, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)............................ 13

*Okash v. Essentia Health*,
No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ..................................................... 6

*Peavy v. WFAA-TV, Inc.*
221 F.3d 158 (5th Cir. 2000)....................................................................................................... 4

*People v. Arias*,
45 Cal. 4th 169 (2008) ............................................................................................................. 12

*R.C. v. Sussex Publishers, LLC*,
No. 24-cv-02609-JSC, 2025 WL 1735994 (N.D. Cal. June 23, 2025) .................................. 13

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ................................................................................. 6, 14

*Riganian v. Liveramp Holdings, Inc.*
No. 25-cv-00824-JST (N.D. Cal. July 18, 2025) ................................................................... 10

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ............................................................................. 13, 14

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ....................................................................................... 3

*Silva v. U.S. Bancorp*,
No. 5:10-cv-01854–JHN–PJWx, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011)...................... 15

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ..................... 3, 6

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ................................................................................... 15

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .................................. 14

*Smith v. Yeti Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ..................................................................................... 14

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)................................ 11, 13

*Sussman v. ABC, Inc.*,
186 F.3d 1200 (9th Cir. 1999)..................................................................................................... 5

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025)...................................................................................... 13

*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 10, 11

*Valenzuela v. Kroger Co.*, No. CV 22-6382-DMG, 2024 WL 1336959 (C.D. Cal. Mar. 28, 2024)........ 12

*Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880 (S.D. Cal. 2025) ........ 14

**Statutes**

California Invasion of Privacy Act (“CIPA”) ........ *passim*

Confidentiality of Medical Information Act (“CMIA”) ........ 6

Electronic Communications Privacy Act of 1986 (“ECPA”) ........ 5

## I. INTRODUCTION

As argued in Express Scripts' motion, and as Plaintiff concedes by failing to argue otherwise in his opposition, Plaintiff affirmatively agreed to Express Scripts' Privacy Policy when he registered for an account, and his claims concern the alleged use of the Meta pixel on only the *public* pages of Express Scripts' website—pages that do not capture protected health information ("PHI"). The Privacy Policy repeatedly and plainly disclosed that Express Scripts' website uses pixel technology and captures interactions with its public webpages, the *only* pages at issue in this case. That should end this case. Plaintiff cannot evade dismissal of his claims by invoking inapplicable policies governing the collection of PHI on webpages he did not access. Plaintiff's consent is dispositive of his wiretapping claims, and they should be dismissed.

Plaintiff's reliance on the crime-fraud exception to save his Electronic Communications Privacy Act ("ECPA") claim also fails. The exception does not apply because Plaintiff cannot point to any independent violation—the purported interception cannot be the basis for invoking the exception. Moreover, Plaintiff's (very belated) clarifications in his third amended complaint that he is pursuing an aiding-and-abetting theory provide independent grounds for dismissal because such aiding-and-abetting is not a basis for liability under ECPA.

Plaintiff likewise offers nothing to save his California Invasion of Privacy Act ("CIPA") claim. Plaintiff still fails to allege any "in-transit" reading or interception, despite being put on notice of this defect and declining to amend. For the first time in his opposition, Plaintiff attempts to recast his allegation that his communications were "tapped and thereafter delivered" as real-time interception and advances new theories rejected by his own authorities. Plaintiff also fails to allege a predicate violation by Meta and cannot plead any aiding and abetting liability against Express Scripts, because he fails to allege that Express Scripts acted with knowledge of Meta's purported conduct or substantially assisted Meta, as required under section 631(a).

Plaintiff has exhausted his chances at amendment. Years into litigation, the parties are still briefing the pleadings. Plaintiff's ECPA and CIPA claims should be dismissed with prejudice.

## II. LEGAL ARGUMENT

### A. Plaintiff's Consent Defeats All Wiretapping Claims

Because Plaintiff cannot overcome his affirmative consent to Express Scripts' Privacy Policy, he simply ignores the arguments in Express Scripts' motion. (*See* ECF No. 69 ("Opp.") at 3-6.) Not once does Plaintiff refute the fact that Express Scripts clearly discloses the use of pixel technologies on its public webpages and that Plaintiff necessarily consented to such disclosures when registering for an account. (*Id.*) Plaintiff instead attempts to paint ambiguity around the Privacy Policy's terms by conflating Express Scripts' public and authenticated webpages and inappropriately citing terms in a different, inapplicable policy covering the collection and disclosure of PHI. Plaintiff cannot rely on inapplicable policies to save his wiretapping claims.

