UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JONATHAN LYNCH,

          Plaintiff,

    v.

EXPRESS SCRIPTS HOLDING COMPANY,

          Defendant.

Case No. 23-cv-01170-AMO

**ORDER RE MOTION TO DISMISS**

Re: Dkt. No. 67

United States District Court
Northern District of California

This putative class action arises from Plaintiff Jonathan Lynch's use of Defendant Express Scripts Holding Company's online pharmacy to obtain prescriptions to treat low insulin and testosterone levels.  He alleges that Express Scripts configured and deployed the Facebook Pixel on its website and mobile application to facilitate the interception of his (and other users') personal and health information by Meta without his (or their) consent.  Dkt. No. 64 ("TAC") ¶¶ 20, 54, 75, 136.  Based on these allegations, Lynch asserts a claim under the federal Wiretap Act, as amended by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.*, the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, and the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.  TAC ¶¶ 126-132, 133-150, 151-164.  Now pending before the Court is Express Scripts' motion to dismiss the Wiretap and CIPA claims.[1]  Dkt. No. 67 ("Mot."); Dkt. No. 72 ("Reply").  Lynch opposes the motion.  Dkt. No. 69 ("Opp.").  Having considered the parties' papers, the relevant legal authority, and good cause appearing, the Court **GRANTS** the motion **IN PART** and **DENIES** the motion **IN**

---

[1] Lynch's CMIA claim survived a prior motion to dismiss, Dkt. No. 60 ("Order"), and is thus not at issue here.  This order assumes familiarity with the facts and procedural background of this case, as well as the Court's prior orders.

**PART** for the reasons set forth below.

<div style="text-align:center">

**DISCUSSION**

</div>

1.      Wiretap Claim

"The Wiretap Act prohibits the unauthorized 'interception' of an 'electronic communication.' " *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606-07 (9th Cir. 2020) (citing 18 U.S.C. § 2511(1)(a)-(e)).  Express Scripts argues that Lynch's claim under the Wiretap Act fails because he consented to the use of pixel technology on the Express Scripts platform, there is no civil liability for aiding and abetting Meta's alleged interception, and the party exemption precludes any theory of direct liability against Express Scripts.  Mot. at 13-22; Reply at 8-13.  The Court addresses each issue in turn before analyzing the remaining challenges Express Scripts only raises with respect to Lynch's CIPA claim.[2]

a.      **Consent**

"[C]onsent is an affirmative defense for which defendant bears the burden of proof." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (internal quotations and citation omitted).  "If [a] user could have plausibly understood the disclosures 'as *not* disclosing that [the defendant] would engage in particular conduct,' then the disclosures are insufficient to establish consent." *Id.* (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019) (modifications and emphasis in original)).

The core of Lynch's Wiretap and CIPA claims is the alleged unlawful interception of personal health information. *See* Opp. at 7 ("Plaintiff . . . alleges that, by placing this tracking tool throughout the Express Scripts website, Defendant aided, employed, and agreed with Facebook to cause the surreptitious interception of Plaintiff's private medical communications with Express Scripts[.]"); *id.* at 11 ("That Plaintiff was purportedly 'on notice that Express Scripts may use third-party pixel technology to track website interactions and communications and that his personal information may be used for advertising, . . . does nothing to defeat Plaintiff's claims that

---

[2] Express Scripts also argues consent warrants dismissal of Lynch's CIPA claim.  Mot. at 13-17; Reply at 8-10.  Because "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act," *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020), the Court does not separately address the consent issue in connection with the CIPA claim.

<div style="writing-mode: vertical-rl; text-align:center">United States District Court<br>Northern District of California</div>

his health information was utilized for this improper purpose—despite Defendant's plain statement that 'these communications will not be based on your *Health Information*.' ") (emphasis in original); *id.* at 12 ("Defendant has failed to show that Plaintiff consented to the disclosure of his health information"); *id.* at 21 ("Indeed, its own Privacy Policy states that it would not aid and employ the pixel to intercept health information."). With this focus in mind, the Court turns to the operative disclosures.

Express Scripts relies on its Internet Privacy Policy[3] to establish consent, pointing to the following provisions:

- "We may use certain in-house or third-party functionality to **log and analyze your communications with us and interactions with the Site**. This functionality enables us to communicate with you about our services, and to monitor the services provided to you, so that we can improve your Site experience and address certain Site or benefit related issues. These third parties will be required to protect your Personal Information and Health Information in a manner consistent with this Privacy Policy and other policies, as applicable. Other analytics capabilities are reflected in the description of Non-Personal Information." Dkt. No. 54-11 ("Privacy Policy") at 7 (emphasis added).