As argued in Express Scripts' motion and ignored in the opposition, three key points guide the consent analysis: ***First,*** the Privacy Policy notifies users that: Express Scripts uses pixel technology on its *public* webpages; website interactions and personal information, including social media identifiers, may be captured; and those interactions and information may be disclosed to third parties and used for advertising. (*See* ECF Nos. 54-11; 54 ("Mot.") at 2-4.) ***Second,*** Express Scripts members, including Plaintiff, consent to these terms during registration. (*See* Mot. at 4-6.) ***Third,*** Plaintiff only alleges use of the Meta pixel on Express Scripts' public webpages, consistent with these terms. (*See id.* at 6.) Plaintiff concedes all three points by failing to argue otherwise and expressly concedes that he is only alleging use of the Meta pixel on *public* webpages. (Opp. at 6 (conceding that the "pixel was embedded on 'public-facing' pages")); *see Jones v. Regents of Univ. of Cal.*, No. 21-cv-07844-JSW, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022) (viewing "failure to oppose Defendants' arguments as a concession").

Rather than attempting to oppose these dispositive facts, Plaintiff attempts to create ambiguity around the Privacy Policy's terms by relying on statements that Express Scripts does not use PHI for advertising and terms in Express Scripts' Notice of Privacy Practices ("HIPAA Notice").[1] The HIPAA Notice is a policy required under federal law describing Express Scripts'

---

[1] Express Scripts does not oppose Plaintiff's request for judicial notice of Express Scripts' HIPAA Notice, but it is irrelevant because Plaintiff does not allege that the Meta pixel was embedded on any webpage that may collect PHI. (*Contra* Opp. at 4 n.2.)

handling of PHI on authenticated webpages—again, pages not at issue here. Plaintiff argues the HIPAA Notice controls because "[r]egardless of whether the pixel was embedded on 'public-facing' pages, the communications at issue ***concern***[] PHI within the meaning of HIPAA." (Opp. at 6 (emphasis added).) But public browsing data does not "concern" PHI and is not "within the zone of privacy Congress expressly protected." (*Contra id*. at 6.) As courts in this district have held and the Ninth Circuit has affirmed, information on public webpages is not PHI, because "nothing about th[e] information relates specifically to Plaintiffs' health," but is instead only "general health information that is accessible to the public at large." *Smith v. Facebook, Inc*., 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).

Plaintiff's suggestion that PHI could be captured by a Meta pixel is implausible when Plaintiff does not allege that this pixel was embedded on any webpage that collects PHI. (*Contra* Opp. at 6.) The allegation that the Meta pixel is embedded on a public webpage, as disclosed in the Privacy Policy and agreed to by all Express Scripts members, does not mean that the Meta pixel was also embedded on an authenticated page that may collect PHI. As courts in this district have explained, pixel technology is webpage-specific; a pixel may be embedded on one page within a domain and not on others. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024). Not once does Plaintiff allege that Express Scripts used the Meta pixel within the authenticated portal. (*See generally* TAC.) Plaintiff's PHI and the HIPAA Notice are irrelevant.

Plaintiff cites inapposite cases in which the policies do not expressly notify users of the practice at issue, or where the policies' terms were misleading. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 928 (N.D. Cal. 2023) (failure to disclose practices); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1066-67 (N.D. Cal. 2021) (same); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 621-23 (N.D. Cal. 2021) (misleading disclosures); *Shah v. Fandom, Inc*., 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024) (failure to disclose practices).[2] Here, by contrast, Express Scripts informed Plaintiff of the specific practices in its Privacy Policy, he consented to them, and his consent is

---

[2] Plaintiff also cites to *Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025) in support of his consent arguments. (Opp. at 4.) This case involves different claims. *Godun* involves claims under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*., and California's and other states' consumer protection laws.

dispositive—Plaintiff's wiretapping claims should be dismissed with prejudice. *See, e.g.*, *Libman v. Apple, Inc.*, No. 22-cv-07069-EJD, 2024 WL 4314791, at *10 (N.D. Cal. Sept. 26, 2024) (dismissing claims where defendant disclosed the data collection technology at issue).

**B. Plaintiff's ECPA Claim Fails**

Consent aside, Plaintiff's ECPA claim independently fails because ECPA does not support Plaintiff's aiding and abetting theory, and the one-party consent rule applies. Plaintiff's arguments to the contrary are unavailing.