- "The term 'Personal Information' means any information which can be used to identify a person including by way of example, but not limitation, name, date of birth, mailing address, **social media and other third party platform account identifiers,** home phone number, mobile phone number, e-mail address, credit card information, IP address, and/or Social Security number." *Id.* at 1 (emphasis added).

- "The term 'Health Information' means any information, in any form, related to the past, present, or future health or medical status, condition, or treatment of a person, including, by way of example, but not limitation, names of doctors, health conditions, medicines, and/or prescription information and history." *Id.*

- "We may utilize selected service providers to make targeted non-personal communications to an aggregated audience regarding our offerings and other potentially relevant benefit information of interest to you. **These communications will not be based on your Health Information**." *Id.* at 8 (emphasis added).

- "Certain Non-Personal Information may be collected on an aggregated, anonymous basis through web server logs, cookies, ad servers, **tracking pixels**, web beacons, and similar Internet tracking devices (collectively "**Tracking Mechanisms**")." *Id.* at 10 (first emphasis added).

---

[3] The Court **GRANTS** the parties' requests for judicial notice of various materials on Express Scripts' website. *See* Dkt. Nos. 68, 70. However, as the Court did in the order resolving the prior motion to dismiss, Dkt. No. 60, it does not consider the documents beyond their existence. *See* Order at 6 (citing *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1001 (N.D. Cal. 2024) ("This notice is limited to the existence and contents of this July 26, 2022 version of Meta's terms of service. The Court cannot conclude from Meta's submission that this was the version in effect during the period relevant to plaintiffs' claims, or that plaintiffs ever assented to the terms therein.")).

3

United States District Court
Northern District of California

- "The collected Non-Personal Information may be used by us and our affiliated companies for a variety of analytic and developmental purposes including *to improve and enhance the Site and our products and services*, to create new products and services, to customize your experience on the Site and other sites that you visit on the Internet, *to identify and/or offer products, services and website functionality that may be of interest to you*, and other legitimate business purposes." *Id.* (emphasis added).

- "We *may use third parties to*: (a) operate and maintain the server(s) on which the Site operates, (b) enable login to the Website utilizing third party platform login credentials, (c) provide communication functionality, (d) encrypt message, (e) provide Tracking Mechanism(s) that we embed in or use with the Site, (f) provide advertisements and other information to you about the Site, products, and services through a third-party site based on a prior visit to the Site, (g) *analyze communication with us and interactions with the Site*, (h) de-identify data, and (i) collect Non-Personal Information from you (e.g., on your interactions and/or experience with the Site and/or us)." *Id.* at 13.

- "When you communicate with us through social media, or provide a comment directed at us through social media, we may use social media to communicate with you. We may also directly communicate with you through social media in accordance with any expressed social media preferences in your communication preferences. We may also promote content of interest to you through social media. You may opt out or configure your social media account settings to limit promotion of such content." *Id.* at 7.

- "You are deemed to have assented to the terms and conditions contained in this Privacy Policy when you use the Site and/or when you have indicated in your online registration that you accept the Terms of Use[4] into which this Privacy Policy is incorporated." *Id.* at 15.

In opposition, Lynch highlights the portions of Express Scripts' terms that state it "will not use or disclose your Personal Information or your Health Information in a manner inconsistent with applicable law, this Privacy Policy or the Notice of Privacy Practices." Opp. at 10 (citing Internet Privacy Policy at 1). He also emphasizes the language that Express Scripts omitted from one of its quotations, specifically, that in connection with the utilization of "selected service providers to make targeted non-personal communications to an aggregated audience regarding our offerings and other potentially relevant benefit information of interest to you[, t]hese communications *will not* be based on your Health Information." Opp. at 11 (citing Privacy Policy at 8) (emphasis in original).

///

///

///

---

[4] The Terms of Use provide: "You agree to the Internet privacy policy ('Privacy Policy'), which is incorporated by reference in these Terms of Use." Dkt. No. 54-12 ("Terms") at 8.