**1. There Is No Aiding and Abetting Liability Under ECPA.**

Plaintiff has now clearly alleged a theory that Express Scripts violated ECPA by purportedly procuring or aiding and abetting Meta's interception of Plaintiff's communications. But that theory is not available under ECPA's private right of action for civil cases—procurement is only an issue of *criminal* liability under ECPA. *See, e.g.*, *Peavy v. WFAA-TV, Inc*. 221 F.3d 158, 169 (5th Cir. 2000). Plaintiff's ECPA claim fails as a matter of law.

Instead of addressing the heart of Express Scripts' argument, Plaintiff takes issue with Express Scripts' citation to *Peavy* as an out-of-circuit case. (Opp. at 9-10.)[3] *Peavy* has been established law for nearly 25 years and has since been followed by the Tenth Circuit and by various district courts in other circuits. (Mot. at 12-13.) Moreover, Plaintiff ignores the numerous district court opinions from the Ninth Circuit that Express Scripts cited reaching the same conclusion. (*Id*. at 13.) Congress has had ample opportunity to amend the civil liability provision found in ECPA section 2520(a), but it hasn't. Allowing civil "procurement" liability under section 2520(a) therefore would not only ignore the longstanding precedent in *Peavy*, it would also disregard Congressional intent. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1090 (N.D. Cal. 2015) (when "Congress wishe[s] to create such [secondary] liability, it ha[s] little trouble doing so") (quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184 (1994)).

---

[3] Express Scripts also cites *Kirch v. Embarq Management Co.*, 702 F.3d 1245 (10th Cir. 2012), to demonstrate that Congress excluded civil liability for procurement when it enacted ECPA in 1986. (Mot. at 11.) Plaintiff asserts that Express Scripts does not argue that the ordinary business exception applies, which was at issue in *Kirch*, but in so arguing Plaintiff ignores the purpose for which the case is cited. (Opp. at 9.)

Plaintiff cites to three outlier, unpersuasive cases holding otherwise. (Opp. at 9-10.) In two of those cases, the courts' interpretation of section 2520(a) was not essential to the rulings and thus amounts to dicta. *See DIRECTV, Inc. v. Barrett*, 311 F. Supp. 2d 1143, 1146 (D. Kan. 2004) ("It is immaterial at this point of the litigation that § 2520 does not mention 'endeavoring to intercept.' It might become material later, if it becomes clear that Plaintiff's evidence supports only the 'endeavoring' claim, and not the actual 'interception' claim."); *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y 2006) ("As an alternative to their procurement theory of liability, plaintiffs assert that [the defendant] intercepted their communications directly. Therefore, even if the procurement theory fails, the direct interception theory is sufficient to support the claims."). The third, *Boseovski v. McCloud Healthcare Clinic, Inc.*, relies on *DIRECTV* and *Lonegan* but does not address that the relevant analyses in the cases are dicta, and declines to adopt *Peavy* merely because the defendant did not cite in-circuit authority. No. 2:16-CV-2491-DMC, 2020 WL 68578, at *6 (E.D. Cal. Jan. 7, 2020). *Boseovski* runs counter to the majority position for decades that ECPA's plain text limits civil liability to interception, disclosure, and use. *See Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 24 (D.D.C. 2012) (collecting cases). Plaintiff's aiding-and-abetting ECPA claim should thus be dismissed.

**2. The Crime-Tort Exception Does Not Apply**

Plaintiff's ECPA claim also fails under the one-party consent rule. As Plaintiff concedes, Express Scripts is a party to any communication with its website and consented to the use of the Meta pixel. (Mot. at 13-14.) This forecloses his ECPA claim. *See* 18 U.S.C. § 2511(2)(d).

Plaintiff attempts to avoid the one-party consent rule by arguing that the crime-tort exception applies. However, the crime-tort exception applies only where the defendant allegedly committed a tortious or criminal act that is ***separate and independent from*** the intentional act of recording or interception itself. *See Sussman v. ABC, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). Plaintiff admits that he must allege some "further impropriety" (Opp. at 7) but fails to do so. He argues that one of the purposes of Express Scripts' use of the pixel was to intercept and disclose health information to third parties in violation of state and federal law. (*Id.* at 8.) However, Plaintiff never identifies the state and federal laws to which he is referring and never alleges that

Express Scripts disclosed information to Meta with the ***intent*** to violate any state or federal law. (*See generally* ECF No. 64 ("TAC").)