United States District Court
Northern District of California

United States District Court
Northern District of California

Lynch further relies on Express Scripts' Notice of Privacy Practices,[5] which provides, in part:

> The information we collect is called protected health information ("PHI").  We take our obligation to keep your PHI secure and confidential very seriously.  We are required by federal and state law to protect the privacy of your PHI and to provide you with this Notice of Privacy Practices ("Notice") about how we safeguard and use it, and notify you following a breach of your unsecured PHI.  When we use or give out ("disclose") your PHI, we are bound by the terms of this Notice.  This Notice applies to all electronic or paper records we create, obtain, and/or maintain that contain your PHI.

Dkt. No. 70, Ex. 1 ("HIPPA Notice").

Ignoring that Lynch alleges his protected health information was unlawfully intercepted, Express Scripts urges the Court to interpret its Privacy Policy and Terms as putting Lynch "on notice that Express Scripts may use third-party pixel technology to track website interactions and communications and that his personal information may be used for advertising[.]"  Mot. at 17.  But this is only one possible interpretation.  A reasonable user viewing Express Scripts' disclosures, including the HIPAA Notice, could have also plausibly interpreted these disclosures to mean that Express Scripts may share data with third-parties, but only within the constraints of applicable law that protects such data, particularly health information.[6]  As Lynch argues, "[u]sers could not reasonably anticipate that a covered entity would permit a third-party advertising

---

[5] The Privacy Policy states: "To the extent any terms in this Privacy Policy conflict with any terms Notice of Privacy Practices, the conflicting terms in the Notice of Privacy Practices will control and override the corresponding terms in this Privacy Policy."  Privacy Policy at 1-2.

[6] Express Scripts argues that the HIPAA Notice is irrelevant because Lynch "does not allege that the Meta pixel was embedded on any webpage that may collect PHI[.]"  Reply at 8.  The Court rejects this argument for two reasons.  First, Lynch alleges that he used Express Scripts "to obtain prescriptions[,]" which according to the company, he could only have done after "creat[ing] an account."  Mot. at 11.  Second, as the Court previously ruled, "[t]o the extent Express Scripts contends that the Meta Pixel can be configured in different ways on different web properties such that Lynch's sensitive information could not have been shared or intercepted, that is a matter for consideration at summary judgment or trial."  Order at 9; *see Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1259 (N.D. Cal. 2024) (At the motion to dismiss stage, "in the absence of discovery [about] how the TikTok Pixels actually work and what information was tracked, it would be premature to hold that TikTok's alleged tracking of the various pages that plaintiff may have visited within Favor's platform when seeking healthcare services cannot constitute an invasion of privacy.") (footnote omitted).

platform to intercept and monetize their PHI." Opp. at 12.

With respect to Express Scripts' use of "selected service providers to make targeted non-personal communications to an aggregated audience regarding our offerings and other potentially relevant benefit information of interest to you[,]" a reasonable user could have plausibly interpreted these disclosures as not allowing such communications to be based on health information because the disclosures expressly state that "[t]hese communications will not be based on your Health Information." Privacy Policy at 8.

Accordingly, because "a reasonable . . . user could plausibly have interpreted the [disclosure] language as *not* disclosing that [Express Scripts] would engage in particular conduct," Express Scripts "cannot obtain dismissal of a claim about that conduct (at least not based on the issue of consent)." *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 789-90 (emphasis in original). Express Scripts' motion to dismiss Lynch's Wiretap Act and CIPA claims on the basis of consent is therefore **DENIED,** to the extent the claims concern the alleged unlawful interception of personal health information. *Cf. Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (granting motion to dismiss where a reasonable user would understand the only terms at issue – the privacy policy – to mean they were consenting to the use of cookies including by third parties); *M.D. v. Google LLC*, No. 24-CV-06369-AMO, 2025 WL 2710095, at *5 (N.D. Cal. Sept. 23, 2025) (granting motion to dismiss where claims were subject to revised terms that omitted language from earlier versions promising users "[w]e do not share your personal information with these third parties their own direct marketing purpose[,]" and counsel conceded the new terms "establishe[d] users' consent to the data collection practices"); *Washington v. Flixbus, Inc.*, No. 3:25-CV-00212-H-MSB, 2025 WL 1592961, at *4 (S.D. Cal. June 5, 2025) (granting motion to dismiss where defendant's policies "explicitly notif[ied] users of the data practices at issue by disclosing the use of cookies and tracking pixels to track certain data and disclose that data to Defendant's business partners, including marketing partners").