Plaintiff alleges that Express Scripts is a HIPAA-covered entity (*Id.* ¶ 107) and that certain health information is protected by HIPAA (*id.* ¶¶ 100-05). But the fact that Express Scripts is a covered entity is not enough; he does not allege a separate HIPAA violation—nor could he, as he only puts public information at issue. *See Smith*, 262 F. Supp. 3d at 954-55 (PHI is not captured on public webpages). And Plaintiff's CMIA claim is based on the same alleged interception and thus is not separate nor independent of the interception, so the crime-tort exception still does not apply. *See Doe I v. Google LLC*, No. 23-cv-02431-VC, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) (rejecting plaintiffs' contention that crime-tort exception applies because plaintiff failed to provide sufficient evidence to show the purpose for the interception of health information was criminal or tortious); *Okash v. Essentia Health*, No. 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (dismissing ECPA claim because the alleged HIPAA violation encompassed "only the simultaneous interception and disclosure of information to Meta"). Thus, the cases Plaintiff cites are inapposite because they involve explicit allegations of intentional violations of HIPAA or common law claims not at issue in this case. *See In re BetterHelp, Inc. Data Disclosure Cases*, No. 23-cv-01033-RS, 2024 WL 3416511 (N.D. Cal. July 15, 2024) (alleging intentional violation of HIPAA); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (alleging invasion of privacy and intrusion upon seclusion); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 896-97 (C.D. Cal. 2024) (alleging invasion of privacy).

The one case Plaintiff cites that invokes the CMIA in connection with the crime-tort exception to ECPA is distinguishable. In *B.K. v. Desert Care Network*, plaintiffs explicitly alleged that defendants embedded the Meta pixel not only on their public-facing webpages, but also within their authenticated patient portal. No. 2:23-cv-05021 SPG (PDx), 2024 WL 1343305, at *1 (C.D. Cal. Feb. 1, 2024). Thus, in ruling on the crime-tort exception, the court not only considered allegations of violations of other common law claims not at issue here but declined to consider certain allegations that were "too vague and conclusory to credit." *Id.* at *6. Here,

Plaintiff does not allege the Meta pixel was embedded on Express Scripts' patient portal and instead offers only the conclusory allegations that he used the "Express Scripts Platform" to obtain prescriptions and was "required to input . . . a diagnosis history" on an unspecified page—without any factual allegation that the Meta pixel was embedded on a webpage where he could possibly enter such information. (TAC ¶ 20.) Plaintiff's conclusory allegations are insufficient and not made with adequate factual support to invoke the crime-tort exception. *See Desert Care Network*, 2024 WL 1343305, at *6.

Because Plaintiff fails to factually allege that any purported interception was undertaken to further an independent criminal or tortious act, Plaintiff cannot overcome the application of the party exception, and his ECPA claims against Express Scripts should be dismissed.

### C. Plaintiff's CIPA Claim Fails Without A Predicate Violation or Express Scripts' Knowledge or Substantial Assistance

Plaintiff has filed a claim against Express Scripts for purportedly "aiding and abetting" Meta under CIPA section 631(a). But to do so, he must have alleged a predicate violation by Meta of one of CIPA section 631(a)'s first three clauses. At the outset, Plaintiff fails to clearly state which of the clauses are at issue, asserting only that "one or more" of the first three clauses were violated. (Opp. at 14.) That is insufficient. *See Cody v. Lacoste USA, Inc.*, No. 8:23-cv-00235-SSS-DTBx, 2024 WL 2228971, at *3 (C.D. Cal. May 2, 2024) (dismissing plaintiff's CIPA claim under section 631(a) where plaintiff failed to identify which of the four possible theories of liability applied and concluding that none of the clauses was violated). In any event, Plaintiff's allegations do not establish a predicate violation by Meta under *any* of the three clauses.

Plaintiffs asserting these purported wiretapping claims under CIPA have been trying to shove a square peg into a round hole for years. It just does not fit. Judge Chhabria recently granted summary judgment in a CIPA § 631 case involving the purported use of the Meta pixel on a healthcare company's website, finding that Meta did not intercept communications "in transit" as required to state a claim. *See Doe v. Eating Recovery Ctr.*, No. 23-cv-05561-VC, 2025 WL 2971090, at *7 (N.D. Cal. Oct. 17, 2025). In so ruling, Judge Chhabria acknowledged that

CIPA is a "mess," but made clear that to the extent there is any ambiguity, CIPA must be read in favor of the defendant—and applying the rule of lenity, he held that Meta does not "read" or "attempt to read" contents of communications in transit as required to state a CIPA claim. *Id.* at *1, *7. The same is true here.