However, Express Scripts highlights that while Lynch asserts "he did not" consent to the Privacy Policy, he offers no developed argument about why he lacked notice of its terms or should otherwise be found not to have agreed to them. Reply at 8 (citing Opp. at 3-6). Lynch is thus

deemed to have conceded the issue to the extent his claims rest on allegations that Express Scripts collected his non-health related personal information. *See Jones v. Regents of Univ. of California*, No. 21-CV-07844-JSW, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022) (treating failure to substantively address defendants' arguments for dismissal of claims "as a concession that those claims should be dismissed."). Accordingly, Express Scripts' motion to dismiss the Wiretap Act and CIPA claims is **GRANTED WITHOUT LEAVE TO AMEND** to the extent the claims are based on the alleged interception of non-health related personal information. The claims otherwise survive as discussed above.

### b.      Aiding and Abetting

Express Scripts next argues that Lynch's claim under the Wiretap Act should be dismissed to the extent it is based on a theory of aiding and abetting. Mot. at 18-20; Reply at 10-11. Lynch counters that his "allegations are sufficient to state a claim against Defendant for an ECPA violation even under Defendant's own analysis: Defendant engaged in an ECPA violation via its disclosure of Plaintiff's and Class Members' data to Meta[.]" Opp. at 15. This, however, does not establish that a claim based on a theory of aiding and abetting is cognizable under the Wiretap Act. Accordingly, because "[t]here is simply no secondary liability (such as aiding and abetting) under the ECPA," *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1076, 1089 (N.D. Cal. 2015), to the extent Lynch's claim under the Wiretap Act is based on a theory of aiding and abetting, Express Scripts' motion is **GRANTED WITHOUT LEAVE TO AMEND.**

### c.      The Wiretap Act's Exceptions

Insofar as Lynch's claim under the Wiretap Act rests on a theory of direct liability, Express Scripts contends that the cause of action fails because the party exemption applies. Mot. at 20-22; Reply at 10-13. Lynch counters that Express Scripts cannot rely on the party exemption because its conduct falls within the crime-tort exception. Opp. at 12-14. Lynch's argument is well-taken.

"[T]he Wiretap Act allows interception where the interception is made by a 'party' to the communication or where a 'party' has consented to the interception. . . . This exception does not apply, however, where the interceptor acts 'for the purpose of' committing any crime or tort in violation of state or federal law." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796

(N.D. Cal. 2022) (citing 18 U.S.C. § 2511(2)(d)).  "The Ninth Circuit has explained that the crime-tort exception to the Wiretap Act's consent defense focuses on whether the *purpose* for the interception—its intended use—was criminal or tortious."  *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 796 (quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original)).  "Under this exception, plaintiffs must allege that either the primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously."  *Id.* (internal quotations and citation omitted; modification in original).

Lynch alleges sufficient facts from which such intent may be reasonably inferred.  He alleges that Express Scripts is "a pharmacy benefits manager and online pharmacy" that "collects information from users that qualifies as individually identifiable health information[,]" and that "[t]he nature of information shared by Express Scripts users is exclusively related to patient status and health information[,]" which is protected under HIPAA.  TAC ¶¶ 100, 107.  He also alleges that Express Scripts "installed and employed the Facebook Pixel on its website," "caus[ing] the interception by Facebook of Plaintiff's electronic communications by enabling the Facebook Pixel to contemporaneously intercept and transmit Plaintiff's interactions on the Platform to Facebook[,]" and that "the level and detail of information surreptitiously collected by the Facebook Pixel and shared to Facebook indicates that the only purpose was to gain an unlawful understanding of the habits and preferences of users of Defendant's Platform . . . solely for Defendant's and Facebook's own marketing and advertising benefits."  *Id.* ¶¶ 83, 90.

These allegations are sufficient, at the pleading stage, to invoke the crime-fraud exception to the Wiretap Act's party exemption.  "[W]hile the third-party interceptors presumably were only trying to make money, [Express Scripts] itself arguably was committing the tort/crime of disclosing its customer's sensitive mental health-related information in violation of HIPAA."  *See In re BetterHelp, Inc. Data Disclosure Cases*, No. 23-CV-01033-RS, 2024 WL 3416511, at *4 (N.D. Cal. July 15, 2024); *cf. Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (finding "the connection between a person's browsing history and his or her own state of health . . . too tenuous to support Plaintiffs' contention that the disclosure requirements of HIPAA . . . apply" where "[t]he data show[ed] only that Plaintiffs searched and viewed publicly available health

information that c[ould not], in and of itself, reveal details of an individual's health status or medical history"). Express Scripts' motion to dismiss on the basis of the party exemption is therefore **DENIED**.