Moreover, Plaintiff fails to plead the necessary facts that Express Scripts *knowingly* aided and abetted any such purported violation or substantially assisted the same (indeed, he does not even try to identify where he has pled such facts in his complaint). Plaintiff's CIPA claim therefore collapses at both steps, and it should be dismissed.

### 1. Plaintiff Does Not Adequately Allege that Meta Violated CIPA

#### a. Plaintiff concedes that the first clause does not apply

As Plaintiff concedes by failing to argue otherwise (Opp. at 14), Plaintiff cannot state a claim under the first clause of section 631(a) because this clause involves only "intentional wiretapping" and does not apply to internet communications like the ones alleged here. *See, e.g.*, *A.S. v. SelectQuote Ins. Servs.*, No.: 3:23-cv-02258-RBM-MSB, 2024 WL 3881850, at *10 (S.D. Cal. Aug. 19, 2024) (collecting cases).

#### b. Plaintiff has not alleged that Meta read or attempted to learn the contents of any purported communications while "in-transit" as required under the second clause

Plaintiff does not allege interception in transit as required to state a claim under the second clause; he pleads that communications were allegedly "tapped and thereafter delivered to the third-party, Facebook." (Mot. at 16; TAC ¶ 137.) Plaintiff's attempt to recast his allegations in his opposition should be rejected because, in his own words, the process involves a post-transmission redirection of data. Specifically, Plaintiff now claims that his allegation is that the Meta pixel is "loaded – as it necessarily has to be – to then intercept real-time communications in real time as Plaintiff is interacting with Defendant's Platform." (Opp. at 11.) But that is not what Plaintiff pled. Express Scripts previously identified this precise pleading defect in prior rounds of briefing (ECF No. 54 at 13-14), yet Plaintiff did not (because he cannot) amend his allegations to allege contemporaneous interception. Instead, Plaintiff repeated the exact same "tapped and thereafter delivered" allegation. (TAC ¶ 137.) As before, the only logical reading of the

allegation is that Plaintiff's purported communications were first recorded *and then* delivered to Meta, where it is later processed.

This is, indeed, how the Meta pixel works. As explained in *Eating Recovery Center*, Meta does not "read" or "attempt to read" communications while in transit. 2025 WL 2971090 at *5-7. Rather, any web-browsing data the Meta pixel captures is encrypted during transmission to Express Scripts and only reassembled and filtered later in time, meaning after it is no longer "in transit." *Id.* at *6. The court explained that automated filtering or sorting of data without an effort to understand its meaning is more akin to sorting mail than to reading it and does not constitute reading or attempting to learn contents "while in transit." *Id*. In rejecting the same argument Plaintiff advances here, the court emphasized that clause two requires the purported interceptor to do "something more than just intercept the communication while it is in transit to be held liable." *Id.* The same reasoning applies here. Plaintiff's own allegations describe only a sequential automated process that fails to meet the "in transit" requirement. (TAC ¶ 137.)

Contrary to Plaintiff's assertion (Opp. at 13), *Crano v. Sojern, Inc.* is thus directly on point. No. 3:25-cv-02600-JSC, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025). There, the court held that the plaintiff failed to plausibly allege interception "while in transit" because her allegations described the redirection of data from her own device rather than any real-time interception during transmission. *Id.* at *7. Specifically, the court found that plaintiff's allegations that defendant's source code "commandeer[ed] the user's computing device, causing the device to contemporaneously in real time and invisibly *re-direct* the users' personally identifiable guest records and communications to third parties" merely showed redirection, not interception. *Id*. (emphasis in original). Likewise, Plaintiff does not allege real-time interception, but at best, alleges only that the Meta pixel causes his device to "re-direct" communications to Facebook. (TAC ¶ 24 ("[T]he kinds of data that the Facebook Pixel causes to be redirected . . . are explained as follows"), ¶ 52 ("Facebook's source code . . . re-direct[s] the content of the customer's communication"), ¶ 57 ("The content . . . [is] re-directed to Facebook"), ¶ 75 ("Defendant's deployment of the Facebook Pixel caused Plaintiff's interactions with the Platform . . . to be automatically and invisibly redirected to Facebook's servers").) As in *Crano*,

these allegations describe alleged redirection through Plaintiff's device, not contemporaneous eavesdropping on a communication in transit, and therefore do not plausibly allege a real-time interception under clause two of section 631(a).