2. <u>CIPA</u>

CIPA "creates four avenues for relief." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 755 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631(a)). First, "where a person 'by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument[.]' " *Id.* (quoting Cal. Penal Code § 631(a)). Second, "where a person 'willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[.]" *Id.* (quoting Cal. Penal Code § 631(a)). Third, "where a person 'uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[.]' " *Id.* (quoting Cal. Penal Code § 631(a)). Fourth, "where a person 'aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.' " *Id.* (quoting Cal. Penal Code § 631(a)).

Express Scripts argues that Lynch's CIPA claim is not viable because he does not allege that Meta reads or attempts to read communications while in transit and that his theory of aiding and abetting fails for lack of allegations of knowledge, intent, or substantial assistance. Mot. at 22-28; Reply at 13-21. Neither argument warrants dismissal.

a. **Transit**

To be liable under CIPA's second clause, a third-party must " 'willfully and without consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[.]" *Valenzuela*, 674 F. Supp. 3d at 755 (quoting Cal. Penal Code § 631(a).

" 'While' is the key word here." *Id.* (quoting Cal. Penal Code § 631(a)).

In arguing that Lynch fails to adequately plead facts on this point, Express Scripts invites the Court to focus solely on Lynch's allegations that "Defendant never advised Plaintiff or the other Class Members that any part of their communications or use of Defendant's Platform would be ***tapped and thereafter delivered*** to the third-party, Facebook[,]" and that "Meta ***then*** attempts to match the action to one of its users with Facebook accounts[.]"  Mot. at 23-24 (citing TAC ¶¶ 27, 137 (emphasis added)).

However, Lynch's other allegations plausibly plead that Meta read or attempted to read the content his communications with Express Scripts while in transit.  Lynch alleges that "Facebook receives the content of a customer's portal sign-in communication immediately after the customer clicks the log-in button and even before Defendant receives it[,]" and that "[t]he content of the user's communications with Defendant are re-directed to Facebook while the communications are still occurring." *Id.* ¶¶ 56, 57.  He also alleges that "Defendant caused the interception by Facebook of Plaintiff's electronic communications by enabling the Facebook Pixel to contemporaneously intercept and transmit Plaintiff's interactions on the Platform to Facebook[,]" and that "[a]s a direct result of Defendant's implementation, Facebook captured in real time Plaintiff's mouse clicks, keystrokes, search terms, content viewed, and other interactions with the Platform including confidential and personally identifiable information, such as prescription-related activity, personal inputs, and interaction metadata." *Id.* ¶¶ 83, 84; *see also id.* ¶¶ 51-52.  He further alleges that "[t]he Facebook Pixel present on Defendant's Platform is a sophisticated computer software that allows Facebook to contemporaneously intercept, capture, read, observe, re-route, forward, redirect, and receive Plaintiff's and Class Members' electronic communications in real time." *Id.* ¶ 9; *see also id.* ¶¶ 91, 135, 145.

The specifics of how, if at all, such interception occurred is a factual matter for resolution at summary judgment or trial. *See, e.g.*, *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025) (granting defendant summary judgment on plaintiff's CIPA claim in light of undisputed evidence "that Meta did not read, attempt to read, or attempt to learn the contents of [plaintiff's] communications with [defendant] while those communications were in transit).  But

United States District Court
Northern District of California

for now, at the pleading stage, Lynch's allegations are sufficient to plausibly plead that Meta read or attempted to read his communications with the Express Scripts website while those communications were in transit. *See St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) (finding allegations of interception sufficient where plaintiff alleged Facebook's software script initiated data transmission to Facebook servers concurrent with the communications with the host website and noting "a plaintiff is not required to allege how and when their communications are captured"); *cf. Crano v. Sojern, Inc.*, No. 3:25-CV-02600-JSC, 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025) (plaintiff's allegations did not plausibly support an inference that her communications were read while in transit where she alleged that the information collected was stored "in a centralized location . . . where [defendant] matches data points and creates detailed profiles").