Plaintiff's reliance on *Riganian v. Liveramp Holdings, Inc.* is misplaced. No. 25-cv-00824-JST (N.D. Cal. July 18, 2025). The allegations in *Riganian* involved different technology and went far beyond what is pled here; nor did it involve the types of alleged sequential steps at issue here. There, the plaintiffs alleged that LiveRamp's "[e]vent listeners intercept communications while in transit, once user inputs are made but before the communications are received by the webpage," and that LiveRamp's identity graph "connects all these identifying points of data into a single, non-anonymous 'identity profile' . . . in real time," thereby allowing LiveRamp to "incorporate[]—and thus read[]—the intercepted content 'in real time' to update its identity profiles before that content is 'completely loaded' onto the requested page." *Id*. at *10. Here, Plaintiff offers no comparable allegations about the Meta pixel or how Meta allegedly "reads" any communication while in transit. Indeed, any such allegations are not plausible given how the technology works. *See Eating Recovery Ctr.*, 2025 WL 2971090, at *5-7.

Rather than address these issues, Plaintiff argues that the issue of whether Meta "reads" communications in transit is a factual issue for summary judgment. (Opp. at 13-14.) However, the Court need not wait until summary judgment when Plaintiff himself does not (and cannot) allege any purported interception in transit. *See Crano*, 2025 WL 2689267, at *7; *Eating Recovery Ctr.*, 2025 WL 2971090, at *5-7. At most, Plaintiff parrots the statutory requirement of "real time interception" without factual support, which cannot save his CIPA claim. *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023).

Failing to satisfy CIPA's "in transit" requirement, Plaintiff pivots to a new argument that clause two of section 631(a) is satisfied regardless of when it is read if a communication "*is being sent from, or received at any place within this state*." (Opp. at 10 (emphasis in original).) But that interpretation is directly foreclosed by the plain language of section 631 and cases Plaintiff himself relies on. In full, clause two concerns those

> who willfully and without the consent of all parties to the communication, or in

> any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication ***while*** the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state

Cal. Penal Code § 631(a) (emphasis added). Courts in this district have repeatedly held, and as the plain text shows, the word "while" modifies the entire clause, so the alleged reading must occur contemporaneously with transmission. *See Valenzuela*, 674 F. Supp. 3d at 758 (dismissing wiretapping claim where plaintiff failed to allege contemporaneous interception "while" the communication was in transit). When faced with the argument Plaintiff advances here, courts have explained that the "[p]laintiff misreads the statute . . . [and] cannot avoid the simultaneity requirement merely because she sends or receives a message in California." *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 WL 4369675, at *5 (N.D. Cal. Oct. 1, 2024); *see also Boulton v. Community.com, Inc.*, No. 23-3145, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (rejecting plaintiff's "interpretation [as] one of 'extraordinary breadth'"). Plaintiff's CIPA claim under the second clause fails.

**c. Clause three does not apply without clause one or two**

"Because Plaintiff has failed to plead a violation under the first or second clauses of Section 631(a), the allegations as to [the third clause] are also insufficient." *Cody v. Boscov's, Inc*., No. 8:22-cv-01434-SSS-kkx, 2024 WL 228973, at *3 (C.D. Cal. May 6, 2024). Plaintiff's theory that Meta violated clause three by using allegedly intercepted information to create advertising and analytics profiles therefore fails as a matter of law. (Opp. at 21.)

The Court's analysis can end here. Because Plaintiff has not alleged unlawful conduct by Meta, he cannot proceed with his aiding and abetting theory against Express Scripts under the fourth clause. *Cody*, 2024 WL 228973, at *3 (dismissing aiding and abetting claim where plaintiff failed to adequately plead predicate violation). Still, that clause is addressed fully below.

**2. Plaintiff Has Not Adequately Pled "Aiding and Abetting" Liability**

**a. Plaintiff must plead knowledge, intent, and substantial assistance in a predicate violation**

The fourth clause of section 631(a) should be interpreted in line with its common-law

meaning, which requires both knowledge and intent, as well as substantial assistance in a predicate violation under clauses one through three. *Valenzuela v. Kroger Co.*, No. CV 22-6382-DMG (AGRx), 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) (applying common law definition of aiding-and-abetting under clause four and dismissing plaintiff's claim).