### b.      Aiding and abetting

Express Scripts contends Lynch does not state a viable claim under CIPA's fourth avenue for relief for two reasons. First, Express Scripts argues that Lynch has failed to plead a predicate violation. Mot. at 25-26. Second, it argues that Lynch does not allege knowledge, intent, or substantial assistance. *Id.* at 26-28. The Court addresses each argument in turn.

#### i.      Predicate violation

Lynch contends that he sufficiently pleads a predicate violation under CIPA clauses two and three. Opp. at 20. The Court agrees. As discussed above, Lynch has adequately pleaded that Meta read or attempted to read the contents of his communications with the Express Scripts website while those communications were in transit, supporting a plausible predicate violation under clause two. *See Crano*, 2025 WL 2689267, at *7 ("[T]he crucial question under § 631(a)'s second clause is whether [Plaintiff] has plausibly alleged that [defendant] read one of [their] communications while it was still in transit, i.e., before it reached its intended recipient."). Lynch has also adequately pleaded that Meta uses the information it learns through such alleged interception for its "for advertising and other undisclosed purposes[,]" including creating dossiers on users to "generate highly profitable targeted advertising on-and-off Facebook." TAC ¶¶ 20, 29, 30. This supports a plausible predicate violation under clause three. *See In re Google Assistant*

11

*Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (clause three prohibits "attempting to use or communicate information obtained as a result of engaging in either" intentional wiretapping or willfully attempting to learn the contents or meaning of a communication in transit over a wire, in violation of clauses one or two).  Having found that Lynch adequately pleads predicate violations, the Court now turns to whether they can sustain his claim against Express Scripts under clause four.

### ii.     Pleading requirements

The parties dispute whether Lynch must satisfy common law "aiding and abetting" requirements to state a claim under clause four, which Express Scripts contends requires pleading that it acted with knowledge of Meta's wrongful conduct, that Meta acted intending to commit the predicate violations Lynch alleges, and that Express Scripts rendered substantial assistance to that end, or whether some lesser standard applies.  Mot. at 17-21; Opp. at 21-28; Reply at 17-21.  The Court does not resolve that dispute at this stage, because even under the more stringent standard advanced by Express Scripts, Lynch's allegations are sufficient.  He alleges that "Defendant aided and employed the Facebook Pixel throughout its Platform[,]" that "Defendant installed and configured the Facebook Pixel on its Platform in a manner that permitted Facebook to contemporaneously intercept and transmit Plaintiff's private communications in real time[,]" and that Express Scripts "knowingly configured and deployed the Facebook Pixel in a manner that affirmatively enabled Facebook to act as the direct interceptor of those communications in real time."  TAC ¶¶ 20, 75, 135.  He also alleges "[t]he information collected was solely for Defendant's and Facebook's own marketing and advertising benefits[,]" and that "[t]he targeted advertising Facebook offers for sale includes the ability to target persons based on specific actions that a person has taken on websites like Defendant's, using information gathered by the Facebook Pixel[,]" which "allows Facebook to create a 'dossier' on users to effective targeting advertising [*sic*]." *Id.* ¶¶ 30, 83.

Express Scripts contends that it could not have acted with the requisite knowledge or intent because Meta's own terms, which Lynch references in the TAC, state: "We prohibit businesses and organizations from sharing sensitive information with us, including health and financial data.

12

If we determine that a business or an organization is violating our terms, we will take action against that business or organization." Mot. at 27; TAC ¶ 24. However, on the facts alleged, it is not a leap to infer that Express Scripts knew how the pixel tracking technology, which it installed and configured on its platform, worked, that it knew about the types of data, including the personal health information at issue here, being transmitted to Meta in violation of HIPAA, and that it kept the Facebook Pixel on its cite so that data collection would continue to optimize its advertising, and Meta's advertising business, even if it violated HIPAA. In any event, the specifics of how the Meta Pixel works, and the issues of knowledge, intent, and substantial assistance are better addressed on a more fully developed record. For now, Lynch has alleged sufficient facts to proceed. *See Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) ("Plaintiffs adequately allege that Rack Room knew that Meta and Attentive's data collection had the purpose of tracking individually identifiable user habits, despite provisions of Rack Room's policy that created a contrary expectation. Furthermore, the allegation that Rack Room knowingly and affirmatively embedded Meta and Attentive's code into its website is sufficient to plead substantial participation.").

## CONCLUSION

For the reasons set forth above, Express Scripts' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

Dated: June 17, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

13