When interpreting an ambiguous criminal statute, the Court should apply the rule of lenity to resolve uncertainty. *See, e.g.*, *People v. Arias*, 45 Cal. 4th 169, 177 (2008) (the rule requires courts to interpret ambiguous terms in the manner "favorable to the defendant," even when only civil penalties are sought). That rule applies here because, while this is a civil action (Opp. at 22), it is ***based*** on a criminal statute. *See* Cal. Pen. Code §§ 632.7, 637.2; *Harrott v. Cnty. of Kings*, 25 Cal. 4th 1138, 1154 (2001) (applying the rule of lenity in a noncriminal proceeding because the statute imposes criminal penalties). As Judge Chabbria observed, "[t]he language of CIPA is a total mess." *Eating Recovery Center*, 2025 WL 2971090, at *1. The statute was difficult to apply even when enacted, and the problem has only grown as courts have struggled to fit its "already-obtuse language" to modern technology. *Id*. Courts have now reached the point where "it's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute." *Id*. This confusion has produced conflicting rulings and left companies with "no way of telling whether their online business activities will subject them to liability." *Id*. Until the Legislature updates CIPA to account for modern realities, "courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Id*.

Plaintiff's interpretation would improperly expand liability under clause four. (Opp. at 18-22.) The first three clauses already address direct interception and use, while the fourth clause is meant to reach only those who ***knowingly aid and abet*** those violations, not every company that interacts with a third party. *See* Cal. Pen. Code § 631(a). Plaintiff's interpretation would create strict liability, exposing businesses that lawfully use third parties for analytics and web enhancement tools to punitive penalties. (Opp. at 18-21.) Further, Plaintiff's interpretation would eliminate the "knowing" element and make section 631(a) inconsistent with the rest of CIPA, because other provisions such as sections 632 and 632.7 expressly require intent. *See id*. § 632 (punishing those who "*intentionally*" eavesdrop on confidential communications)

(emphasis added); *id*. § 632.7 (punishing those who "*intentionally* record[], or assist[] in the interception or reception and *intentional* recordation of, a communication") (emphasis added).

The cases Plaintiff cites to support his broad construction (Opp. at 16-17) are both inapplicable and unpersuasive. As an initial matter, *Deivaprakash v. Condé Nast Digital*, (Opp. at 17), involved the interpretation of CIPA's pen register provision under section 638.5, and therefore has no bearing on the aiding-and-abetting analysis of section 631 here. No. 25-cv-04021-RFL, 2025 WL 2541952 (N.D. Cal. Sept. 4, 2025). And ***none*** of the remaining cases (Opp. at 16, 20) considered the rule of lenity or analyzed the fourth clause of section 631(a) under the common-law definition of aiding and abetting. *See Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949 (E.D. Cal. 2025) (interpreting the fourth clause of section 631(a) without reference to the rule of lenity); *Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814 (E.D. Cal. 2025) (same); *Cousin v. Sharpe Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) (same); *St. Aubin*, 2024 WL 4369675 (same); *R.C. v. Sussex Publishers, LLC*, No. 24-cv-02609-JSC, 2025 WL 1735994 (N.D. Cal. June 23, 2025) (same); *Mitchell v. Sonesta Int'l. Hotels Corp*., No. CV 24-2603-GW-SSCx, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) (acknowledging uncertainty in the case law but declining to analyze or apply the common-law aiding-and-abetting framework).

**b. Plaintiff does not allege Express Scripts knew of any intent on Meta's part to violate CIPA**

Under the correct interpretation of the fourth clause of section 631(a), Plaintiff must plausibly allege that Express Scripts acted with knowledge of Meta's wrongful conduct. *Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 WL 3761293, at *3 (S.D. Cal. Aug. 5, 2024) (dismissing aiding-and-abetting wiretapping claim because "none of [plaintiff's] allegations show Defendant knew [the third party's] conduct would breach some duty owed to Plaintiff or that [the third party] intended to violate section 631"). Plaintiff's mere allegations that Express Scripts embedded the Meta pixel on its website or that Meta collected data through its own technology are insufficient to state a CIPA claim. *See, e.g.*, *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024) (dismissing aiding-and-abetting wiretapping claim for lack of allegations that defendants knew the third party's conduct breached *some duty*); (*see*

*also* Mot. at 20). Plaintiff's attempt to distinguish *Rodriguez* is unfounded. (*Contra* Opp. at 21.) In *Rodriguez*, the court held that aiding-and-abetting liability requires knowledge of the third party's unlawful purpose and dismissed the claim because the plaintiff alleged only that the vendor was capable of using data for its own purposes, not that the defendant knew or intended it would do so. 722 F. Supp. 3d at 1124. The same is true here. Although Plaintiff alleges that Facebook monetizes data collected through the Meta pixel, he pleads zero facts alleging Express Scripts knew or intended that Meta would use any such data for an unlawful purpose.

Plaintiff's reliance on *Balestrieri v. SportsEdTV, Inc*., and *Smith v. Rack Room Shoes, Inc.* to argue otherwise is unpersuasive. (Opp. at 18, 21.) In *Balestrieri*, the court did not apply the correct standard, holding that allegations that the defendant "intended to collect and disclose information" were sufficient to plead intent. No. 25-cv-04046-SK, 2025 WL 2776356, at *11 (N.D. Cal. Sept. 16, 2025). Similarly, in *Smith*, the court improperly inferred the knowledge and intent elements from the mere allegation that defendant embedded Meta's tracking code on its website. No. 24-cv-06709-RFL, 2025 WL 1085169, at *4-5 (N.D. Cal. Apr. 4, 2025). The court assumed that because the defendant integrated the technology for analytics and marketing purposes, it necessarily knew and intended that third parties would intercept communications in violation of CIPA. *Id.* But the court did not identify any allegation that the defendant knew the technology would operate unlawfully or that it agreed to facilitate a CIPA violation. *Id.* Neither reasoning can be squared with the rule of lenity or common-law standard, which requires actual knowledge that the third party's conduct was wrongful, not merely that the defendant intended to use the pixel.[4] *See, e.g., Smith v. Yeti Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (the fourth clause "does not cover . . . a defendant who properly and lawfully provides information or access to a third party without any knowledge or intent" of unlawful use).

As explained above, aiding and abetting liability under the fourth clause of section 631(a) requires a showing that the defendant knew of the direct violator's wrongful conduct and

---

[4] Plaintiff's reliance on *R.C. v. Walgreens* and *Zarif v. Hwareh.com, Inc*. (Opp. at 19) fares no better. Neither decision addressed liability under the fourth clause. *R.C.*, 733 F. Supp. 3d at 901-03; *Zarif*, 789 F. Supp. 3d 880, 897-98 (S.D. Cal. 2025). Moreover, the *Zarif* court dismissed the ECPA claim, finding defendant's purpose was commercial, not tortious. 789 F. Supp. 3d at 896.

provided substantial assistance with the purpose of advancing that violation—not merely that the website operator intended to collect or receive data. Indeed, in *Desert Care Network* (a case Plaintiff relies on for his ECPA claim), the court dismissed an aiding-and-abetting claim under CIPA because plaintiffs failed to allege a predicate CIPA violation by Meta, finding that Meta lacked the requisite intent to violate the statute given that its policy expressly prohibited receiving sensitive health data from business partners. 2024 WL 1343305, at *7. Without facts showing Meta's intent to engage in unlawful interception, there could be no underlying CIPA violation. *Id*. The same logic applies here: if Plaintiff has not plausibly alleged that Meta acted willfully or with intent to intercept communications in violation of CIPA, Express Scripts cannot be held liable. *See Cody*, 2024 WL 2228973, at *3 (because plaintiff failed to allege any unlawful conduct by the third-party under section 631(a), the CIPA claim failed).[5]

**c. Plaintiff concedes no substantial assistance**

Plaintiff did not respond to Express Scripts' argument that it did not provide Meta with substantial assistance to violate CIPA. (Mot. at 21; *see generally* Opp.) Accordingly, Plaintiff has conceded this argument and the CIPA claim should be dismissed. *Silva v. U.S. Bancorp*, No. 5:10-cv-01854–JHN–PJWx, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his . . . claim should be dismissed by failing to address Defendants' arguments in his Opposition.").

## III. CONCLUSION

For these reasons and those in Express Scripts' motion to dismiss, Plaintiff's wiretapping claims should be dismissed with prejudice.

[5] Plaintiff's additional reliance on *In re Meta Pixel Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024), *Smith v. Google, LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024), and *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) is likewise misplaced. Each involved direct liability claims against the defendant, not aiding and abetting, and none addressed the intent.

Dated: November 10, 2025

MORRISON & FOERSTER LLP

By: */s/ Tiffany Cheung*
Tiffany Cheung

*Attorney for Defendant*
EXPRESS SCRIPTS HOLDING COMPANY